UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN R. BLUMATTE, a/k/a ROBERT ANGONA, a/k/a JOHN BLUE,<br><br>*Plaintiff,*<br><br>-*against*-<br><br>GERARD QUINN, DONALD ROGERS, STEPHEN FARTHING, RANDOLPH LERNER, JR., DAVID LEVINSON, RUSSELL WILKINSON, EILEEN GUGGENHEIM, ROBERT BOLANDIAN, CHARLES CAWLEY, ANTHONY COLES, CHRISTOPHER FORBES, MARGOT GORDON, ROLAND GRYBAUSKAS, LUDWIG KUTTNER, DAVID LONG, DOUGLAS OLIVER, JULIA JITKOFF, DAVID SCHAFER, SYBIL SHAINWALD, DENNIS SMITH, THE GRADUATE SCHOOL OF FIGURATIVE ART OF THE NEW YORK ACADEMY OF ARTS, JEFFREY C. SLADE, and ELYSE RUZOW,<br><br>*Defendants.* | No. 2007 Civ. 2944 (JSR) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT BY DEFENDANTS STEPHEN FARTHING, RANDOLPH LERNER, JR., DAVID LEVINSON, RUSSELL WILKINSON, EILEEN GUGGENHEIM, ROBERT BOLANDIAN, CHARLES CAWLEY, ANTHONY COLES, CHRISTOPHER FORBES, MARGOT GORDON, ROLAND GRYBAUSKAS, LUDWIG KUTTNER, DOUGLAS OLIVER, JULIA JITKOFF, DAVID SCHAFER, SYBIL SHAINWALD, DENNIS SMITH, THE GRADUATE SCHOOL OF FIGURATIVE ART OF THE NEW YORK ACADEMY OF ART**

**SCHLAM, STONE & DOLAN LLP**
Bennette D. Kramer (BK-1269)
Andrew S. Harris (AH-9673)
26 Broadway
New York, New York  10004
Tel.:  (212) 344-5400
Fax:  (212) 344-7677

June 28, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii-vi

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND .................................................................................................. 3

The Plaintiff ........................................................................................................ 3

The Defendants ................................................................................................... 4

Plaintiff's Employment as Controller of the Academy ...................................... 4

Plaintiff Pleads Guilty ....................................................................................... 6

ARGUMENT ........................................................................................................ 6

I.      THE COMPLAINT FAILS TO STATE A RICO CLAIM .......................... 6

        A.      Plaintiff's RICO Claims ................................................................. 7

        B.      Plaintiff Lacks Standing to Bring a RICO Claim Based On Harm To Third
                Parties ............................................................................................. 8

        C.      Plaintiff Has Failed To State Claims For Any RICO Predicate Acts .................... 11

                1.   The predicate act of witness tampering applies only to proceedings in
                     federal court ........................................................................ 11

                2.   Plaintiff has not pled fraud with the requisite particularity ........................... 12

        D.      Plaintiff Has Not Properly Pled a RICO Conspiracy ........................... 14

        E.      Plaintiff Has Failed To Allege A RICO "Enterprise" ........................... 15

        F.      Plaintiff Has Failed To Allege A "Pattern" of Racketeering Activity .................... 15

II.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 1983 OR
        A CLAIM UNDER NEW YORK LAW FOR FALSE IMPRISONMENT ...................... 16

        A       Plaintiff's Claims ......................................................................... 16

        B.      Plaintiff Fails to State a Federal or State Claim for False Imprisonment ............. 17

        C.      Plaintiff Has Failed To State A Conspiracy Claim Under Section 1983 .............. 20

        D.      The False Imprisonment Claim is Barred By the Statute of Limitations ............. 21

III.  THE BREACH OF CONTRACT CLAIM MUST BE DISMISSED BECAUSE
      THE CONTRACT IS VOID AND UNENFORCEABLE ................................................21

CONCLUSION ........................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Adams v. Suozzi*,
    433 F.3d 220 (2d Cir. 2005) ..................................................................................23

*American Home Mortgage Corp. v. UM Sec. Corp.*,
    No. 05 Civ. 2279 (RCC), 2007 WL 1074837 (S.D.N.Y. Apr. 9, 2007) ..............10

*Anza v. Ideal Steel Supply Corp.*,
    126 S. Ct. 1991 (2006) ...............................................................................2, 7-10

*Balbuena v. IDR Realty LLC*,
    6 N.Y.3d 338, 812 N.Y.S.2d 416 (2006) ...........................................................24

*Bankers Trust, Co. v. Litton Sys., Inc.*,
    599 F.2d 488 (2d Cir. 1979) ..............................................................................24

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ......................................................................................18

*Black Radio Network, Inc. v. NYNEX Corp.*,
    44 F. Supp. 2d 565 (S.D.N.Y. 1999) ...........................................................14, 15

*Boyd v. City of New York*,
    336 F.3d 72 (2d Cir. 2003) .................................................................................18

*Brewster v. Nassau County*,
    349 F. Supp. 2d 540 (E.D.N.Y. 2004) ...............................................................20

*Broughton v. State of New York*,
    37 N.Y.2d 451, 373 N.Y.S.2d 87 (1975) ......................................................19, 21

*Cameron v. Fogerty*,
    806 F.2d 380 (2d Cir. 1986) ..............................................................................19

*Carr v. Hoy*,
    2 N.Y.2d 185, 158 N.Y.S.2d 572 (1957) ............................................................24

*Conley v. Gibson*,
    355 U.S. 41 (1957) ............................................................................................18

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001) ................................................................................7

*DiPilato v. Village of Holley, N.Y.,*
   No. 04 CV 0121E(SC), 2004 WL 2646552 (W.D.N.Y. Nov. 18, 2004)..............................20

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,*
   385 F.3d 159 (2d Cir. 2004) .......................................................................................15

*Hecht v. Commerce Clearing House, Inc.,*
   897 F.2d 21 (2d Cir. 1990) .............................................................................10, 11, 14

*Heck v. Humphrey,*
   512 U.S. 477, 486 (1994) ......................................................................................10, 19

*Hoatson v. New York Archdiocese,*
   No. 05 Civ. 10467 (PAC), 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007) ........................11, 13

*Holmes v. Securities Investor Protection Corp.,*
   503 U.S. 258 (1992) ......................................................................................................9

*Katzman v. Victoria's Secret Catalogue,*
   167 F.R.D. 649 (S.D.N.Y. 1996),
   *aff,d,* 113 F.3d 1229, 1997 WL 259746 (2d Cir. 1997)..............................................6

*Lutin v. New Jersey Steel Corp.,*
   122 F.3d 1056, 1997 WL 447005 (2d Cir. Aug. 7, 1997) (summary order) .......................14

*McConnell v. Commonwealth Pictures Corp.,*
   7 N.Y.2d 465, 199 N.Y.S.2d 483 (1960)...............................................................22, 24

