UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JOHN R. BLUMATTE, a/k/a
ROBERT ANGONA, a/k/a
JOHN BLUE,

                    Plaintiff,

    -*against*-

GERARD QUINN, DONALD ROGERS, STEPHEN
FARTHING, RANDOLPH LERNER, JR., DAVID
LEVINSON, RUSSELL WILKINSON, EILEEN
GUGENHEIM, ROBERT BOLANDIAN,
CHARLES CAWLEY, ANTHONY COLES,
CHRISTOPHER FORBES, MARGOT GORDON,
ROLAND GRYBAUSKAS, LUDWIG KUTTNER,
DAVID LONG, DOUGLAS OLIVER, JULIA
JITKOFF, DAVID SCHAFER, SYBIL
SHAINWALD, DENNIS SMITH, THE
GRADUATE SCHOOL OF FIGURATIVE ART OF
THE NEW YORK ACADEMY OF ARTS,
JEFFREY C. SLADE, and ELYSE RUZOW,

                    Defendants.
----------------------------------------------------------------x

**Civil Action No.  07 CV 2944 (JSR)**

**Filed Electronically**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JEFFREY C. SLADE'S MOTION TO DISMISS COMPLAINT

Kaufman Borgeest & Ryan LLP
Attorneys for Defendant,
JEFFREY C. SLADE
99 Park Avenue, 19th Floor
New York, New York 10016
(212) 980-9600
Facsimile: (212) 980-9291
jbruno@kbrlaw.com
akowlowitz@kbrlaw.com

Of Counsel
    Jonathan B. Bruno (JB 6163)
    Andrew S. Kowlowitz (AK 9616)

605518

# TABLE OF CONTENTS

Pages

TABLE OF AUTHORITIES ..................................................................................ii-iii

PRELIMINARY STATEMENT ......................................................................1-3

FACTUAL ALLEGATIONS ..........................................................................3-6

STANDARD OF REVIEW ...............................................................................6-7

ARGUMENT ..................................................................................................7

POINT I          PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 USC §1983 ..........7-9

POINT II         PLAINTIFF FAILS TO STATE A CLAIM FOR FALSE
                 IMPRISONMENT ...........................................................................10-12

POINT III        PLAINTIFF FAILS TO STATE A CLAIM UNDER 18 USC § 1964 .........12-16

CONCLUSION....................................................................................................17

i

# TABLE OF AUTHORITIES

Pages

Anza v. Ideal Steel Supply Corp.,
126 S. Ct. 1991 (2006)..............................................................16

Atkins v. County of Orange,
251 F. Supp. 2d 1225 (S.D.N.Y. 2003)..................................7

Broughton v. State,
37 N.Y.2d 451, 373 N.Y.S.2d 87 (1975) ...............................10

Chapo v. Premier Liquor Corp,
259 A.D.2d 1050, 688 N.Y.S.2d 342 (4th Dept. 1999) ...........10

Ciambriello v. County of Nassau,
292 F.3d 307 (2nd Circ. 2002) ................................................8

Davis v. County of Nassau,
355 F. Supp. 2d 668 (E.D.N.Y. 2005) ....................................7

DeFalco v. Bernas,
 244 F.3d 286 (2d Cir. 2001).................................................13

Di Vittorio v. Equidyne Extractive Industries, Inc.,
822 F.2d 1242 (2d Cir. 1987)................................................14

First Nationwide Bank v. Gelt Funding Corp.,
27 F.3d 763 (2d Cir. 1994).....................................................15

Flagg Brothers, Inc. v. Brooks,
436 U.S. 149 S. Ct. 1729 (1978).............................................7

Hoatson v. New York Archdiocese,
 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007)...........................16

Holmes v. Sec. Investor Prot. Corp.,
503 U.S. 258 (1992)..............................................................15

Jaghory v. New York State Dep't of Ed.,
131 F.3d 326 (2d Cir. 1997)....................................................7

Jones v. J.C. Penney Department Stores, Inc.,
2007 WL 1577758 at *6 (W.D.N.Y. May 31, 2007)..............................................8

Leemon v. Burns,
175 F. Supp.2d 551, 553-54 (S.D.N.Y. 2001) ....................................................7

