LEXSEE 2003 U.S. DIST. LEXIS 2886

**HENRY U. OBILO, Plaintiff, - against - CITY UNIVERSITY OF THE CITY OF NEW YORK; COLLEGE OF STATEN ISLAND of the City University of New York; Police Office/Detective BURGESS # 3107, Tax Registry No.: 885309 of the 122nd Precinct of the New York Police Department; Public Safety Officer/Director GENE MARTINEZ; Public Safety Officer/Asst. Director, ROBERT YURMAN; and Vice President CAROL JACKSON of the College of Staten Island of the City University of New York, and Police Officer "JOHN DOE 1", thru "JOHN DOE 5", Defendants.**

Civil Action No. CV-01-5118 (DGT)

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 2886*

**February 28, 2003, Decided**

**SUBSEQUENT HISTORY:** [*1] As Corrected April 7, 2003.

**DISPOSITION:** Defendants' motion to dismiss complaint granted and plaintiff's complaint dismissed.

**COUNSEL:** For HENRY U. OBILO, plaintiff: Edward [*2] A. Roberts, Brooklyn, NY.

For CITY UNIVERSITY OF THE CITY OF NEW YORK, GENE MARTINEZ, ROBERT YOUMAN, CAROL JACKSON, defendants: Bruce B. McHale, Esq., NYS Atty General's Office, New York, NY.

**JUDGES:** David G. Trager, United States District Judge.

**OPINION BY:** David G. TragerTrager

**OPINION**

*CORRECTED OPINION*

TRAGER, J.

Plaintiff Henry Obilo brings this civil rights action against defendants City University of New York ("CUNY"), the College of Staten Island ("CSI"), [1] "Police Officer/Detective" Burgess ("Burgess"), "Public Safety Officer/Director" Gene Martinez ("Martinez"), "Public Safety Officer/Asst. Director" Robert Yurman ("Yurman"), [2] Vice President of CSI Carol Jackson

("Jackson"), and Police Officer "John Doe 1" thru "John Doe 5", alleging that plaintiff's arrest and subsequent prosecution for an alleged sexual assault violated various of his constitutional rights. In both his initial and amended complaint, plaintiff sued Burgess, Martinez and Yurman in their official capacity and Jackson in both her official and individual capacity. *See* Compl. PP 8-9, 11-12; Am. Compl. P 7-8, 10-11. [3]

1   Under New York Education Law, CUNY is a distinct corporate body. *See N.Y. Educ. Law § 6203.* In addition, CUNY is considered to include "each senior college and each community college." *Id. § 6202(2).* CSI is a senior college within the CUNY system. *See id. § 6205(5).* A senior college, such as CSI, is not a legally cognizable entity apart from CUNY. *See id. §§ 6202(2) & 6202(5).* Consequently, CUNY appears to be the only properly named institutional defendant in this action.

[*3]

2   In his complaint, plaintiff misspelled Yurman's name as "Youman".

3   In his complaint, plaintiff also sued Rudolph Guliani, in his official capacity as Mayor of the City of New York ("Guliani"), and Bernard B. Kerik, in his official capacity as Commissioner of the New York City Police Department ("NYPD") ("Kerik"). At a February 5, 2002 conference, plaintiff's counsel agreed to withdraw all claims against Guliani and Kerik. Accordingly, those de-

fendants will be treated as dismissed from this case and Count III of plaintiff's original complaint (which alleges a claim of municipal liability against Guliani and Kerik) and other allegations against the City of New York and the NYPD will be considered as effectively withdrawn. As discussed in more detail below, plaintiff has submitted an amended complaint with his opposition memorandum. In the amended complaint, plaintiff has withdrawn Count III and all allegations against Guliani and Kerik, although plaintiff still asserts allegations of failure to train and investigate police officers against the City of New York, NYPD and "the City of Staten Island." These claims will be addressed *infra* in the context of plaintiff's claims against Burgess in his official capacity.

[*4] Plaintiff's four count initial complaint is not the most artful pled. In Count I, plaintiff appears to allege claims against defendants CUNY, CSI, Martinez, Yurman and Jackson (collectively, "state defendants") under *42 U.S.C. § 1981* and *§ 1983*, arguing that his detention by Martinez and Yurman, and their subsequent call to the NYPD, violated his rights under the *Fourth Amendment to the Constitution. See* Compl. P 36. [4] Plaintiff also alleges that "the Board of Trustees of [CUNY], nor the Executive Department of [CSI] nor the Executive Department of the City of New York nor the [NYPD] caused an investigation to be made to ascertain the conduct of the defendant Polices Officers." *Id.* P 34. In Count II, plaintiff seems to assert another *§ 1983* claim against Burgess and the state defendants, alleging that his arrest and prosecution violated his *Fourth Amendment* rights. [5] *See id.* PP 37-39. In Count IV, plaintiff asserts against Burgess pendent state law claims under New York law for false arrest and malicious prosecution. *See id.* PP 49-51. In addition, it appears that Count IV contains allegations of, *inter alia,* assault and intentional [*5] and negligent infliction of emotional distress against the unnamed police officers for failure to intervene and stop "the abuse" they were witnessing. *Id.* P 50. As relief, plaintiff seeks $ 1 million in compensatory damages for each of Counts I and II, $ 500,000 in compensatory damages for Count IV, and $ 1 million in punitive damages for each of Counts I and IV.

4    Except as otherwise indicated, citations to paragraphs in plaintiff's original complaint correspond to the identical paragraphs in plaintiff's amended complaint and vice versa.

5    Actually, in Counts I and II, plaintiff asserts that the alleged false arrest and malicious prosecution for which his *§ 1983* claim is premised violated his rights under the *First, Fourth, Fifth*

and *Fourteenth Amendment. See* Compl. P 36. However, the Second Circuit has found that "the *Fourth Amendment* provides the source of a *§ 1983* claim premised on a person's arrest." *Singer v. Fulton County Sheriff, 63 F.3d 110, 115 (2d Cir. 1995)* (footnote omitted).

[*6] Burgess moves to dismiss plaintiff's original complaint pursuant to *Rule 12(b)(6)* for failure to state a claim, arguing that (1) probable cause existed for plaintiff's arrest and subsequent criminal prosecution; (2) Burgess is entitled to qualified immunity; and (3) with regard to plaintiff's pendent state law claims, except malicious prosecution, plaintiff failed to comply with conditions precedent to suit. In a separate motion, state defendants move to dismiss the original complaint pursuant to *Rules 12(b)(1)* and *12(b)(6)*, claiming that (1) *Eleventh Amendment* immunity bars the *§ 1981* and *§ 1983* claims for money damages; (2) state defendants do not constitute "persons" subject to suit within the meaning of *§ 1981* and *§ 1983*; and (3) the complaint fails to allege a viable claim against defendant Jackson.

## Background

Plaintiff, a black male student matriculating at CSI, alleges that on October 6, 1999, [6] he was escorted from class by campus security officers Martinez and Yurman and accused of criminal activity -- sexually assaulting Kathleen Tomey ("Tomey"), [7] a white female college student who plaintiff alleges was his girlfriend. *See* Compl. P 3, 16-18. At CSI, Plaintiff [*7] was "fully interrogated" by defendants Martinez and Yurman. *Id.* P 20. During the interrogation, plaintiff "attempt[ed] to plead his innocence regarding the criminal allegations." *Id.* Nonetheless, Martinez and Yurman contacted the 122nd Precinct of the NYPD, and plaintiff was subsequently arrested and transported to the precinct. *See id.* PP 21-22. While in police custody, plaintiff spoke to Burgess and others, "pleading his innocence and informing them that he was not involved in the alleged criminal activity." *Id.* P 22. Plaintiff was charged, arraigned and subsequently prosecuted by the District Attorney under Indictment No. 301/99 encaptioned *People of the State of New York v. Henry Obilo. See id.* PP 23-24. Plaintiff was acquitted of all charges on or about May 2, 2000, after a jury trial in the Supreme Court of the State of New York, County of Richmond. *See id.* P 25.

6    Plaintiff's complaint alleges that he was escorted from class and detained by Martinez and Yurman on "October 6, *2001.*" Compl. P 16 (emphasis added). Based on the time sequence of the other allegations contained in the complaint, it is fairly evident that plaintiff meant to assert that he was escorted from class on October 6, *1999. See*

2003 U.S. Dist. LEXIS 2886, *

Compl. P 21 (alleging plaintiff was arrested on or about October 6, 1999); *see also* Am. Compl. P 17 (alleging plaintiff was escorted from class on or about October 6, 1999).

[*8]

> 7    The parties' submissions to the court contain various spellings of the complaining victim's last name. For purposes of this memorandum, the spelling in plaintiff's complaint will be adopted.

On July 17, 2000, ⁸ plaintiff filed a Notice of Claim with the Comptroller of the City of New York. *See id.* P 26. In the Notice of Claim, plaintiff indicated that the nature of his claim against the City of New York and CUNY was false arrest, unlawful detention, and malicious prosecution in that New York City police officers "fail[ed] to observe proper standards of investigation" when arresting him and, in concert with the District Attorney's office, "wrongfully prosecute[d] him." Notice of Claim P 2. Plaintiff also stated that these alleged crimes were at the "urging" of CUNY and CSI officials. ⁹ *Id.* In addition, plaintiff indicated that his claim arose on or about May 3, 2000 when he was acquitted by a jury. *See id.* P 3. According to plaintiff, a 50-h hearing was conducted on April 18, 2001, *see* Compl. P 26, during which plaintiff was orally examined under oath about the occurrence and [*9] extent of the injuries presented in his Notice of Claim. *See* Notice of 50-h hearing, attached to Notice of Claim.

> 8    In his complaint, plaintiff alleges that he served a Notice of Claim on the Comptroller on July 27, 2000. A review of the Notice of Claim, a copy of which is attached to, *inter alia*, the Declaration of Conception A. Montoya in support of Burgess' motion to dismiss indicates that it was received by the Comptroller's office on July 17, 2000. *See* Decl. of Conception A. Montoya ("Montoya Decl."), Ex. G. A copy of the Notice of Claim is also attached to plaintiff's opposition memorandum, but it did not contain the "Received City of New York" stamp indicating the date filed with the Comptroller. *See* Pl.'s Opp'n, Ex. B ("Notice of Claim"). The Notice of Claim and its contents can properly be considered since it was expressly referred to in paragraph 26 of plaintiff's original and amended complaint. *See Brass v. Am. Film Techs., 987 F.2d 142, 150 (2d Cir. 1993)* (citing *Cortec Indus., Inc v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)*).

[*10]

> 9    Interestingly, plaintiff makes no such discernible allegation in either his original or amended complaint.

Plaintiff filed a timely complaint against all defendants on August 1, 2001. At a February 5, 2002 pre-motion conference, it was ordered that in lieu of permitting Burgess and the state defendants to proceed on their respective motions to dismiss, plaintiff was to file an amended complaint by March 8, 2002. *See* Tr. at 12-13, Attached to Decl. of Bruce McHale. When plaintiff failed to submit an amended complaint by early May 2002, a briefing schedule was approved for motions directed to the original complaint.

Plaintiff attached an amended complaint to his opposition memorandum dated June 13, 2002. The amended complaint seeks to sue Burgess, Martinez and Yurman in their individual as well as official capacity. *Compare* Am. Compl. PP 8, 10-11 *with* Compl. PP 9, 11-12. In addition, the amended complaint contains allegations that Jackson "coerced and forced and threatened the plaintiff and in effect disbarred and unlawfully removed the plaintiff as a student of [CSI] , even though [*11] the plaintiff was duly qualified to be in attendance at [CSI]" in violation of unspecified constitutional rights. Am. Compl. P 37. Count III of the amended complaint appears to assert a claim against Jackson for inadequate training and supervision of campus security officers. *See id.* PP 41-47. In all other respects, plaintiff's amended complaint is virtually identical to his original complaint.

To the extent that plaintiff seeks to belatedly introduce the amended complaint, state defendants argue that this request should be denied as futile because the amended complaint is subject to dismissal on the basis that (1) Martinez and Yurman had probable cause to detain plaintiff and/or (2) Martinez and Yurman are entitled to qualified immunity. State defendants do not, however, address the new claims asserted against Jackson. Burgess asserts that the amended complaint should be dismissed for the same reasons he argues with regard to the original complaint. For purposes of the current motions to dismiss, plaintiff's request will be entertained for the limited purpose of analyzing Burgess and state defendants' arguments on their respective motions with respect to the amended complaint [*12] to determine whether the amendment is futile.

## Discussion

### Standard of Review

A complaint cannot be dismissed under *Rule 12(b)(6)* unless "it appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957).* However, a complaint should be dismissed if an affirmative defense, or other defense barring relief, is apparent from the face of the complaint. *See Pani v. Empire Blue*

*Cross Blue Shield, 152 F.3d 67, 74-75 (2d Cir. 1998)* (citations omitted). When determining the sufficiency of a plaintiff's claim, "consideration is limited to the factual allegations in [the] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [plaintiff's] possession or of which plaintiff[] had knowledge and relied on in bring suit." *Brass, 987 F.2d at 150* (citing *Cortec, 949 F.2d at 47-48*).

With Burgess' Notice of Motion, he attached a declaration [*13] from his lawyer, Conception A. Montaya, to which seven lettered exhibits were attached. These exhibits are as follows: (A) a copy of plaintiff's summons and original complaint; (B) a copy of the incident report filed by Tomey with CSI on October 2, 1999 ("incident report"); (C) a copy of the complaint filed by Tomey with the 122nd Precinct on October 2, 1999 ("police complaint"); (D) a copy of Burgess' complaint follow-up report (commonly referred to as a "DD5") dated October 3, 1999, which contains details about a conversation with Tomey ("October 3, 1999 DD5"); (E) a copy of Burgess' DD5 dated October 6, 1999, which contains details about a conversation with plaintiff ("October 6, 1999 DD5"); (F) a copy of plaintiff's handwritten statement to Burgess dated October 6, 1999 ("plaintiff's statement"); and (G) a copy of plaintiff's Notice of Claim filed with the Comptroller on July 17, 2000. [10] Plaintiff's complaint can obviously be considered as can plaintiff's Notice of Claim because, as indicated above, it was specifically referenced in his original and amended complaint. *See* Compl. P 26.

> 10    State defendants have attached to their memorandum an excerpt of the transcript from the February 5, 1999 pre-motion conference, of which judicial notice may be taken. State defendants do not appear to request consideration of documents outside the complaint for purposes of their motion.

[*14] Other exhibits may also properly be considered because they too were referenced (albeit implicitly) in plaintiff's complaint and/or are central to plaintiff's allegations. [11] First, plaintiff asserts that the allegations against him were of a "conspiratorial nature" and that he was therefore arrested and prosecuted without probable cause. Compl. P 23-24; *see also* Compl. P 35 (alleging actions were done "without any probable cause"). This is an implicit reference to the incident report and police complaint filed by Tomey, and the October 3, 1999 DD5, all of which set forth her allegations against plaintiff. Accordingly, these exhibits may be considered because they are incorporated by reference in the complaint.

> 11   In fact, at oral argument, plaintiff's counsel conceded that the exhibits were incorporated in plaintiff's complaint by reference.

Moreover, these documents are "central" to plaintiff's claims. *See AdiPar Ltd. v. PLD Int'l Co., 2002 U.S. Dist. LEXIS 23375*, CV-01-0765, 2002 WL 31740622, at * 4 & n.1 (S. [*15] D.N.Y. Dec. 6, 2002) (citing *Brass, 987 F.2d at 150*); *see also Cortec, 949 F.2d at 48* (determining that documents not publicly filed, attached to complaint nor incorporated by reference to it could be considered on 12(b)(6) motion because plaintiff did not lack notice of the documents and the documents were integral to its complaint); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1327, at 489 & n. 15 (stating that when "plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading"). Indeed, the Second Circuit has indicated that notice to the pleader is the critical element in determining whether extrinsic documents may properly be considered on a motion to dismiss. *See Cortec, 949 F.2d at 48*. If assertions in plaintiff's complaint are based on allegations of sexual assault by Tomey, it should come as no surprise to plaintiff if the documents that initiated those allegations are considered when determining whether to dismiss plaintiff's claims. Alternatively, at the very least, judicial notice can be taken of the fact that Tomey [*16] filed an incident report with CSI and a complaint with the NYPD, both on October 2, 1999, and that Burgess interviewed Tomey on October 3, 1999.

Second, plaintiff asserts that after being accused of sexual assault, he repeatedly proclaimed his innocence and that, while in police custody, he spoke to Burgess and informed the police that he was not involved in the alleged criminal activity. *See* Compl. PP 20, 22. Plaintiff also makes vague and generalized allegations about "clear and unequivocal evidence" of the conspiratorial nature of the allegations against him, *id.* P 23, and "evidence tending to clearly exonerate" him. *Id.* P 24. It appears that the "evidence" that plaintiff claims exonerates him is, or includes, the report from his conversation with Burgess and his written statement to the police. [12] If so, plaintiff's malicious prosecution claim is based on plaintiff's assertion that certain of the defendants and the state prosecutors rejected this evidence when determining whether to prosecute him. Accordingly, the October 6, 1999 DD5 and plaintiff's handwritten notes can properly be considered. As with consideration of the incident report and police complaint, consideration [*17] of these documents should not surprise plaintiff in light on the allegations of his repeated pronouncements of innocence to Martinez, Yurman, Burgess and others.

12   This assumption is supported by plaintiff's opposition memorandum, in which he argues that defendants failed to consider "statements and proofs submitted to the investigating officers." Pl.'s Opp'n, Point II. As plaintiff's opposition memorandum did not contain any page numbers, sections of the memorandum will be referred to by point headings.

Lastly, Burgess also submitted an affidavit in support of his motion to dismiss in which he attests that he testified at neither the grand jury proceedings nor the trial proceedings in the criminal matter underlying plaintiff's lawsuit. See Burgess Aff. PP 3, 4. However, plaintiff's complaint does not reference his grand jury proceedings, although he does allege that he was indicted (presumably by the grand jury). Accordingly, it appears to be improper to consider Burgess' affidavit. [13]

13   It should be noted, however, that at oral argument, plaintiff's counsel conceded that Burgess did not testify at trial, although counsel was not certain whether he testified at the grand jury proceedings.

[*18] In sum, at the very least the contents of the Notice of Claim can be considered and judicial notice can be taken of the incident report, police complaint and two DD5s completed by Burgess. There is a strong argument that the contents of the incident report, police complaint, the two DD5s and plaintiff's handwritten statement can properly be considered as integral to plaintiff's complaint.

**Defendant Burgess**

**(1)**

**Individual Capacity Claims**

An individual capacity suit seeks to impose personal liability on an official for actions taken under color of state law. In his amended complaint, plaintiff seeks to assert a § 1983 claim for false arrest and malicious prosecution against Burgess, alleged to be an NYPD officer, in his official capacity. To assert a § 1983 claim, plaintiff must allege that Burgess "acting under color of state law, caused the deprivation of a federal right." Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 362, 116 L. Ed. 2d 301 (1991) (citing Kentucy v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). In his complaint, plaintiff alleges that Burgess was acting under color of state law. See Compl. [*19] P 15. Therefore, the critical issue is whether plaintiff adequately alleges a claim for false arrest or malicious prosecution against Burgess.

1. False Arrest

Probable cause to arrest is a complete defense to an action for false arrest, whether the action is brought under state law or § 1983. See Singer, 63 F.3d at 118 (citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)); Broughton v. State, 37 N.Y.2d 451, 458, 335 N.E.2d 310, 315, 373 N.Y.S.2d 87, 95 (1975). Burgess maintains that he had probable cause to arrest plaintiff because he relied on (1) Tomey's complaint and her identification of plaintiff, (2) his own observations, which corroborated Tomey's allegations that she was accosted by plaintiff, and (3) information provided by Martinez and Yurman, who were investigating the same complaint. [14] In response, plaintiff argues that Burgess' "exclusive reliance" on Tomey's statements as a basis for probable cause is without merit.

14   Burgess also contends that the fact that the grand jury indicted plaintiff, see Compl. P 24, creates a presumption of probable cause to arrest. Burgess is correct in his recitation of the law; however, the presumption created by plaintiff's indictment applies only to a malicious prosecution action, not a false arrest action. See Broughton v. State, 37 N.Y.2d at 456, 335 N.E.2d at 313, 373 N.Y.S.2d at 93; but see Montes v. King, 2002 U.S. Dist. LEXIS 4412, CV-00-4707, 2002 WL 424318, at *3 (S.D.N.Y. March 19, 2002).

[*20]   Plaintiff also incorrectly asserts that the "critical element of the tort [sic] of false arrest and malicious prosecution is not whether there was probable cause to effectuate the arrest, but rather whether there was a 'reckless disregard'" by defendants for plaintiff's constitutional rights. Pl.'s Opp'n, Point II. Plaintiff then asserts that "malice can be inferred from the fact that the defendant may have acted with reckless disregard for the rights of another party." Id. In support of this position, plaintiff cites two cases from the State of Mississippi. Plaintiff appears to have confused the tort of false arrest with that of malicious prosecution and to have introduced a subjective determination into the analysis of probable cause in the false arrest context.

Actual malice is not an essential element of an action for false arrest; it is, however, an essential element of an action for malicious prosecution.   [*21] Broughton, 37 N.Y.2d at 457-58, 335 N.E.2d at 314-15, 373 N.Y.S.2d at 93-94. , 335 N.E.2d at 314. Moreover, "probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe the plaintiff guilty," clearly an objective standard. Colon v. City of New York, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250, 468 N.Y.S.2d 453, 455 (1983); see also Maryland v. Macon, 472 U.S. 463, 470-71, 105 S. Ct. 2778, 2782-83, 86 L. Ed. 2d 370 (1985);

*Lee v. Sandberg, 136 F.3d 94, 103, n.5 (2d Cir. 1997); 1 LaFave and Israel, Criminal Procedure § 3.3, at 188 (stating the probable cause test is an objective one).* Thus, the crucial issue is whether the facts in Burgess' possession at the time he arrested plaintiff [*22] were sufficient to establish probable cause for the arrest and not whether he acted in "reckless disregard" given the facts at hand. Burgess contends that probable cause is established by the allegations in plaintiff's complaint and the supporting documents.

"In general, probable cause exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst, 101 F.3d 845, 852 (2nd Cir. 1996).* Moreover, "a finding of probable cause can be made based on the 'totality of the circumstances.'" *Bernard, 25 F.3d at 102 (quoting Ill. v. Gates, 462 U.S. 213, 230, 103 S. Ct. 2317, 2328, 76 L. Ed. 2d 527 (1982)).* In evaluating probable cause to arrest, the court should consider the information available to the arresting officer at the time of arrest. *See Peterson v. County of Nassau, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040, 97 L. Ed. 2d 523 (1987)).*

In this case, Burgess relied [*23] on several factors in reaching probable cause to arrest plaintiff. First, Burgess relied on information provided by the security officers at CSI, including Martinez and Yurman, who were investigating the same complaint filed by Tomey in a CSI incident report. Plaintiff's complaint establishes that, as part of Martinez and Yurman's investigation, they "fully interrogated" plaintiff before contacting the NYPD. To establish probable cause to effect an arrest, officers are allowed to rely on information provided to them by fellow officers. *See Bernard, 25 F.3d at 102-03; see also Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (citing Bernard, 25 F.3d at 102-03).* Even if the information relied upon turns out to be false, there is still probable cause to arrest if the arresting officer acted reasonably and in good faith in relying on the information. *See Bernard, 25 F.3d at 102-03 (citing Colon, 60 N.Y.2d at 82, 455 N.E.2d at 1250, 468 N.Y.S.2d at 455).* Here, Burgess investigated Tomey's complaint after she filed an incident report at CSI and after CSI investigated the same complaint. Plaintiff's [*24] complaint asserts no viable challenge to Martinez and Yurman's investigation. Thus, Burgess had every right to rely on the CSI investigation in establishing probable cause to arrest plaintiff.