*Miller v. City of New York,*
   No. 05 CV 6024 (SJ), 2007 WL 1062505 (E.D.N.Y. Mar. 30, 2007)...................................12

*Molina v. City of New York,*
   28 A.D.3d 372, 814 N.Y.S.2d 120 (1st Dep't 2006) .............................................................19

*Moore v. Guesno,*
   No. 05 CV 6178L, 2007 WL 1373218 (W.D.N.Y. May 10, 2007)...................................9, 10

*Morris v. Reynolds,*
   264 F.3d 38 (2d Cir. 2001) .......................................................................................19

*Moss v. Morgan Stanley, Inc.,*
   719 F.2d 5 (2d Cir. 1983) ..........................................................................................7

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.,*
   165 F. Supp. 2d 514 (S.D.N.Y. 2001) ...............................................................6, 12, 13, 14

*New York State Med. Transporters Ass'n, Inc v. Perales,*
   77 N.Y.2d 126, 564 N.Y.S.2d 1007 (1990).................................................................24

*Novomoskovsk Joint Stock Co. "AZOT" v. Revson,*
   No. 95 Civ. 5399 (JSR), 1997 WL 698192 (S.D.N.Y. Nov. 7, 1997)..................................13

*O'Bradovich v. Village of Tuckahoe,*
   325 F. Supp. 2d 413 (S.D.N.Y. 2004) ...............................................................................20

*Rhodes v. Alexander Central School Dist.,*
   No. 05 CV 431S, 2006 WL 232722 (W.D.N.Y.  Jan. 30, 2006)...........................................18

*Rossi v. New York City Police Dept.,*
   No. 94 Civ. 5113 (JFK), 1998 WL 65999 (S.D.N.Y. Feb. 17, 1998) ..................................19

*Savino v. City of New York,*
   331 F.3d 63 (2d Cir. 2003) ...................................................................................18, 19

*Shah v. Meeker,*
   435 F.3d 244 (2d Cir. 2006) .................................................................................3

*Snider v. Dylag,*
   188 F.3d 51 (2d Cir. 1999) ...................................................................................18

*Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.,*
   263 F.3d 26 (2d Cir. 2001) ...................................................................................23

*Spies v. Brown,*
   No. 98 CV 4708, 2002 WL 441991 (E.D.N.Y. Mar. 13, 2002) ...........................................19

*Spoto v. Herkimer County Trust,*
   No. 99 CV 1476, 2000 WL 533293 (N.D.N.Y. Apr. 27, 2000) ............................................6

*Stochastic Decisions, Inc. v. DiDomenico,*
   995 F.2d 1158 (2d Cir. 1993) ...........................................................................7, 14

*Stone v. Freeman,*
   298 N.Y. 268 (1948).........................................................................................22

*Taylor v. Vermont Dep't of Educ.,*
   313 F.3d 768 (2d Cir. 2002) ...............................................................................6

*United States v. Veal,*
   153 F.3d 1233 (11th Cir. 1998) .........................................................................12

*Wallace v. Kato*,
   127 S. Ct. 1091 (2007)...................................................................................................21

*Washington v. Lippman*,
   30 A.D.3d 299, 818 N.Y.S.2d 38 (1st Dep't 2006)
   *appeal dismissed*, 7 N.Y.3d 898, 826 N.Y.S.2d 606 (2006) ...............................17

*Wien & Malkin LLP v. Helmsley-Spear, Inc.*,
   6 N.Y.3d 471, 813 N.Y.S.2d 691 (2006) .............................................................23

*Younger v. City of New York*,
   480 F. Supp. 2d 723 (S.D.N.Y. 2007) .................................................................19

## RULES & STATUTES

18 U.S.C. § 1512 ............................................................................................................2, 12
18 U.S.C. § 1512(b)........................................................................................................11, 12
18 U.S.C. § 1515(a)(1) .......................................................................................................12
18 U.S.C. § 1961(1)...............................................................................................................8
18 U.S.C. § 1962(c) .............................................................................................................15
18 U.S.C. § 1962(d) .............................................................................................................14
18 U.S.C. § 1964(c) ....................................................................................................7, 9, 10

28 U.S.C. § 2254 .................................................................................................................19

42 U.S.C. § 1983 .........................................................................................................passim

NY CPL § 190.50 ................................................................................................................17

NY CPLR  215(3)..................................................................................................................21

Racketeer Influenced and Corrupt Organizations ("RICO").......................................passim

Rule 9(b) ........................................................................................................................12, 13
Rule 12(b)(6) ...........................................................................................................1, 6, 18
Rule 41(a)(1)..........................................................................................................................4

Defendants Stephen Farthing, Randolph Lerner, Jr., David Levinson, Russell Wilkinson, Eileen Guggenheim, Robert Bolandian, Charles Cawley, Anthony Coles, Christopher Forbes, Margot Gordon, Roland Grybauskas, Ludwig Kuttner, Douglas Oliver, Julia Jitkoff, David Schafer, Sybil Shainwald, Dennis Smith (collectively, the "Academy Defendants") and the Graduate School of Figurative Art of The New York Academy of Art (the "Academy") submit this memorandum of law in support of their motion to dismiss the Complaint of Plaintiff John R. Blumatte a/k/a Robert Angona a/k/a John Blue ("Plaintiff")[1] pursuant to Rule 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

Plaintiff, a convicted felon using an assumed name to avoid detection for violation of probation in the District of New Jersey, convinced the Academy to hire him as controller. Plaintiff arranged to be employed through a corporation set up by his wife in order to avoid giving a social security number and disclosing his true name. Plaintiff still has not disclosed his true name, suing instead as John R. Blumatte a/k/a Robert Angona a/k/a John Blue.

After Plaintiff's criminal conduct finally came to light, he not only was incarcerated for violating his parole in the District of New Jersey, he ultimately pleaded guilty—twice—to stealing from the Academy. Rather than apologize to the Academy, Plaintiff has chosen a different tack. Not content with having lied to, and stolen from, the Academy, Plaintiff has sued the Academy and persons associated with it—asserting numerous frivolous and legally baseless claims—in a transparent attempt to extort money from the Academy through litigation, now that he no longer can steal from it.

---

[1] A copy of the Complaint is attached to the Declaration of Bennette D. Kramer, dated June 28, 2007 ("Kramer Decl."), as Ex. A.

Plaintiff alleges federal claims for violations of: (1) the Racketeer Influenced and Corrupt Organizations ("RICO") Act arising from an alleged scheme to defraud the Internal Revenue Service, the New York Board of Regents, insurance companies and others and (2) section 1983, 42 U.S.C. § 1983 based on his arrest and imprisonment for grand larceny from the Academy. Plaintiff also claims that the Academy breached an employment agreement by failing to make a severance payment after he resigned following disclosure of his criminal background. All of Plaintiff's claims are without a shred of legal basis, and must be dismissed.