Lugar v. Edmondson Oil Co., Inc.,
457 U.S. 922, 102 S. Ct. 2744 (1982).............................................................7

Lutin v. New Jersey Steel Corp.,
 122 F.3d 1056 WL 447005, at *5 (2d Cir. 1997) ...............................................13

McLaughlin v. Anderson,
 962 F.2d 187 (2d Cir.1992)..........................................................................13

Mills v. Polar Molecular Corp.,
12 F.3d 1170 (2d Cir. 1993)..........................................................................13

Mitchell v. Home,
377 F.Supp.2d 361 (S.D.N.Y. 2005).................................................................9

Moore v. Guesno,
2007 WL 1373218 (W.D.N.Y. May 10, 2007) ...................................................15

Moss v. Morgan Stanley,
719 F.2d 5 (2d Cir.1983)..............................................................................12

Paisley v. Coin Device Corp.,
5 A.D.3d 748 773 N.Y.S.2d 582, 583 (2d Dept. 2004) ........................................11

Pangburn v. Culbertson,
200 F.3d 65 (2nd Circ. 1999) ........................................................................8

San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,
5 F.3d 801 (2d Cir.1996)..............................................................................13

Schrull v. Shafer,
52 A.D.2d 723 N.Y.S.2d 395 (3rd Dept. 1998) ..................................................10

Smith v. Local 819 I.B.T. Pension Plan,
291 F.3d 236 (2d Cir. 2002)..........................................................................7

Sniado v. Bank Austria AG,
174 F. Supp. 2d 159 (S.D.N.Y. 2001)...............................................................7

608824

Spear v. Town of West Hartford,
954 F.2d 63 (2nd Circ. 1992) ..................................................................................8

United States v. Persico,
832 F.2d 705 (2d Cir. 1987).................................................................................13

Weyant v. Okst,
101 F.3d 845 (2d Circ. 1996)................................................................................12

## PRELIMINARY STATEMENT

Defendant Jeffrey C. Slade, Esq. (hereinafter "Attorney Slade") by and through his attorneys, Kaufman Borgeest & Ryan LLP, respectfully moves pursuant to Federal Rules of Civil Procedure 12 (b) (6) to dismiss all claims by plaintiff, John R. Blumatte a/k/a Robert Angona a/k/a John Blue.

Using a "shotgun" style complaint, the plaintiff, an admitted felon with multiple convictions, incarcerations, and aliases, seeks to hold multiple parties accountable -- no matter how peripherally involved -- for his felony grand larceny conviction arising out of his admitted embezzlement of thousands of dollars from the defendant Graduate School of Figurative Art of the New York Academy of Arts (hereinafter the "Academy') during his tenure as Controller with the Academy. The Complaint names as defendants the arresting police officers, the Assistant District Attorney (hereinafter "ADA"), multiple trustees to the Academy (hereinafter the "Trustees"), Special Advisor to the Board of Trustees, and the Academy's formal general counsel, Attorney Slade.

As against Attorney Slade, the Complaint contains causes of action for violation of plaintiff's Constitutional rights under Section 1983 and false imprisonment resulting from his 2.5 term of imprisonment arising from the felony conviction. The Complaint also categorically asserts a vague claim for RICO as against the "Trustee Defendants," which appears to also encompass Attorney Slade, even though he was never a Trustee.

Plaintiff's Complaint is woefully deficient since plaintiff has not, and cannot, establish a claim against Attorney Slade. Plaintiff's claim under Section 1983 fails because it is undisputed that Attorney Slade is not a state actor but a private actor who represented the Academy as outside counsel. Moreover, plaintiff's vague claim that Attorney Slade "conspired" with the

police department and the District Attorney's Office to bring about his alleged unconstitutional arrest and conviction is insufficient to establish a claim under Section 1983, as the plaintiff relies solely on conclusory allegations with nothing further to establish his claim for conspiracy.

Plaintiff's claim for false imprisonment arising from Attorney Slade's purported communications with the police department and the District Attorney's office is also legally insufficient since it is well-established that there is no liability for private civilians who provide information to legal authorities, who are then left entirely free to use their own judgment in effecting an arrest or in swearing out a criminal complaint. Further, any purported claim the plaintiff may attempt to assert for malicious prosecution fails for that very same reason; the police department and District Attorney's office used their independent judgment when electing to pursue the criminal action against the plaintiff. Moreover, any such claim also fails as the criminal proceedings were not resolved in favor of the plaintiff, who concedes that he pled guilty to grand larceny and served a 2.5 year prison sentence.