Second, Burgess interviewed the complainant, Tomey, one day after she filed her police complaint. [15] *See October 3, 1999 DD5.* It is well-established law in

the Second Circuit that "an arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint . . . charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer. 63 F.3d at 119; accord Mistretta v. Prokesch, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998); Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd without opinion, 993 F.2d 1534 (2d Cir. 1993).* In addition, "the veracity of citizen complaints who are the victims of the very crimes they report to the police is assumed." *Lee, 136 F.3d at 103 (quoting Miloslavsky, 808 F. Supp. at 355)); see also 2 Wayne LaFave, Search and Seizure,* [*25] § 3.4(a), at 205 (noting that the Supreme Court has "proceeded as if veracity may be assumed when information comes from the victim of . . . criminal activity").* In this case, the veracity of Tomey's complaint was bolstered when, during Burgess' interview of Tomey, he observed bruises on her left and right arms that were consistent with her allegations that plaintiff physically accosted her. *See October 3, 1999 DD5.* Moreover, Tomey identified plaintiff in person as her assailant. *See October 6, 1999 DD5.*

> 15  Burgess also emphasizes that he conducted an interview of plaintiff, an action that he maintains further supports his claim of probable cause to effectuate plaintiff's arrest. However, plaintiff's complaint appears to allege that plaintiff was interviewed by Burgess after being arrested. *See* Compl. P 22 ("Plaintiff, *after being arrested* by Police Officers from the 122nd Precinct, the plaintiff [sic] was transported to the 122nd Precinct. While in custody of the arresting officers the plaintiff spoke to Police Officer/Detective Burgess. . . . (emphasis added). For purposes of this motion, plaintiff's version of the events will be credited and it will be assumed that Burgess' interview of plaintiff occurred after plaintiff's arrest.

[*26] While plaintiff alleges that Tomey was his girlfriend,' his complaint is devoid of any allegations that Tomey was an incredible complainant. C.f. *Mistretta, 5 F. Supp. 2d at 133* ("The most common situation in which [doubts as to veracity] arise is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation."). In fact, all plaintiff appears to assert is that he was arrested despite his repeated protestations of innocence. *See* Compl. PP 20 (alleging Martinez and Yurman contacted police despite plaintiff's proclamations of innocence), 22 (alleging Burgess detained, charged and arraigned plaintiff despite his pronouncements of innocence). In his opposition papers, plaintiff also asserts that all defendants in this case failed to investigate further the allega-

tions of sexual abuse before arresting plaintiff. [16] *See* Pl.'s Opp'n, Point II. However, the Second Circuit has rejected the argument that conflicting accounts from an alleged victim and an arrestee should have prompted a more thorough investigation by police. Indeed, a finding of probable cause is not foreclosed where a police officer is [*27] presented with different stories from an alleged victim and an arrestee. *See Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001)* (citing *Singer, 63 F.3d at 113, 119*); *Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997)*. In any event, despite plaintiff's assertion, Burgess did not merely rely on Tomey's complaint and identification of plaintiff; he also relied on CSI's investigation and his own observations which corroborated Tomey's allegations.

16    To the extent that plaintiff maintains that his allegations regarding Burgess, Martinez and Yurman's respective "failure to investigate" Tomey's allegations set forth an independent claim, plaintiff is mistaken. Instead,

> allegations of an officer's failure to investigate are considered under the rubric of false imprisonment, false arrest, or malicious prosecution. *See Mistretta, 5 F. Supp. 2d at 135* (allegations of an officer's failure to investigate exculpatory statements prior to arrest addressed in the context of a false arrest claim); *Dukes v. City of New York, 879 F. Supp. 335, 343 (S.D.N.Y. 1995)* (allegations of an officer's failure to interview witnesses and discover addition [sic] evidence addressed in context of a malicious prosecution claim).

*Campbell v. Giuliani, et al., 2000 U.S. Dist. LEXIS 1617*, at *11, n.6, CV-99-2603 (E.D.N.Y. Feb. 16, 2000); *c.f. Stone v. Dept. of Investigation of New York, 1992 U.S. Dist. LEXIS 1120*, CV-91-2471, 1992 WL 25202, at *2, (S.D.N.Y. Feb. 4, 1992) ("There is . . . no constitutional right to an investigation by government officials.") (citations omitted).

[*28] Moreover, "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti, 124 F.3d at 128* (finding probable cause even though police officer chose to believe claimed victim's version of a fight based on visible injuries, notwithstand-

ing the alleged assailants cries of innocence); *see also Curley, 268 F.3d at 70* ("Although it would have been better procedure for the arresting officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him.") (citing *Krause v. Bennett, 887 F.2d 362, 373 (2d Cir. 1989)*); *Mistretta, 5 F. Supp. 2d at 135* ("[Law enforcement officers] have no duty to investigate an exculpatory statement of the accused, and their refusal to do so does not defeat probable cause.") (citations omitted).

Thus, even if plaintiff can prove that he furnished exculpatory statements to the police, a finding of probable cause is not foreclosed. In fact, to take plaintiff's [*29] assertions one step further, even if plaintiff can establish that an investigation might have cast doubt upon the basis of his arrest, probable cause can still be established. *See Curley, 268 F.3d at 70* (citing *Krause, 887 F.2d at 371*). Indeed, the Second Circuit has found that "before making an arrest, if the arresting officer has probable cause, he need not also believe with certainty that the arrestee will be successfully prosecuted." *Id.* Thus, considering the totality of the circumstances, plaintiff has not shown why Burgess had reason to doubt the veracity of Tomey or discredit the investigation by CSI in formulating a probable cause determination. Therefore, Burgess had probable cause to effectuate plaintiff's arrest plaintiff. Accordingly, plaintiff's proposed *§ 1983* false arrest claim against Burgess in his individual capacity would be subject to dismissal and is denied as futile.

As an alternative, Burgess maintains that he is entitled to qualified immunity. [17] The doctrine of qualified immunity protects police officers from being subject to personal liability in cases where official conduct "does not violate clearly established statutory or [*30] constitutional rights of which a reasonable person would have known." *Ricciuti, 124 F.3d at 127*. The right not to be arrested without probable cause is a clearly established right. *See Lee, 136 F.3d at 102*. Thus, the critical issue is whether Burgess' probable cause determination was objectively reasonable. *See Lennon v. Miller, 66 F.3d 416, 422 (2d Cir. 1995)* ("In qualified immunity cases, we are not concerned with the correctness of the defendant's conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene.").

17    In his memorandum, it appears that Burgess is asserting qualified immunity as a defense to plaintiff's claims against him in his official capacity. However, the Second Circuit has stated that "the defense of qualified immunity protects only individual defendants sued in their individual capacity . . . *Ford v. Reynolds, 316 F.3d 351, 2003*

WL 132977, at *4 (2d Cir. 2003). Therefore, the qualified immunity defense will be considered only in the context of plaintiff's claims against Burgess in his individual capacity. In his opposition memorandum, plaintiff does not address Burgess' claim that he is entitled to qualified immunity other than a simple argument that all defendants carry the burden of showing that *absolute* immunity is justified in this case. *See* Pl.'s Opp'n, Point III. While plaintiff is correct that Burgess must establish the defense of immunity, *see Lee, 136 F.3d at 101*, Burgess is seeking *qualified* immunity, which Burgess maintains is established in this case.

[*31] In the Second Circuit, even when there is no probable cause to arrest, a police officer is immune from a false arrest claim "'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Lee, 136 F.3d at 102* (quoting *Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)); accord Posr v. Court Officer Shield # 207, 180 F.3d 409, 416 (2d Cir. 1999)* (same). In otherwords, "in an unlawful arrest action, an officer is immune if he has 'arguable probable cause,' and is subject to suit only if his 'judgment was so flawed that no reasonable officer would have made a similar choice.'" *Provost v. City of Newburgh, 262 F.3d 146, 169 (2d Cir. 2001)* (quoting *Lee, 136 F.3d at 103; Lennon, 66 F.3d at 425*, respectively).

Lastly, it should be noted that the qualified immunity entitlement is an "immunity from suit rather than a mere defense to liability; and . . . is effectively lost if the case is erroneously permitted to go to trial." *Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815-16, 86 L. Ed. 2d 411 (1985).* [*32] Thus, to satisfy the goal of the doctrine, it is necessary that qualified immunity questions be resolved at the earliest possible stage of litigation. *See Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)* (quoting *Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991)* (per curiam)).

Even if plaintiff's arrest and prosecution were without actual probable cause, Burgess' decision to arrest and criminally charge plaintiff was objectively reasonable under the circumstances of this case. As noted above, the Second Circuit allows police officers, in making a probable cause determination, to rely on a victim's allegations that a crime has been committed. *See Singer, 63 F.3d at 119.* Moreover, police officers can rely on information supplied by fellow officers, even if that information ultimately turns out to be false. *See Bernard, 25 F.3d at 102-03.* Lastly, it is not unreasonable for police officers to rely on accounts provided by a victim or officer, even

when an arrestee proclaims his innocence. *See Curley, 268 F.3d at 70* (victim); *Ricciuti, 124 F.3d at 128* [*33] (officer). The complaint in this case contains no allegations that undermine the veracity of the CSI officers or that allege that the CSI investigation was implausible. In addition, other than the mere allegation that Tomey was plaintiff's girlfriend, the complaint also lacks assertions that undermine the victim's credibility. Accordingly, even if there is no actual probable cause in this case, there is "arguable" probable cause that entitles Burgess to qualified immunity. Thus, plaintiff's proposed § 1983 claim for false arrest against Burgess in his individual capacity would be subject to dismissal on this alternative ground. Consequently, plaintiff's request to submit an amended complaint containing such allegations is denied as futile.

### 2. Malicious Prosecution

Malicious prosecution claims brought under § 1983 are guided by the tort law of the forum state. *See Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995); Singer, 63 F.3d at 118.* To state a claim for malicious prosecution under New York law, plaintiff must allege that: "(1) [defendants] initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding [*34] can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in plaintiff's favor." *Ricciuti, 124 F.3d at 130* (citing *O'Brien v. Alexander, 101 F.3d 1479, 1484 (2d Cir. 1996)).* Accordingly, a finding of probable cause defeats a malicious prosecution claim. *See Moore v. Comesanas, 32 F.3d 670, 673 (2d Cir. 1994).* Probable cause to arrest is sufficient for probable cause to prosecute unless facts come to light between the arrest and arraignment that vitiate the probable cause. *See Carson v. Lewis, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999)* (citing *Dukes v. City of New York, 879 F. Supp. 335, 342 (S.D.N.Y. 1995)); see also Dimascio v. City of Albany, 205 F.3d 1322 (2d Cir. 2000)* (table). Burgess argues that since the facts at plaintiff's arraignment were based on the facts known at the time of his arrest, probable cause existed for both the arrest and the prosecution of plaintiff. In response, plaintiff makes only vague and general allegations that a prosecution was begun despite evidence given to the NYPD and Burgess before plaintiff's arrest, and allegedly in the [*35] District Attorney's possession, that exonerated plaintiff. *See* Compl. PP 23, 24. These allegations do not suffice to demonstrate that new evidence came to light after plaintiff's arrest that undermined the probable cause for his arrest.

Moreover, once a suspect has been indicted, there is a strong presumption of probable cause for purposes of defending against a malicious prosecution claim. *See Green v. Montgomery, 219 F.3d 52, 60 (2d Cir. 2000)* (citing *Marshall v. Sullivan, 105 F.3d 47, 50 (2d Cir. 1996)); Colon, 60 N.Y.2d at 82, 455 N.E.2d at 1250, 468*

*N.Y.S.2d at 455* (citations omitted). Plaintiff's complaint establishes that he was indicted. *See* Compl. P 24. Therefore, to overcome this presumption, plaintiff must allege that "the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Colon, 60 N.Y.2d at 83, 455 N.E.2d at 1251, 468 N.Y.S.2d at 456; accord Marshall, 105 F.3d at 50; Bernard, 25 F.3d at 104.* Plaintiff's complaint contains no allegations of fraud, perjury or suppression of evidence. [18]

> 18    Burgess argues that plaintiff cannot in fact support an allegation of fraud, perjury or suppression of evidence as to him since he did not testify before the grand jury that indicted plaintiff. However, as noted above, this fact, which was attested to in Burgess' affidavit, is not properly before this court and, therefore, will not be considered for purposes of this motion.

[*36]    The only assertion of "bad faith" that can be gleaned from plaintiff's complaint is that the allegations against him were of a "conspiratorial nature." Compl. PP 23, 24. However, plaintiff's proclamations of conspiracy amount to nothing more than generalized accusations. To be sure, plaintiff's complaint merely asserts that certain defendants disregarded information supplied by plaintiff apparently demonstrating the "conspiratorial nature" of the allegations lodged against him. *Id.* In his opposition memorandum, plaintiff attempts to flesh out these allegations with an argument that police misconduct can be inferred from the fact that the jury acquitted plaintiff, despite Tomey's testimony at trial. *See* Pl.'s Opp'n, Point II. Plaintiff appears to be asserting that Burgess acted in bad faith by relying for purposes of probable cause on Tomey's allegations, which, because plaintiff was ultimately acquitted, plaintiff argues were patently false. *See* Pl.'s Opp'n, Point II (arguing that "the defendants unreasonably sided with the complainant...."). Plaintiff's argument is unpersuasive and contrary to law.

As noted above, Burgess was not required to investigate plaintiff's [*37] protestations of innocence. *See Ricciuti, 124 F.3d at 128.* Indeed, an officer is not required to play judge or jury with conflicting evidence presented to him at the time of an arrest. *See Curley, 268 F.3d at 70* (citing *Krause, 887 F.2d at 371*). Moreover, an arrestee's ultimate guilt or innocence is irrelevant to the determination of probable cause. *See United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990); Miloslavsky, 808 F. Supp. at 354* (citations omitted). Thus, the fact that plaintiff was ultimately found not guilty has no effect on the fact that there was probable cause to arrest him and bring him before a grand jury. Therefore, plaintiff's vague allegations of conspiracy and exculpatory evidence are insufficient to defeat the strong presumption

of probable cause created by his indictment. [19] Accordingly, as plaintiff's amended complaint fails to adequately allege that Burgess' did not have probable cause to prosecute him, plaintiff's proposed *§ 1983* claim of malicious prosecution is subject to dismissal as to Burgess.

> 19    Moreover, to the extent that plaintiff's conspiracy allegations attempt to assert a separate *§ 1983* claim, such allegations fail. A conspiracy is actionable under *§ 1983* only if plaintiff can prove an actual violation of constitutional rights. Since there was probable cause to arrest and prosecute plaintiff, plaintiff cannot prove an actual violation of his constitutional rights as to Burgess. *See Singer, 63 F.3d at 119-20.* Moreover, assuming *arguendo* that the complaint establishes a violation of plaintiff's constitutional rights, a complaint "containing only conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983)* (per curiam). Thus, plaintiff's conspiracy claim is dismissed as to Burgess because plaintiff's complaint cannot support a violation of his constitutional rights, and even if it could, the complaint contains no specific allegations to support his claim of conspiracy.

[*38]    Lastly, in a *§ 1983* claim for malicious prosecution, "the Court applies the same standard used to evaluate qualified immunity in the false arrest context." *Hardin v. Meridien Foods, 2001 U.S. Dist. LEXIS 15564, CV-98-2268, 2001 WL 1150344, at *5 (S.D.N.Y. Sept. 27, 2001)* (citing *Lennon, 66 F.3d at 425*). Thus, for the reasons stated above, even if Burgess did not have actual probable cause to prosecute plaintiff, he had arguable probable cause. Accordingly, like plaintiff's proposed *§ 1983* false arrest claim, plaintiffs proposed *§ 1983* malicious prosecution claim against Burgess in his individual capacity is denied as futile.

### 3. *§ 1981* [20]

> 20    In his motion to dismiss, Burgess does not address plaintiff's *§ 1981* claim.

Count I of plaintiff's amended complaint appears to allege a *§ 1981* claim against Burgess. [21] *Section 1981* "prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, [and it] covers. . . efforts [*39] to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations." *Mian v. Donaldson, Lufkin & Jenrette*

*Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). To state a claim under § 1981, plaintiff must allege: (1) that he is a member of a racial minority; (2) that Burgess had an intent to discriminate against him on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute, namely make and enforce contracts, sue and be sued, give evidence, etc. *See Mian*, 7. F.3d at 1087.

> 21 Plaintiff also asserts a violation of his rights under the *Ninth* and *Thirteenth Amendments*. The *Ninth Amendment*, which concerns unenumerated rights, and the *Thirteenth Amendment*, which concerns slavery and involuntary servitude, are inapplicable to this case. Accordingly, these claims are dismissed. *See Campbell, 2000 U.S. Dist. LEXIS 1617*, at *17 (dismissing claims premised on *Ninth* and *Thirteenth Amendment* as inapplicable in case involving claims of false arrest and malicious prosecution under § 1981 and § 1983).

[*40] To sustain a motion to dismiss, plaintiffs complaint must assert "that the defendant['s] acts were purposefully discriminatory. . . and racially motivated." *Albert v. Carovano*, 851 F.2d 561, 571-72 (2d Cir. 1988) (en banc). Plaintiff cannot defeat a *Rule 12(b)(6)* motion with "naked assertions" of discrimination; instead "the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar College*, 35 F.3d 709, 713-14 (2d Cir. 1994) (internal citations omitted).

Plaintiff's compliant establishes that he is black and that Tomey, the complainant, is white. *See* Compl. PP 19, 29. Plaintiff also alleges, "on information and belief" that some of the defendant police officers and/or CSI campus security officers also are white. *Id. P* 29. While plaintiff's amended complaint asserts that Burgess and other police officers "turned a deaf ear on the repeated pleas [of innocence] of the plaintiff, solely because the complainant was a white female and because the plaintiff. . . was Black," *see* Am. Compl. P 22, these [*41] bald allegations are insufficient to establish racially discriminatory intent under § 1981. *See Yusuf*, 35 F.3d at 713-14. Even if these allegations could establish such intent, plaintiff's complaint is devoid of any allegations that Burgess or any other police officers prevented plaintiff from enforcing or pursuing judicial enforcement of any rights, contractual or otherwise. Accordingly, to the extent plaintiff's amended complaint seeks to assert a § 1981 claim against Burgess in his individual capacity, it fails to state a viable claim and is dismissed as futile.

4. Pendent State Law Claims

Since none of plaintiff's federal law claims against Burgess in his individual capacity survive a motion to dismiss, this court declines to exercise pendent jurisdiction over the state law claims asserted against Burgess and the unnamed police officers in Count IV of plaintiff's original and amended complaint. *See Grace v. Rosenstock*, 228 F.3d 40, 55 (2d Cir. 2000) (stating that if all of plaintiffs "federal claims are dismissed before trial. . . the state claims should be dismissed as well.") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)); [*42] *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 103 (2d Cir. 1998) (stating that since all of plaintiffs federal claims fail, "the balance of factors. . . favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice") (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988)). Consequently, the issue of whether plaintiffs state law tort claims were instituted in accordance with the Notice of Claim requirements under New York General Municipal Law will not be addressed.

(2)

Official Capacity Claims

In both his original and amended complaint, plaintiff asserts claims under § 1981 and § 1983 against Burgess in his official capacity as a police officer with the NYPD. *See* Compl. P 9; Am. Compl. P 8. A suit against an officer is his official capacity is essentially a suit against the government entity itself. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691, n.55, 98 S. Ct. 2018, 2036, n.55, 56 L. Ed. 2d 611 (1978). Accordingly, plaintiffs claim against Burgess in his official capacity is basically a [*43] claim against the City of New York. To establish municipal liability, plaintiff must allege that a municipal custom or policy resulted in a deprivation of plaintiff's constitutional rights. *See id.* at 690-91, 98 S. Ct. at 2035-36. "The inference that such a policy existed may arise from 'circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123).

While Count III of plaintiff's initial complaint contained numerous allegations of municipal liability against the City of New York and the NYPD relating to the conduct of defendant police officers, at this court's urging, those allegations were withdrawn and do not appear in plaintiff's amended complaint. [22] The only discernible allegations of municipal liability in plaintiff's amended complaint are bald claims against the City of New York and "City of Staten Island" of failure to "properly train,

supervise and discipline its officers to avoid the use of [*44] unnecessary force, to refrain from acting without racial animus, to avoid the arbitrary stop and harassment of law-abiding black persons without probable cause." Am. Compl. PP 30 (City of New York), 32 (Staten Island). In addition, plaintiff asserts that the City of New York and its Executive Department and the NYPD, among others, failed to investigate the conduct of defendant police officers and to discipline defendants for their conduct. See id. PP 31 (discipline), 32 & 34 (investigate). Notably, plaintiff's complaint lacks any allegations of deliberate indifference to plaintiff's rights. Thus, these conclusory allegations are insufficient to establish a municipal policy or custom.

> 22  Plaintiff's amended complaint does, however, contains such allegations against Jackson relating to the conduct of CSI campus security officers. These claims are discussed *infra* in the context of plaintiff's claims against Jackson in her individual capacity.

Even if plaintiff's conclusory allegations could suffice to allege [*45] a municipal policy or custom, "a claim of inadequate training and supervision under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised." *Ricciuti, 941 F.2d at 123* (citing *City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573, 89 L. Ed. 2d 806 (1986)).* In this case, Burgess has established that he had probable cause to arrest plaintiff and that, if he did not, he at least was objectively reasonable in his determination of probable cause and thus entitled to qualified immunity. Consequently, since plaintiff cannot sustain a claim for constitutional deprivation by Burgess, plaintiff's claim of municipal liability also fails.

Accordingly, since the allegations against Burgess are premised on allegations of personal liability, the claims against Burgess in his official capacity are dismissed. See *Campbell, 2000 U.S. Dist. LEXIS 1617*, at *4-5 (dismissing claims of false arrest and malicious prosecution brought against NYPD detective in his official capacity because such claims were based on allegations of personal liability and not on a government [*46] entity's official policy or custom).

**State Defendants**

State defendants maintain that they are immune from suit under the *Eleventh Amendment* and have moved to dismiss plaintiff's complaint under *Rule 12(b)(1)* for lack of jurisdiction. Plaintiff argues that this assertion is "without merit and really begs the question." Pl.'s Opp'n, Point III. "Courts must police subject matter delineations on their own initiative." *Preston v. New*

*York, 223 F. Supp. 2d. 452, 461 (S.D.N.Y. 2002)* (citing, *inter alia Fed. R. Civ. P. 12(h)*). Thus, when considering a motion to dismiss pursuant to *Rule 12(b)(1)*, a court is required to resolve disputed jurisdictional facts. See *Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1019 (2d Cir. 1993); see also Ruhrgas A.G. v. Marathon Oil Co., 526 U.S. 574, 583-84, 119 S. Ct. 1563, 1569-70, 143 L. Ed. 2d 760 (1999).* When doing so, the court may reference evidence outside the pleadings, see *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000)*, and the court is not required to draw inferences in favor of the plaintiff. See *Newsom-Lang v. Warren Int'l, 129 F. Supp. 2d 662, 663-64 (S.D.N.Y. 2001).* [*47] As the party "seeking to invoke the subject matter jurisdiction of the district court," plaintiff bears the burden of demonstrating that there is subject matter jurisdiction in this case. *Scelsa v. City Univ. of New York, 76 F.3d 37, 40 (2d Cir. 1996)* (citations omitted).