In framing his claims, Plaintiff ignores established law. For example, Plaintiff bases his RICO claim on frauds directed at third-parties such as the IRS, disregarding the Supreme Court's holding in *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991 (2006). Indeed, Plaintiff's alleged injuries—loss of employment and imprisonment—were not caused, let alone proximately caused, by the RICO scheme he alleges. Moreover, Plaintiff has not stated a claim for any RICO predicate act—the predicate act of witness tampering applies by the terms of 18 U.S.C. § 1512 only to federal proceedings, and Plaintiff has utterly failed to plead the fraud predicates with particularity. Similarly, Plaintiff has not properly pled a RICO conspiracy, offering only conclusory allegations of conspiracy. Plaintiff uses his baseless RICO and section 1983 claims to wage a vicious attack against present and former Trustees of the Academy, most of whom are merely named as defendants, but never mentioned again in the Complaint.

Plaintiff's claims for damages against the Academy Defendants under section 1983 and for false imprisonment are also baseless. Plaintiff disregards established law that both false imprisonment claims and section 1983 claims based on false imprisonment are barred by

2

Plaintiff's two guilty pleas for stealing from the Academy.  Plaintiff's section 1983

conspiracy claim fails because he has not stated a substantive section 1983 claim and has not

alleged facts making any such conspiracy claim plausible.  Finally, the applicable statute of

limitations bars Plaintiff's false imprisonment claim.

Finally, Plaintiff cannot recover for breach of contract because the contract itself is

void as against public policy.

## BACKGROUND

The following facts are those alleged in the Complaint or taken from documents

referenced in the Complaint or other public records.[2]

### The Plaintiff

Plaintiff has been convicted of felonies by the United States and the State of New

Jersey.  Compl. ¶¶ 1, 19.  Plaintiff admits that "in or about 1998" he "unlawfully left the

supervision of the United States Probation Department in connection with probation following

a period of incarceration arising from proceedings had before the United States District Court

for the District of New Jersey." *Id.* ¶ 20.  Plaintiff alleges he violated his probation because of

his health and the "unwillingness of his assigned probation officer to permit him to be

employed in the only capacity at which he had relevant experience and training, namely

accounting and financial services." *Id.* ¶ 21.

After violating his probation, Plaintiff married Shirley Allyn, tried out a variety of

names and caused Allyn to set up two corporations with federal Employer Identification

Numbers to enable Plaintiff to provide accounting services without the need for a social

---

[2] Defendants accept the truth of these allegations for the purposes of this motion only.  *See Shah v. Meeker*, 435 F.3d 244, 246 (2d Cir. 2006).

security number. *Id.* ¶ 22. Plaintiff settled on the name Robert Angona—the name of an incarcerated acquaintance. *Id.*

## The Defendants [3]

Gerard Quinn and Donald Rogers are detectives employed by the Police Department of the City of New York. Compl. ¶ 2.

The Academy, founded in 1982, is a charitable organization chartered by the New York State Board of Regents. *Id.* ¶ 3. Stephen Farthing was the Academy's Executive Director and a Trustee. *Id.* ¶ 4. Randolph Lerner, Jr. was the Chairman of the Academy's Board of Trustees until October 2003. *Id.* ¶ 5. David Levinson succeeded Lerner as Chairman of the Board of Trustees. *Id.* ¶ 7. The rest of the Academy Defendants served as Trustees of the Academy at various times not specified in the Complaint. *Id.* ¶¶ 8-10, 12. Eileen Guggenheim served as Special Advisor to the Board of Trustees of the Academy. *Id.* ¶ 13. Jeffrey C. Slade served as general counsel to the Academy. *Id.* ¶ 14.

## Plaintiff's Employment as Controller of the Academy

Plaintiff first worked for the Academy through a company formed by his wife, First Manhattan Group, Inc. ("First Manhattan") in April 2002. *Id.* ¶ 24. Plaintiff refused to sign the Academy's standard employment contract, because he could not make a representation that he had never been convicted of a felony or provide a social security number; the Academy accepted his form of agreement which was signed "on or about" June 14, 2002. *Id.* ¶¶ 25-33. On June 20, 2002, he and Farthing signed another letter agreement by which First Manhattan would provide additional services. *Id.* ¶¶ 35-36. Plaintiff discovered various

---

[3] On June 13, 2007, pursuant to Rule 41(a)(1), Plaintiff dismissed the Complaint as against David Long and on June 14, 2007, Plaintiff dismissed the Complaint as against Assistant District Attorney Elyse Ruzow.

alleged discrepancies, and claims to have believed some of them were fraudulent. *Id.* ¶¶ 37-58. Because of his alleged good work, on or about October 27, 2003, First Manhattan and the Academy entered into a new contract to continue Plaintiff's services as Controller. *Id.* ¶ 59. Then, on August 22, 2003, "via his other New York corporation, Empire," Plaintiff entered into another letter agreement with the Academy to provide services related to the Academy's computer systems. *Id.* ¶ 63.

Plaintiff alleges that his employment with the Academy came to an end for two reasons. First, in 2004 newspaper articles suggested that "Robert Angona," Plaintiff's alias, was associated with organized crime, which distressed Plaintiff because he wanted to avoid publicity on account of his federal probation violations. *Id.* ¶¶ 85-95. Second, the Trustees allegedly declined his advice to restate the Academy's financial statements or end its practice of giving "kick-backs" to artists. *Id.* ¶¶ 66-69. As a result, "Angona" resigned. *Id.* ¶ 99. Plaintiff alleges that Farthing orally agreed to pay the lump sum payment provided in the October 2003 agreement, and to deduct amounts Plaintiff owed pursuant to credit card charges from that amount. *Id.* ¶¶ 96-113.

Plaintiff refused to disclose his real identity despite the Academy's aggressive efforts to discover it. *Id.* ¶¶ 117, 128, 136. The Academy Defendants along with Slade contacted the Manhattan District Attorney's Office, resulting in Plaintiff's arrest for grand larceny and eventual grand jury indictment. *Id.* ¶¶ 125-26, 136-98. In the meantime, the federal government issued a warrant for his detention for probation violations. *Id.* ¶ 202. Plaintiff claims that his prosecution was based on a scheme to blame Plaintiff for all of the Academy's financial problems. *Id.* ¶¶ 204-205.

**Plaintiff Pleads Guilty**

On October 29, 2004, Plaintiff pled guilty to a Class C felony and was sentenced to a term of 4 to 8 years. *Id.* ¶ 207. On November 30, 2006, after Plaintiff had served about 2 ½ years in New York State prison, "the District Attorney agreed to vacate Plaintiff's prior conviction and permitted Plaintiff to replead to a Class D felony for which he was re-sentenced to a term of 2.5 to 5 years." *Id.* ¶ 209. Copies of the transcripts of Plaintiff's two guilty pleas are attached to the Kramer Decl. as Exs. B and C, respectively.[4]

## ARGUMENT

### I.    THE COMPLAINT FAILS TO STATE A RICO CLAIM

"Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. Because the mere assertion of a RICO claim . . . has almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RCIO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotations omitted), *aff,d,* 113 F.3d 1229, 1997 WL 259746 (2d Cir. 1997); *Spoto v. Herkimer County Trust,* No. 99 CV 1476, 2000 WL 533293, at *1 (N.D.N.Y. Apr. 27, 2000) ("civil provisions of [RICO] are the most misused statutes in the federal corpus of law"). Thus, "courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Nasik Breeding & Research Farm Ltd. v. Merck & Co.,* 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001). Plaintiff's RICO allegations are nothing more than, at the very best, an improper attempt to dress up a breach of contract claim.