Plaintiff's claim for civil RICO based on fraud fails on several levels. First, plaintiff relies only on vague conclusory allegations which categorically lumps together all defendants who are not "Police Defendants", the ADA, or the Academy as "Trustees." The Complaint fails to delineate which specific acts Attorney Slade allegedly committed in furtherance of the alleged RICO scheme. Second, plaintiff fails to allege two or more predicate acts Attorney Slade committed in furtherance of the alleged RICO scheme.

Third, the plaintiff's civil RICO claim fails as plaintiff cannot prove proximate causation, i.e., that plaintiff suffered injury to his "business or property" as a result of the purported RICO violation. It is undisputed that plaintiff's claim for loss of freedom stemming from his incarceration was the direct result of his guilty plea of felony larceny, which resulted from

plaintiff's admitted embezzlement of Academy funds.  Notwithstanding, the loss of freedom does not constitute an injury to "business or property" as matter of law.  Further, it is also well-settled that plaintiff's claim for loss of employment with the Academy is also non-compensable under RICO and does not constitute an injury to "business or property."

Fourth, plaintiff's lacks standing to pursue a claim for RICO, as the plaintiff does not allege that he was the intended target or "immediate victim" of any alleged RICO scheme.  Rather, all the alleged predicate acts set forth in the Complaint involve allegations wherein the plaintiff was <u>not</u> the intended target, but a mere incidental third-party.

## FACTUAL ALLEGATIONS

The plaintiff has commenced the instant action against multiple parties associated with the defendant Academy and any party associated with his arrest and conviction for felony larceny.  The Complaint names the arresting police officers, the ADA, multiple Trustees to the Academy, the Special Advisor to the Board of Trustees, and the Academy's formal general counsel, Attorney Slade, as defendants.

The plaintiff admits that he was convicted of multiple felonies, and that on or about 1998, following a period of incarceration, plaintiff violated his federal probation when he unlawfully left the supervision of the United States Probation Department.  <u>See</u> plaintiff's Complaint, ¶¶ 19, 20.  Shortly after violating his parole, plaintiff got married, assumed several different aliases, but ultimately settled on the alias of "Robert Angona."  The true Robert Angona is an acquaintance of the plaintiff, whom the plaintiff met in prison.  Thereafter, the plaintiff, with the assistance of his wife, formed two corporations, The First Manhattan Group Inc. ("First Manhattan") and Empire Solutions Inc. ("Empire"), for the purpose of providing accounting services.  The plaintiff was the sole employee of both companies.  Comp. ¶ 22.

Plaintiff alleges that the Academy first retained First Manhattan on or about April 2002 to provide accounting services and that the plaintiff was offered and accepted a position as Controller of the Academy in June 2002. Comp. ¶¶ 24, 33. The plaintiff alleges that he became "intensely involved with the Academy" and discovered that its "financial affairs were in complete disarray." Comp. ¶ 37. The Complaint alleges, *inter alia*, that the Academy failed to prepare and file accurate tax returns, that the Academy's auditors lacked independence, that the Academy engaged in overspending, and that the Academy did not have a proper Certificate of Occupancy for its building. Comp. ¶¶ 39-45, 46, 50, 55.

Plaintiff claims that he "locked horns" with the Trustees after he insisted that the Academy restate their financial statements. It is further alleged that after the Academy refused to implement plaintiff's recommendation, the relationship between the plaintiff and the Trustees reached an "insurmountable impasse." Comp. ¶¶ 66, 82.

Plaintiff contends that a former Trustee and founder of the Academy, Stuart Pivar, retained a private investigator, who uncovered the fact that the real Robert Angona was alleged to have ties with organized crime. The plaintiff alleges that he was able to successfully convince the investigator that he was not the real Robert Angona, as the real Robert Angona was imprisoned. Comp. ¶¶ 88, 91, 92.