**Defendants CUNY and CSI**

It is well settled that the *Eleventh Amendment* bars suits for any kind of relief brought in federal court by a private individual against a state or its agencies in the absence of Congress' explicit abrogation of the state's sovereign immunity or the state's unequivocal waiver of its immunity. [23] See e.g., *Bd. of Trustees v. Garrett, 531 U.S. 356, 363-64, 121 S. Ct. 955, 962, 148 L. Ed. 2d 866 (2001); Graham, 473 U.S. at 169, 87 L. Ed. 2d 114, 105 S. Ct. at 3107; Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-100, 104 S. Ct. 900, 906-908, 79 L. Ed. 2d 67 (1984).* The State of New York and its agencies have not consented to suit in federal court. See *Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d Cir. 1977).* Moreover, neither § 1981 nor § 1983 validly abrogates a state's sovereign immunity. [*48] [24] See *Quern v. Jordan, 440 U.S. 332, 343-45, 99 S. Ct. 1139, 1146-47, 59 L. Ed. 2d 358 (1979); see also Chin Chinn v. City Univ. of New York, 963 F. Supp. 218, 224 n.1 (1997) (§ 1981); Trotman, 557 F.2d at 38 (§ 1983).*

> 23  The *Eleventh Amendment to the U.S. Constitution* reads as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *U.S. Const. amend. XI.*

> 24  For this reason, while plaintiff is correct in his assertion that Congress may authorize suits against nonconsenting states through its enforcement powers under § 5 of the Fourteenth Amendment, such argument is inapplicable in this

2003 U.S. Dist. LEXIS 2886, *

context. *See* Pl.'s Opp'n, Point IV (citing *Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 49 L. Ed. 2d 614, 96 S. Ct. 2666 (1976); Scheuer v. Rhodes, 416 U.S. 232, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)).*

[*49] An entity like CUNY, [25] which is not a state agency, is nevertheless entitled to immunity if it is an "arm of the state." *Rosa R. v. Connelly, 889 F.2d 435, 437 (1989)* (considering whether local school board was "arm of the state and thus entitled to *Eleventh Amendment* protection from suit in federal court"); *accord Pikulin v. City Univ. of New York, 176 F.3d 598, 600 (2d Cir. 1999)* (per curiam) (quoting *Rosa R., 889 F.2d at 437).*

25   As noted earlier, CUNY is considered to include "each senior college and each community college." *N.Y. Educ. Law § 6202 (2).* CSI is specifically referred to in the statute as a "senior college." *Id. § 6202 (5); see also Weinbaum v. Cuomo, 219 A.D. 2d 554, 555, 631 N.Y.S.2d 825 (1st Dep't 1995)* (finding CSI a CUNY senior college).

In *Pikulin,* a case involving a CUNY community college, the Second Circuit vacated and remanded the district court decision based [*50] on a line of cases that found CUNY and/or its senior colleges arms of the state for purposes of *Eleventh Amendment* immunity. [26] *See 176 F.3d at 600-01.* These cases relied on the State of New York's obligation, under *New York Education Law § 6205(1),* [27] to indemnify CUNY's trustees, officers, and staff against liability. *See, e.g., Burrell v. City Univ. of New York, 995 F. Supp. 398, 411; Moche v. City Univ. of N.Y., 781 F. Supp. 160, 165; Minetos v. City Univ., 875 F. Supp. 1046, 1053; Scelsa v. City Univ. of N.Y., 806 F. Supp. 1126, 1137.* The court criticized exclusive reliance on the indemnification provisions of *§ 6205(1)* as inadequate, noting that the provision "requires the state to indemnify only such individuals affiliated with CUNY and does not address the state's financial responsibility, if any, to satisfy judgment entered against CUNY itself." *Pikulin, 176 F.3d at 600.* Instead, the court stated that when determining whether an institution is an arm of the state entitled to *Eleventh Amendment* immunity,

the appropriate analysis focuses both on the extent to which the state would be responsible for satisfying the judgment that might be entered against the [*51] defendant entity, *see [Rosa R., 889 F.2d] at 437-38; [Trotman, 557 F.2d at 38],* and on the degree of supervision exercised by the state over the defendant entity. *See Rosa R., 889 F.2d at 437.*

*176 F.3d at 600.*

26   *See Burrell v. City Univ. of New York, 995 F. Supp. 398, 410-11 (S.D.N.Y. 1998); Minetos v. City Univ. of New York, 875 F. Supp. 1046, 1053 (S.D.N.Y. 1995); Moche v. City Univ. of New York, 781 F. Supp. 160, 165 (E.D.N.Y. 1992); Scelsa v. City Univ. of New York, 806 F. Supp. 1126, 1137 (S.D.N.Y. 1992); Silver v. City Univ. of New York, 767 F. Supp. 494, 499 (S.D.N.Y. 1991); Ritzie v. City Univ. of New York, 703 F. Supp. 271, 276-77 (S.D.N.Y. 1989).*

27   That section of the New York Education Law provides as follows:

*§ 6205.* Liability of board of trustees and liability of city university of New York.

1. The state shall save harmless and indemnify members of the board of trustees and any duly appointed member of the teaching or supervising staff, officer or employee of the senior colleges under the jurisdiction of such board pursuant to section seventeen of the public officers law against any claim, demand, suit or judgment arising by reason of any act or omission to act by such person occurring in the discharge of its duties and within the scope of his service on behalf of such university.

*N.Y. Educ. Law § 6205(1).*

[*52] The distinction between this case and *Pikulin* is that this case involves a CUNY senior college, while *Pikulin* involved a CUNY community college. This distinction is important because senior colleges enjoy a different relationship with the state than do community colleges. *Compare* N.Y. Educ. Law §§ 6244(1) and *6229* with *N.Y. Educ. Law §§ 6224(4) and 6230 see also Hester-Bey v. New York City Tech. Coll., 2000 U.S. Dist. LEXIS 5323, CV-98-5129, 2000 WL 488484, at *3-4 (E.D.N.Y Mar. 22, 2000)* (describing differences in the New York Education Law between CUNY senior colleges and community colleges). Accordingly, in the post-*Pikulin* era, courts ruling on the immunity status of CUNY and its senior colleges have distinguished the holding in *Pikulin* and have found the colleges to be

arms of the state and thereby immune from suit *See, e.g., Sacay v. Research Found. of the City Univ. of New York, 193 F. Supp. 2d 611, 624-25 (E.D.N.Y. 2002); Salerno v. City Univ. of New York, 2000 U.S. Dist. LEXIS 12933, CV-99-11151, 2000 WL 1277324, at *2-4 (S.D.N.Y. Sept. 8, 2000), vacated in part on reconsideration on other grounds, 2002 U.S. Dist. LEXIS 24454, CV-99-11151, 2002 WL 31856953 (S.D.N.Y. Dec. 19, 2002);* [*53] *Becker v. City Univ. of New York, 94 F. Supp. 2d 487, 489 (S.D.N.Y. 2000); Hester-Bey, 2000 U.S. Dist. LEXIS 5323, 2000 WL 488484, at *2-4.*

With regard to the first *Pikulin* analysis, "senior colleges of CUNY are both funded and administered, by the state to a great degree." *Hester-Bey, 2000 U.S. Dist. LEXIS 5323, 2000 WL 488484,* at *4. Indeed, the New York Education Law specifically provides for the state's payment of money judgments entered against CUNY senior colleges:

> Notwithstanding any inconsistent provisions of law, with respect to claims against the city university which arise on or after July first, nineteen hundred seventy-nine, the comptroller of the state of New York is authorized to examine, audit, certify for payment and pay from funding sources available for payment of claims by the state any settlement, order or judgement in any federal or state court, other than the court of claims, or any administrative tribunal which pertains to a senior college of the city university of New York.

*N.Y. Educ. Law § 6224(6); see Perry v. City of New York, 126 A.D.2d 714, 714, 511 N.Y.S.2d 310, 310 (2nd Dept. 1987)* (finding state responsible for paying [*54] money judgments against CUNY senior colleges); *see also Becker, 94 F. Supp. 2d at 489; Hester-Bey, 2000 U.S. Dist. LEXIS 5323, 2000 WL 488484,* at *2-3. Moreover, the state court of claims, which hears claims against New York State and its agencies, has exclusive jurisdiction over claims brought by any person against CUNY and its senior colleges for wrongful death, breach of contract and in tort. *See N.Y. Educ. Law § 6224(4); see also* id. *§ 6224(5)* (providing for state's payment of judgments entered against CUNY in state court of claims); *Hester-Bey, 2000 U.S. Dist. LEXIS 5323, 2000 WL 488484,* at *4. In addition, the state has ultimate responsibility for funding the budget of CUNY senior colleges. Indeed, *§ 6221(A)(4)* provides for the state's reimbursement of CUNY senior college's net operating expenses. *See N.Y. Educ. Law § 6221(A)(4); see also* id. *§ 6201(1).*

In his opposition memorandum, plaintiff cites *§ 6201(1) of the New York Education Law* in support of his contention that CUNY is not an arm of the state for *Eleventh Amendment* purposes. *See* Pl.'s Opp'n, Point IV. This provision, which sets forth legislative findings and intent, states in relevant part: [*55] "In order to meet the state's responsibility to provide post-secondary education in New York city beyond the associate degree level, as it does elsewhere in the state, *there should be full state funding of senior college operating and debt service.*" *N.Y. Educ. Law § 6201(1)* (emphasis added). Contrary to plaintiff's assertion, this provision actually *strengthens* the argument that the state has assumed financial responsibility for CUNY. *See Becker, 94 F. Supp. 2d at 490* (relying on, *inter alia, § 6201* as support for finding that the state would pay a judgment against a CUNY senior college). Accordingly, "it is clear that any award against a senior college of CUNY will be paid for by public funds of the New York State treasury." *Hester-Bey, 2000 U.S. Dist. LEXIS 5323, 2000 WL 488484,* at *4; accord Becker, 94 F. Supp. 2d at 491.*

However, as the *Pikulin* court advised, the analysis of CUNY's relationship to the state does not stop at this conclusion. With regard to the second *Pikulin* analysis, the state "has ultimate authority over how CUNY senior colleges are operated and governed." *Becker, 94 F. Supp. 2d at 491.* In fact, the [*56] state supervises the process for determining the budget for CUNY senior colleges, which includes presentment of a proposed budget for the senior colleges' operating and capital expenses to the governor. *See N.Y. Educ. Law § 6230(2); see also Becker, 94 F. Supp. 2d at 490; Hester-Bey, 2000 U.S. Dist. LEXIS 5323, 2000 WL 488484,* at *4. This process also provides for the governor to add his recommendations as part of the executive budget submitted to the state legislature. *See N.Y. Educ. Law § 6230(3).* In addition, the state comptroller is required to perform annual audits of the senior colleges' annual financial reports and to prepare a report to the governor and other officials. *See* id. *§ 6230(4); see also Becker, 94 F. Supp. 2d at 490.*

Moreover, other factors that indicate that the State exercises a great degree of supervision over CUNY senior colleges include: (1) the fact that the governor appoints 10 out of 17 members of CUNY's board of trustees *see N.Y. Educ. Law §§ 6204(2)(a) & 6204(2)(d);* (2) the fact that the real property of the CUNY senior colleges is owned by the state *see* id. *§ 6219(a)(1),* and (3) the fact that CUNY may [*57] acquire property for use by senior colleges using the state's eminent domain power, *see* id. *§§ 301, 6213. See Becker, 94 F. Supp. 2d at 490-91; Hester-Bey, 2000 U. S. Dist. LEXIS 5323, 2000 WL 488484,* at *4. These factors adequately establish that CUNY and its senior colleges are supervised by the State to a great degree.

Again, plaintiff asserts that *§ 6201(1)* and *§ 6201(2)* compel a different conclusion. Plaintiff has emphasized the legislature's finding that "the governance of the university must reflect increased state responsibility but should preserve the city's participation in the governance of the university it created and developed at city expense." *N.Y. Educ. Law § 6201(1).* Section 6201(2) states, in relevant part, that "the legislature intends that the city university of New York should be maintained as an independent system of higher education." *Id. § 6201(2).* These provisions do not undermine a finding that the state has a great deal of supervision over CUNY and its senior colleges. If anything, in light of all the other factors supporting state authority and control over CUNY and its senior colleges, these legislative findings indicate that "although [*58] CUNY has a degree of independence, it is ultimately accountable to, and dependent upon, the state." *Becker, 94 F. Supp. 2d at 491.* Thus, defendants CUNY and CSI - a CUNY senior college - are arms of the state of New York and are therefore immune from suit under *§ 1981* and *§ 1983.* [28] Consequently, all of plaintiff's claims against these defendants are dismissed as barred by the *Eleventh Amendment.*

28    This finding is consistent with every post-Pikulin case that has addressed the question of whether CUNY and/or its senior colleges are arms of the state for *Eleventh Amendment* purposes. *See Husain v. Springer, et al., 193 F. Supp. 2d 664 (E.D.N.Y. 2002); Sacay, 193 F. Supp. 2d 611; Hamilton v. City College of the City Univ. of New York, 173 F. Supp. 2d 181, 184 (S.D.N.Y. 2001); see also Johnson v. City Univ. of New York, 2002 U.S. Dist. LEXIS 13718, CV-00-4964, 2002 WL 1750841 (S.D.N.Y. July 24, 2002)* ; *Ware v. City Univ. of New York, 2002 U.S. Dist. LEXIS 10905, CV-01-9305, 2002 WL 1343752 (S.D.N.Y. June 18, 2002); Sank v. City Univ. of New York, et al., 2002 U.S. Dist. LEXIS 5928, CV-94-0253, 2002 WL 523282 (S.D.N.Y. Apr. 5, 2002); Kulkarni v. City Univ. of New York, et al., 2001 U.S. Dist. LEXIS 18449, CV-01-3019, 2001 WL 1415200 (S.D.N.Y. Nov. 13, 2001); Loren v. Levy, et al., 2001 U.S. Dist. LEXIS 11809, CV-00-7687, 2001 WL 921173 (S.D.N.Y. Aug. 14, 2001); During v. City Univ. of New York, et al., 2002 U.S. Dist. LEXIS 9796, CV-01-9584, 2002 WL 1159675 (S.D.N.Y. May 31, 2001); Bunch v. City Univ. of New York, 2000 U.S. Dist. LEXIS 14227, CV-98-1172, 2000 WL 1457078 (S.D.N.Y. Sept. 28, 2000), reconsideration denied by 2000 U.S. Dist. LEXIS 17455, 2000 WL 1810959* ; *Salerno, 2000 U.S. Dist. LEXIS 12933, 2000 WL 1277324; Becker, 94 F.*

*Supp. 2d 487; Hester-Bey, 2000 U.S. Dist. LEXIS 5323, 2000 WL 488484.*

[*59]  **Defendants Jackson, Martinez and Yurman**

**(1)**

**Official Capacity Claims**

*Eleventh Amendment* immunity also extends to claims for monetary damages brought against state officers sued in their official capacities. *See Ford, 316 F.3d 351, 2003 WL 132977, at *3; Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997); see also Chinn, 963 F. Supp. at 224.* In both his initial and amended complaint, plaintiff sued defendants Jackson, Martinez and Yurman in their official capacities. [29] *See* Compl. PP 8, 11, 12; Am. Compl. PP 7, 10-11. Accordingly, these defendants assert that they are immune from suit. Plaintiff, however, argues that under the doctrine of *Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908),* these defendants are not entitled to immunity.

> In *Ex Parte Young,* the Supreme Court established a limited exception to the general principal of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the *Eleventh Amendment.* [*60]

*Ford, 316 F.3d 351, 2003 WL 132977,* at *3 (quotation omitted). Very recently, the Second Circuit stated that "'in determining whether the doctrine of *Ex Parte Young* avoids an *Eleventh Amendment* bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 152 L. Ed. 2d 871, 122 S. Ct. 1753, 1760 (2002)* (internal citation and quotation marks omitted)). This characterization is important since, "retrospective compensatory relief, whether 'expressly denominated as damages... or tantamount to an award for damages for a past violation of federal law,' does not vindicate sufficient interests to justify overcoming the *Eleventh Amendment* bar." *Chinn, 963 F. Supp. at 225* (quoting *Papasan v. Allain, 478 U.S. 265, 278, 106 S. Ct. 2932, 2940, 92 L. Ed. 2d 209 (1986)).*

29    Plaintiff alleges in his complaint that Jackson is "Vice President" of CSI, Martinez is "employed as a Public Safety Officer/Director of

Public Safety" with CSI, and Yurman is "employed as a Public Safety Officer/Asst. Director of Public Safety" at CSI. Compl. PP 8, 11-12; *accord* Am Compl. PP 7, 10-11.

[*61] In this case, plaintiff's original and amended complaint unequivocally seek monetary relief against defendants Jackson, Martinez and Yurman for an alleged deprivation of plaintiffs rights based on an arrest and subsequent prosecution of plaintiff. *See* Compl., Count I, "wherefore" clause (seeking $ 1,000,000.00 in actual and compensatory damages); *id.,* Count II, "wherefore" clause (same). Nowhere in these complaints does plaintiff seek injunctive relief. Thus, there being no claim for prospective injunctive relief, *Ex Parte Young* is inapplicable to this case. *See Ford, 316 F.3d 351, 2003 WL 132997,* at *4. Accordingly, as plaintiff's § *1981* and § *1983* claims against Jackson, Martinez and Yurman seek solely "retrospective compensatory relief" for actions taken in their official capacity, these claims are dismissed. [30] *See Chinn, 963 F. Supp. at 225* (dismissing on *Eleventh Amendment* basis § *1981* claims for monetary relief asserted against Dean of CUNY senior college in her official capacity).

> 30  Since these claims are dismissed on *Eleventh Amendment* grounds, it is not necessary to consider state defendants' alternative ground for dismissal, namely that neither a state agency or entity, nor a state official sued in his or her official capacity, is a "person" subject to suit within the meaning of § *1981* or § *1983*.

[*62] (2)

**Individual Capacity Claims**

"However, the *eleventh amendment* does not extend to a suit against a state official in his [or her] individual capacity, even when the conduct complained of was carried out in accordance with state law.'" *Ford, 316 F.3d 351, 2003 WL 132997,* at *4 (quoting *Berman Enters. v. Jorling, 3 F.3d 602, 606 (2d Cir. 1993)).* In his amended complaint, plaintiff seeks to assert his § *1981* and § *1983* claims against Martinez and Yurman in their individual, as well as official, capacity. In both his original and amended complaints, plaintiff sued Jackson in her individual and official capacity. These individual-capacity claims are not barred by the *Eleventh Amendment. See Chinn, 963 F. Supp. at 225.*

**Martinez and Yurman**

State defendants, however, assert that the § *1983* claims against Martinez and Yurman in their individual capacity should be dismissed pursuant to *Rule 12(b)(6)* for failure to state a claim because those defendants (1) acted with probable cause and/or (2) are entitled to qualified immunity. [31] The crux of plaintiff's claims against these defendants is that Martinez and Yurman had no justification [*63] for "approaching" plaintiff, "escorting" him to the campus security office, and thereafter contacting the NYPD. *See* Compl. PP 17-21. However, by plaintiff's own account, these officers acted with probable cause, and their conduct is thus not actionable. Indeed, as stated above, probable cause is an absolute defense to an action for false arrest under § *1983*. *See Singer, 63 F.3d at 118* (citations omitted). In this case, Martinez and Yurman were responding to a report of sexual assault by Tomey, a person described as plaintiff's girlfriend. *See* Compl. P 17. In the Second Circuit, an allegation by a crime victim personally acquainted with her alleged assailant establishes probable cause. *See Curley, 268 F.3d at 70; Lee, 136 F.3d at 103.* As noted above, plaintiff's complaint sets forth no allegations that undermine Tomey's accusations. Thus, Martinez and Yurman were justified in relying on Tomey's complaint to establish probable cause to detain plaintiff.

> 31  State defendants do not argue any grounds for dismissal of plaintiff's § *1981* claim asserted against Martinez, Yurman and Jackson in their individual capacity. Nonetheless, plaintiff cannot maintain a § *1981* claim against Martinez and Yurman because plaintiff's complaint is devoid of any allegations that these state defendants had an intent to discriminate against him or that, even if they did, they deprived plaintiff of one of the statute's enumerated rights. Plaintiff's § *1981* claim against Jackson is discussed *infra* in the context of plaintiff's claims against Jackson in her individual capacity.

[*64] Plaintiff alleges that he "attempted to plead his innocence," but that the officers ignored his pleas, and nevertheless contacted the NYPD, who arrested plaintiff. However, probable cause is not foreclosed when an officer relies on a victim's complaint, even if the alleged assailant provides a different version of events. *See Curley, 268 F.3d at 70.* Thus, under applicable law, and based on information available to them at the time of plaintiff's detainment, Martinez and Yurman acted appropriately and with probable cause. Accordingly, plaintiff's proposed § *1983* false arrest claim against these state defendants in their individual capacity is denied as futile.

Alternatively, even if Martinez and Yurman did not have actual probable cause, state defendants argue that their conduct was not objectively unreasonable and that these defendants are therefore entitled to qualified immunity. [32] In the false arrest context, an action, is objectively unreasonable only if "'no officer of reasonable competence could have made the same choice in similar

circumstances.'" *Lee, 136 F.3d at 102* (quoting *Lennon, 66 F.3d at 420-21*). In this case, Martinez [*65] and Yurman responded appropriately to a report of sexual assault by a crime victim, who could not have been mistaken as to plaintiff's identity. Thus, even if plaintiff can prove that he presented Martinez and Yurman with an account that conflicted with Tomey's version of events, these defendants are entitled to qualified immunity because "officers of reasonable competence could disagree" as to the determination of probable cause. *Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).* Accordingly, the proposed *§ 1983* claim against Martinez and Yurman in their individual capacity is subject to dismissal on this alternative ground and is denied as futile.

> 32  Of course, as with Burgess, if Martinez and Yurman had actual probable cause, they would be entitled to qualified immunity on the basis that their conduct did not violate plaintiff's constitutional right. *See Saucier, 533 U.S. at 201; see also Lee, 136 F.3d at 102* (stating that the right not to be arrested without probable cause is a constitutional right).

[*66] **Jackson**

**A. § 1983**

To the extent that plaintiff alleges against Jackson a *§ 1983* claim premised on plaintiff's arrest and/or prosecution, state defendants argue that this claim fails. To state a claim under *§ 1983*, "a plaintiff must allege the violation of a right secured by the Constitution and law of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 40 (1988).* Plaintiff's amended complaint contains no allegations whatsoever of Jackson's involvement in any of the events relating to plaintiff's arrest and prosecution. [33] "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under *§ 1983*.'" *Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)* (quoting *Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991)).* Because plaintiff's complaint contains no allegations of Jackson's personal involvement in plaintiff's arrest and prosecution, any claim for false arrest against her [*67] is "fatally defective on its face" and is dismissed. *Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987)* (quotation and citation omitted); *see also, Dove v. Fordham University, 56 F. Supp. 2d 330, 335-36 (S.D.N.Y. 1999), aff'd without opinion, 210 F.3d 354 (2d Cir. 2000)* (table) (dismissing *§ 1981* and *§ 1983* claims as legally deficient because compliant was devoid of allegations of

wrongdoing or personal involvement by particular defendants).

> 33  Plaintiff's complaint does, however, allege that each defendant was acting under color of state law. *See* Compl. P 15.

Nonetheless, Count I of plaintiff's amended complaint contains the following allegation against Jackson:

> Shortly after the arrest of the plaintiff, Defendant Carol Jackson, as the Vice President of [CSI] coerced and forced and threatened the plaintiff and in effect disbarred and, unlawfully removed the plaintiff as a student of [CSI], even though the plaintiff was duly qualified [*68] to be in attendande at said College. Despite being found not guilty by the jury at the completion of the criminal prosecution against the plaintiff, defendant Carol Jackson has unjustly and unlawfully failed and/or refused to permit the plaintiff to continue his studies at [CSI]. The actions of Defendant Jackson were not in accordance with the Plaintiff's Constitutional rights and other legal requirements and were done with race based animus towards the plaintiff solely because he is Black and born in Nigeria.

Am. Compl. P 37. [34] As the paragraph indicates, plaintiff does not specify the constitutional rights that he alleges Jackson violated. A plaintiff "must make specific allegations that indicate a deprivation of constitutional rights; general indirect and conclusory allegations are not sufficient." *Hankard v. Town of Avon, 126 F.3d 418, 423 (2d Cir. 1997); see also Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987)* (stating that complaints based on a violation of civil rights must include specific allegations of facts showing a violation of rights "instead of a litany of general conclusions that shock but have no meaning"). Thus, it is [*69] arguable that these general allegations are insufficient to state a claim under *§ 1983*. Nonetheless, it is apparent that plaintiff's counsel merely inserted this paragraph at the end of the allegations in Count I. Thus, liberally construing the complaint, it can be argued that the previous paragraph, which asserts that the allegations in Count I constitute a violation of, *inter alia,* plaintiff's *Fourteenth Amendment* right to due process of the law and to be afforded the equal protection and benefit of the law" could be applied to his allegation. [35]

> 34  At oral argument, counsel for state defendant's argued that Obilo, in fact, voluntarily with-

drew from CSI and even requested tuition reimbursement. However, for purposes of this motion, plaintiff's allegations will be accepted as true.