---

[4] In connection with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents incorporated within the complaint by reference and public records such as state court filings. *Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir. 2002). The transcripts of Plaintiff's guilty pleas are both incorporated within the Complaint by reference and are public records.

In order to state a civil claim for damages under RICO, a plaintiff must establish:

> (1) that the defendant (2) through the commission of two or
> more acts (3) constituting a "pattern" (4) of "racketeering
> activity" (5) directly or indirectly invests in, or maintains an
> interest in, or participates in (6) an "enterprise" (7) the activities
> of which affect interstate or foreign commerce.

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). Further, a civil RICO plaintiff

must allege "causation," *i.e.* that he or she was injured in his or her business or property "'by

reason of' a defendant's RICO violation." *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991

(2006); *see also* 18 U.S.C. § 1964(c). These "requirements . . . must be established as to each

individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). The plaintiff

must establish that each individual defendant "personally committed or aided and abetted the

commission of two or more predicate acts." *Stochastic Decisions, Inc. v. DiDomenico*, 995

F.2d 1158, 1168 (2d Cir. 1993). Plaintiff cannot establish that any conduct by the Academy

Defendants caused, let alone proximately caused, him any RICO injury.

### A.    Plaintiff's RICO Claims.

Plaintiff alleges that the Trustees "in conspiracy, concert and participation with each

of the other" committed a "pattern" of "racketeering activities including (a) mail fraud, (b)

wire fraud, (c) tax fraud, (d) bank fraud and (e) tampering with a witness." Compl. ¶ 246.

The center of Plaintiff's RICO claim is:

> In short, through the use of the mails, telephone and internet, the Trustees
> willfully controlled the Academy in a fashion that perpetrated a fraud on the
> Internal Revenue Service, the New York Board of Regents, the Academy's
> insurance carriers, individuals who thought they were contributing to a
> restricted endowment fund and others, including Plaintiff, in order to foster
> their own social and business interests.

*Id.* ¶ 77. Plaintiff's mail fraud claims include: (1) filing a false insurance claim by mail in

1994 (*id.* ¶ 73); (2) filing false and vastly inflated insurance claims relating to a minor fire by

7

mail (no date) (*id.* ¶ 75); and (3) filing "multiple claims for the same alleged damages

attributing these same damages both to a fire and to the 9/11 Tragedy" (no date) (*id.* ¶ 76). [5]

The alleged bank fraud involved federally guaranteed loans (*id.* ¶ 53).  Finally, Plaintiff's

claim of tampering with a witness appears to involve alleged false statements made by

defendant Stephen Farthing and the other Academy Defendants to Detective Quinn (*id.*

¶¶ 179-96).

Plaintiff also alleges that "each of the Trustees violated 18 U.S.C. § 1962(d)"—RICO

conspiracy.  *Id.* ¶ 248.  Finally, Plaintiff alleges that he "was one of many persons who was

injured in his business and property by the Trustees' violations of 18 U.S.C. § 1962."  *Id.*

¶ 249.

### B.    Plaintiff Lacks Standing to Bring a RICO Claim Based On Harm To Third Parties.

Plaintiff lacks standing to bring a RICO claim, because he was neither the victim nor

the target of the alleged RICO scheme.  In *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991

(2006), the Court held that in order for a plaintiff to establish the required proximate cause,

his or her injury must be direct and cannot simply flow from injuries suffered by a third party.

*Id.* at 1997.  The plaintiff must be the "immediate victim" for the alleged RICO violation.  *Id.*

In so ruling, the Court expressly held that direct injury is required even where the defendant

intended to harm plaintiff through injury to the third party.  *Id.*  *Anza* leaves no doubt that the

Complaint fails to allege an injury that was directly caused by the alleged racketeering

activity.

---

[5] Even though the definition of "racketeering activity" in 18 U.S.C. § 1961(1) does not
include tax fraud, Plaintiff alleges a variety of tax frauds as additional RICO predicates,
including: (1) overstating the restricted endowment of the Academy on income tax returns,
Form 990, filed in 1997 and 1999 (*id.* ¶ 39); (2) filing audited financials with material
misstatements with the IRS and the New York State Board of Regents (no date) (*id.* ¶ 48).

In *Anza*, the Court addressed a claim by a steel fabricator alleging that it lost sales to a competitor which unlawfully failed to collect and pay over state sales tax. *Id.* at 1994. The racketeering activity alleged in the complaint consisted of mail and wire fraud effected when the defendant filed false tax returns with the state tax authorities. *Id.* at 1994-95. The Court based its analysis on *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), noting that it was unlikely that the phrase "by reason of" in section 1964(c) was meant to allow "'all factually injured plaintiffs to recover.'" *Anza*, 126 S. Ct. at 1996, quoting *Holmes*, 503 U.S. at 266. Accordingly, a plaintiff must demonstrate a "'direct relation between the injury asserted and the injurious conduct alleged.'" *Anza*, 126 S. Ct. at 1996, quoting *Holmes*, 503 U.S. at 268.

In language particularly applicable here, the Supreme Court states:

> The direct victim of the [mail and wire fraud scheme alleged by plaintiff] was the State of New York, not [plaintiff] Ideal. It was the State that was being defrauded and the State that lost tax revenue as a result.
>
> * * * *
>
> The cause of Ideal's asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State).

*Id.* at 1997. The Court explicitly rejected the concept that a plaintiff can establish a RICO violation where the conduct at issue is directed at a third party, even where as in *Anza* the defendant intended to harm the plaintiff.

To decide whether a RICO complainant alleges the required proximate cause, the Second Circuit has developed a two-step test. First, "the injury must be a *direct result* of the alleged RICO violation, and not the result of a non-RICO violation or some other intervening action"; and, second, the injury must be reasonably foreseeable. *Moore v. Guesno*, No. 05 CV 6178L, 2007 WL 1373218, at *4-5 (W.D.N.Y. May 10, 2007). A plaintiff must show that the

9

defendant actually injured his business or property. *American Home Mortgage Corp. v. UM Sec. Corp.*, No. 05 Civ. 2279 (RCC), 2007 WL 1074837, at *3 (S.D.N.Y. Apr. 9, 2007). The plaintiff must allege facts "sufficient to allow the court to assess the amount of the loss." *Id.* at *4.