Plaintiff contends that shortly that thereafter, in March 2004, he met with co-defendant Farthing at the Brooklyn Diner to discuss the terms of the plaintiff's resignations. Comp. ¶ 96. It is further alleged that certain members of the Academy "desperately wanted to learn plaintiff's real identity and the other facts about plaintiff's background." Comp. ¶ 117.

Plaintiff alleges that on April 14, 2004 Attorney Slade retained an investigation firm to investigate the plaintiff. The investigation firm conducted 24-hour surveillance of the plaintiff

from April 15, 2004 through April 18, 2004. Comp. ¶¶ 121, 122. The plaintiff alleges that by "April 16, 2004, [co-defendants] Levinson, Wilkinson, Guggenheim, [Attorney] Slade, and employees of [the investigation firm] were in direct contact with the ADA" and that the co-defendants urged the police and ADA to use their "best efforts to learn plaintiff's true identity." Comp. ¶¶ 126, 136.

On April 23, 2004, plaintiff was arrested by police officers and co-defendants Quinn and Rogers in the lobby of his Manhattan apartment building. Comp. ¶¶ 137-144. The plaintiff alleges that the arresting officers, Quinn and Rogers, used excessive force after the plaintiff stated that he did not want to talk with them and then proceeded to enter the elevator. As a result of the "unwarranted" arrest, plaintiff allegedly "had another heart episode," and was taken to Cornell Medical Center for treatment. Comp. ¶¶ 142-44, 146, 158, 167, 168.

It is alleged that arresting officer Quinn stated in a felony complaint that he was informed by co-defendant Farthing that: (1) Empire Solutions is not an authorized vendor; (2) that in a ten-month span, six (6) checks totaling in excess of $40,000 were written to Empire Solutions but no matching invoices could be located; and (3) that plaintiff charged over $29,000 to an unauthorized credit card. Comp. ¶¶ 178, 195. Plaintiff alleges that co-defendant Farthing statements were false. Comp. ¶¶ 179, 196.

Arresting officer Quinn's felony complaint was presented to a grand jury, which returned an indictment against the plaintiff. Comp. ¶ 198. By the time of his arraignment, "the plaintiff's violation of his New Jersey federal probation came to light and the federal authorities had issued a warrant for his detention." Comp. ¶ 202. The plaintiff contends that the ADA made false statements at the arraignment. Comp. ¶ 205.

On October 29, 2004, the plaintiff pled guilty to a Class C felony and was sentenced to a term of 4 to 8 years. Comp. ¶ 207. Plaintiff alleges that on November 30, 2006, the District Attorney agreed to replead his conviction to a Class D felony, with a sentence of 2.5 to 5 years. As a result of the re-sentencing, plaintiff alleges that he was immediately eligible for parole. Comp. ¶¶ 209, 210.

Plaintiff vaguely alleges that his arrest, conviction and incarceration were "the direct result of [co-defendant] Farthings … false statements, which formed the basis of [co-defendant and arresting officer] Quinn's felony complaint," and part of a greater and continuing fraudulent scheme of the Trustees, Guggenheim and [Attorney] Slade … to prevent public disclosure and criminal and civil prosecution of the Trustees and others for tax fraud, bank fraud, mail fraud and breach of fiduciary duties and other misconduct." Comp. ¶ 213.

As against Attorney Slade, the plaintiff's Complaint contains purported causes of action for violation of plaintiff's Constitutional rights under Section 1983 and false imprisonment resulting from his 2.5 term of imprisonment arising from the felony conviction. Comp. ¶¶ 223-26, 230-35. The Complaint vaguely asserts a civil RICO claim against the "Trustees." Comp. ¶ 243-50. The Complaint lumps together as "Trustees" any defendants "other than the Police Defendants, the ADA and the Academy." Comp. ¶ 16. Thus, it would appear that plaintiff is alleging that Attorney Slade was a participant in the alleged RICO scheme.

For the following reasons the Complaint must be dismissed with prejudice.

## STANDARD OF REVIEW

The dismissal of a complaint is warranted under Fed. R. Civ. P. 12(b)(6), where it is beyond doubt that the plaintiff cannot prove any set of facts which would entitle it to relief, even accepting as true all allegations in the complaint and drawing all reasonable inferences in the

plaintiff's favor.  See Sniado v. Bank Austria AG, 174 F. Supp. 2d 159, 162 (S.D.N.Y. 2001)

(citing Jaghory v. New York State Dep't of Ed., 131 F.3d 326, 329 (2d Cir. 1997)); Leemon v.