35    At oral argument, plaintiff's counsel argued that the allegations in paragraph 37 of plaintiff's amended complaint establish a violation of plaintiff's equal protection rights under the *Fourteenth Amendment*.

To the extent that plaintiff's allegations could be construed to allege an equal protection claim under the *Fourteenth Amendment*, the allegations are insufficient on their face. [36] Plaintiff's complaint does not allege that similarly situated persons were treated differently by Jackson, an essential element in any equal protection claim. *See Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir. 1994)* ("It is axiomatic that plaintiff [making an equal protection claim] must [*70] allege that similarly situated persons were treated differently.").

36    The *Fourteenth Amendment* prohibits a state from depriving "any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." *U.S. Const. amend. XIV § 1.*

Similarly, to the extent that plaintiff's allegations could be construed to allege a due-process violation under the *Fourteenth Amendment*, the allegations are facially defective. To establish a due process violation, plaintiff must allege: (1) that the government deprived him of an interest "encompassed by the *Fourteenth Amendment's* protection of liberty and property," (2) without the constitutionally required process. *Bd. of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972)*. Thus, "the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Narumanchi v. Bd. of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988); see also DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1989)* (stating that a claim based on a violation of "due [*71] process must involve the deprivation of a recognized life, liberty, or property interest). Nowhere in plaintiff's complaint does he allege that he had a liberty or property interest of which Jackson deprived him. Accordingly, plaintiff fails to allege a violation of his due process rights. Thus, plaintiff's proposed claim against Jackson is subject to dismissal for failure to state a claim and is consequently denied as futile.

In addition, Count III of plaintiff's amended complaint seeks to impose liability on Jackson for "lack of sufficient and appropriate training" of, among others, CSI campus security officers, [37] which allegedly resulted

in "the wrongful arrest, detention, abuse, harassment, threat, use of unnecessary force and excessive force, arbitrary stop and arrest of plaintiff." Am. Compl. P 47. According to plaintiff, this insufficient training and resultant unlawful conduct "constituted a standing policing [sic] and custom and was condoned by the supervisory officials within [CSI] and [CUNY]." *Id. P 44.*

37    A review of plaintiff's original and amended complaint reveals that plaintiff's amended complaint asserts against Jackson essentially the same claim that his original compliant asserts against Guliani and Kerik -- the municipal liability claim that plaintiff's counsel agreed to withdraw at the February 5, 1999 conference.

[*72]    As noted above, since Jackson is a state official, a § 1983 claim for damages can only be asserted against her in her individual capacity. *C.f., Will v. Michigan Dep't of State Police, 491 U.S. 58, 68-70, 105 L. Ed. 2d 45, 109 S. Ct. 2304, 2311-12.* Moreover, before she can be liable for damages in a § 1983 action, the plaintiff must allege Jackson's "personal involvement" in the alleged deprivation of plaintiff's constitutional rights. *Wright, 21 F.3d at 501.* Plaintiff has not alleged that Jackson was in any way personally involved in the detainment or subsequent arrest and prosecution of Jackson. Indeed, plaintiff's complaint does not assert that Martinez and Yurman detained plaintiff at Jackson's request or that Jackson called the NYPD. Nonetheless, plaintiff does allege that Jackson had "an obligation and duty to plaintiffs to properly train and supervise campus police officers." Am. Compl. P 43. Borrowing from the municipal liability context, as a supervisor, Jackson can be liable under § 1983 if plaintiff alleges (1) Jackson "directly participated" in the violation, (2) Jackson "created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, [*73] " or (3) Jackson was " grossly negligent in managing subordinates who caused the unlawful condition or event." *Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)* (citing *Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).* However, it is not necessary to determine whether plaintiff has adequately alleged such liability on the part of Jackson, because, as discussed above, plaintiff's compliant establishes that Martinez and Yurman had actual, or at least, arguable probable cause and thus, are not liable to plaintiff. In other words, if Martinez and Yurman are not liable to plaintiff on the § 1983 false arrest claim, Jackson cannot be liable in a supervisory capacity. Accordingly, plaintiff's proposed claim against Jackson in her individual capacity is denied as futile.

**B. § 1981**

Lastly, to the extent that paragraph 37 of plaintiff's amended complaint seeks to assert a *§ 1981* claim against Jackson, that claim fails since plaintiff has not alleged a deprivation of one of the statute's enumerated rights. As indicated above, to state a claim under *§ 1981*, plaintiff must allege, *inter alia,* that the discrimination concerned one or more [*74] of the activities enumerated in the statute, namely make and enforce contracts, sue and be sued, give evidence, etc. *See Mian, 7 F.3d at 1087.* Assuming, *arguendo,* that plaintiff's allegations could establish racially discriminatory intent, plaintiff's compliant contains no allegations that Jackson thwarted plaintiff's attempt to enforce his rights or that plaintiff has a contractual relationship with Jackson. Accordingly, like plaintiff's proposed *§ 1983* claim, plaintiff's proposed *§ 1981* claim is defective on its face and is denied as futile.

**Conclusion**

In sum,

. Plaintiff's proposed *§ 1983* claim against Burgess in his individual capacity is DENIED since (1) Burgess had probable cause to arrest and prosecute plaintiff or (2) at least, Burgess had arguable probable cause and is therefore entitled to qualified immunity.

. Plaintiff's proposed *§ 1981* claim, to the extent he asserts it against Burgess in his individual capacity, is DENIED because plaintiff has failed to allege racially purposeful discrimination and, even if he did, he has failed to allege that the discrimination concerned one or more of the activities enumerated in the statute.

. Plaintiff's *§* [*75] *1983* claim against Burgess in his official capacity is DISMISSED as plaintiff has failed to adequately allege a municipal policy or custom, and, even if he did, Burgess is not liable to plaintiff because he either had probable cause to arrest plaintiff or is entitled to qualified immunity.

. Plaintiff's pendent state law claims against Burgess and the unnamed police officers are DISMISSED as all of plaintiff's federal claims against those defendants are dismissed.

. All of plaintiff's claims against CUNY and CSI are DISMISSED as these defendants are entitled to *Eleventh Amendment* immunity.

. All of plaintiff's claims against Jackson, Martinez and Yurman in their official capacity are DISMISSED as these defendants are entitled to *Eleventh Amendment* immunity.

. Plaintiff's proposed *§ 1983* claim against Martinez and Yurman in their individual capacity is DENIED since (1) they had probable cause to detain plaintiff or (2) at least, they had arguable probable cause and are therefore entitled to qualified immunity.

. Plaintiff's proposed *§ 1981* claim, to the extent he asserts it against Martinez and Yurman in their individual capacity, is DENIED because plaintiff has failed to allege [*76] racially discriminatory intent.

. Plaintiff's proposed *§ 1983* claims against Jackson in her individual capacity is DENIED because (1) she was not personally involved in any alleged constitutional deprivation and (2) to the extent, plaintiff seeks to impose liability on Jackson for the actions of Martinez and Yurman, those defendants are not liable to plaintiff since they had probable cause to detain plaintiff or are subject to qualified immunity.

. Plaintiff's proposed *§ 1981* claim, to the extent he asserts it against Jackson in her individual capacity, is DENIED because plaintiff has failed to allege racially purposeful discrimination and, even if he did, he has failed to allege that the discrimination concerned one or more of the activities enumerated in the statute.

. Plaintiff's request to amend his complaint is DENIED because, as indicated above, all of plaintiff's proposed claims are subject to dismissal and are therefore futile.

Since none of plaintiff's claims remain, this case is dismissed in its entirety. The Clerk of the Court is directed to close the case.

Dated: Brooklyn, New York

April 7, 2003

SO ORDERED:

David G. Trager

United States District Judge [*77]

LEXSEE 2006 U.S. DIST. LEXIS 10301

**KELVIN SUBGIDIO, Plaintiff, -v.- KEVIN GRAIANI, Spring Valley Police Officer; DAVID HUGHES, Spring Valley Police Officer; JOHN DOE A/K/A MARCIANO, Spring Valley Police Officer; ANTHONY FURCO, Chief of Police, Spring Valley Police Department; RICHARD OLESZCZUK, Member of the Detective Division of Rockland County Narcotics Task Force Agency; JOHN DOE A/K/A GOLDRICK Shield #815, Member of the Detective Division of Rockland County Narcotics Task Force Agency; JAMES KRALIK, Sheriff of the County of Rockland; DAVID ZAGON, Asst. District Attorney of Rockland; STEPHANIE SMALL, Senior Asst. District Attorney of County of Rockland; MICHAEL BONGIORNO, District Attorney of Rockland and Overseer of Operations of Rockland County Narcotics Task Force Agency; WILLIAM KELLY, Rockland County Court Judge; ED-WARD GORMAN, Rockland County Supreme and County Court Clerk; JOHN DOE (1-5), Unknown Defendants; THE COUNTY OF ROCKLAND, et al., Defendants.**

05 Civ. 4065 (GBD) (GWG)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2006 U.S. Dist. LEXIS 10301*

**March 16, 2006, Decided**

**PRIOR HISTORY:** *People v. Subgidio, 11 A.D.3d 569, 782 N.Y.S.2d 652, 2004 N.Y. App. Div. LEXIS 12044 (N.Y. App. Div. 2d Dep't, 2004)*

**COUNSEL:** [*1]  Kevin Subgidio, Plaintiff, Pro se, Poughkeepsie, NY.

For Richard Oleszczuk, member of Detective Division of Rockland County Narcotics Task Force Agency, Sheriff James Kralik, of the County of Rockland, David Zagon, Asst. District Attorney of County of Rockland, Stephanie Small, Senior Asst. District Attorney of County of Rockland, D.A. Michael Bongiorno, of the County of Rockland and Overser of Operations of Rockland County Narcotics Task Force Agency, The County of Rockland, Defendants: Paul V. Nowicki, New York, NY.

For P.O. Kevin Graiani, Spring Valley, P.O. David Hughes, Spring Valley, Chief of Police Anthony Furco, Spring Valley Police Department, Richard Oleszczuk, John Doe, Member of Detective Division of Rockland County Narcotics Task Force Agency, Cross Claimants: Anthony TYagliagambe, London Fischer LLP, New York, NY.

**JUDGES:** GABRIEL W. GORENSTEIN, United States Magistrate Judge.

**OPINION BY:** GABRIEL W. GORENSTEIN

**OPINION**

REPORT AND RECOMMENDATION

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Kelvin Subgidio has filed a complaint pro se asserting various claims under *42 U.S.C. § 1983* and state law. Subgidio alleges that [*2] the defendants arrested him using excessive force and without probable cause, that he was arrested based on forged arrest warrants, and that he was prosecuted based on a forged indictment. Subgidio was convicted by a jury in New York County Court, Rockland County, on October 22, 1999, of three counts of criminal sale of a controlled substance in the third degree and three counts of criminal possession of a controlled substance in the third degree.

The "State Defendants" -- consisting of the Honorable William Kelly, County Court Judge for the County of Rockland, and Edward Gorman, Clerk of the Rockland County Supreme and County Courts -- now move to

dismiss the complaint pursuant to *Fed. R. Civ. P. 12(b)(1)* and *12(b)(6)*. Richard Oleszczuk, James Kralik, David Zagon, Stephanie Small, Michael Bongiorno, and the County of Rockland (the "County Defendants") move pursuant to *Fed. R. Civ. P. 12(c)* and *56* for a judgment dismissing the complaint. For the following reasons, the defendants' motions to dismiss should be granted.

I. [*3] FACTUAL AND PROCEDURAL BACK-GROUND

A. The Complaint

The following facts are alleged in Subgidio's complaint, and are assumed to be true for purposes of this motion.

On April 16, 1999, Subgidio was entering the parking lot of an apartment complex in Spring Valley, New York where his infant son resided. See Civil Complaint, filed Apr. 22, 2005 (Docket # 2) ("Complaint"), P27. Officer Kevin Graiani was parked in a marked police car across from the entrance of the parking lot. Complaint P28. As Subgidio entered the parking lot, Officer Graiani glared at him and made a hand gesture mimicking the shooting of a handgun; in response, Subgidio raised his middle finger at the officer. Id. PP29-30. Subgidio entered one of the apartment buildings, and later exited carrying his infant son in a car seat. Id. P31. Upon leaving, Subgidio noticed another police cruiser occupied by Officer David Hughes. Id. P32. Officer Graiani again made the same handgun hand gesture to Subgidio, who was holding his son. Id. P33. Subgidio got in his car and "made an exaggerated showing" of securing himself with a seat belt, and securing his son in the car seat. Id. P34. Subgidio [*4] drove out of the parking lot while Officers Hughes and Graiani glared at him but did not pursue him. Id. P35.

At approximately 12:30 p.m., Subgidio returned with his son to the parking lot and parked his car. Complaint P36. As Subgidio removed the seat belt straps from his son's car seat, Officer Graiani sped into the lot and came to a halt approximately 150 feet in front of Subgidio. Id. P37. Officer Graiani jumped out of the police cruiser crouched behind the driver's side door, and pointed a gun at Subgidio, yelling, "Hands-up!" and "Don't fucking move'm Kelvin!" Id. P38 (capitalization omitted). Subgidio removed his wallet, placed it in his son's jump-suit pocket, and zippered it shut. Id. P39. After Officer Graiani repeated his order, Subgidio complied and said that his son was in the car. Id. P40. Officer Graiani ordered Subgidio to come out from behind his vehicle and towards the cruiser. Id. P41. Subgidio began complying, and told the officer that the car was his and all his papers were in order. Id. Officer Graiani said this was "not about the car or your papers Kelvin." Id. P42. When he reached Graiani, Subgidio tossed his driver's license [*5] and insurance card held together by a rubber band towards Graiani, and requested to get his infant son out of the car because the door was closed. See id. P43. Officer Graiani refused and said, "stay put or your son's a bastard Kelvin." Id. P44. Subgidio again pleaded to get his son out of the car, but Officer Graiani refused, saying, "Don't. I think you got a warrant. Don't go back to that car. Stay right fuckin' there Kelvin or I'll cap you're [sic] ass. I owe you one from last year anyway." Id. PP45-46.

Then Officer Hughes arrived at the scene in another police cruiser, almost hitting Subgidio as he sped into the parking lot. Complaint P48. Officer Hughes came out of his cruiser and jumped onto Subgidio, who was already on the ground after falling while trying to avoid being hit by the police car. Id. PP48-49. Subgidio was hurt by the weight of Officer Hughes, and began fighting back. Id. P50. He managed to shove and wrestle Officer Hughes off of him just as Officer Graiani attempted to tackle him. Id. P51. Subgidio pushed Officer Graiani into Officer Hughes, and then ran to open his car door to reach his son. Id. P52. Officer Hughes hit Subgidio on [*6] his right leg with a police baton as he reached the car, and Subgidio fell down screaming in severe pain. Id. PP53-55. Both officers then beat Subgidio on the back and legs with "clubs with metal in [them] that extend out like antennae." Id. P56. Subgidio received more blows from the officers after he was handcuffed. Id. P57.

Thereafter, other Spring Valley officers arrived at the scene and began searching Subgidio's car while Officer Graiani searched his son. Complaint P58. Officer Hughes struck Subgidio and shoved him inside the back of a police car. Id. P59. Then, Subgidio's fiancee ran outside of the apartment building and demanded the release of her son. Id. P60. Officer Graiani did not release her son; instead, he removed Subgidio's wallet from the infant's pocket. Id. P61. The officer then placed the wallet, which contained $ 5,500, inside his own pocket. Id.

Next, Subgidio was transported to the Spring Valley Police Department. Complaint P67. Once there, he requested medical attention because he was hurt, but Officer Hughes and Graiani refused and stated:

> Medical attention? You hurt me and you want medical attention? This ain't N.Y.C. [*7] "Homie." This be the "Valley." You'll see a doctor in Attica. Our policy here don't include medical attention for assholes. And right now that's all you are until we figure out what to charge you with.

2006 U.S. Dist. LEXIS 10301, *

Complaint PP68-69. Subgidio was in severe pain from his back, the back of his head, and his right calf, which had swollen to the size of a grapefruit. Id. P73. Subgidio was booked without being told what he was being charged with, despite inquiries made to Officers Graiani and Hughes, and he was "strip searched." Id. PP74-75. Then he was placed in a holding cell where an Officer Marciano began interrogating him. See id. P81. Marciano told Subgidio he was under arrest for the attempted murder of two police officers and possession of a stolen car. Id. P86. Marciano said, "we don't like you New York niggers up in our County. You either cooperate or be charged with a bunch of shit [that] you'll never get out of if you had Johnny Cochran himself." Id. P88. Marciano continued to interrogate Subgidio even after Subgidio repeatedly requested an attorney. See id. PP82, 89, 92. While he was transporting Subgidio to the Rockland County Jail, Marciano kept threatening [*8] Subgidio if he did not reveal who was driving the stolen car that almost ran over Marciano and his partner, Graiani, the previous summer. Id. P91.

Once he arrived at the Rockland County Jail, Subgidio overheard Sheriff James Kralik, the Rockland County Sheriff, conversing with Officer Marciano and referring to the fact that they did not have "any paperwork on him." Complaint P94. Sheriff Kralik said, "get him out of my jail until you got something to hold him with," and asked Subgidio if he was hurt and wanted medical attention. Id. PP94, 96. Subgidio told the sheriff that he needed medical attention because he was in pain from being beaten by the officers. Id. P97. Sheriff Kralik told Officer Marciano to take him to the hospital. Id. P98. [1]

---

1 Pages 14 and 15 of the Complaint both include paragraphs that are labeled 95 through 102, but that contain slightly different versions of the events. In paragraph 98 on page 15, Subgidio accuses Sheriff Kralik of telling Officer Marciano to "figure out" where to get paperwork for him. In the same paragraph on page 14, Sheriff Kralik tells Officer Marciano that the hospital is the officers' "way out." Pages 14 and 15 differ with respect to paragraph 99 as well. Paragraph 99 on page 14 states that Subgidio was first taken from the precinct to the Narcotics Task Force Agency. Paragraph 99 on page 15 states that he was taken to the hospital before going to the Narcotics Task Force Agency.

[*9] Marciano took Subgidio to the Rockland County Narcotics Task Force Agency, whose operations were overseen by Rockland County District Attorney Michael Bongiorno. Id. P99 & p. 14. Subgidio overheard Officer Marciano telling Detective Richard Oleszczuk

and another officer that there was a problem because there was no warrant and the sheriff would not take him. Id. PP99-100 & p. 14. Oleszczuk told Officer Marciano not to worry and that a warrant could be obtained "one way or another." Id. P101 & p. 14. Officer Marciano said he would take Subgidio to the hospital to allow time for a warrant to be procured. See id. P102 & p. 14. Thereafter, Subgidio was transported to the hospital where he was treated for his injuries, and then taken back to the Rockland County Jail. Id. P105-106.

Three days later, on Monday, April 19, 1999, Subgidio was taken to the Rockland County Courthouse and brought before Judge Kelly. Complaint P107. Judge Kelly informed Subgidio that he was arrested on a warrant based on a sealed indictment that had been filed March 26, 1999, and that charged him with various narcotics offenses. Id. P108. Subgidio learned in 2004 that no such sealed indictment [*10] had been filed on March 26, 1999, and that the arrest warrant was invalid and forged. Id. P110. Subgidio alleges he was actually charged on April 16, 1999. Id. P123. The indictment charged him (falsely, he alleges) with obstructing governmental justice, aggravated assault, resisting arrest, criminal possession of a controlled substance, and criminal sale of a controlled substance. Id. Subgidio was subsequently tried before Judge Kelly, convicted on October 22, 1999, and "sentenced to an indeterminate term of imprisonment of eight to sixteen years for the drug offenses listed in the April 16, 1999 arrest report." See id. PP132, 149. On the date of his conviction, October 22, 1999, Subgidio filed a notice of appeal to the Appellate Division. See Brief of Defendant-Appellant in *People v. Subgidio*, 1 A.D.3d 388, 766 N.Y.S.2d 861 (2d Dep't) (2003) (available at 2003 WL 23318231). [2]

---

2 "In considering a motion to dismiss for failure to state a claim under *Fed. R. Civ. P. 12(b)(6)*, a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). However, "courts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Id. Accordingly, here and elsewhere, we cite to certain filings that occurred in Subgidio's criminal case. Some of these were provided by Subgidio himself in his response to the defendants' motions. See Plaintiff's Affirmation, filed July 11, 2005 (Docket # 17) ("Pl. Opp. Aff.").

[*11] While his direct appeal was pending, Subgidio moved pursuant to *New York Criminal Procedure*

Case 1:07-cv-02944-JSR    Document 24-2    Filed 06/28/2007    Page 22 of 48

Page 4
2006 U.S. Dist. LEXIS 10301, *

Law ("CPL") § 440.10(1) for an order vacating the judgment of conviction on the grounds that he was "denied the effective assistance of counsel, that his right to testify before the Grand Jury was impaired, that the prosecutor failed" to produce exculpatory materials and witness statements, "that his arrest was improper, and that the prosecutor offered false evidence." Decision & Order, dated Mar. 3, 2003 ("Judge Kelly Decision") (reproduced as Ex. A to the Affirmation of Constantine A. Speres (annexed to Notice of Motion to Dismiss Complaint, filed June 22, 2005 (Docket # 6) ("State Def. Motion")), at 1. Judge Kelly denied the motion. Id. at 2.

On November 3, 2003, Subgidio's conviction was affirmed by the New York State Appellate Division, Second Department. See *People v. Subgidio, 1 A.D.3d 388, 766 N.Y.S.2d 861 (2d Dep't 2003)*. On March 31, 2004, the Court of Appeals denied Subgidio's application for leave to appeal. See *People v. Subgidio, 2 N.Y.3d 746, 810 N.E.2d 924, 778 N.Y.S.2d 471 (2004)*. On April 30, 2005, the Court of Appeals again denied leave to appeal "on reconsideration." *People v. Subgidio, 4 N.Y.3d 857, 830 N.E.2d 330, 797 N.Y.S.2d 431 (2005)*. [*12]

At some point after his direct appeal was decided, Subgidio sought a writ of error coram nobis to vacate his conviction on the ground of ineffective assistance of appellate counsel. On October 12, 2004, the Second Department denied the application. See *People v. Subgidio, 11 A.D.3d 569, 782 N.Y.S.2d 652 (2d Dep't 2004)*. On January 19, 2005, the Court of Appeals denied Subgidio's application for leave to appeal from this decision as well. See *People v. Subgidio, 4 N.Y.3d 768, 825 N.E.2d 144, 792 N.Y.S.2d 12 (2005)*.

While Subgidio's conviction was still on appeal in 2003, Subgidio learned of "two felony warrants for his arrest out of Spring Valley, one of which related to the case he was tried on." Complaint P120. Subgidio "later learned that the two warrants . . . were the result of the vexatious, malicious, retaliatory actions taken by Defendants Graiani, Hughes, John Doe Marciano, and Bongiorno." Id. P121. The warrants falsely accused Subgidio of "attempted assault on a police officer and criminal possession of stolen property resulting from an alleged incident wherein [Subgidio] tried to run down" Officer Graiani with his car a year before his 1999 arrest. See id. P122. Subgidio alleges [*13] that he was also falsely accused in a warrant of "obstructing governmental justice, aggravated assault, resisting arrest, criminal possession of a controlled substance [three counts], and criminal sale of a controlled substance [three counts], on April 16, 1999." See id. P123. The April 16, 1999 charges are "the very same charges named in the . . . arrest report that was suppressed by the Defendants." Id. P124.