As in *Anza*, the alleged RICO violations here were directed at various third parties rather than Plaintiff. Clearly frauds allegedly carried out years before his arrival at the Academy were not intended to harm him, even incidentally. Accordingly, the alleged RICO frauds were not the proximate cause of any injury suffered by Plaintiff.

Moreover, Plaintiff has not stated how he was injured in his business or property. He complains about a conspiracy which resulted in incarceration in New York, and about losing his job. However, neither damages arising from a criminal conviction nor loss of a job is an injury to business or property under section 1964(c). In *Moore*, 2007 WL 1373218, at *4, the plaintiff claimed that the basis for his injury was that "the criminal charges for which he was arrested were based on false evidence created by" defendants. However, plaintiff pleaded guilty and admitted to the conduct that formed the basis of his conviction, and his conviction was not overturned. *Id.* The court concluded that plaintiff could not establish that the cancellation of the contract at issue resulted from anything but his own admitted criminal conduct. *Id.* Additionally, the court found that under the "favorable termination rule" plaintiff could not recover monetary damages "based on an injury caused by actions that would somehow undermine an otherwise valid conviction." 2007 WL 1373218, at *6, relying on *Heck v. Humphrey*, 512 U.S. 477, 486-86 (1994). The same analysis applies here.

In *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990), plaintiff alleged that he lost his employment and business commissions because he refused to assist

with RICO violations by his employer and co-employees aimed at the employer's customers. *Id.* at 22. The court held that plaintiff's injury was "too speculative to confer standing." *Id.* at 24; *see also Hoatson v. New York Archdiocese*, No. 05 Civ. 10467 (PAC), 2007 WL 431098, *5 (S.D.N.Y. Feb. 8, 2007) ("loss of a job is not 'property in the victim's hands,'" and so cannot fulfill the requirement of loss of "money or property"). The Court in *Hecht* also held that "standing may be founded only upon injury from overt acts that are also section 1961 predicate acts, and not upon any and all overt acts furthering a RICO conspiracy," and that plaintiff's loss of employment was not a predicate act. *Hecht*, 897 F.2d at 25.

However, Plaintiff lost his employment with the Academy primarily because his violation of probation and past criminal history came to light and he wanted to leave the "public stage." Compl. ¶¶ 94-95, 127, 202. He also alleges that he resigned as Controller. *Id.* ¶¶ 100, 120, 128. He went to prison in New York because he pled guilty to grand larceny. *Id.* ¶¶ 207, 209. The Academy's alleged frauds had nothing to do with these results. Moreover, a refusal to pay severance under his employment contract would, at most, be a breach of contract, not a RICO predicate act.

C.    **Plaintiff Has Failed To State Claims For Any RICO Predicate Acts.**

1.    **The predicate act of witness tampering applies only to proceedings in federal court.**

Plaintiff lists "tampering with a witness" as part of his pattern of racketeering activities. *Id.* ¶¶ 246, 247. But the witness tampering statute, 18 U.S.C. § 1512(b), applies only to federal proceedings:

> (b) Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to:
>> (1) influence, delay, or prevent the testimony of any person in **an official proceeding**;

11

(2) cause or induce any person to –

(A) withhold testimony, or withhold a record, document, or other object, from an **official proceeding**; . . .

18 U.S.C. § 1512(b)(emphasis added).  Section 1512 defines "official proceeding" as a proceeding: (1) in a United States court, (2) before Congress, (3) before a United States government agency or (4) before an insurance official or regulatory official. 18 U.S.C. § 1515(a)(1). *See also United States v. Veal*, 153 F.3d 1233, 1249 (11th Cir. 1998) (section 1512 requires that the "proscribed conduct occur in the context of an 'official proceeding'").

Plaintiff has failed to state a claim for witness tampering.  Plaintiff complains about Defendants' involvement in an arrest by New York City detectives, a criminal complaint signed by one of the same detectives, grand jury testimony in New York State court, indictment in New York State court, and incarceration in New York State prison.  Compl. ¶¶ 136-210.  Although Plaintiff refers to his federal violation of probation, he does not allege that any of the Defendants had anything to do with the probation violation or the federal conviction that resulted in probation, or any other "official proceedings" in the federal system.

### 2.    Plaintiff has not pled fraud with the requisite particularity.

Rule 9(b) requires that:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The Rule 9(b) particularity requirement "appl[ies] with particular force in RICO actions." *Nasik*, 165 F. Supp. 2d at 537.

To assert a mail fraud claim, "plaintiff must allege that the defendant (1) participated in a scheme to defraud; (2) knowingly used the mails to further the scheme; and (3) had the specific intent to defraud." *Miller v. City of New York*, No. 05 CV 6024 (SJ), 2007 WL 1062505, at *3 (E.D.N.Y. Mar. 30, 2007).  Under Rule 9(b), to state predicate acts of mail and wire fraud, the complaint must allege:

> (1) precisely what statements were made in what documents or oral
> representations or what omissions were made, and (2) the time and place of
> each such statement and the person responsible for making (or, in the case of
> omissions, not making) the same, (3) the content of such statements and the
> manner in which they misled the plaintiff, and (4) what the defendants
> obtained as a consequence of the fraud.

*Novomoskovsk Joint Stock Co. "AZOT" v. Revson*, No. 95 Civ. 5399 (JSR), 1997 WL

698192, at *4 (S.D.N.Y. Nov. 7, 1997). To satisfy Rule 9(b) "where multiple defendants are

accused of mail or wire fraud, plaintiffs must plead fraud with particularity as to each

defendant." *Nasik*, 165 F. Supp. 2d at 537. Thus, a "complaint alleging RICO violations

based on mail or wire fraud must allege that the defendant participated in at least two acts of

mail or wire fraud." *Hoatson*, 2007 WL 431098, at *4.

     The Complaint fails to satisfy Rule 9(b) in connection with any predicate acts of fraud.

Plaintiff generally discusses filing income tax returns with misstated endowment numbers

(Compl. ¶¶ 39, 42, 44, 48, 50-51), filing false insurance claims by mail (*Id.* ¶¶ 73, 75, 76),

sending misstated audited financials to the New York Board of Regents (*Id.* ¶ 48) and

violating federal law in connection with federally guaranteed loans (*Id.* ¶ 53). However,

Plaintiff does not allege the time and place of mailing or wiring, except to state generally that

some tax returns were filed for 1997 and 1999 and a false insurance claim was filed by mail in

1994. Most importantly, Plaintiff makes absolutely no effort to allege the individual

defendant responsible for the wiring, mailing or filing of the alleged fraudulent statements.

There are 17 Academy Defendants; Plaintiff does not differentiate among them, alleging

instead that the "Trustees filed" (*id.* ¶ 73), the "Trustees were complicit in filing" (*id.* ¶ 75), or

simply stating that the Academy acted. The Complaint falls far short of alleging that each

defendant committed two acts of mail or wire fraud (or any other kind of fraud). Nor does

Plaintiff state how he was misled by the allegedly fraudulent statements. Indeed, many of the

statements made long before Plaintiff came on the scene. Instead of alleging that he was deceived by the alleged frauds committed, Plaintiff proudly asserts that he discovered them. *Id.* ¶ 37.