Burns, 175 F. Supp.2d 551, 553-54 (S.D.N.Y. 2001) (dismissing complaint for failure to state a

cause of action).   "Conclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to prevent a motion to dismiss." Davis v. County of Nassau, 355 F.

Supp. 2d 668, 673 (E.D.N.Y. 2005) (quoting Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d

236, 240 (2d Cir. 2002)); Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1230 (S.D.N.Y.

2003).

## ARGUMENT

## POINT I

## PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 USC § 1983

Plaintiff alleges that the arresting police officers, Quinn and Rogers, and the ADA

"actively violated plaintiff's rights under the Constitution of the United States while acting under

color of state law."  Comp. ¶ 224.  Plaintiff further alleges that the "Trustees actively conspired

and induced Quinn, Rogers and the ADA to violate plaintiff's Constitutional rights…" Comp. ¶

226.

To state a cause of action sounding in a violation of Section 1983, the plaintiff must show

that: (a) he has been deprived of a right secured by the constitution and the laws of the United

States and, (b) by the defendants acting under color of any State statute.  See Lugar v.

Edmondson Oil Co., Inc., 457 U.S. 922, 102 S. Ct. 2744 (1982); Flagg Brothers, Inc. v. Brooks,

436 U.S. 149, 98 S. Ct. 1729 (1978).

Furthermore, '[t]o state a claim against a private entity on a section 1983 conspiracy

theory, the complaint must allege facts demonstrating that the private entity acted in concert with

the state actor to commit an unconstitutional act." See Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Circ. 2002) (citing Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Circ. 1992)). In order to survive a motion to dismiss the Section 1983 conspiracy claim, plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." See Ciambriello, 292 F.3d at 324-25 (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Circ. 1999)). "[A] mere conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a Section 1983 claim against a public entity." See Jones v. J.C. Penney Department Stores, Inc., 2007 WL 1577758 at *6 (W.D.N.Y. May 31, 2007).

Here, the plaintiff relies solely on conclusory allegations to attempt to establish that Attorney Slade somehow conspired with the arresting police officers and the ADA to bring about his alleged unconstitutional arrest and conviction. The Complaint is entirely devoid of any allegation that Attorney Slade was a state actor or that there was an agreement between Attorney Slade and the arresting officers and/or the ADA to act in concert with one another to bring about the arrest and conviction of the plaintiff. Further, the Complaint fails to set forth that Attorney Slade committed an overt act in furtherance of any alleged conspiracy.

In fact, a thorough reading of the Complaint reveals that there are few factually specific allegations against Attorney Slade. The Complaint merely alleges that Attorney Slade retained an investigator to investigate the plaintiff; that the investigators who were retained were former FBI agents and, therefore, shared a "special relationship with the New York Police Department and District Attorney's Office; and that Attorney Slade somehow benefited as a result of the "special relationship." Comp. ¶¶ 121, 125. It is further alleged that "Levinson, Farthing, Guggenheim and/or [Attorney] Slade communicated with the ADA, Quinn and Rogers and urged

them to use their best efforts to learn plaintiff's true identity." Comp. ¶ 136. These allegations are woefully inadequate to state a Section 1983 claim against Attorney Slade.

The remainder of the factual allegations against Attorney Slade are entirely conclusory in nature, as it is alleged that Attorney Slade was "part of a greater and continuing fraudulent scheme ... that pre-existed plaintiff's first contact with the Academy that was designed to prevent public discovery and subsequent criminal and civil prosecution of the Trustees." Comp. ¶ 231. Accordingly, since plaintiff has failed to plead that Attorney Slade conspired with the arresting officers and the ADA with the requisite particularity required under the law, the plaintiff's Section 1983 claim fails, and dismissal is warranted.

Additionally, it appears that the gravaman of plaintiff's Section 1983 claim as against Attorney Slade arises from purported communications Attorney Slade had with the arresting police officers and the ADA after the commencement of the investigation which lead to the eventual arrest and conviction of the plaintiff for felony larceny. However, it is well-established that "there is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment in effecting an arrest, or in swearing out a criminal complaint so that an arrest is legally authorized." See Mitchell v. Home, 377 F.Supp.2d 361, 376 (S.D.N.Y. 2005) (citing Chapo v. Premier Liquor Corp, 259 A.D.2d 1050, 1051, 688 N.Y.S.2d 342, 343 (4th Dept. 1999)).