After learning of the two warrants, Subgidio repeatedly requested Clerk Gorman to provide him with copies of the arrest warrant and indictment that led to his conviction. Complaint PP117-18. Subgidio received a copy of the "real" indictment in 2004. Id. P114. Subgidio received copies of the arrest reports after several requests from the Spring Valley Police Department, "overseen by Defendant Furco." Id. P116. The copies Subgidio received of the warrants, the indictment, and the arrest reports revealed to him that no sealed indictment or warrant had been filed before his arrest, and that both the indictment and the warrants were "forged" documents with retroactive dates inserted in order to legitimate the grounds for the arrest listed in the arrest reports. [*14] Id. PP110, 115, 117, 133. Subgidio attaches to his motion papers a note that Clerk Gorman sent Subgidio confirming that the warrant was not filed until April 20, 1999, and that the indictment was not filed until April 29, 1999, although Clerk Gorman's note asserts that both were signed on March 26, 1999. See Message, dated Jan. 23, 2004 (reproduced as Ex. G to Pl. Opp. Aff.); see also Complaint P145 (referring to Clerk Gorman's note). Subgidio claims that the drug offenses listed on the arrest report were the ones named in the purportedly forged indictment. See id. P133. Although the indictment is dated March 26, 1999, Subgidio seems to be claiming that the indictment was not actually created until April 19, 1999. See id.

Judge Kelly and Assistant District Attorney David Zagon allegedly conspired to withhold this fraud from Subgidio, thereby denying him access to the courts. Complaint P134. On or about April 29, 1999, Judge Kelly and Zagon had a conference at the bench regarding the indictment, which was not yet filed, and Subgidio heard Zagon ask Judge Kelly if he could amend the date of the indictment off the record. See id. PP135-137. Subgidio objected, [*15] but then Judge Kelly and Zagon huddled closely together, and he could not hear what they said. Id. P138.

After receiving the alleged forged copies of the indictment and warrants in 2004, Subgidio brought this matter to another Assistant District Attorney, Stephanie Small, and again to Judge Kelly, who advised him -- on an unspecified date -- that the court did not keep records, and that Subgidio "had no grounds to challenge the indictment because the indictment pre-dated the warrant." Complaint PP111, 141, 143. Subgidio claims Judge Kelly and Zagon were coconspirators in creating forged copies of the indictment and warrant by signing the documents with a retroactive date. See id. P148.

Subgidio also claims there was another hearing on June 10, 2004. Complaint P126. After the 2004 hearing, the District Attorney allegedly conceded all of Subgidio's allegations and the court dismissed all the charges

against him, id. P127, though Subgidio makes clear in a later filing that the charges on which he was convicted were not dismissed. See Pl. Supp. Mem. at 5-6.

B. Procedural History

Subgidio filed the instant Complaint on April 22, 2005. At that time, he was confined [*16] at the Fishkill Correctional Facility in Beacon, New York. Complaint P4. He seeks $ 1,000,000 in compensatory damages, $ 1,000,000 for the violation of his constitutional rights, and $ 1,000,000 in punitive damages. Id. PP160-62. He also seeks to compel the defendants to return his vehicle and its contents to him, provide him with transcripts of certain proceedings, and to stop making certain assertions regarding the indictment. Id. P159.

On June 22, 2005, the State Defendants moved to dismiss the Complaint pursuant to *Fed. R. Civ. P. 12(b)(1)* and (6), and filed supporting papers. See State Def. Motion; Memorandum of Law on Behalf of State Defendants in Support of their Motion to Dismiss the Complaint, filed June 22, 2005 (Docket # 7) ("State Def. Mem."). On July 11, 2005, Subgidio filed an affirmation in opposition to defendants' motion. See Pl. Opp. Aff. On July 15, 2005, the County Defendants moved to dismiss the Complaint pursuant to *Fed. R. Civ. P. 12(c)* and *56*, and filed papers in support. See Notice of Motion to Dismiss, filed July 15, 2005 (Docket [*17] # 18) ("County Def. Motion"); Brief in Support of Defendants' Motion for Summary Judgment to Dismiss the Complaint, filed July 15, 2005 (Docket # 19) ("County Def. Mem."); Declaration in Support of Motion to Dismiss, filed July 15, 2005 (Docket # 15). The remaining defendants, Graiani, Hughes, Marciano, Furco, and Oleszczuk, have answered the Complaint, see Answer to the Complaint, filed July 14, 2005 (Docket # 14), but have not filed any motions. Pursuant to an Order of this Court, see Order, filed Oct. 25, 2005 (Docket # 25), the parties submitted supplemental briefing on certain legal issues. See State Defendants' Supplemental Memorandum of Law in Further Support of their Motion to Dismiss the Complaint, filed Nov. 30, 2005 (Docket # 27) ("State Def. Supp. Mem."); Supplemental Memorandum of Law in Support of Defendants' Motion for Summary Judgment to Dismiss the Complaint, filed Dec. 5, 2005 (Docket # 28) ("County Def. Supp. Mem."); Supplemental Brief, dated Feb. 8, 2006 ("Pl. Supp. Mem.") (Docket # 32).

Before Subgidio filed his supplemental brief, he informed the Court that he had been released from Fishkill Correctional Facility on parole on December 9, 2005. Letter [*18] from Kelvin Subgidio to Pro Se Clerk's Office, filed Jan. 12, 2006 (Docket # 31). Subgidio was then rearrested by the Dutchess County Sheriff on an unrelated 1999 out-of-state misdemeanor warrant from

Virginia. Id. In his supplemental brief, he lists an address in Virginia as his current address along with a prisoner identification number. Pl. Supp. Mem.

II. STANDARD OF REVIEW

The County Defendants move under *Fed. R. Civ. P. 12(c)* for judgment on the pleadings and the State Defendants move to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* and in the alternative under *Fed. R. Civ. P. 12(b)(1)*. [3] A motion made under *Rule 12(c)* is analyzed under the same standard applicable to a motion to dismiss for failure to state a claim under *Rule 12(b)(6)*. See *Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.)*, cert. denied, *513 U.S. 816, 115 S. Ct. 73, 130 L. Ed. 2d 28 (1994)*. Accordingly, we will review the motions under the *Rule 12(b)(6)* standard.

3 The County Defendants' notice of motion also purports to move for summary judgment pursuant to *Fed. R. Civ. P. 56*. However, the motion papers fail to include the statements required by *Local Civil Rules 56.1* and *56.2*, and accordingly, the motion for summary judgment will not be further considered.

[*19] A court should dismiss a complaint pursuant to *Rule 12(b)(6)* if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint that would entitle him to relief. See, e.g., *Strougo v. Bassini, 282 F.3d 162, 167 (2d Cir. 2002)*; *King v. Simpson, 189 F.3d 284, 286-87 (2d Cir. 1999)*. The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See, e.g., *Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999)*; *Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997)*. The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his or her claims. See, e.g., *Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995)*, cert. denied, *519 U.S. 808, 117 S. Ct. 50, 136 L. Ed. 2d 14 (1996)*. The Court must "confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice [*20] may be taken.'" *Leonard F. v. Israel Discount Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999)* (quoting *Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991))*; *Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)*.

Moreover, when considering motions to dismiss the claims of a plaintiff proceeding pro se, pleadings must be construed liberally. See, e.g., *Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)*; *Lerman v. Board of Elections of N.Y., 232 F.3d 135, 140*

*(2d Cir. 2000)*, cert. denied, *533 U.S. 915, 121 S. Ct. 2520, 150 L. Ed. 2d 692 (2001)*; *Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999)*.

### III. DISCUSSION

#### A. Subgidio's Claims

Subgidio's complaint states that it was "brought for violations of the following federal laws and rights under [the] federal constitution, as well as state law tort claims for which this Court has supplemental jurisdiction":

> rights under [the] *first, fourth, fifth, sixth, eighth,* and *ninth amendments*; rights to due process, substantive due process, procedural due process, and equal [*21] protection of the laws; rights and the laws against abuse of process, malicious prosecution, false arrest, false imprisonment, and assault and battery.

Complaint P1. Subgidio asserts that *42 U.S.C. § 1983* provides a basis for his claims. Id. *Section 1983* provides that:

> every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*42 U.S.C. § 1983*. To state a claim under *§ 1983*, a plaintiff "must allege (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Dwyer v. Regan, 777 F.2d 825, 828 (2d Cir. 1985)*, modified [*22] , *793 F.2d 457 (2d Cir. 1986)*; see also *Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980)* (listing the same two elements). *Section 1983* does not in and of itself create any substantive rights; rather the plaintiff must demonstrate a violation of an independent federal constitutional or statutory right. See, e.g., *Chapman v.*

*Houston Welfare Rights Org., 441 U.S. 600, 617-18, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979)*.

B. Substantive Due Process, *Ninth Amendment*, and *Fifth Amendment* Claims

Some of Subgidio's claims can be dismissed on their face. Subgidio's complaint does not state a substantive due process violation because one or more of the other constitutional provisions he cites "provide[] an explicit textual source of constitutional protection" against the governmental behavior he complains of and thus those provisions and "not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)* (citation and some internal quotation marks omitted).

The *Ninth Amendment* claim fails because that amendment cannot [*23] be enforced by means of an action under *Section 1983*. See, e.g, *Strandberg v. City of Helena, 791 F.2d 744, 748-49 (9th Cir. 1986)*; *Sylla v. City of New York, 2005 U.S. Dist. LEXIS 31817, 2005 WL 3336460, at *2 (E.D.N.Y. Dec. 8, 2005)*; *Rini v. Zwirn, 886 F. Supp. 270, 289-90 (E.D.N.Y. 1995)* (collecting cases).

To the extent Subgidio alleges defendants violated his *Fifth Amendment* right to an indictment by a grand jury, such a claim is not cognizable because his conviction was in state court. See *Rodriguez v. Hynes, 1995 U.S. Dist. LEXIS 21492 , 1995 WL 116290, at *3 (E.D.N.Y. 1995)* ("The right to an indictment by a grand jury for a state prosecution is dependent solely upon rights granted by the state and not the federal government, since the grand jury provision contained in the *Fifth Amendment* is not applicable to the states.") (citing *Hurtado v. California, 110 U.S. 516, 4 S. Ct. 111, 28 L. Ed. 232 (1884))*.

Accordingly, we now consider Subgidio's remaining claims under *§ 1983*: (1) excessive force under the *Fourth Amendment*; (2) false arrest under the *Fourth Amendment*; (3) false imprisonment under the *Fourth Amendment*; (4) malicious prosecution under the *Fourth Amendment*; [*24] (5) procedural due process under the *Fourteenth Amendment*; (6) equal protection under the *Fourteenth Amendment*; and (7) abuse of process. [4]

> 4   Subgidio's claims under the *First, Sixth,* and *Eighth Amendments* may be dismissed without further discussion inasmuch as the facts alleged in his complaint do not implicate any of these amendments.

#### C. Statute of Limitations

Defendants move to dismiss Subgidio's *§ 1983* claims as time barred by the applicable statutes of limita-

tions. See State Def. Mem. at 5-6; County Def. Mem. at 7-8.

In *§ 1983* actions, the applicable limitations period is found in the general or state statute of limitations for personal injury actions. *Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997)* (quoting *Owens v. Okure, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989))*. Accordingly, New York's three-year statute of limitations for "unspecified personal injury actions," *New York Civil Practice Law and Rules § 214(5)*, governs *§ 1983* actions [*25] in New York. Id. *Section 214(5)* provides that an action to recover for personal injury must be brought within three years of the date of its accrual. See id. Thus, any claim that accrued prior to April 22, 2002 -- three years prior to the filing of the complaint -- is time-barred.

Federal law determines the date of accrual of a *§ 1983* claim. *Ormiston, 117 F.3d at 71. Section 1983* claims accrue when the plaintiff "knows or has reason to know of the injury which is the basis of his action." Id. (quotation marks and citation omitted). We now address the applicability of the limitations period to Subgidio's claims.

### 1. Excessive Force Claim

With respect to the excessive force claim, Subgidio knew or had reason to know of his injuries when he was arrested on April 16, 1999, see Complaint PP27, 57, long before the April 22, 2002 bar date. Consequently, this claim is time-barred.

### 2. Equal Protection Claim

Although Subgidio does not specify the basis of his equal protection claim, this court will broadly construe the Complaint as basing that claim on the racist statements made by the officers at the time of his arrest. Complaint PP69, 88. Subgidio [*26] was aware of the injury caused by the officers at the time of his arrest, and consequently that claim too is time-barred. [5]

> [5] Subgidio mentions *42 U.S.C. § 1985* as a basis for his lawsuit, see Complaint, PP1, 22, but does not state under which subdivision. He may be intending to invoke *42 U.S.C. § 1985(3)*, which bars a conspiracy to deprive an individual of certain rights where there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)*. The only such animus he alleges is the race-based animus relating to his arrest. Any claim under *section 1985* relating to the arrest, however, is time-barred as well. See, e.g., *Paige v. Police Dep't, 264 F.3d 197, 199 n.2*

*(2d Cir. 2001)* (3-year statute of limitations applies to actions under *§ 1985*).

### 3. Abuse of Process Claim

[*27] An abuse of process claim lies against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)*. Subgidio claims that, through his arrest, "all Defendants" were retaliating against him for an incident that occurred one year prior to his arrest. Complaint PP121-22, 157. This claim too is time-barred since Subgidio "knew or had reason to know of the injury" that is the basis of this claim when he was arrested and subsequently prosecuted in 1999. *Ormiston, 117 F.3d at 71*.

### 4. Remaining Claims

It is not so clear, however, whether the remaining claims are time-barred. These claims all depend to some degree upon Subgidio's allegation that he was arrested and prosecuted based on a forged indictment and forged warrants. Subgidio asserts that he did not find out about the forged indictment and warrants until 2004. Complaint P110. While it would seem clear that Subgidio knew or had reason to know [*28] of the "injury," *Ormiston, 117 F.3d at 71*, resulting from these alleged forgeries prior to the bar date of April 22, 2002, he might be able to take advantage of the doctrine of equitable tolling. Because it is impossible to answer that question on the current record, we will assume arguendo that there is no statute of limitations bar to Subgidio's remaining claims: malicious prosecution, false arrest, false imprisonment, and procedural due process.

### D. Heck v. Humphrey

The next bar argued by defendants is the doctrine articulated in *Heck v. Humphrey, 512 U.S. 477, 483-87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)*. Heck held that

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, . . . a *§ 1983* plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, *28 U.S.C. §*

*2254.* [*29] A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck, 512 U.S. at 486-87* (emphasis in original) (citations omitted). "Disposition of the case on Heck grounds . . . warrants only dismissal without prejudice, because the suit may be reinstituted should plaintiff's conviction be 'expunged by executive order, declared invalid . . ., or called into question by a federal court's issuance of a writ of habeas corpus.'" *Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999)* (quoting *Heck, 512 U.S. at 487*).

Heck stands for "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments" where success in federal court "necessarily [*30] requires the plaintiff to prove the unlawfulness of his conviction or confinement." *Amaker, 179 F.3d at 51* (quoting *Heck, 512 U.S. at 486*). The Second Circuit, however, has interpreted subsequent Supreme Court cases as limiting the Heck principle. In *Huang v. Johnson, 251 F.3d 65, 74 (2d Cir. 2001)*, the Second Circuit held that "a former prisoner, no longer, 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." Id. (interpreting *Spencer v. Kemna, 523 U.S. 1, 20-21, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998)*. The basis for this holding was that "where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be." *Id. at 75* (quoting *Jenkins v. Haubert, 179 F.3d 19, 26 (2d Cir. 1999)*). In limiting Heck, the Second Circuit stated that for the Heck principle to apply, habeas relief must be "available" and a plaintiff must be "in custody" for the purposes of habeas. *Id. at 74-75.* [*31]

At least one case has held that the date as of which these two Heck elements should be considered is the date of the filing of the complaint. See *Gastelu v. Breslin, 2005 U.S. Dist. LEXIS 20341, 2005 WL 2271933, at *4 (E.D.N.Y. Sept. 12, 2005)*. It is undisputed that at the time of the filing of the complaint, Subgidio had habeas relief "available" and he was "in custody." It was "avail-

able" because the time period for him to file a federal habeas petition based on his direct appeal did not expire at least until June 30, 2005 -- that is, one year and 90 days after March 31, 2004, when the Court of Appeals denied him leave to appeal. See *28 U.S.C. 2244(d)(1); McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003)*. [6] Subgidio was "in custody" because at the time of the filing of his complaint he was incarcerated at the Fishkill Correctional Facility. Complaint P4. [7]

    6  Indeed, this time period arguably was tolled for seven months because Subgidio's coram nobis petition was pending in the Appellate Division until October 2004. See *People v. Subgidio, 11 A.D.3d 569, 782 N.Y.S.2d 652 (2d Dep't 2004); 28 U.S.C. § 2244(d)(2)*.

[*32]

    7  Moreover, because Subgidio is now on parole, see Pl. Supp. Mem. at 1, he is still "in custody" for habeas purposes. See *Jones v. Cunningham, 371 U.S. 236, 241-43, 83 S. Ct. 373, 9 L. Ed. 2d 285 (1963); Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994)*.

Accordingly, we now examine whether any of Subgidio's remaining claims, if successful, would "necessarily imply the invalidity" of his confinement.

1. Malicious Prosecution Claims

In order to succeed on a malicious prosecution claim under § 1983, the challenged proceeding must have terminated in plaintiff's favor. See *Bonide Products, Inc. v. Cahill, 223 F.3d 141, 145 (2d Cir. 2000)*. Consequently, the Supreme Court specifically held in Heck that success on a malicious prosecution claim necessarily implies the invalidity of a plaintiff's conviction. See *Heck, 512 U.S. at 485-87*. Thus, Subgidio's malicious prosecution claim is barred by Heck and must be dismissed.

2. False Imprisonment and Arrest Claims

Similarly, false arrest and false imprisonment claims are [*33] also barred by Heck. See *Duamutef v. Morris, 956 F. Supp. 1112, 1117 (S.D.N.Y. 1997)*. "The common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested." *Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986)*, cert. denied, *481 U.S. 1016, 107 S. Ct. 1894, 95 L. Ed. 2d 501 (1987)*. Consequently, success on false imprisonment and false arrest claims would necessarily imply the invalidity of a conviction. Therefore, those claims in the Complaint must also be dismissed.

3. *Section 1983* Procedural Due Process Claim

2006 U.S. Dist. LEXIS 10301, *

The remaining claim is Subgidio's procedural due process claim. While the precise nature of the claim Subgidio intends to assert under this rubric is unclear, the only claim that could survive the statute of limitations defense would be an assertion that the use of the allegedly forged indictment deprived him of due process.

The Supreme Court has made clear that Heck can apply to procedural due process claims pursuant to *§ 1983*. Indeed, in *Edwards v. Balisok, 520 U.S. 641, 643, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997)*, [*34] the Supreme Court made clear that the Heck doctrine applied not only when the litigant asserts that "the result" of the challenged proceeding was wrong but also when the litigant asserts that "the procedures" used were wrong, if those procedures necessarily imply the invalidity of the judgment. *Id. at 645*. Thus, the question here is whether the procedural defect complained of -- namely, that Subgidio was denied due process because his arrest and prosecution were based on a forged indictment -- would, if established, invalidate his confinement. No party has pointed to any case law in New York discussing what occurs where a defendant shows that he was prosecuted based on a forged indictment. But a review of New York law makes reasonably clear that a forged indictment would indeed result in the overturning of a conviction. While the CPL specifically provides that a motion to dismiss an indictment based on insufficient evidence is not grounds for appealing a conviction, see *CPL § 210.30(6)*, there is no such restriction on a motion to dismiss an indictment based on a "defective" grand jury proceeding, see *CPL § 210.35*. A "defective" grand jury proceeding includes [*35] a proceeding that "fails to conform to the requirements" of the statute governing grand jury proceedings "to such degree that the integrity thereof is impaired and prejudice to the defendant may result." *CPL § 210.35(5)*. This exception would almost certainly include an indictment that had been forged and thus was not the result of a proper grand jury proceeding. Given that the New York Court of Appeals has dismissed indictments following conviction where this statute was implicated, see, e.g., *People v. Huston, 88 N.Y.2d 400, 409, 411, 668 N.E.2d 1362, 646 N.Y.S.2d 69 (1996)*, it seems plain that Subgidio's successful challenge to his indictment would "necessarily imply the invalidity" of his conviction. Thus, this claim too is barred under *Heck*.

Conclusion

For the foregoing reasons, defendants' motions (Docket # # 6 and 18) should be granted and the Complaint should be dismissed in its entirety as to all defendants. Specifically, Subgidio's malicious prosecution, false imprisonment, false arrest, and procedural due process claims should be dismissed under Heck without prejudice. Subgidio's remaining federal claims should be dismissed with prejudice. Because all federal claims [*36] are being dismissed, the state claims should be dismissed as well. See, e.g., *Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 79 n.18 (2d Cir. 2003)*.

Finally, the dismissal should be granted without leave to replead, inasmuch as repleading would be "futile," *Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995)*. The complaint provides a full narrative of Subgidio's contentions and the defects in the complaint could not be cured by repleading. See generally *Hill v. Philip Morris USA, 2004 U.S. Dist. LEXIS 8402, 2004 WL 1065548, at *7 (S.D.N.Y. May 11, 2004)*.

## PROCEDURE FOR FILING OBJECTIONS TO THIS

### REPORT AND RECOMMENDATION

Pursuant to *28 U.S.C. § 636(b)(1)* and *Rule 72(b) of the Federal Rules of Civil Procedure*, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also *Fed. R. Civ. P. 6(a), (e)*. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. George B. Daniels at 40 Centre Street, New [*37] York, New York 10007, and to the undersigned at the same address. Any request for an extension of time to file objections must be directed to Judge Daniels. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See *Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)*.

Dated: March 16, 2006

New York, New York

GABRIEL W. GORENSTEIN

United States Magistrate Judge

LEXSEE 2004 U.S. DIST. LEXIS 23365

**NICASIO HERNANDEZ, Plaintiff, - v - THE CITY OF NEW YORK, et al., Defendants.**

**00 Civ. 9507 (RWS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2004 U.S. Dist. LEXIS 23365*

**November 18, 2004, Decided
November 22, 2004, Filed**

**DISPOSITION:** Defendants' motion for summary judgment dismissing plaintiff's complaint was granted.

**COUNSEL:** [*1] STEPHEN SANTUCCI, ESQ., Attorney for Plaintiff, Staten Island, NY.

HONORABLE MICHAEL A. CARDOZO, Corporation Counsel of the City of New York, Attorneys for Defendants, New York, NY, By: RACHEL A. SELIGMAN, Assistant Corporation Counsel, Of Counsel.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINION BY:** ROBERT W. SWEET

**OPINION**

**Sweet, D.J.,**

The City of New York (the "City"), Police Officer Raul Rosario ("Rosario") and Police Officer Paul D. Fernandez ("Fernandez") (collectively the "Defendants") have moved pursuant to *Rule 56, Fed. R. Civ. P.*, for summary judgment dismissing the complaint of plaintiff Nicasio Hernandez ("Hernandez"), who proceeded *pro se* prior to November 4, 2002. For the reasons set forth below, the motion is granted.

*Prior Proceedings*

On December 14, 2000, Hernandez filed his complaint *pro se* alleging: (1) federal civil rights violations pursuant to *42 U.S.C. §§ 1983, 1985* and *1986* (Compl. P 31); (2) state law claims of assault, battery, abuse of process, unlawful arrest, and intentional infliction of emotional distress (Compl. P 35); and (3) state civil rights violations. (*Id.*[[). [*2] The issue was joined, ]]discovery had, and the instant motion, including *Local*

*Rule 56.2* Notice to Pro Se Litigants Opposing a Motion for Summary Judgment, was marked fully submitted on May 19, 2004. Hernandez, proceeding *pro se*, filed no opposition to this motion. On November 4, 2004, a notice of appearance by attorney Stephen Santucci on behalf of Hernandez was entered.

**The Facts**

The following facts are drawn from the Defendants' unopposed *Local Rule 56.1* statement, plaintiff's deposition testimony and the other documents in the record:

1. Plaintiff stated that on January 13, 2000, he boarded a Lexington Avenue Local subway train (a "6 train") at the Spring Street station in Manhattan. [1] (November 12, 2003 Deposition of Nicasio Hernandez, Seligman Decl. Ex. B ("Hernandez Dep") at 30.)