### D.  **Plaintiff Has Not Properly Pled a RICO Conspiracy.**

To allege a RICO conspiracy claim, "plaintiffs must allege facts that support a conclusion that defendants consciously agreed to commit predicate acts." *Hecht*, 897 F.2d at 25. Conclusory allegations of a conspiracy are insufficient." *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 581 (S.D.N.Y. 1999). In *Hecht*, the Second Circuit held: "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht*, 897 F.2d at 25. A Plaintiff must establish that each defendant committed or agreed to commit two predicate acts. *Stochastic*, 995 F.2d at 1168; *see also Lutin v. New Jersey Steel Corp.*, 122 F.3d 1056, 1997 WL 447005, at *5 (2d Cir. Aug. 7. 1997)(summary order). Additionally, a RICO conspiracy claim under section 1962(d) fails if the plaintiff fails to plead a substantive claim under section 1962(c); "there can be no RICO conspiracy without a substantive RICO violation." *Nasik*, 165 F. Supp. 2d at 540.

As set forth above, Plaintiff's substantive RICO claims fail. Even if the substantive claims were viable, Plaintiff has alleged only a conclusory claim of conspiracy. Plaintiff alleges generally that "each of the Trustees in conspiracy, concert and participation with each of the other then Trustees" (Compl. ¶ 245), "[d]uring their respective terms of service each of the Trustees in conspiracy, concert and participation with each of the other then Trustees" (*id.* ¶¶ 246, 247), and "By reason of the foregoing, each of the Trustees violated 18 U.S.C. § 1962(d)" (*id.* ¶ 248). There are no allegations that each Trustee specifically agreed to commit

14

predicate acts. Indeed, there are no specific acts attributed to any one Trustee. The allegations of "conspiracy, concert and participation" "fall short of the specificity required to allege that defendants consciously agreed to commit predicate acts." *See, e.g., Black Radio*, 44 F. Supp. 2d at 581.

### E.    Plaintiff Has Failed To Allege A RICO "Enterprise".

Plaintiff alleges that the Academy was a RICO enterprise through which the Academy Defendants participated in a racketeering enterprise. Compl. ¶¶ 246-47. However, "simply establishing the presence of an enterprise is not enough. Plaintiff must also allege that each defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). This means that a RICO defendant must play a part in directing the enterprise's affairs. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004). There are no allegations in the Complaint concerning the hierarchy or roles that each defendant played in conducting or participating in the Academy's affairs or in connection with the "pattern" of racketeering.

### F.    Plaintiff Has Failed To Allege A "Pattern" of Racketeering Activity.

Plaintiff must allege that he was "injured by Defendants' conduct of an enterprise through a pattern of racketeering activity." *First Capital*, 385 F.3d at 178. A "pattern" consists of at least two predicate acts committed within a ten year period. *Id.; see also* 18 U.S.C. § 1962(c). If alleged predicate acts are not pled with sufficient particularity, or have not injured plaintiff, or were otherwise deficient, there is no pattern of racketeering activity. *First Capital*, 385 F.3d at 178. Here, Plaintiff has failed adequately to plead or show any racketeering activity.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 1983 OR A CLAIM UNDER NEW YORK LAW FOR FALSE IMPRISONMENT

In his first claim Plaintiff seeks money damages against "all defendants other than the Academy" for violation of his constitutional rights pursuant to 42 U.S.C. § 1983 (Compl. ¶¶ 223-226), and in his third claim he seeks damages for false imprisonment under New York law (*Id.* ¶¶ 230-235). Plaintiff does not state a claim under either section 1983 or New York law against the Academy Defendants for false imprisonment, because he pled guilty to stealing from the Academy. That plea bars any claim under section 1983 and New York claims for false imprisonment. In addition, his New York claim for false imprisonment is barred by the statute of limitations.

### A.   Plaintiff's Claims.

Plaintiff claims that Detectives Quinn and Rogers and the ADA "violated Plaintiff's rights under the Constitution of the Untied States while acting under color or state law." *Id.* ¶ 224. Further, the "Trustees actively conspired with and induced Quinn, Rogers and the ADA to violate Plaintiff's Constitutional rights and by reason of that conspiracy and concert of action are jointly and severally liable to Plaintiff for his damages as persons acting under color of state law." *Id.* ¶ 226.

Plaintiff alleges that Defendant Slade engaged IPSA, Inc. to investigate Plaintiff after newspaper articles were published linking him to organized crime. *Id.* ¶¶ 85, 121. Thereafter, certain of the Trustees and Slade and IPSA employees contacted the ADA. *Id.* ¶¶ 126, 136. At the same time, Plaintiff admits that he "was trying to avoid further publicity and seeking to leave as quickly as possible the public stage,"—*i.e.*, leave town. *Id.* ¶ 127. Plaintiff alleges that on April 23, 2004 he was arrested by Detectives Quinn and Rogers using excessive force, he had a heart episode and was taken to the hospital, where he remained for

ten days. *Id.* ¶¶ 137-172. To legalize Plaintiff's arrest, the Academy Defendants allegedly "fabricated a series of false allegations of fraud, embezzlement and grand larceny against the Plaintiff," which were incorporated into a felony complaint "purportedly" signed on April 23, 2004, based on statements by Farthing which he knew were false. *Id.* ¶¶ 177-179. A grand jury returned an indictment against Plaintiff based on the felony complaint.[6] *Id.* ¶ 198.

On October 29, 2004, Plaintiff pleaded guilty to a Class C felony and was sentenced to a prison term of 4 to 8 years. *Id.* ¶ 207. Then, for reasons not articulated in the Complaint, on November 30, 2006, Plaintiff's prior conviction was vacated and he repleaded to a Class D felony for which he was sentenced to a term of 2.5 to 5 years. *Id.* ¶ 209. *See also* Kramer Decl. Exs. B & C.

Plaintiff alleges that "as a result of Defendants' culpable conduct Plaintiff was falsely imprisoned for a period of approximately 2.5 years." *Id.* ¶ 231. As a result of his imprisonment his medical condition deteriorated, and he lost past and future earnings and endured past and will endure future pain and suffering. *Id.* ¶¶ 232-235.