Accordingly, plaintiff's allegation that Attorney Slade communicated with the police and/or the ADA is legally insufficient to support a claim for Section 1983, as the police and ADA were free to use their own judgment in effectuating the arrest and subsequent criminal prosecution. Therefore, plaintiff's Section 1983 fails and should be dismissed with prejudice.

## POINT II

## PLAINTIFF FAILS TO STATE A CLAIM FOR FALSE IMPRISONMENT

The Complaint alleges that as a result of the "Defendants' culpable conduct plaintiff was falsely imprisoned for a period of approximately 2.5 years." Comp. ¶ 231.

Under New York law, the elements of a false imprisonment claim are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. See Mitchell v. Home, 377 F. Supp.2d 361, 373 (S.D.N.Y. 2005); Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87 (1975). However, as set of the forth in Point I, it is well-established that "there is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment in effecting an arrest, or in swearing out a criminal complaint so that an arrest is legally authorized." See Chapo v. Premier Liquor Corp., 259 A.D.2d 1050, 1051, 688 N.Y.S.2d 342 (4th Dept. 1999); Schrull v. Shafer, 252 A.D.2d 723, 675 N.Y.S.2d 395 (3rd Dept. 1998).

Here, it is alleged that Attorney Slade (and/or co-defendants Levinson, Farthing, Wilkinson, or Guggenheim) communicated with the ADA and the arresting officers and "urged them to use their best efforts to learn plaintiff's true identity." Comp. ¶ 136. The Complaint further alleges that "lead by Levinson and Farthing, the Trustees provided … the NYPD, the ADA, and Quinn and Rogers [with] a fabricat[ed] series of false allegations of fraud embezzlement and grand larceny against the plaintiff." Comp. ¶ 177. It is alleged that these purported fabrications ultimately led to the indictment and criminal conviction of the plaintiff for grand larceny. Comp ¶ 207.

Plaintiff's allegations are insufficient to sustain a claim for false imprisonment since the New York Police were free to exercise their own judgment in effectuating the arrest of the plaintiff. Similarly, the District Attorney's Office was also free to exercise its own judgment when moving to indict and ultimately convict the plaintiff on charges of grand larceny. Accordingly, plaintiff's claim for false imprisonment must fail as a matter of law, as it is undisputed that Attorney Slade was a private civilian who simply provided information to the police who were investigating plaintiff for larceny, which plaintiff admittedly pled guilt to.

Although not expressly pled, it appears that the plaintiff's Complaint also asserts a claim for malicious prosecution. To plead a claim for malicious prosecution, a plaintiff must allege: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice. See Mitchell, *supra* at 377; Broughton *supra* at 457.

Here, plaintiff's claim for malicious prosecution fails for the same reason as the plaintiff's claim for false imprisonment. A "civilian complainant, by merely seeking police assistance or providing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for … malicious prosecution." See Mitchell, *supra* at 377 (citing Paisley v. Coin Device Corp., 5 A.D.3d 748, 749-50, 773 N.Y.S.2d 582, 583 (2d Dept. 2004)). Even where a plaintiff alleges that a defendant "gave false information" to authorities, "this is not enough" to support a malicious prosecution claim. See Mitchell, *supra* at 377. Thus, plaintiff's vague allegation that Attorney Slade provided authorities with false information is legally insufficient to sustain a claim for malicious prosecution.

Plaintiff's malicious prosecution claim also fails since plaintiff cannot prove the second element of the claim, i.e., that the proceeding was resolved in his favor. See Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996). Plaintiff concedes that he pled guilty to grand larceny, a Class C felony, and was sentenced to a term of 4 to 8 years imprisonment. Comp. ¶ 207. The plaintiff alleges that his conviction was subsequently re-plead to a Class D felony and that he was re-sentenced to a prison term of 2.5 to 5 years. Comp. ¶ 209. Since neither the original plea arrangement and conviction nor the re-pleading and re-sentencing amount to resolution of the criminal proceedings in the plaintiff's favor, the plaintiff's claim for malicious prosecution fails as a matter of law and should be dismissed with prejudice.