> 1    During his November 12, 2003 deposition, Hernandez initially testified that he boarded an Eighth Avenue Local train (a "C train") at Spring Street in Manhattan. (Hernandez Dep. at 27). However, Hernandez' subsequent deposition testimony clarified that he boarded a 6 train at Spring Street. It should be noted that there are at least two MTA New York City Subway stations on Spring Street. The C train stops at the station at Spring Street and 6th Avenue, and the 6 train stops at the station at Spring Street and Lafayette Street.

[*3] 2. Plaintiff stated that while the train was traveling between 125th Street and 138th Street, he switched subway cars so that he would be closer to the steps when he reached his final destination. (*Id.* at 27, 32.)

3. Plaintiff stated that he switched from one subway car to another while the train was moving. (*Id.* at 30.)

4. Plaintiff stated that prior to exiting the moving car, he read and understood a sign stating that passengers are not permitted to move between cars while the train is in motion. (*Id.* at 47-48.)

5. Plaintiff stated that he understood the sign even though it was not written in Spanish. (*Id.* at 47.)

6. Plaintiff stated that prior to January 13, 2000, he had changed subway cars while the train was moving on many occasions. (*Id.* at 46.)

7. Plaintiff stated that on January 13, 2000, Rosario and Fernandez observed him changing subway cars while the train was moving. (*Id.* at 33; *see also* January 13, 2000 Transit Adjudication Bureau Summons, Seligman Aff. Ex. A.)

8. Plaintiff stated that upon seeing him change cars, Rosario and Fernandez approached him. (Hernandez Dep. at p.33.)

9. Plaintiff stated that when Rosario and Fernandez approached, [*4] he was holding onto a pole in the subway car and that he would not let go of this pole. (*Id.* at 31, 34.)

10. Plaintiff stated that during the time that he was holding the pole, Rosario and Fernandez grabbed him and then hit him with closed fists twice on each shoulder. (*Id.* at 40.)

11. Plaintiff stated that when the train reached the Cypress Avenue Station, Rosario and Fernandez forcibly removed him from the car. (*Id.* at 33-35.)

12. Plaintiff stated that on a platform of the Cypress Avenue station, Rosario and Fernandez pushed him face-first against a wall and put their guns to his head and back. (*Id.* at 35)

13. Plaintiff stated that while Rosario and Fernandez had their guns against him, they patted him down and checked his pockets. (*Id.* at 38.)

14. Plaintiff stated that Rosario and Fernandez subsequently issued him a summons for Unsafe Riding. (*Id.* at 35,45; *see also* Seligman Aff. Ex. A.)

15. Plaintiff stated that after receiving the summons, he waited alone on the platform at the station for another 6 train to arrive. (Hernandez Dep. at 48-49.)

16. Plaintiff stated that approximately twenty minutes later, he boarded another 6 train. (*Id.* at [*5] 48.)

17. Plaintiff indicated that he was detained at the Cypress Avenue Station for a total of 3-5 hours on January 13, 2000. (*Id.* at 48.)

18. Plaintiff stated that he was not placed in handcuffs at any time on January 13, 2000. (*Id.* at 49.)

19. Plaintiff stated that he did not request medical attention on January 13, 2000. (*Id.*)

20. Plaintiff stated that on January 13, 2000, he did not at any time indicate to Rosario or Fernandez that he was hurt or injured. (*Id.* at 49-50.)

21. Plaintiff stated that at some time after January 13, 2000, he developed pain in his shoulders. (*Id.* at 50.)

22. Plaintiff stated that he did not recall when he first sought medical treatment for the alleged injuries he suffered as a result of the January 13, 2000 incident or the name of the doctor that he saw. (*Id.*)

23. Plaintiff stated that he subsequently paid the summons that he was issued on January 13, 2000. (*Id.* at 54-55; *see also* Seligman Aff. Ex. C.)

### *Discussion*

### 1. *Legal Standard*

Under *Rule 56(c), Fed. R. Civ. P.*, summary judgment is warranted when, in viewing the evidence in the light most [*6] favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; *Anderson v. Liberty Lobby, 477 U.S. 242, 251, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).*

A motion for summary judgment requires the party with the burden of proof at trial to "make a showing sufficient to establish the existence of an element essential to that party's case . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* Where the "record taken as a whole could not lead a rational trier of fact to find for the moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)* (quoting *First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968)).* Accordingly, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, [*7] and admissions on file, together with affidavits, if any, show that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law." *R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997)* (quoting *Fed. R. Civ. P. 56(c)*).

### 2. **Federal Constitutional Violations**

### A. *Alleged Violations*

Hernandez has alleged that he was seized, searched, arrested, and subjected to excessive force in violation of the *Fourth Amendment* as applied to the states by the

*Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 86 Ohio Law Abs. 513 (1961).* Based on these alleged constitutional violations, Hernandez has asserted claims for monetary damages pursuant to *42 U.S.C. §§ 1983, 1985* and *1986*.

### i. *42 U.S.C. § 1983*

Hernandez has asserted claims pursuant to *§ 1983*, which imposes liability for acts taken under color of state law which deprive a plaintiff of "rights, privileges, or immunities secured by the Constitution and laws." *42 U.S.C. § 1983*. The Supreme Court [*8] has interpreted this statute as imposing liability "only for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and its laws." *Rizzo v. Goode, 423 U.S. 362, 370, 46 L. Ed. 2d 561, 96 S. Ct. 598 (1976)* (citation omitted). Thus, in order to prevail on a *section 1983* claim, the plaintiff must prove that the defendant: (1) acted, (2) under color of state law, (3) in a manner which deprived the plaintiff's constitutional rights. *See, e.g., Candelaria v. Coughlin, 787 F. Supp. 368, 372 (S.D.N.Y. 1992), aff'd, 979 F.2d 845 (2d Cir. 1992).*

### ii. *42 U.S.C. § 1985*

Hernandez alleges that the Defendants conspired to violate his civil rights. As such, he has alleged violations of *42 U.S.C. § 1985(3)*, which provides a cause of action where:

> two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... if one or more persons ... do, or [*9] cause to be done, any act in furtherance of the object of such conspiracy, whereby another is ... deprived of having and exercising any right or privilege of a citizen of the United States....

*42 U.S.C. § 1985(3).*

To state a claim for conspiracy to violate an individual's constitutional rights, a plaintiff must show: (1) a conspiracy (2) for the purpose of depriving a person of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Smith v. Metro North Commuter R.R., 2000 U.S. Dist. LEXIS 14168, No. 98 Civ. 2528 (RWS), 2000 WL 1449865, at *6 (S.D.N.Y.*

*Sept. 29, 2000)* (citing *Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999)).*

### iii. *42 U.S.C. § 1986*

Hernandez has also asserted a claim pursuant to *§ 1986*, which "provides a cause of action against anyone who 'having knowledge that any of the wrongs conspired to be done and mentioned in *section 1985* are about to be committed and having power to [*10] prevent or aid, neglects to do so.'" *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993)* (quoting *Katz v. Morgenthau, 709 F. Supp. 1219, 1236 (S.D.N.Y. 1989), aff'd in part and rev'd in part on other grounds, 892 F.2d 20 (2d Cir. 1989)).* Thus, a *§ 1986* claim can only proceed if there is a valid *§ 1985* claim. *See id.* (citing *Dacey v. Dorsey, 568 F.2d 275, 277 (2d Cir. 1978)).*

### B. *The City Is Not Liable*

Hernandez' *§ 1983* claims against the City are dismissed.

### i. *No § 1983 Liability*

In order to hold the City liable as a "person" within the meaning of *42 U.S.C. § 1983*, Hernandez must establish that the City was at fault for the injury he suffered, *see Oklahoma City v. Tuttle, 471 U.S. 808, 810, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985); Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978)*, in that the violation of his constitutional rights resulted from a municipal policy, custom or practice. *See Monell, 436 U.S. at 694; Vann v. New York, 72 F.3d 1040, 1049 (2d Cir. 1995).* [*11] A plaintiff may satisfy the "policy, custom or practice" requirement in one of four ways. *See Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).* The plaintiff may allege the existence of (1) a formal policy officially endorsed by the municipality, *see Monell, 436 U.S. at 690*; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question, *see Pembaur v. Cincinnati, 475 U.S. 469, 483-84, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986)* (plurality opinion); *Walker v. New York, 974 F.2d 293, 296 (2d Cir. 1992)*; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials, *see Monell, 436 U.S. at 690-91*; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *See Canton v. Harris, 489 U.S. 378, 388, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989).* There must also be a causal link between the [*12] policy, custom or practice and the alleged injury in order to find liability against a municipality. *See Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).* "[A] single inci-

dent alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998)* (quoting *Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991))*. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby, make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur, 475 U.S. at 479* (emphasis in original).

Hernandez has demonstrated no basis for the imposition of *Monell* liability. First, he has offered no evidence to show that the alleged civil rights violations were committed pursuant to a formal policy endorsed by the City. Second, he has offered no evidence to show that City policymakers took any action that caused the alleged rights violations to occur. Third, [*13] he has offered no evidence to show that the alleged rights violations were committed pursuant to a consistent and widespread practice. Fourth, he has offered no evidence to show that City policymakers, through a failure of adequate training or supervision, were deliberately indifferent to rights violations committed by police officers like Fernandez and Rosario. Therefore, any *§ 1983* claims asserted against the City are dismissed in their entirety.

**ii. No § 1985 Liability**

To hold the City liable pursuant to *§ 1985(3)*, Hernandez must show that the alleged constitutional violations that he suffered were the result of a City policy, custom, or practice. *Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979)*. Since plaintiff has failed to present any evidence that the alleged violations that he suffered were the result of a municipal policy, custom, or practice, his *§ 1985(3)* claim against the City is dismissed.

**iii. No § 1986 Liability**

"[A]*§ 1986* claim must be predicated upon a valid *§ 1985* claim." *Mian, 7 F.3d at 1088*. Since Hernandez has failed to satisfy his burden of production with respect to the *§ 1985* claim [*14] against the City, his *§ 1986* claim against the City must also be dismissed.

**C. The *§ 1983* Claims Against Rosario and *Fernandez are Dismissed***

**i. The False Arrest and Unlawful Seizure *Claims Are Dismissed***

Hernandez has asserted a *§ 1983* claims against Fernandez and Rosario on the theory that his arrest and attendant detention at the Cypress Avenue Station violated the *Fourth Amendment*. The Second Circuit has held that the elements of a *§ 1983* false arrest claim are substantially similar to the elements of a false arrest claim under

New York law. *Weyant v. Okst[[, 101 F.3d 845, 852 (2d ]]Cir. 1996)*. "Under New York law, a plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification." *Id*. In an action for false arrest, whether brought under *§ 1983* or New York state law, "the existence of probable cause . . . constitutes justification and 'is a complete defense to [the] action . . . .'" *Id*. (quoting *Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994))*.

**a. Hernandez' Payment of the Transit Fine Does Not [*15] Bar his *§ 1983* Action *Against Fernandez and Rosario***

The Second Circuit has stated that a conviction is conclusive evidence that a given arrest was made with probable cause unless the conviction is reversed on appeal. [2] *Id*. Since a guilty plea is the equivalent of a conviction, *Saddler v. United States, 531 F.2d 83, 85-86 (2d Cir. 1976)*, a guilty plea will also bar a *§ 1983* false arrest claim. See, e.g., *Osuch v. Gregory, 303 F. Supp. 2d 189, 195 (D. Conn. 2004); Almonte v. Florio, 2004 U.S. Dist. LEXIS 335, No. 02 Civ. 6722 (SAS), 2004 WL 60306 at *5 (S.D.N.Y. Jan. 13, 2004); Papeskov v. Brown, 1998 U.S. Dist. LEXIS 8355, No. 97 Civ. 5351 (SS), 1998 WL 299892 at *5 (S.D.N.Y. June 8, 1998)*.

2  The Supreme Court has held that to recover damages for false arrest, a *§ 1983* plaintiff must prove that the conviction had been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey, 512 U.S. 477, 487, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994)*.

[*16]  The Defendants argue that Hernandez' payment of a $ 75 fine to the New York City Transit Adjudication Bureau, Seligman Dec. Ex. C, is equivalent to a guilty plea, and that such payment therefore bars his *§ 1983* false arrest claim. This argument is undercut by the text of *§ 1050.10 of the New York City Transit Rules of Conduct* (the "Rules of Conduct"), which states that fines imposed by the Transit Adjudication Bureau are civil penalties, and that the imposition of such penalties is an alternative to criminal prosecution. [3] Defendants have failed to cite any authority for the proposition that payment of a civil penalty is equivalent to a guilty plea in a criminal prosecution. Moreover, the opinion of the *Sadler* court militates against any such proposition. In *Sadler*, the Second Circuit stated:

Before accepting a guilty plea the district court must of course satisfy itself that the defendant is offering the plea volun-

2004 U.S. Dist. LEXIS 23365, *

tarily and that he is competent to understand the nature of the charge, his constitutional rights, and the scope of the penalty provided by law. [Citations omitted]. Since a guilty plea is the equivalent of a conviction and involves the defendant's [*17] waiver of precious constitutional rights, [citation omitted], the district courts have been instructed to exercise the "utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." [Citation omitted].

*Saddler, 531 F.2d at 85-86.* The Defendants have failed to demonstrate that the payment of the fine was attended by equivalent solemnities insuring that Hernandez was aware of the rights and protections that he was allegedly waiving. Based on the foregoing, Hernandez' payment of a civil penalty to the Adjudication Bureau will not be deemed equivalent to a guilty plea and will not bar his *§ 1983* false arrest claim.

3    *§ 1050.10* provides, in pertinent part, that:

> any person committing one or more violations of [the New York City Transit Rules of Conduct] shall be subject to *either:*)
>
> (a) *criminal prosecution* in the criminal court of the City of New York, which court may impose a fine not to exceed $ 25 or a term of imprisonment for not longer than 10 days, or both; *or*
>
> (b) *civil penalties* imposed by the transit adjudication bureau in an amount not to exceed $ 100 per violation (exclusive of interest or costs assessed thereon).

*21 NYCRR § 1050.10* (emphasis added).

[*18]  **b. The Record Establishes that Rosario and Fernandez had Probable Cause to *Arrest Hernandez***

Hernandez' deposition testimony demonstrates that Rosario and Fernandez had probable cause to arrest Hernandez for passing between subway cars while the train was in motion. [4] A defendant police officer who arrests a person without a warrant, as in this case, is not liable for false arrest if the officer had reasonable cause to believe that the individual committed an offense. *See Illinois v. Gates, 462 U.S. 213, 241-46, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983); United States v. Ceballos, 812 F.2d 42, 50 (2d Cir. 1987).* The existence of probable cause must be determined on the basis of the totality of the circumstances. *Gates, 462 U.S. at 230-32.* Probable cause exists "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995)* (quoting *O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993)).* [*19]

4    *§ 1050.9(d) of the Rules of Conduct* provides, in pertinent part, that no person may ride on the "platform between subway cars or any other area outside any subway car . . . ." *21 NYCRR § 1050.9(d).*

Hernandez has admitted (1) that he passed between subway cars while the train was in motion on the night in question, and (2) that Rosario and Fernandez observed him while he engaged in this conduct. *See* Hernandez Dep. at 30-33. These admissions provide uncontested proof that Rosario and Fernandez had probable cause to arrest him. Therefore, Hernandez' false arrest claim is dismissed.

**c. Hernandez Has Failed to Show that the Detention in the Cypress Avenue Station *Was Unreasonable***

Hernandez has also alleged a *§ 1983* violation based on the theory that he was detained at the Cypress Avenue Station in violation of the *Fourth Amendment.* As discussed above, this detention, which apparently lasted 3-5 hours (Hernandez Dep. at 48), attended an arrest that was based on probable cause. Based on [*20] these facts, the alleged detention is analogous to the detention of an arrestee pending the commencement of a probable cause hearing. Under such circumstances, a criminal defendant can generally be held for up to 48 hours without implicating the *Fourth Amendment. County of Riverside v. McLaughlin, 500 U.S. 44, 56, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991).* For detentions of less than 48 hours, the *§ 1983* plaintiff has the burden of showing that the detention was unreasonable. *Id. at 57.* Since Hernandez has failed to make any such showing of unreasonableness, his unlawful seizure claim must be dismissed.

**ii. *The Excessive Force Claim Is Dismissed***

Hernandez also claims, pursuant to *§ 1983,* that Rosario and Fernandez used excessive force against him in violation of the *Fourth Amendment.* The Second Circuit has stated that a "police officers' application of force is excessive, in violation of the *Fourth Amendment,* if it

is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. New York, 380 F.3d 106, 108 (2d Cir. 2004)* (quoting *Graham v. Connor, 490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989)*. [*21] The Second Circuit has stated:

> Not every push or shove by a state officer constitutes a violation of substantive due process. Whether the constitutional line has been crossed depends on "such factors as [1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [3] the extent of injury inflicted, and [4] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

*Robison v. Via, 821 F.2d 913, 923 (2d Cir. 1987)* (quoting *Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).*

These factors are evaluated from the perspective of a reasonably objective officer in the circumstances at the time of the incident and it is plaintiff's burden to prove that the officer acted unreasonably. *See, e.g., Roundtree v. New York, 778 F. Supp. 614, 621-22 (E.D.N.Y. 1991)* (citing *Graham, 490 U.S. at 397*).

Hernandez has failed to carry this burden. In light of the circumstances confronting them, Fernandez and Rosario appeared to have used a reasonable amount [*22] of force against Hernandez, who admits that he physically resisted the officers' efforts to seize him. Hernandez testified that he "grabbed onto the pole," that he "wouldn't let go of the pole," and "once the train stopped that is when they grabbed me by force." (Hernandez Dep. at 31, 34.) Hernandez' allegation that he was pushed against a wall in the Cypress Avenue Station does not change this analysis.

The severity of plaintiff's injuries is also relevant to the consideration of whether the force used was reasonable. Here, Hernandez testified at his deposition that "they grabbed me from behind and they [threw him] out of the train . . . one grabbed me the other one held a door and helped him." (*Id.* at 34.) Although Hernandez testified that he was "hit two times in the shoulder and two time on the other shoulder," he later testified that he "wasn't hurt." Indeed, he testified that he had pain but no specific identifiable injury. (*Id.* at 50.) Furthermore, Hernandez testified (1) that he did not request medical attention on January 13, 2000 (*id.* at 49), (2) that he could not remember the approximate date on which he first visited

a doctor for treatment of his alleged [*23] injuries (*id.* at 50), and (3) that he could not definitively state that he sought treatment for such alleged injuries within one year of his arrest. (*Id.*). Accordingly, the alleged use of force during the arrest of Hernandez does not rise to the level of a constitutional violation, *Graham, 490 U.S. at 397*, and his claim for excessive force is dismissed.

Furthermore, although Hernandez alleged in the complaint that the conduct of Rosario and Fernandez was motivated by animus toward people from the Dominican Republic (Compl. P 17), he has not provided any evidence to create a triable issue of fact as to whether Rosario or Fernandez were motivated to use force against him by some improper motive.

Hernandez also alleged that he was held at gunpoint by Rosario and Fernandez. The mere fact that the officers allegedly brandished their weapons does not change the foregoing analysis. Even assuming the accuracy of plaintiff's allegations concerning the officer's use of their pistols, such use, without more, does not sustain a claim for excessive force. *See e.g., Aderonmu v. Heavey, 00 CV 9232 (AGS), 2001 U.S. Dist. LEXIS 640 at *10 (S.D.N.Y. 2001)* [*24] (holding that interrogation at gunpoint does not amount to use of excessive force).

Rather, to succeed on a *§ 1983* claim of excessive force, Hernandez must demonstrate that the use of force was unreasonable and that he suffered injury as a result. Based on the facts alleged, Hernandez has failed to make this showing.

### iii. *The Unlawful Search Claim Is Dismissed*

Hernandez' *§ 1983* claim is based, in part, on the allegation that during the course of his arrest at the Cypress Avenue Station, Rosario and Fernandez searched his pockets and his wallet in violation of the *Fourth Amendment.* (Compl. P 8.) This search was conducted pursuant to a lawful arrest. It is axiomatic that pursuant to a lawful arrest, an officer can search a defendant regardless of whether a search warrant has been obtained. *Chimel v. California, 395 U.S. 752, 762-763, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (U.S. 1969).* ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons . . . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person . . . .") Courts of this [*25] district have interpreted *Chimel* to permit the search of a defendant's wallet pursuant to a lawful arrest. *See, e.g., United States v. Vaneenwyk, 206 F. Supp. 2d 423, 426 (S.D.N.Y. 2002).* Based on *Chimel*, the search of Hernandez at the Cypress Avenue Station was permissible. Therefore, the unlawful search claim is dismissed.

### D. The §§ 1985 and 1986 Claims Against Rosario and Fernandez Are Dismissed

As discussed above, Hernandez must offer proof of the following elements in order to create triable issues of fact as to whether Rosario and Fernandez conspired to violate his constitutional rights: (1) a conspiracy (2) for the purpose of depriving a person of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Smith v. Metro North Commuter R.R., 2000 U.S. Dist. LEXIS 14168, 2000 WL 1449865, at *6.* Since Hernandez has failed to provide any proof of the existence of an alleged conspiracy, the § 1985 claims against Rosario and Fernandez [*26] is dismissed. [5] Finally, for the reason set forth above, the § 1986 claims against Rosario and Fernandez are also dismissed.

> 5   It is not clear whether, pursuant to the intra-corporate conspiracy doctrine, concerted conduct by Rosario and Fernandez could constitute a conspiracy to violate Hernandez' constitutional rights. *See, e.g., Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 70-72 (2d Cir. 1976).*

### E. Rosario And Fernandez Have Qualified Immunity

Rosario and Fernandez have argued that they have qualified immunity with respect to the claims asserted by Hernandez. Qualified immunity is a doctrine aimed at "protecting government officials from suits seeking to impose personal liability for money damages based on unsettled rights or on conduct that was not objectively unreasonable." *Connell v. Signoracci[[, 153 ]]F.3d 74, 79 (2d Cir. 1998).* This doctrine is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz, 533 U.S. 194, 200, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001)* [*27] (quoting *Mitchell v. Forsyth, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985)).* However, the immunity is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell, 472 U.S. at 526.* Therefore it is necessary that "qualified immunity questions should be resolved at the 'earliest possible stage of litigation,'" to satisfy the goal of the doctrine. *Saucier, 533 U.S. at 201* (quoting *Hunter v. Bryant, 502 U.S. 224, 227, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991)).*

The question of qualified immunity is independent from the merits of the underlying action and must be examined independent of underlying false arrest and excessive force claims. *See id. at 206; see also Washington Square Post No. 1212 Am. Legion v. Maduro, 907 F.2d 1288, 1292 (2d Cir. 1990)* (citing *Mitchell, 472 U.S. at 527-28)).*

Even where reasonable, competent officials could disagree as to whether the conduct at issue would violate clearly established rights, the qualified immunity defense is available. *Malley v. Briggs, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986); Cartier v. Lussier, 955 F.2d 841, 846 (2d Cir. 1992).* [*28] It "'protects all but the plainly incompetent or those who knowingly violate the law.'" *Saucier, 533 U.S. at 202* (quoting *Malley[[, 475 U.S. at 341).* ]]

As stated by the *Saucier* court, the first step in the qualified immunity analysis is to determine whether, on the facts alleged, the official's conduct violated a constitutional right. *Id. at 200.* The next step is to determine whether "the right was 'clearly established'" at the time of the alleged incident. *Id.* The "clearly established" inquiry requires that "if the law did not put the official on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id. at 202.*

The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

It cannot be said, based on the evidence presented, that it would have been clear to a reasonable officer under similar circumstances that the conduct at issue --*i.e.*, the arrest, the detention pursuant to that arrest, the search, and the use of [*29] force was unlawful. *See, e.g., Thomas v. County of Putnam, 262 F. Supp. 2d 241, 247 (S.D.N.Y. 2003).* Therefore, Rosario and Fernandez are entitled to qualified immunity in this action.

### F. The State Law Claims Against City Defendants Are Dismissed

Hernandez does not have any viable federal claims against the Defendants. "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998); see also Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994)* (noting that "it is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal claims . . ."); *Bernstein v. Misk, 948 F. Supp. 228, 243 (E.D.N.Y. 1997).* Therefore, the state law claims are dismissed.