**B.    Plaintiff Fails to State a Federal or State Claim for False Imprisonment.**

Section 1983 imposes civil liability on persons who under color of state law, deprive an individual of "any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 does not "provide a source of substantive rights, but rather, a

---

[6] Plaintiff complains that he was not given the opportunity to testify before the grand jury. Compl. ¶¶ 199-201. Plaintiff raised this same claim in State Court, and on January 17, 2006, the Honorable Ronald A. Zweibel issued a Decision and Order (the "Jan. 17 Decision") holding that Plaintiff's claimed violation of his right to testify before the grand jury was untimely under NY CPL § 190.50. See Jan. 17 Decision, attached to the Kramer Decl., as Ex. D; *see also* May 3, 2004 transcript, Kramer Decl., Ex. E. Plaintiff did not appeal the Jan. 17 Decision, and is thus bound by it. *See, e.g., Washington v. Lippman*, 30 A.D.3d 299, 299, 818 N.Y.S.2d 38, 38 (1st Dep't 2006) (claims that have been previously litigated are barred by collateral estoppel), *appeal dismissed*, 7 N.Y.3d 898, 826 N.Y.S.2d 606 (2006).

method for vindicating federal rights conferred elsewhere in the federal statutes and

constitution." *Rhodes v. Alexander Central School Dist.*, No. 05 CV 431S, 2006 WL 232722,

at *2 (W.D.N.Y. Jan. 30, 2006). Thus, to state a claim pursuant to section 1983 "a plaintiff

must allege that (1) the challenged conduct was attributable at least in part to a person acting

under color of state law, and (2) the conduct deprived the plaintiff of a right guaranteed under

the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

Plaintiff must "identify what, if any, statutes or constitutional provisions underlie his § 1983

claim." *Rhodes*, 2006 WL 232722, at *3. Under *Bell Atlantic Corp. v. Twombly*, 127 S. Ct.

1955 (2007), a complaint must set forth facts "to state a claim to relief that is plausible on its

face." *Id.* at 1974; *see id.* at 1968-69 (rejecting the "no set of facts" language of *Conley v.

Gibson*, 355 U.S. 41 (1957), as the standard for a Rule 12(b)(6) motion to dismiss).

      Plaintiff fails to identify any constitutional provision or statute underlying his section

1983 claim, and the Court should dismiss his section 1983 claim on that basis. Even

assuming that Plaintiff intends to assert a section 1983 claim under the Fourth Amendment

against the Trustees for false arrest or false imprisonment, both claims fail.

      The elements of false arrest under section 1983 are "substantially the same as the

elements under New York law . . . . Therefore, the analysis of the state and the federal claims

is identical." *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003) (citations omitted).

Liability for false arrest would give rise to liability for a section 1983 claim. *Savino v. City of

New York*, 331 F.3d 63, 75 (2d Cir. 2003). To state a claim for false arrest under New York

law, a plaintiff must show:

> (1) the defendant intended to confine the plaintiff, (2) the plaintiff was
> conscious of the confinement, (3) the plaintiff did not consent to the
> confinement, and (4) the confinement was not otherwise privileged.

*Savino*, 331 F.3d at 75. Privilege or justification may be established by showing that the

arrest was based on probable cause. *Id.* at 76; *Broughton v. State of New York*, 37 N.Y.2d

451, 458, 373 N.Y.S.2d 87, 95 (1975). Probable cause for a plaintiff's arrest "constitutes a

complete defense to the claims for false arrest and false imprisonment," including claims

under section 1983. *Molina v. City of New York*, 28 A.D.3d 372, 372, 814 N.Y.S.2d 120, 121

(1st Dep't 2006). A conviction following an arrest is "conclusive evidence" of probable

cause. *Cameron v. Fogerty*, 806 F.2d 380, 387 (2d Cir. 1986); *Broughton*, 37 N.Y.2d at 458,

373 N.Y.S.2d at 95. A guilty plea constitutes a conviction, *Morris v. Reynolds*, 264 F.3d 38,

48 (2d Cir. 2001); *Spies v. Brown*, No. 98 CV 4708, 2002 WL 441991, at *2 (E.D.N.Y. Mar.

13, 2002), and resolves all issues relating to the "constitutionality of plaintiff's arrest,

interrogation, search and prosecution.'" *Rossi v. New York City Police Dept.*, No. 94 Civ.

5113 (JFK), 1998 WL 65999, at *5 (S.D.N.Y. Feb. 17, 1998). Consequently, a conviction

pursuant to a guilty plea bars false arrest, false imprisonment, and related section 1983 claims.

*Younger v. City of New York*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007); *Spies v. Brown*,

2002 WL 441991, at *2. Following a conviction the only way a plaintiff may recover

damages under section 1983 is to prove

> that the conviction or sentence has been reversed on direct appeal, expunged
> by executive order, declared invalid by a state tribunal authorized to make such
> determination or called into question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that
> relationship to a conviction or sentence that has *not* been so invalidated is not
> cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. at 486-87.

Plaintiff admits in the Complaint that he pleaded guilty not once, but twice. Compl.

¶¶ 207, 209. Although he alleges that his first plea was vacated, he pleaded guilty a second

time and was sentenced to a term of 2.5 to 5 years. *Id.* ¶ 209. Thus, Plaintiff does not allege,

nor could he allege, that his conviction was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination or called into question a federal court's issuance of a writ of habeas corpus" as required for a claim of damages under section 1983 or New York law. Accordingly, Plaintiff's section 1983 and false imprisonment claims under New York law must be dismissed.

### C.    Plaintiff Has Failed To State A Conspiracy Claim Under Section 1983.

An invalid section 1983 claim does not survive simply by calling it a "conspiracy." *Brewster v. Nassau County*, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004). Without any claim establishing a violation of civil rights, the court must also dismiss claims of conspiracy under section 1983. *DiPilato v. Village of Holley, N.Y.*, No. 04 CV 0121E(SC), 2004 WL 2646552, at *2 n.9 (W.D.N.Y. Nov. 18, 2004); *O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413, 426 (S.D.N.Y. 2004).

The only section 1983 claim against the Trustees is a conspiracy claim, which reads:

> The Trustees actively conspired with and induced Quinn, Roberts and the ADA to violate Plaintiff's Constitutional rights and by reason of that conspiracy and concert of action are jointly and severally liable to Plaintiff for his damages as persons acting under color of state law.

Compl. ¶ 226. The Complaint does not mention the majority of the Trustees other than to identify them as defendants, let alone state what each of the 17 Trustees did to act "under color of state law." The few Trustees mentioned by name are described as speaking to the ADA and providing information for a felony complaint.

Plaintiff has failed on both requirements for a viable conspiracy claim under section 1984. First, as discussed above, Plaintiff has failed to plead a valid section 1983 claim. Second, Plaintiff has made conclusory allegations of a conspiracy under section 1983, alleging no more than that the Trustees "conspired" to violate Plaintiff's constitutional rights.

For these reasons, Plaintiff's claim of conspiracy to violate his constitutional right must be dismissed.