## POINT III

### PLAINTIFF FAILS TO STATE A CLAIM UNDER 18 USC § 1964

Plaintiff's fifth cause of action categorically asserts a purported RICO claim against the "Trustees." The plaintiff alleges that the Trustees indirectly derived income from, controlled the Academy through, and participated in the conduct of the Academy's affairs through a pattern of "racketeering activities including: (a) mail fraud; (b) wire fraud; (c) tax fraud; (d) bank fraud; and (e) tampering with a witness in violation of 18 U.S.C. § 1962." Comp. ¶¶ 243-47. Plaintiff's purported claim fails as a matter of law for several reasons.

Plaintiff must plead the requisite elements to sustain a claim under RICO, namely "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." See Moss v. Morgan Stanley, 719 F.2d 5, 17 (2d Cir.1983). A plaintiff must also allege "causation," i.e., that he or she was "injured in his [or its] business or property by reason

of a violation of §1962. Id. These "requirements . . . must be established as to each individual defendant." See DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001); see also United States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987). The plaintiff must establish that each individual defendant "personally committed two or more predicate acts or agreed to commit two predicate acts." Lutin v. New Jersey Steel Corp., 122 F.3d 1056, 1997 WL 447005, at *5 (2d Cir. 1997).

In the context of a RICO claim, where the underlying predicate acts are based on fraud, Rule 9(b) calls for the Complaint to "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." See McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir.1992). The complaint must also "allege facts that give rise to a strong inference of fraudulent intent." See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 812 (2d Cir.1996). Where the allegations vaguely attribute acts to a defendant, the count is insufficiently pled and cannot survive a motion to dismiss. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993).

Here, the plaintiff's assertions are entirely vague and conclusory, as the plaintiff fails to delineate which specific acts Attorney Slade committed in furtherance of the purported racketeering scheme. Rather, plaintiff categorically lumps all "defendants other than the Police Defendants, the ADA and the Academy" together as "Trustees." Comp. ¶ 16.

The Complaint is devoid of any specific factual allegations that Attorney Slade individually committed wire fraud, mail fraud, and/or tax fraud in furtherance of the purported racketeering scheme. Instead, plaintiff relies on bare-bone conclusory allegations to support his purported claim against Attorney Slade, i.e., that plaintiff's arrest, conviction and incarceration

were "part of a continuing fraudulent scheme of the Trustees, Guggenheim and Slade that pre-existed the plaintiff's first contact with the Academy that was designed to prevent public disclosure and subsequent criminal and civil prosecution of the Trustees and others for tax fraud, bank fraud, mail fraud, breach of fiduciary duties and other misconduct." Comp. ¶ 213.

Since the plaintiff asserts blanket allegations against Attorney Slade (as part of the "Trustees"), and does not delineate against whom each allegation is directed, the Complaint fails to inform each defendant of the nature of his participation in the alleged fraud and must therefore fail. See Di Vittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).

Further, the factually specific allegations which pertain to Attorney Slade are wholly insufficient to satisfy the pleading standards required to assert a claim under RICO, as the Complaint fails to identify two or more predicate acts Attorney Slade committed or conspired to commit in furtherance of the alleged RICO scheme. As against Attorney Slade, the Complaint merely alleges that he retained an investigator to investigate the plaintiff; that the investigators who were retained were former FBI agents and, therefore, shared a "special relationship" with the New York Police Department and District Attorney's Office and that Attorney Slade somehow benefited as a result of the "special relationship." Comp. ¶¶ 121, 125. It is further alleged that "Levinson, Farthing, Guggenheim and/or [Attorney] Slade communicated with the ADA, Quinn and Rogers and urged them to use their best efforts to learn plaintiff's true identity." Comp. ¶ 136. These factual allegations are legally insufficient to sustain a claim for RICO, and the RICO claim should be dismissed with prejudice.

Further, in addition to the stringent particularity requirements under Rule 9(b), and the plaintiff's satisfaction of the seven RICO elements, the plaintiff must also plead "causation," i.e., that plaintiff was "injured in his business or property by reason of a violation of section 1962."