### Conclusion

For the foregoing reasons, summary judgment is granted in favor of the Defendants as to all of plaintiff's causes of action. However, in Defendants moving papers, they failed to specifically address the following claims: (1) the § 1983 illegal search claims, (2) the § 1985 [*30] claims, and (3) the § 1986 claim. To obviate any concerns over whether plaintiff, who proceeded *pro se* for the purposes of this motion, had notice of the na-

2004 U.S. Dist. LEXIS 23365, *

ture and consequences of Defendants' motion, leave is hereby granted to the plaintiff to submit within twenty (20) days of entry of this opinion any factual materials that create genuine issues of material fact as to those claims not addressed in Defendants' motion papers. In the event that such materials are submitted, the Defendants must respond, if at all, within ten (10) days.

It is so ordered.

New York, NY

November 18, 2004

**ROBERT W. SWEET**

**U.S.D.J.**

LEXSEE 2002 U.S. DIST. LEXIS 4903

**LOUIS SPIES, Plaintiff, v. RICHARD BROWN, District Attorney, Queens County; JOHN DOE # 5, Assistant District Attorney; JENNIFER FRIEDMAN, Assistant District Attorney; NEW YORK CITY POLICE DEPARTMENT; JOHN DOE # 1, John McGrath; JOHN DOE # 2, Thomas Lindner; JOHN DOE # 3, 104th Precinct; LEGAL AID SOCIETY, Queens County; ROBERT MOELLER, Stand-in Attorney, Legal Aid; SHERYL PARKER, Hon. Judge; LORRIE A. ZINNO, Paralegal; LISA DRURY, ADA Records Officer; SHERYL L. ARSHADNIA, Paralegal; JANE DOE, Assistant District Attorney; ERNEST BURSTEIN, Assistant District Attorney; AN-DREW L. ZWERLING, Assistant District Attorney, FOIL Appeals Officer; DAVID KALOS, Warden Rikers Island C-76; RICHARD SOMMERS, Witness, Felony Complaint, United Commercial Salvage; JOHN DOE, Known and/or Unknown Conspirator; JACK WOHL, Assistant District Attorney; AVI LEW, Assistant At-torney General, State of New York; DENNIS C. VACCO, Attorney General, State of New York; JOHN DOE, Police Officer, Name Unknown, # 3216, 104th Precinct; and TRACY KAGAN, Esq., Defendants.**

98-CV-4708

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2002 U.S. Dist. LEXIS 4903*

**March 13, 2002, Decided**

**DISPOSITION:** The City defendants' motion to dismiss for failure to state a claim is granted as to plaintiff's claims of conspiracy, unconstitutional prison conditions, illegal search and seizure, and as to his claims against the New York City Police Department; and the City defendants' alternative motion for summary judgment is granted as to plaintiff's claims of false arrest, malicious prosecution, false imprisonment, and denial of medical treatment.

**COUNSEL:** [*1] For Plaintiff or Petitioner: Lous Spies, prose, Farmingrille, NY.

For Defendant or Respondent: Gail Savetamal, New York, NY.

**JUDGES:** NINA GERSHON, United States District Judge.

**OPINION BY:** NINA GERSHON

**OPINION**

**ORDER**

**GERSHON, United States District Judge:**

Plaintiff brings this action pursuant to *42 U.S.C. § 1983* ("*Section 1983*") alleging several civil rights viola-tions against multiple defendants arising out of his arrest, guilty plea, and eight-month imprisonment. Reading his complaint liberally because of his *pro se* status (see *Haines v. Kerner, 404 U.S. 519, 520-21, 30 L. Ed. 2d 652, 92 S. Ct. 594, reh'g denied, 405 U.S. 948, 30 L. Ed. 2d 819, 92 S. Ct. 963 (1972)*), his specific allegations are that he was wrongfully arrested by New York City police officers, that a Queens Assistant District Attorney con-spired with plaintiff's Legal Aid Society attorney to deny him effective assistance of counsel and to coerce him into pleading guilty to a state charge of possessing bur-glar's tools, that he was falsely imprisoned at Rikers Is-land ("Rikers") from May 25, 1997 through January 21, 1998, and that, at the police [*2] station and during his subsequent imprisonment, he was denied medical treat-ment for his diabetes.

The Legal Aid Society, Legal Aid attorney Tracy Kagan, Legal Aid attorney Robert Moeller, Judge Sheryl Parker, former New York State Attorney General Dennis Vacco, and former Assistant Attorney General Avi Lew

have already been dismissed as defendants in this action. Those defendants who are employed by New York City (Richard Brown, Jennifer Friedman, Lorrie Zinno, Lisa Drury, Andrew Zwerling, Ernest Burstein, Jack Wohl, John McGrath, and the New York City Police Commissioner), in addition to the New York City Police Department (collectively, "the City defendants"), now move to dismiss plaintiff's claims against them for failure to state a claim or, in the alternative, for summary judgment.

In deciding a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, the court must accept all of plaintiff's allegations as true and dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. Motions for summary [*3] judgment are granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See *Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995)*. The moving party must demonstrate the absence of any material factual issue genuinely in dispute. See id. The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d Cir. 2000)*. However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)*, cert. denied, *480 U.S. 932, 94 L. Ed. 2d 762, 107 S. Ct. 1570 (1987)*. The party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. See *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. [*4]

The City defendants' motion for summary judgment on plaintiff's claims of false arrest, malicious prosecution, and false imprisonment is granted. For a *Section 1983* plaintiff to "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must show that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey, 512 U.S. 477, 486-87, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994); Berman v. Turecki, 885 F. Supp. 528, 532 (S.D.N.Y. 1995)*. Spies must make such a showing, because his plea of guilty to possessing burglar's tools constitutes a conviction, *Morris v. Reynolds, 264 F.3d 38, 48-49 (2d Cir. 2001)*, and his *Section 1983* claims for false arrest, mali-

cious prosecution, and false imprisonment are constitutional challenges to that conviction. Since Spies's conviction has in no way been invalidated, these claims [*5] cannot stand.

Spies's allegation that his conviction was defective because he "had no other choice [than] to plead guilty," Complaint at 4, does not alter this conclusion. At his plea proceeding, the judge engaged Spies in an extensive colloquy that demonstrated the voluntariness of his plea. She asked Spies, "it is my understanding you wish to plead guilty to the crime of criminal possession of burglars tools, a misdemeanor, is that what you wish to do?" Spies answered "Yes." The court continued, "It is charged that on May 23, 1997 at approximately 3:20 p.m. in front of 1717 Troutman Street in Queens County, that you were in possession of burglars tools, in that you had in your possession a screwdriver and that was an instrument which you were going to use to take property which did not belong to you, is that true?" Spies responded, "Yes." The court then asked Spies, "Has anyone threatened you in order to get you to plead guilty?" Spies responded, "No." The judge further asked Spies, "Has anyone made any promises other than the promise that you will be sentenced to one year incarceration, has any other promise been made to you?" Spies replied, "No." The judge asked Spies whether [*6] he understood "that by pleading guilty you give up certain rights, you give up your right to trial by jury where the prosecution would have to prove the case against you beyond a reasonable doubt; you give up your right to confront and cross examine witnesses who might appear and testify against you and you give up your right to remain silent, do you understand?" Spies responded, "Yes." Finally, the court asked Spies, "Have you discussed all this with your lawyer here beside you," and Spies responded, "Yes." Savetamal Decl. Ex. C at 3-4.

As the Supreme Court has held,

> The representations of the defendant, his [or her] lawyer, and the prosecutor at [the original plea] hearing . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison, 431 U.S. 63, 73-74, 52 L. Ed. 2d 136, 97 S. Ct. 1621 (1977)* (citations omitted); see *United States v. Hernandez, 242 F.3d 110, 112 (2d Cir.*

2002 U.S. Dist. LEXIS 4903, *

*2001) [*7] (quoting Allison); *United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997)* (a "defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea"). Because Spies's allegations of involuntariness are purely conclusory and contradict his statements during his plea allocution, they are entitled to no weight here.

In a related claim, plaintiff argues that his Legal Aid attorney conspired with the Assistant District Attorney on his case to secure his guilty plea in order to "cover-up police negligence." Plaintiff's Statement ("Stmt.") at 3. This claim, already dismissed as against the Legal Aid Society defendants, must also be dismissed against the District Attorney and his employees, because plaintiff offers no factual basis for his conclusory allegations of conspiracy. See *Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977)* ("complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed") (citations omitted); *Dwares v. City of New York, 985 F.2d 94, 99-100 (2d Cir. 1993)* [*8] (same).

Spies also challenges the constitutionality of the conditions of his confinement at Rikers. He asserts that, when he was assigned to C-76, dorm 6 lower, "there [were] two inches of water in the bathroom, no pillows, no towels, no sheets, and no blankets, for over a month until I was moved to dorm seven upper." Complaint at 5. In addition, he complains of "being forced to eat food that had hair, bugs, cigarette butts and many other toxins in it"; "being subjected to an environment that had 140 slashing[s] a month[,] Aids [sic], TB, etc."; and "being subject to an environment [where] officers were high on drugs and alcohol[,] not to mention when they all got arrested that environment got a lot worse including their state of mind." Id. at 5-6.

This claim must be dismissed. A defendant cannot be liable for damages under *Section 1983* unless he was personally involved in the constitutional deprivations alleged. *Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001); Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)*. A defendant may be personally involved in a constitutional deprivation in the following ways: (1) by directly participating [*9] in the challenged conduct; (2) as a supervisory official, by failing to remedy the wrong after having learned of it; (3) as a supervisory official, by creating or perpetuating a policy or custom under which unconstitutional practices occurred; or (4) as a supervisory official, through gross negligence in managing the subordinates who caused the unlawful condition or event. *Williams, 781 F.2d at 323-24*. Because none of the City defendants is alleged even to have worked at Rikers, let alone to have had direct or supervisory responsibility for inmate conditions there, they were not personally involved in any alleged neglect of those conditions. Therefore, the City defendants' motion to dismiss Spies's prison conditions claim for failure to state a claim is granted. [1]

1 Spies's complaint named only one defendant actually associated with Rikers: David Kalos, whom Spies describes as warden of the Rikers facility where he was incarcerated. However, Kalos was never served with the summons and complaint and thus is not a party to this action. Furthermore, nowhere in his complaint or attached statement does Spies allege that Kalos had personal involvement in the particular substandard prison conditions of which he complains.

[*10] In yet another claim, Spies asserts that he was denied proper medical treatment for his diabetes, both at the 104th Precinct station house following his arrest and during his incarceration at Rikers. The only allegations in Spies's complaint are that (1) he told an unidentified officer at the 104th Precinct that he "needed medical treatment I'm a diabetic" and the officer "just ignored my request," Complaint at 4, leaving him without insulin from the time of his arrest at approximately 3:00 p.m. on May 23, 1997 until about 1:45 a.m. on May 25, 1997, when he was brought to Rikers; and (2) unknown individuals caused him to be "denied access to medical twice daily from May 23, 1997 to January 21, 1998," Complaint at 5, the period of his incarceration. Because these allegations fail to support the implication that any named City defendant had personal involvement in the conduct Spies challenges, his denial of medical treatment claim must be dismissed for failure to state a claim.

Even if Spies's complaint is read to incorporate the allegations from his reply and sur-reply papers, his medical care claim cannot survive. Regarding his treatment at the 104th Precinct, Spies's sole additional [*11] allegation is that "police officers McGrath, Lindner, and Jason Doe # 3 knew and totally disregarded plaintiff's rights to medical care. Knowledge was known by plaintiff's diabetic injection card in his wallet where they found my I.D. and related paperwork, my name address etc. I did not give it to them 'verbally.'" Plaintiff's Opposition ("Opp.") at 17. The City defendants do not contest Spies's claim that he was not given any insulin during the one and one half days he was held at the 104th Precinct, but submit uncontested medical records showing his condition at the time he entered Rikers to have been normal and his diabetes during the period of his confinement to have been under control. Dunn Decl. PP3, 6.

Lindner and "Jason Doe # 3" were never served and thus are not parties to this case. As for McGrath, even treating the complaint as amended to allege McGrath's

personal involvement in denying plaintiff medical care at the 104th Precinct, Spies has made no allegation that the delay in giving him insulin until he reached Rikers caused him any actual harm. Delay in the rendering of medical treatment "in and of itself does not rise to the level of a constitutional violation"; to [*12] demonstrate such a violation, "a plaintiff must show that he sustained substantial harm because of the delay in the rendering of medical treatment." *Smith v. Montefiore Medical Center- Health Services Division, 22 F. Supp. 2d 275, 280 (S.D.N.Y. 1998)* (citation omitted). Because Spies has made no such allegation, his claim regarding denial of medical treatment at the 104th Precinct does not state a claim.

Finally, even if the complaint is treated as sufficient, plaintiff cannot survive the City defendants' summary judgment motion because he has not raised a factual issue regarding any harm caused by the delay. Spies's medical records indicate that when he first entered Rikers he was evaluated by medical providers, who found that his appearance was normal, well-developed, and well-nourished. Dunn Decl. P3. Moreover, the intake form the providers filled out upon examining Spies contained no indication that plaintiff complained of symptoms associated with diabetes, such as seizures, coma, blindness, circulatory disorders, kidney problems, or peripheral nerve disorders. Id.

Nor can Spies's claim regarding medical treatment at Rikers survive the City defendants' motion [*13] to dismiss. In his post-complaint submissions, Spies explains that he was not altogether denied medical care at Rikers, but rather that prison officials mismanaged the care of his diabetes. First, he claims that while "medical standards" mandate that diabetics receive insulin injections every ten hours, Rikers officials arranged for his injections to be administered every twelve hours. Opp. at 4. Second, he alleges that, despite the twelve-hour schedule, he actually received his insulin injections "at all different times . . . . times were always changing due to 'in part' from officers calling late or red lights alarms, etc. fights slashings etc." Id. Because of these delays, Spies claims, his blood sugar "was far from under control" during the first part of his incarceration, only "coming in control around October 3, 1997." Plaintiff's Reply at 7; Opp. at 3.

To state a claim under *Section 1983* for deprivation of medical treatment in violation of the *Eighth Amendment*, however, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000)* (quoting *Estelle v. Gamble, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)).* [*14] Mere negli-

gence in treating a medical condition does not constitute deliberate indifference and thus does not amount to an *Eighth Amendment* violation. *219 F.3d at 139* (quoting *Estelle, 429 U.S. at 105-06).* Because the alleged care of Spies's diabetes at Rikers was at most negligent, Spies's challenge to that care must be dismissed. Rather than evidencing deliberate indifference or even negligence, in fact, Spies's undisputed medical records indicate that he received daily medical attention for his diabetes throughout the time he was confined at Rikers. Dunn Decl. P4. Thus, even if Spies stated a claim, the City defendants are entitled to summary judgment.

The City defendants' motion to dismiss any claims as against the New York City Police Department is granted, because, as an agency of New York City, the Police Department has no capacity to be sued. See, e.g., *Wilson v. City of New York, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992).*

Finally, insofar as Spies could be viewed as complaining that the police officers who arrested him illegally searched him at the time of his arrest and illegally seized the items in his pocket, see [*15] Stmt. at 4, his claim must be dismissed. To recover damages for an illegal search under *Section 1983*, the "plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury." *Humphrey, 512 U.S. at 487.* Merely being arrested and convicted, as Spies alleges, unless the conviction has been overturned, does not constitute the requisite injury. Id.

For the foregoing reasons, the City defendants' motion to dismiss for failure to state a claim is granted as to plaintiff's claims of conspiracy, unconstitutional prison conditions, illegal search and seizure, and as to his claims against the New York City Police Department; and the City defendants' alternative motion for summary judgment is granted as to plaintiff's claims of false arrest, malicious prosecution, false imprisonment, and denial of medical treatment. This order is dispositive of this action, because none of the remaining individuals named in the complaint caption were served. The Clerk of Court is therefore directed to enter judgment for the defendants and to close this case.

**SO ORDERED.**

**NINA GERSHON**

**United States District Judge**

    **Dated:** [*16] **March 13, 2002**

    **Brooklyn, New York**

3 of 3 DOCUMENTS

**ARTEZ HOUSTON, Plaintiff, -against- NEW YORK STATE TROOPERS, TRP. MICHAEL BROWN, and THOMAS CONSTANTINE, Defendants.**

**96 Civ. 1587 (DAB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1997 U.S. Dist. LEXIS 15999*

**October 10, 1997, Decided
October 15, 1997, Filed**

**DISPOSITION:** [*1] Defendants' Motion to Dismiss GRANTED. Complaint dismissed. Plaintiff's Motion for Leave to File Amended Complaint DENIED.

**COUNSEL:** ARTEZ HOUSTON, PLAINTIFF, Pro se.

For DEFENDANTS: Alpha J. Sanghvi, Assistant Attorney General, of Counsel, DENNIS C. VACCO, Attorney General of the State of New York, New York, New York.

**JUDGES:** DEBORAH A. BATTS, U.S.D.J.

**OPINION BY:** DEBORAH A. BATTS

**OPINION**

*MEMORANDUM AND ORDER*

DEBORAH A. BATTS, United States District Judge.

*Pro se* Plaintiff, Artez Houston ("Plaintiff"), filed a Complaint under the Civil Rights Act of 1871, *42 U.S.C. § 1983*, against Defendants New York State Troopers, [1] Trooper Michael Brown and Thomas Constantine. [2] Defendants move to dismiss the Complaint, pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, for failure to state a claim or, in the alternative, for a more definite statement and dismissal of the claims against New York State Troopers. In response to Defendants' motion, Plaintiff cross moves for leave to file an Amended Complaint. For the reasons stated below, Defendants' motion is granted. Plaintiff's motion to replead is denied.

1 Throughout his Complaint Plaintiff makes reference to the New York State Troopers. The actual name of the agency is the New York State Police.

[*2]

2 Thomas Constantine is the former Superintendent of the New York State Police.

I. BACKGROUND

On March 5, 1996, *pro se* Plaintiff, Artez Houston, filed a Complaint pursuant to *42 U.S.C. § 1983* alleging violations of his constitutional and civil rights resulting from a search and seizure. Plaintiff alleges that Michael Brown and his unnamed partner, both New York State Troopers, pulled Plaintiff's car over on the New York State Thruway and asked Plaintiff for his license and registration. (Compl. P 4.) Plaintiff alleges that he showed the police officers the requested items, which were both valid. (*Id.*) After showing the police officers his license and registration, the officers asked Plaintiff to "step out of" his car, he complied, and was then frisked by the officers. (*Id.*) Plaintiff alleges that after being frisked, he returned to his car and then Officer Brown's unnamed partner conducted an unauthorized search of his car. (*Id.*) Plaintiff further alleges that after approximately twenty (20) minutes elapsed, Officer Brown asked Plaintiff to step out of his car again and when [*3] Plaintiff asked why, Officer Brown grabbed him by the shirt and pulled him out of the car. (*Id.*) Once out of the car, Plaintiff alleges that Officer Brown grabbed him by his testicles, pushed him against the car, and pulled contraband from his underwear. (*Id.*) Plaintiff alleges that as a result of the Defendants' actions, he suffered an injury to his testicles and "[a] lot of mental and emotional stress. (*Id.* P IV-A.)

Defendants move to dismiss the Complaint, pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, for failure to state a claim, or in the alternative, for a more definite statement and dismissal of the claims against New York State Troopers. Specifically, Defendants claim that Complaint is vague and conclusory, fails to allege any particularized facts directed at any of the Defendants, and that Plaintiff fails to specify which of his rights were violated. Furthermore, to the extent that Plaintiff's Complaint is construed to name New York State Police as a Defendant, Defendants claim that the *Eleventh Amendment* bars this action against that Defendant.

In response to Defendants' motion, Plaintiff cross moves for leave to amend his Complaint.

[*4] II. DISCUSSION

A. *Rule 12(b)(6) Motion*

As an initial matter, the Court notes that where a plaintiff proceeds *pro se*, a court must liberally construe the complaint and "'interpret [it] to raise the strongest arguments that [it] suggest[s],'" *Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995)* (quoting *Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994))*, thus holding the *pro se* pleading "'to less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe, 449 U.S. 5, 9, 66 L. Ed. 2d 163, 101 S. Ct. 173 (1980)* (per curium) (quoting *Haines v. Kerner, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972))*; *see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836, 130 L. Ed. 2d 63, 115 S. Ct. 117 (1994)*.

In deciding a *Rule 12(b)(6)* motion, the Court must read the complaint generously, accepting as true the factual allegations in the complaint and drawing all inferences in favor of the pleader. *Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469*; *Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993)*. The District Court should grant such a motion only if after viewing Plaintiff's [*5] allegations in this favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York, 974 F.2d 293, 298 (2d Cir. 1992), cert. denied, 507 U.S. 961, 122 L. Ed. 2d 762, 113 S. Ct. 1387*; *see also, Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561, 118 L. Ed. 2d 208 (1992)* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957))*. Because a 12(b)(6) motion is used to assess the legal feasibility of a complaint, a Court should not "assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (1984)*. Rather, the Court

must limit its consideration to the facts that appear on the face of the complaint. *Id.*

Construing the Complaint liberally, it appears that Plaintiff alleges two causes of action, one for an unlawful search in violation of the *Fourth Amendment* and the second for excessive force used during the course of his arrest.

1. Unlawful Search

It is well-established that a defendant who [*6] pleads guilty waives any challenge to the constitutionality of his arrest, interrogation, search and prosecution. *Berman v. Turecki, 885 F. Supp. 528, 533 (S.D.N.Y. 1995)* (quoting *Reese v. York, 571 F. Supp. 1046, 1048 (N.D. Tex. 1983))*. After Officer Brown seized contraband from the Plaintiff, Plaintiff was arrested and charged with possession of a controlled substance. On March 5, 1996, judgment was entered in the County Court, Rockland County (Nelson, J.), convicting Plaintiff of criminal possession of a controlled substance in the second degree upon his plea of guilty. *People v. Houston, 657 N.Y.S.2d 343 (N.Y. App. Div. 2d Dep't 1997)*. The judgment was unanimously affirmed on appeal. *Id.* By pleading guilty, Plaintiff waived his right to object to the constitutionality of the search performed by Officer Brown and his partner and the claim is hereby dismissed. *See United States v. Arango, 966 F.2d 64, 66 (2d Cir. 1992)* (citing *Tollett v. Henderson, 411 U.S. 258, 267, 36 L. Ed. 2d 235, 93 S. Ct. 1602 (1973))*; *see also United States v. Doyle, 348 F.2d 715, 718 (2d Cir.), cert. denied, 382 U.S. 843, 15 L. Ed. 2d 84, 86 S. Ct. 89 (1965)*; *Berman, 885 [*7] F. Supp. at 533*; *Roundtree v. City of New York, 778 F. Supp. 614, 620 (E.D.N.Y. 1991)*.

Plaintiff's unlawful search claim is also barred pursuant to the Supreme Court's holding in *Heck v. Humphrey, 512 U.S. 477, 486-87, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994)*. In *Heck*, the Court held that in order to recover for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal . . . or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* In assessing a § 1983 claim, *Heck* requires the district court to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction" and, if it would, the complaint must be dismissed unless the plaintiff can establish that his conviction has already been invalidated. *Id. at 487*.

Here, if the Court were to find that the search conducted by Defendants was unlawful, such a finding would imply that Plaintiff's conviction is invalid. Thus, to avoid dismissal of his unlawful search claim, Plaintiff must establish that his conviction [*8] has been invalidated. Plaintiff cannot make such a showing, especially

in light of the recent affirmance of his conviction on appeal. *See People v. Houston, 657 N.Y.S.2d at 343.* Accordingly, because Plaintiff's conviction has been affirmed on appeal, this Court is barred from considering his unlawful search claim and the claim is hereby dismissed.