### D.     The False Imprisonment Claim is Barred By the Statute of Limitations.

The statute of limitations for a false imprisonment claim under New York law is one year.  NY CPLR 215(3).  Since a claim for false imprisonment is for "detention *without legal process*," the cause of action accrues when the false imprisonment ends.  *Wallace v. Kato*, 127 S. Ct. 1091, 1095-96 (2007) (emphasis in original).  The statute of limitations, thus, begins to run when *legal* process is initiated against a plaintiff.  *Id.* at 1096.  Similarly, under New York law damages for a false imprisonment claim are "measured only to the time of arraignment or indictment whichever occurs first."[7]  *Broughton*, 37 N.Y.2d at 459, 373 N.Y.S.2d at 96.

Plaintiff was arraigned on May 17, 2004, following his arrest on April 23, 2004. Compl. ¶¶ 132, 137.  Thus, the statute of limitations on his false imprisonment claim began to run on May 17, 2004, and the one year limitations period ended on May 16, 2005—two years before he commenced this action.  Accordingly, Plaintiff's false imprisonment claim is barred by the statute of limitations.

## III.     THE BREACH OF CONTRACT CLAIM MUST BE DISMISSED BECAUSE THE CONTRACT IS VOID AND UNENFORCEABLE

Plaintiff's only claim against the Academy is a state law claim for breach of contract. Plaintiff astonishingly asks that the Court help him financially gain from a contract that is unenforceable because Plaintiff illegally and fraudulently entered into it.  Plaintiff knowingly violated the terms of his probation which, based on his prior misdeeds, prohibited him from working in the accounting and financial field.  He deliberately lied about his identity and

---

[7] In his false imprisonment claim Plaintiff erroneously claims damages for the entire 2.5 years of his imprisonment.  Compl. ¶ 231.  However, the maximum period of false imprisonment, if any, ran from his arrest on April 23, 2004 to his arraignment on May 17, 2004.

signed the contract in a fictitious name.  It is settled law "that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which, as a basis for his claim, must show forth his illegal purpose. . . .  [N]o court should be required to serve as paymaster of the wages of crime." *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 469, 199 N.Y.S.2d 483, 485 (1960) (quoting *Stone v. Freeman*, 298 N.Y. 268, 271 (1948)).

Plaintiff presents his breach of contract claim as if it were a garden variety breach of a legitimate employment contract claim.  *See* Compl. ¶¶ 236-242.  But it is not.  Plaintiff's attempt to present himself as having been candid about his criminal past with the implication that the contract was legitimately agreed upon in a true meeting of the minds with both parties' full awareness of his true identity is both ludicrous and irrelevant.  It is irrelevant because, regardless of the state of Defendants' knowledge, a court will not enforce a contract that plainly violated Plaintiff's conditions of probation.  In all events, Plaintiff does not allege that he told Farthing or any other representative of the Academy that he: (1) had been convicted under a prior name (*id.* ¶ 19); (2) had "unlawfully" violated parole because he was not permitted to be employed in the field of "accounting and financial services" (*id.* ¶¶ 20-21), and (3) had assumed the name of Robert Angona and obtained a driver's license in that name while the "real" Robert Angona was behind bars (*id.* ¶ 22).  His Complaint confirms that Plaintiff intentionally concealed such information, because it states that once the Academy had good reason to believe that Plaintiff was not the "true" Robert Angona and demanded to know his true identity, Plaintiff refused to provide any information about his background.  *See id.* ¶ 128-135.

In sum, Plaintiff fraudulently misrepresented his identity and failed to disclose that that he could not legally be employed as the Academy's controller. In the initial letter agreement between the parties dated June 11, 2002, which was signed by "Robert Angona" and Stephen Farthing, Plaintiff wrote "This letter will confirm my engagement (DBA/The First Manhattan Group, Inc.) as your Controller." *See* Compl., Ex. A. The Employment Contract which contains the specific provision "Termination by Angona for Good Cause" under which Plaintiff seeks monetary relief, again makes clear that the Academy is contracting for "Robert Angona" to be its full time controller. *See id.*, Ex. F ¶¶ 3-4. As described above, Plaintiff could not legally accept such employment and intentionally misled the Academy about the identity of the person it was hiring as controller.[8] Accordingly, there was no true meeting of the minds between the parties as to one of the essential terms of the contract—*who* was to be the controller—which rendered the contract void *ab initio*. *See Adams v. Suozzi*, 433 F.3d 220, 227 (2d Cir. 2005) (stating that a contract is "void" when "there was no meeting of the minds about essential terms"). Because it is void, the Academy had no legal obligations to Plaintiff under an unenforceable agreement. *See Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001) (stating that a "void contract is one that produces no legal obligation"). Therefore the Academy cannot be in breach of contract and it owes Plaintiff nothing.

---

[8] Plaintiff cannot argue that he was either the assignee or assignor of the agreement between First Manhattan and the Academy because this contract for personal accounting services by Angona could not be assigned without the consent of the Academy. *See Wien & Malkin LLP v. Helmsley-Spear, Inc.*, 6 N.Y.3d 471, 482, 813 N.Y.S.2d 691, 697 (2006) ("personal services contracts generally may not be assigned absent the principal's consent").

Even if the contract were valid (which it is not), Plaintiff's contract claim is fatally flawed because under New York law: "Illegal contracts are generally not enforceable." *New York State Med. Transporters Ass'n, Inc v. Perales*, 77 N.Y.2d 126, 138, 564 N.Y.S.2d 1007, 1011 (1990); *Carr v. Hoy*, 2 N.Y.2d 185, 187, 158 N.Y.S.2d 572, 575 (1957) ("No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes.") (quotation and citation omitted); *Balbuena v. IDR Realty LLC*, 6 N.Y.3d 338, 364, 812 N.Y.S.2d 416, 431 (2006) (same).

Assuming *arguendo* that the Academy had full knowledge of Plaintiff's real identity and that it could not legally employ him as its controller, the contract is still unenforceable on public policy grounds. The dispositive question as to the claim for breach of contract is not what Defendants knew, but whether Plaintiff is entitled to benefit from his malfeasance: "[W]hen a plaintiff sues to recover on an illegal bargain, courts deny relief because the Plaintiff is a wrongdoer, not because they favor the defendant . . . . [T]he court's concern is not with the position of he defendant; instead the question is whether the plaintiff should be denied a recovery for the sake of public interest." *Bankers Trust, Co. v. Litton Sys., Inc.*, 599 F.2d 488, 492 (2d Cir. 1979) (citing to *McConnell*, 7 N.Y.2d at 469, 199 N.Y.S.2d at 485). Here the Court should deny recovery to Plaintiff.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the Complaint as to the

Academy and the Academy Defendants and grant to them such other and further relief as it

deems appropriate.

Date:   New York, New York
        June 28, 2007

                                    **SCHLAM STONE & DOLAN LLP**


By: _____
                                    Bennette D. Kramer (BK-1269)
                                    Andrew S. Harris (AH-9673)
                                    26 Broadway, 19th Floor
                                    New York, NY 10004
                                    Tel.: (212) 344-5400
                                    Fax: (212) 344-7677
                                    *Attorneys for the Academy Defendants and*
                                    *the Academy*