See Moss v. Morgan Stanley, *supra*. These "requirements ... must be established as to each individual defendant." See DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir.2001); see also United States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987). To successfully maintain a claim under RICO, plaintiff must allege injury to its business or property by reason of the RICO violations. See 18 U.S.C.A. 1961(5). In other words, plaintiff must plead and prove a factual proximate causal nexus between the alleged injury and a predicate act. See Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258. 266-68 (1992); First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994).

Here, the Complaint is devoid of any factually specific allegations as to how Attorney Slade's conduct proximately caused the plaintiff to suffer an injury. While the Complaint avers that Attorney Slade retained an investigative firm to commence an investigation of the plaintiff, and that Attorney Slade provided information to the police department in furtherance of their criminal investigation, plaintiff fails to set forth how these acts proximately caused the plaintiff to suffer any compensable injury.

It is undisputed that the cause of any loss, which consisted of deprivation of freedom resulting from imprisonment, was the plaintiff's own doing, as it is undisputed that the plaintiff pled guilty to and was convicted of grand larceny, as a result of his admitted embezzlement from the Academy. Comp. ¶ 207. Notwithstanding, the plaintiff's alleged loss of freedom does not constitute an injury to "business or property" as matter of law, and therefore cannot sustain a RICO claim. See Moore v. Guesno, 2007 WL 1373218 (W.D.N.Y. May 10, 2007). Further, plaintiff's claim pertaining to loss of employment with the Academy cannot support a civil RICO claim either because "loss of a job is not 'property in the victim's hands'" and cannot fulfill the

requirement of loss of "money or property". See <u>Hoatson v. New York Archdiocese</u>, 2007 WL 431098, \*5 (S.D.N.Y. Feb. 8, 2007)

Plaintiff also lacks standing to bring a RICO claim since he was neither the victim nor the intended target of the alleged RICO scheme. See <u>Anza v. Ideal Steel Supply Corp.</u>, 126 S. Ct. 1991 (2006). In <u>Anza</u>, the Court held that a RICO plaintiff must be the "immediate victim" of the alleged RICO violation in order to sustain a civil RICO claim. <u>Id</u> at 1997. Thus, the Court expressly held that direct injury is required even where the defendant intended to harm plaintiff through injury to the third party. See <u>Id</u>.

Here, the plaintiff does not allege that he was the immediate victim of the predicate acts or the intended target of the alleged RICO scheme. The predicate acts complained of consist of the alleged filing of inaccurate income tax returns the filing of false insurance claims, sending misstated audited financials to the New York Board of Regents, and violating federal law in connection with federally guaranteed loans. Comp. ¶¶ 39-45, 48, 53, 73, 75, 76. Since none of the allegations which comprise the purported RICO scheme target the plaintiff directly, plaintiff lacks standing to pursue a civil RICO claim as a matter of law. Plaintiff's RICO claim must be dismissed with prejudice.

## CONCLUSION

WHEREFORE, it is respectfully requested that on the facts, the law and for all the reasons set forth herein, that this Court enter an Order, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing the plaintiff's Complaint in its entirety with prejudice against Attorney Hecht and for such other relief as this Court deems just and proper.


Dated: New York, New York
       June 28, 2007


                     KAUFMAN BORGEEST & RYAN LLP


By:    Jonathan B. Bruno (JB 6163)
        Andrew S. Kowlowitz (AK 9616)
        Attorneys for Defendant,
        Jeffrey C. Slade
        99 Park Avenue, 19th Floor
        New York, New York 10016
        Telephone No.: (212) 980-9600
        KBR File No.: 217.081

**CERTIFICATE OF SERVICE**

This is to certify that true and correct copies of the foregoing: MEMORANDUM OF

LAW was served via regular mail on the 29th day of June 2007 upon:


Shawn Fabian, Esq.
The City of New York
Law Department
100 Church Street
New York, NY  10007


Bennette Deacy Kramer, Esq.
Schlam Stone & Dolan LLP
26 Broadway
New York, NY   10004


J. Joseph Bainton
Bainton & McCarthy LLC
26 Broadway
Suite 2400
New York, New York  10004

Michael John Little, Esq.
26 Broadway
Suite 2400
New York, New York  10004

JONATHAN B. BRUNO (JB 6163)