### 2. Excessive Force Claim

Construing the Complaint liberally, Plaintiff also alleges a cause of action for excessive force used by the police during his arrest. Specifically, Plaintiff alleges that Officer Brown injured Plaintiff's testicles when he reached into Plaintiff's underwear to seize contraband. Plaintiff's claim of excessive force is not barred under *Heck* because a finding by this court in favor of Plaintiff would not render his conviction invalid. *See, e.g., Roundtree, 778 F. Supp. at 621-22.*

Where an excessive force claim arises in the context of an arrest, the claim should be evaluated on a reasonableness standard. *Id. at 621.* The court should determine whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them. *Graham v. Connor, 490 U.S. 386, 397, [*9] 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989).* A court must therefore adopt the perspective of a reasonable officer on the scene of the arrest and it must understand that not every push or shove . . . violates the *Fourth Amendment. Id.* In determining whether the use of force was reasonable, the court should examine the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, and whether the force was applied in good faith or maliciously and sadistically. *Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973).*

A complaint that fails to allege an unreasonable excessive use of force may be dismissed for failure to state a claim. *Roundtree, 778 F. Supp. 614 at 621.* Such a dismissal would be proper only "if it is absolutely certain that [plaintiff] can establish no facts to show that he was subjected to an unreasonable use of force by the arresting officers." *Id.* Here, reading the Complaint generously, accepting as true the allegations in the Complaint, and drawing all inferences in favor of the pleader, the Court finds that Plaintiff cannot establish that the arresting officers [*10] used unreasonable excessive force.

Plaintiff alleges that Officer Brown grabbed him by his testicles, pushed him against the car and seized the contraband that was in his underwear. (Compl. P IV(9)-(10).) Although Plaintiff alleges that he suffered an injury to his testicles, he admits that he did not receive any medical attention. (*Id.* at IV-A.) In fact, Plaintiff only alleges to have suffered "emotional and mental stress." (*Id.*) In *Roundtree,* the court dismissed a § 1983 claim

based on the use of excessive force where plaintiff only alleged emotional and mental stress after being pushed by the police into a car. *778 F. Supp. at 620, 623.* Although Plaintiff here alleges an injury to his testicles in addition to emotional and mental stress, such a general, non-specific allegation does not lead this Court to find that Officer Brown acted unreasonably. On the contrary, in light of the facts and circumstances confronting the police officers, the Court finds that Officer Brown and his partner acted reasonably.

The search that Plaintiff complains of took place on a busy public highway with automobile traffic that posed a potential threat to the police officers and Plaintiff. [*11] The area in which Plaintiff was searched was not secure, and thus there was the possibility that Plaintiff could flee or attempt to discard the contraband. There is also the possibility that the police officers became aware of the contraband during the frisk they conducted minutes earlier and, in light of the public area in which the search took place, felt the need to act swiftly to secure the contraband before it could be discarded. The amount of force used in seizing the contraband was also reasonable in light of the police officers' need to secure quickly the contraband, and there is no indication that the force was applied maliciously or sadistically. *See Johnson, 481 F.2d at 1033.*

In light of these factors and the circumstances confronting the police officers at the time of the search, the Court finds that even under the most charitable reading of the Complaint the Plaintiff can establish no set of facts to show that he was subjected to an unreasonable use of force by Officer Brown and his partner. *See Roundtree, 778 F. Supp. at 621; see also Mark v. Caldwell, 754 F.2d 1260, 1261 (5th Cir.), cert. denied, 474 U.S. 945, 88 L. Ed. 2d 287, 106 S. Ct. 310 (1985) [*12]* (repeated slaps in face by police officers amounted to more of an affront than an injury sufficient to sustain § 1983 claim because Plaintiff suffered no injuries requiring medical attention). Accordingly, Plaintiff's excessive force claim is dismissed.

### B. Leave To Replead

*Rule 15(a)* of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." *Fed. R. Civ. P. 15(a); see also Richardson v. Greenshields Securities, Inc., 825 F.2d 647, 653 n.6 (2d Cir. 1987).* In the absence of undue delay, bad faith, or undue prejudice to the opposing party, federal courts routinely grant motions for leave to amend. *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau, 786 F.2d 101, 103 (2d Cir. 1986).* "The granting of leave to amend a pleading is within the sound discretion of the district." *Campo v. 1st Nationwide Bank, 857 F. Supp. 264, 269 (E.D.N.Y. 1994).* However,

1997 U.S. Dist. LEXIS 15999, *

leave to amend may be denied if the amendment would be futile. *In Re American Express Co., 39 F.3d 395, 402 (2d Cir. 1994).*

Along with his opposition to Defendants' motion, Plaintiff submitted a proposed Amended Complaint to the Court. The proposed [*13] Amended Complaint deletes Defendants New York State Troopers and Thomas Constantine, specifically identifies Officer Brown as the officer who grabbed Plaintiff's testicles, and adds an allegation that Officer Brown violated Plaintiff's "right against unlawful search and seizures and used excessive force." (Proposed Am. Compl. P IV.)

Construing Plaintiff's proposed Amended Complaint liberally, the Court finds that Plaintiff fails to allege sufficiently any cognizable claims. As discussed above, Plaintiff's unlawful search claim has both been waived and is barred pursuant to the court's holding in *Heck v. Humphrey, 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994). See supra* Al. Plaintiff also fails to state a claim for excessive force because he fails to plead any additional facts under which the Court could find that Officer Brown's use of force was unreasonably excessive

under the circumstances. Accordingly, granting Plaintiff permission to replead would be futile in light of the deficiencies in the proposed Amended Complaint. Plaintiff's motion for leave to file an Amended Complaint is denied. Because the Court has dismissed all of Plaintiff's claims and has not granted [*14] Plaintiff leave to replead, the Court need not address Defendants' *Eleventh Amendment* claim.

## III. CONCLUSION

Defendants' Motion to Dismiss is GRANTED. The Complaint is dismissed in its entirety. Plaintiff's Motion for Leave to File an Amended Complaint is DENIED.

SO ORDERED

DATED: New York, New York

October 10, 1997

DEBORAH A. BATTS

U.S.D.J.

LEXSEE 1998 U.S. DIST. LEXIS 20142

JALAH SEALEY, Plaintiff, -against- STUART FISHKIN, THE NEW YORK CITY POLICE DEPARTMENT, and THE CITY OF NEW YORK, Defendant.

96 CV 6303 (RR)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*1998 U.S. Dist. LEXIS 20142*

December 2, 1998, Decided

**DISPOSITION:** [*1] All of plaintiff's claims against the New York City Police Department and the City of New York dismissed with prejudice. Plaintiff's claims against Officer Fishkin for false arrest and false statements to parole officials dismissed without prejudice to refiling.

**COUNSEL:** JALAH SEALEY, Plaintiff, Pro se, Comstock, New York.

Jeffrey Weiss, Assistant Corporation Counsel, THE HONORABLE MICHAEL D. HESS, Corporation Counsel of the City of New York, New York, New York, for Defendants.

**JUDGES:** REENA RAGGI, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** REENA RAGGI

**OPINION**

Memorandum and ORDER

RAGGI, District Judge:

Plaintiff pro se Jalah Sealey, who is presently incarcerated by New York State for violating parole, sues New York City, its Police Department, and Police Officer Stuart Fishkin for injuries sustained in connection with his January 4, 1994 arrest. Specifically, Sealey contends that Officer Fishkin arrested him without probable cause and then lied about the circumstances of his arrest to parole officials. He further complains that, in the course of the arrest, Officer Fishkin used excessive force. Sealey asserts that after his arrest, unnamed New York City officers subjected him to cruel [*2] and unusual treatment.

Defendants move for dismissal of all claims against the New York City Police Department on the grounds that that party is not a suable entity. They further move for summary judgment in favor of New York City on all claims raised and in favor of Officer Fishkin on plaintiff's claims of false arrest and false statements made to parole officials. Plaintiff opposes this motion and moves to amend his complaint to name three additional defendants: Charles Lopresti, Kevin Brunner, and Sergeant Robert Hugel. Having carefully reviewed the submissions of the parties, the court concludes that defendants' dispositive motions should be granted and that plaintiff's motion to amend should be denied. This leaves only plaintiff's excessive force claim against Officer Fishkin for trial on the merits.

**Factual Background**

In considering defendants' motions for dismissal and summary judgment, this court views the record before it in the light most favorable to the plaintiff. See *Gubitosi v. Kapica, 154 F.3d 30, 31 (2d Cir. 1998).*

On December 30, 1993, defendant Jalah Sealey was paroled from New York State prison. [1] Shortly after 2:00 p.m. on January 4, 1994, he [*3] was approached by two police officers, Stuart Fishkin and Charles Lopresti, in the vicinity of 191st Street and Jamaica Avenue in Queens, New York. [2] When Sealey saw that the two officers had their weapons drawn, he panicked and ran toward his home a few blocks away. The officers pursued and subdued him, whereupon they began to beat him with a walkie-talkie and kick him. Even after plaintiff was handcuffed, the arresting officers as well as other police who had arrived on the scene continued the assault.

Case 1:07-cv-02944-JSR    Document 24-2    Filed 06/28/2007    Page 45 of 48

Page 2
1998 U.S. Dist. LEXIS 20142, *

1    The records before the court suggest that Sealey had been incarcerated for attempted murder.

2    Arrest reports indicate that the officers suspected Sealey of drug trafficking. In fact, no drugs were seized in connection with petitioner's arrest.

Sealey was initially taken to the 103rd precinct and thereafter to Jamaica Hospital Medical Center for treatment of his injuries. [3] In support of his claim of cruel and unusual treatment, Sealey asserts that unidentified officers required him to leave the hospital [*4] dressed only in his underwear and hospital gown. After making Sealey stand for several minutes in the snow while they pretended to search for their car keys, the officers placed petitioner in the back seat of their car and threw cold water on him, after which they drove to central booking with the windows rolled down.

3    Hospital records indicate that Sealey sustained various cuts and bruises to his face. A CAT scan revealed no internal injuries. He was released without any medication being prescribed.

Officer Fishkin was also treated at the hospital for a wrist sprain and a small cut on his nose and released the same day.

At central booking, Sealey was charged with Assault in both the Second and Third Degree, *N.Y. Penal Law §§ 120.00[1], 120.05[3]* (McKinney 1998), for allegedly assaulting the arresting officers, and with Resisting Arrest, *N.Y. Penal Law § 205.30* (McKinney 1988). [4] Bail was set at $ 500 and Sealey was, in fact, released on January 10, 1994. On January 18, 1994, however, he was re-incarcerated [*5] on a parole violation warrant based on the January 4, 1994 arrest.

4    On March 16, 1994, the prosecution abandoned the charge of second-degree assault.

Soon thereafter, Sealey filed a complaint with the Civilian Complaint Review Board against Officers Fishkin, Lopresti, and Kevin Brunner. The Board issued a report on June 14, 1995 exonerating Officer Fishkin of any wrongdoing in connection with plaintiff's arrest and finding the allegations against Officers Lopresti and Brunner [5] unsubstantiated.

5    Brunner was accused of using abusive language toward Sealey

On January 31, 1995, Sealey pleaded guilty to Disorderly Conduct, *N.Y. Penal Law § 240.20* (McKinney 1988), in satisfaction of all outstanding charges from January 4, 1994. He was sentenced to time served. On

March 15, 1995, he pleaded guilty to violating his parole, which resulted [*6] in his continued incarceration.

On December 26, 1996, Sealey's *§ 1983* claim was filed with this court.

## Discussion

### I. Police Department Motion to Dismiss

Plaintiff has made a pleading error common to pro se litigants: he has named both the City of New York and one of its agencies, the New York City Police Department, as defendants in this case. The New York City Charter provides that "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." New York City Charter, Chapter 16, § 396. Accordingly, this court hereby dismisses plaintiff's complaint against the New York City Police Department since that entity cannot be sued independently of the City. See *Bailey v. New York City Police Dep't, 910 F. Supp. 116, 117 (E.D.N.Y. 1996); Wilson v. City of New York, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992); East Coast Novelty Co. v. City of New York, 781 F. Supp. 999, 1010 (S.D.N.Y. 1992).*

### II. Summary Judgment

To prevail on a motion for summary judgment, a party must show that "there is no genuine [*7] issue as to any material fact and that [it] is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; see *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. In considering such a motion, a district court may not assess credibility or resolve factual disputes. See *Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir. 1994)*. Instead, it must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. See, e.g., *Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995)*. Nevertheless, when a moving party can point to a lack of proof as to one or more essential elements of a claim on which the opposing party will bear the burden at trial, the opposing party can avoid summary judgment only if it comes forward with admissible evidence sufficient to permit a reasonable fact finder to rule in its favor. See *Celotex v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Quarantino v. Tiffany & Co., 71 F.3d at 64; Capital Imaging Assocs. v. Mohawk Valley Medical Assocs., 996 F.2d 537, 542 (2d Cir. 1993).*

#### A. *Monell* Claims Against the City of New York

[*8] The City of New York moves for judgment in its favor on all of plaintiff's claims on the ground that plaintiff has failed to adduce sufficient evidence to dem-

1998 U.S. Dist. LEXIS 20142, *

onstrate that his constitutional rights were violated as the result of any official city policy or custom.

A municipality is liable under *§ 1983* only when the plaintiff's constitutional injury resulted from an official policy, custom, or practice of the municipality. See *Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-91, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).* A municipal policy or practice may be established by reference to a formal rule or widely-practiced custom. It may, however, also be inferred from circumstantial proof, such as evidence that the municipality was deliberately indifferent to the need to train its employees as to proper conduct in situations that could implicate persons' constitutional rights. See *City of Canton v. Harris, 489 U.S. 378, 388-92, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989); Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. [*9] 1991).* The mere allegation that a municipality failed to train its employees properly, unsubstantiated by any evidence, is insufficient to establish a municipal custom or policy. See *Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).* Neither is proof of a single incident involving only actors below the policymaking level sufficient to raise an inference of the existence of a custom or policy. See *City of Canton v. Harris, 489 U.S. at 387; Dwares v. City of New York, 985 F.2d at 100.*

In this case, plaintiff sues in connection with a single arrest incident. The actions in dispute were all taken by individuals below the policymaking level. Nevertheless, plaintiff asserts that New York City is liable for his constitutional injuries because it fails to train police officers adequately to ensure against their false arrest of innocent persons, their use of excessive force, or their infliction of cruel and unusual treatment. In fact, he adduces no evidence to support this claim of municipal liability.

Instead, he points only to the fact that a number of civilian complaints have been filed against Officer Fishkin. The officer's Civilian Complaint Review Board history [*10] report, however, shows that none of these claims was ever substantiated. Thus, this evidence would not suffice to prove deliberate indifference by the city to the need for any further training of this officer in particular or police officers in general. See *Marcel v. City of New York, 1990 U.S. Dist. LEXIS 4094, No. CV 88-7017, 1990 WL 47689 at \*8-9 (S.D.N.Y. Apr. 11, 1990)* (unsubstantiated CCRB complaints do not support claim of municipal failure to train); *Law v. Cullen, 613 F. Supp. 259, 262-63 (S.D.N.Y. 1985)* (same).

Plaintiff further complains that Officer Fishkin was not disciplined adequately for his conduct in this case. This conclusory assertion fails to address the fact that the Civilian Complaint Review Board expressly exonerated the officer of any wrongdoing in connection with plaintiff's arrest. In any event, the City's purported failure to discipline an officer after he causes an alleged constitutional injury cannot be viewed as the cause of that injury.

Finally, plaintiff complains that he has not had adequate discovery to prove his claim against the City. Discovery in this case was ably supervised by Magistrate Judge Steven M. Gold. He ensured that plaintiff received all Police Department [*11] documents regarding plaintiff's arrest, the underlying parole revocation file, all Police Department and Civilian Complaint Review Board files relating to Officer Fishkin, and various police academy training materials. The court rejects the argument that further discovery is warranted in this case.

The complaint against the City of New York is dismissed in its entirety.

## B. Arrest Without Probable Cause

Plaintiff submits that he was arrested on January 4, 1994 without probable cause to believe he had committed any crime, thereby violating the *Fourth Amendment.* See *Beck v. Ohio, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964)* ("Whether [an] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it."). Defendants move for summary judgment on this claim citing plaintiff's subsequent conviction on his own guilty plea to disorderly conduct as evidence that there was probable cause to arrest him on January 4, 1994. This court agrees.

The law is clear that if, after arrest, a plaintiff is convicted of any of the charges against him, that conviction is "'conclusive evidence of probable cause'" [*12] as long as it is not subsequently reversed. *Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)* (quoting *Broughton v. State, 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 95, 335 N.E.2d 310 (1975)).* Thus, in *Heck v. Humphrey, 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994),* the Supreme Court held that a plaintiff whose *§ 1983* claim of false arrest called into question the lawfulness of a subsequent conviction could not pursue the suit for damages until he succeeded in having the conviction reversed on direct appeal or invalidated in a collateral proceeding. *Id. at 486-87.*

Plaintiff seeks to avoid the adverse result mandated by these cases by noting that he pleaded guilty to disorderly conduct, a lesser charge than the assault for which he was initially arrested. The distinction does not help him. See *Roundtree v. City of New York, 778 F. Supp. 614, 619 (E.D.N.Y. 1991)* (holding that a plea of guilty to lesser charge bars *§ 1983* action for arrest without probable cause); *Keyes v. City of Albany, 594 F. Supp. 1147*

*(N.D.N.Y. 1984)* (holding that plaintiff who was arrested for assault but who pleaded guilty to disorderly conduct could not pursue *§ 1983* action for [*13] arrest without probable cause). A plaintiff suing for false arrest must show that the police lacked probable cause to arrest him for any unlawful conduct. By pleading guilty to disorderly conduct, plaintiff necessarily acknowledged that he was engaged in some unlawful activity for which the police could properly take him into custody. Thus, as long as that conviction stands, plaintiff cannot pursue a *§ 1983* claim for false arrest. See *Heck v. Humphrey, 512 U.S. at 486-87.* [6] Accordingly, the court dismisses plaintiff's false arrest claim against all defendants without prejudice to refiling against Officer Fishkin if the underlying judgment of conviction for disorderly conduct is ever vacated or invalidated.

> 6  In opposing defendants' motion for summary judgment, plaintiff does assert that his guilty plea was not knowingly and voluntarily entered. That claim, however, cannot be entertained by this court in a *§ 1983* suit. Rather, plaintiff must pursue state court avenues of direct and collateral review and, if appropriate, a federal petition pursuant to *28 U.S.C. § 2255 (1994 & Supp. 1998).*

[*14]  C. False Statements Leading to Violation of Parole

In a variation on his false arrest claim, Sealey complains that Officer Fishkin lied to parole officials about the circumstances of his January 4, 1994 arrest thereby resulting in his unjust re-incarceration. Here again, defendants cite Sealey's guilty plea at the parole proceedings as a bar to his pursuit of this aspect of his *§ 1983* claim. The court agrees.

Plaintiff's Exhibit 7 is the Parole Violation Report in his case. It indicates that plaintiff pleaded guilty to resisting arrest and that this was the factual basis relied on to remand him to jail for violating his parole. Under such circumstances, Heck v. Humphrey precludes him from suing for damages under *§ 1983* unless and until he succeeds in establishing the invalidity of his parole revocation in an appropriate state or federal proceeding. See *McGrew v. Texas Bd. of Pardons & Paroles, 47 F.3d 158, 160-61 (5th Cir. 1995)* (applying Heck to *§ 1983* action for damages in connection with parole revocation); *Zupan v. Brown, 5 F. Supp. 2d 792 (N.D. Cal. 1998)* (same); *Douglas v. New York State Div. of Parole, 1998 U.S. Dist. LEXIS 1604 at *5, 97-CV-40 (N.D.N.Y. [*15] Feb. 10, 1998)* (same); see also *Spencer v. Kemna, 523 U.S. 1, 118 S. Ct. 978, 988-90, 140 L. Ed. 2d 43 (1998)* (Souter, J. concurring) (assuming applicability of Heck v. Humphrey to *§ 1983* claims necessarily challenging validity of parole revocation confinements).

The court hereby dismisses against all defendants that part of plaintiff's complaint seeking damages in connection with his parole revocation proceeding without prejudice to refiling against Officer Fishkin if Sealey satisfy the conditions set forth in Heck v. Humphrey.

III. Motion to Amend

A liberal reading of plaintiff's papers in opposition to defendants' motion suggests that he is looking to amend his complaint to add Officers Charles Lopresti and Kevin Brunner and Sergeant Robert Hugel as defendants in this action. Plaintiff asserts that he did not seek to add these individuals sooner as he did not expect discovery to end so abruptly in his case.

*Rule 15(a) of the Federal Rules of Civil Procedure* provides that leave to amend "be freely given when justice so requires." *Fed. R. Civ. P. 15(a).* Nevertheless, a court may deny leave to amend if the proposed amendment would be futile. See *American Express* [*16] *v. Robinson, 39 F.3d 395, 402 (2d Cir. 1994).* This is certainly the case with any claims plaintiff might wish to pursue against the three proposed defendants for false arrest. Such claims could not be brought unless and until plaintiff had his criminal conviction reversed or invalidated. See *Heck v. Humphrey, 512 U.S. at 486-87.* To the extent plaintiff seeks to sue these proposed defendants, either directly or as supervisors, for the use of excessive force or cruel and unusual treatment, his claims would be barred by the statute of limitations.

*Section 1983* claims brought in New York are governed by a three-year statute of limitations. See *Owens v. Okure, 488 U.S. 235, 250-51, 102 L. Ed. 2d 594, 109 S. Ct. 573 (1989); Soto v. Brooklyn Correctional Facility, 80 F.3d 34, 35 (2d Cir. 1996).* The excessive force and mistreatment alleged by plaintiff all occurred on January 4, 1994. Thus, he had until January 4, 1997 to sue those he considered responsible for his injuries. It was not until fifteen months beyond this statutory period, however, in his April 10, 1998 Memorandum in Opposition to defendants' motions, that plaintiff proposed to amend his complaint by adding new [*17] defendants. This amendment must be rejected as untimely unless it can be found to relate back to December 26, 1996, the date of the original pleading.

Pursuant to *Rule 15(c)(3),* an amended complaint adding new parties will relate back to the date of the original complaint only if it can be shown that the party to be named "(A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been

brought against the party." *Fed. R. Civ. P. 15(c)(3)*. Plaintiff cannot satisfy the "mistake" prong of the rule.

To establish "mistake" under *Rule 15(c)(3)*, a plaintiff must show either a factual mistake as to the name of the party to be sued or a legal mistake concerning the requirements of the cause of action. See *Soto v. Brooklyn Correctional Facility, 80 F.3d at 35-36; Cornwell v. Robinson, 23 F.3d 694, 705 (2d Cir. 1994)*. A plaintiff's lack of knowledge as to a party's identity cannot, however, be characterized as a "mistake." See *Barrow v. Wethersfield Police Dep't, 66 F.3d 466,* [*18] *470 (2d Cir. 1995)*, modified, *74 F.3d 1366 (1996)*. In Barrow, plaintiff sued the Wethersfield Police Department for injuries sustained as the result of excessive force by unidentified police officers. Thereafter, he sought to amend his complaint to name six officers as individual defendants. The court rejected the amendment as untimely finding that it "did not correct a mistake in the original complaint, but instead supplied information Barrow lacked at the outset." Id.

Sealey's situation is analogous to that of the plaintiff in Barrow. In proposing to add Officers Lopresti and Brunner and Sergeant Hugel to the complaint, he does not seek to correct any mistake in the original pleading. He seeks only to add new parties. Indeed, Sealey may have even less excuse for his original omission than the plaintiff in Barrow since the 1995 Civilian Complaint Review Board report indicates that he knew Lopresti and Brunner's identities before he filed his original complaint.

The court hereby rejects the proposed amendment as barred by the statute of limitations.

## Conclusion

For the reasons stated herein, the court dismisses with prejudice all of plaintiff's claims [*19] against the New York City Police Department and the City of New York. It dismisses plaintiff's claims against Officer Fishkin for false arrest and false statements to parole officials without prejudice to refiling should plaintiff succeed in having either his conviction for disorderly conduct or his parole violation finding reversed or invalidated.

SO ORDERED.

Dated: Brooklyn, New York

December 2, 1998

REENA RAGGI

UNITED STATES DISTRICT JUDGE