**Exhibit  J**

NYS DEPT OF LAW          tx:212-416-8931          Nov 19 '97  16:27     P.02



DENNIS C. VACCO
Attorney General

**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**

CHRISTOPHER G. QUINN
Deputy Attorney General

96-20088

To: State of New York Insurance Department
From: ███████
Re: NY Academy of Art
Date: November 19, 1996

11/20/96
JT

We have been contacted by ███████ former board member to the above institution. It is alleged that on March 29, 1995 the Director of the school ███████ signed a sworn statement which was submitted to Chubb Insurance Company which claimed a loss in excess of $100,000 (the policy). Such statement alleged that the loss was a result of employee theft through the use of checks payable to petty cash. The Director stated that none of the monies were utilized in payment or reimbursement for any services or goods related to the school. As a result the Chubb insurance company allegedly paid $100,000 on the policy.

Contrary to the assertions made by the director, it is alleged that petty cash checks totaling approximately $4,000 a month for two years were utilized to pay workers of the school off the books. In addition, such director was allegedly made aware of this by board members known to the Attorney General's Office and allegedly though internal documentation long before the filing of such form.

According to ███████ Chubb insurance company has hired an outside attorney, to investigate and possibly reclaim the 100,000 policy.

As a result of the above facts we request that a 63(3) referral be made to this office, so that we may investigate this matter.

C#4-21-96
RT

Criminal Division ● Criminal Prosecutions Bureau
120 Broadway, New York, N.Y. 10271-0332 ● Phone (212) 416-8730 ● Fax (212) 416-8931* not for service of Papers

21

# Exhibit  K



NEW YORK
ACADEMY
OF ART

HRH THE PRINCE OF WALES. PATRON

ROBERT ANGONA
*Controller*

January 17, 2004

Stephen Farthing, Executive Director
David Levinson, Chairman
New York Academy of Art
111 Franklin Street
New York, New York 10013



## CONTROLLERS REPORT

This report outlines the last two years of history as it applies to the restructure and operation of the Controllers Office and the interaction with the Executive Director.

Attached are various reports submitted to the past Chairman and the Trustees. These reports contain confidential and sensitive information. The areas involve Accounting System Breakdowns, serious compliance issues, and Building C of O deficiencies .

Any of these could have rendered the Academy out of business, with its charter being revoked, and exposing its Trustees to both civil and criminal investigations.

The other issues centered on the long term debt and cash Management. This office found the Mortgage to be full of covenants that rendered the Academy in default the day it was executed. This note also included a second mortgage with terms and conditions most unfavorable to the Academy. The main Mortgage is a balloon note with heavy prepayment clauses, and an equity put that violated our non-profit status.



# CONFIDENTIAL

I restructured the main Mortgage to eliminate the equity put as to insure a clean Audit Report. I established a operation Credit Line for cash control and eliminated the need to call the Trustees for short fall cash coverage, I eliminated the second mortgage of $115,000.00 and rolled it into the Credit Line Line, releasing the Real Estate Lien on 111 Franklin Street in that amount. I also open a Building Construction Line with the understanding that when and if we roll it into the Main Mortgage the Main Mortgage would be renegotiated. This will eliminate the prepayment cost.

This construction line is used to complete the repairs for the C of O project, replacement of the staircase, and roof, and skylights. (The Skylights were cancelled by Russ Wilkenson) All work was completed on time and on Budget. The Balance of the line is reserved for the Elevator Project.)

As of this date the Accounting system is completely overhauled. We are now operating a non-profit system (Blackbaud) designed for Schools. It will give us the ability to control all cost and account for all front room operation on a daily basis.

We are now fully compliant with INS, Homeland Security, US and NYS DOE and Campus Security. The Building at 111 Franklin Street is currently under a Temp. C of O and is fully compliant under the Building Codes and Fire Safety Codes.

I encourage you to review the enclosed memorandums.



Respectfully Submitted,
Robert Angona, Controller

COPY

## INDEX

1: REPORTS TO TRUSTEES ON ACCOUNTING AND CONTROLLERS OFFICE.

2: COVER LETER TO US DOE ON FAILURE TO SUBMIT AUDITS IN PRIOR YEARS.

3: STUDENT LOAN VIOLATION US DOE AND BANKS (PAST DEAN)

4: INS HOMELAND SECURITY STUDENT VISA VIOLATIONS.





111 *Franklin Street, New York, NY* 10013 (212)966-0300  FAX (212)966-3217  *www.nyaa.edu*

June 27, 2002               **CONFIDENTIAL**

TO: Rob Bollardin FAX 631-907-1037                COPY

FROM: Robert Angona

SUB: Transfer from Investment Funds to Operating Account;
       Account of Salomon Smith Barney:

Stephen has asked me to fax you the Statements on the above Investment Account.

My Immediate need is to transfer $200,540.00 to our Construction account as contracts and work will start next week.

The Contribution was made on May 31,2002 for 3700 shares of Colgate. It hit the Account at $200,540.00. This Gift was given for the Creation of "The Lawrence and Josephine C. Wilkinson Hall"

Spoke to Jerry Tepper at Smith, Barney, he moved $175,157 to a Money Market Account and claims he was authorized to use the balance of $25,383. in common Stock portfolio.

We need to transfer by Friday 5pm $200,540. to our Account at the North Folk Bank. The Money Market Account of $175,157. and sell order of Stock to cover the balance.

I am looking forward to meeting with you and address the entire Investment Account in various Brokerage accounts. These funds are Restricted or other wise conditional from Contributors. As of May 31 our position with Smith Barney is a LOSS ($14,2960). We have to replace those funds at some point. We should not Invest Restricted or Conditional funds in the Market.


Best regards,

Robert Angona,
Controller


cc: Stephen Farthing

**Robert Angona**

| | |
|---|---|
| From: | Robert Angona |
| Sent: | Tuesday, July 02, 2002 9:51 AM |
| To: | Stephen Farthing |
| Subject: | Year End Audit |

Stephen,

As we discussed, the Acadmeys Books are seriously out of balance. This was caused by historic mis postings and falling behind on daily accounting work. There are major failures in recording proper, Cash, Income, Assets, and Liabilities. For over one year the New Mortgage Note has not been set up and the old note remains. The current payments for the year have been applied to the old note. Expense accounts have been misposted, and the Balance sheet is void of significant Inventory assets. The petty cash accounts, and Bank Account reconciliations are not performed in accordance with accepted accounting proceedures and a long list of uncleared checks and checks posted but not issued remain unresolved. This misrepresents the cash balance.

The Fire asset account is in danger of being written down, the accounting is poor and a internal audit is needed.

The payroll and Benefit accounts are out of balance, and we have a major claim and demand from the New York Child Surport unit.

Please understand that this goes back into prior years. It will take time to repair it.

I have taken the following steps.

1: New proceedures are being installed for this f/y. we are providing a bookkeeper to maintain daily operations.

2: I have arrange through a reliable source that we use, (Eastern Accounting Personel)a short term
 project accountant,(July and August) to assist me in,
a) A pre-audit and Correcting the General Ledger
b) Internal Audit of the Fire Asset Account and Insurance Claim.

3: I will revisit the budget and State Regents requirements. We will need to meet with Board Members and Install Financial Policy and Fund Management.

Best Regards
RA

1



111 *Franklin Street, New York, NY* 10013 (212)966-0300  FAX (212)966-3217  *www.nyaa.edu*



**CONFIDENTIAL MEMORANDUM**

July 15, 2002

**TO: Stephen Farthing, Executive Director,**

**FOR DISTRIBUTION TO**
.
**Randy Lerner, Chairman of the Board**
**David K. Schafer, President**
**Ludwig Kuttner, Treasurer, CFO**

**FROM: Robert Angona, Controller**

**SUBJECT: Financial Condition of the Academy.**

I have assumed the duties of the Controller effective July 1, 2002. This memorandum outlines some of the conditions and deficiencies found.

1: Daily Accounting is not performed in accordance with (GAAP) General Accepted Accounting Procedures, and non-profit Accounting is completely absent.

2: Cash Accounts are not in balance and postings are months behind.

3: Account reconciliation's are absent for the most part and Cash Reconciliation's are 3 to 12 months behind and are not performed under GAAP.



4: Payroll and Personnel postings are late, employee files are non-compliant and lack information, (current W-4 and I-9 forms) which exposes the Academy to fines and sanctions. Contract employees are misclassified and should be on the Payroll, we are liable for past year tax deductions, fines, and sanctions. There is a $20,000 dollar child support claim by the State of New York as a result of payroll deductions from an employee, under Court Order, and not remitted by the Academy to the State.

5: Equipment and Capital Asset purchases have been expensed and overstate the actual expense budget.

6: No Accounts Receivable was maintained throughout the year to record Income.

7: No fund accounting or Investment monitoring was performed resulting in activity losses of over $30,000 from restricted funds.

8: No fund management exists resulting in arbitrary disbursements.

9. Accounts Payable, not debited for payments and incorrectly expensed, overstated actual budget expense.

10. The loan recast from the HSBC to North Fork Bank has not been recorded as of June 30th 2002 (Fiscal Year End) The payments were credited through out the year to the old HSBC note. The resulting cash proceeds were incorrectly credited to other income overstating the income account by some $25,000. and understating the loan liability by the same amount. The current cash postings remain two to three months behind. The short term portion of the note is 115,000  unrecorded on our books and became due this month. The $700,000 Mortgage portion remained unrecorded.

11: The loan documents were not reviewed and contain extremely adverse covenants which placed the Academy in technical default of the note. The auditors will pick this up, and will result in a Financial Disclosure on our Statements indicating that we are in default of our Mortgage. This will have an impact on the State Regents and Public view of the Academy's ability to conduct development or fund raising.

12. The Fire Restoration Account is totally un- reconciled and the documentation will not support the Asset Replacement Value that was paid out. In short we are in danger of an Asset Write Down to casualty Fire Loss without recovery.

Over the past three years our financial statements have been noted with internal control issues that have not been complied with as we enter this audit.

Reportable conditions involved matters coming to the attention of the Auditors involving internal control and its operation they consider to be reportable conditions under standards established by the American Institute of Certified Public Accountants.



Auditors found reportable conditions involving matters relating to significant deficiencies in design and operation of internal control that in their judgment, could adversely affect the Academy's ability to record, process, summarize, and report financial data consistent with the assertions of management in the financial statements.

The areas cited were, Segregation of Employee Duties, Personnel Policies, Accounting System, Retirement Plan, Insurance, Management and Control of Endowment Funds, Scholarship Funds, and Investment Funds.

These reports were addressed to the Board of Directors in 1999, 2000, and 2001. We now approach  the fourth Year audit and these issues remain un-addressed.  Should these reportable deficiencies be published it would have the effect of nullifying the Academy's Financial Certification, and expose the Board and Management.

While the trail of these conditions remain, this will not continue on my watch. I have on behalf of the Board and Management taken the following steps.

1: I have assigned a full time bookkeeper to keep current with daily postings.

2: I have assigned a Staff Accountant to make all adjusting entries to correct miss-posting and bring all accounts current for this fiscal audit. We will also conduct an internal audit of the Fire Restoration Account in order to support the Asset recovery value to our books.

3: I am in the process of implementing internal accounting procedures, and inter department policies to cure, those deficiencies outlined above. Monthly closings will be enforced, Quarterly Statements will be issued with auditors reviews for the Board. Update cash flow, and budget reports will be provided to department heads and the board on a timely basis.

4. I have with the Executive Directors approval transferred all Investment funds to our Bank in a segregated account. (We are out of the Market)

5: I am conducting an equipment and inventory audit to upgrade our assets.

**With the help and approval of the Board and Finance Committee,**

6: I will identify and set up fund management for Endowment, Restricted, and non-restricted and special purpose funds.

7: I will revisit the operating budget and establish a Capital Expenditure Budget for this fiscal year.

8:  I will restructure the Long Term and Short Term Debt, and establish sound cash flow management. I have made arrangements to roll over the Short Term Note, $115,000 At the North Fork Bank, and I am re-negotiating the covenants of the Mortgage Note.



9: We should establish a Five Year Plan and establish Fiscal Policy that will expand the Income Base, Increase Asset Value, and bring the operating budget into balance.

Hopefully this will lessen the potential damage attendant to this years audit, and place us in sound Accounting and Financial compliance for the future.

Respectfully Submitted;

Robert Angona,
Controller

# RESTRUCTURE OF CONTROLLORS OFFICE:

## CONTROLLOR:

### Activities:

Budget Preparation and Management, Cash Management and Treasury Duties, Investment and Financial Control Management, Oversee all Accounting Functions.

### FY 02/03 Projects:

1:  Establish Monthly Closing and Financial Reports.
2: Establish Operating Budgets
3: Establish Capital Expenditure Budgets
5: Establish Projected Cash Flow Reports
6 Establish Monthly Department Reports
7: Create Accounting Policies and Department Processing Rules.
8: Establish and Recommend  Investment and Endowment Policy.
9: Switch Accounting Software and Reporting to Non-Profit GAAP

## STAFF ACCOUNTANT:

### Activities:

 Control of General Ledger, Reconciliation  of all Accounts, A/R and Income Reconciliation with Development Department, Events, and the Bursar Office, Daily Deposits, Credit Card Sales, and Educaid Deposits. Reconciliation of Employee Benefits and Liability Accounts. Monthly Closings. Oversee Daily Bookkeeping Activities.

### FY 02/03 Projects.

1: Establish Methods of Control and reconciliation with Income point of Sales.
2: Establish Methods of Reconciling G/L Accounts.

## BOOKKEEPER/ACCTG.CLERK:

### Activities:

A/P, Payroll, Expense Reports, Model Accounts Payments and Time Sheets, Petty Cash, and General Clerical.



111 *Franklin Street, New York, NY* 10013  212 966-0300 FAX  212 966-3217  *www.nyaa.edu*

## memorandum

TO:             Stephen Farthing, Executive Director

FROM:        **Robert Angona, Controller**

DATE:         July 25, 2003

RE:  THAN 03, Payment of Trust Funds to Artist.

I have received an E-Mail order from Sandra April, Director of Development to issue 20,092.50 to Artist that sold art work through our THAN Event in June. The order directs this disbursement under your direction to be made by noon today.

First we only have some $14,000.00 calculated at 50% of Sales. This amount was audited and in the books which includes activity from the July post sales. The cash is in balance and the art inventory supports the recorded sales.

Second and more Important, as far as I am concern these payments lack the necessary third party authorizations to release such trust funds short of the total sale amount being reported to the IRS.

Please be advised that in my opinion these payments will expose the Academy to violations of both IRS Regulations, and could result in both Civil and Criminal allegations.

Therefore as your Controller I cannot make such payments.

Respectfully,

Robert Angona
Controller





*111 Franklin Street, New York, NY 10013  212 966-0300 FAX  212 966-3217  www.nyaa.edu*

# memorandum

TO:     Stephen Farthing, Executive Director

FROM: **Robert Angona, Controller**

DATE: November 24, 2003

RE:  Oversight Policies Memorandum of March 17, 2003

Following the Academy's review of the Activities of the former Dean attendant to Federal Subsidized Loans and the Processing of Student Visa's, the Controllers Office assumed the duties of compliance for the Academy and polices were approved to safeguard the Academy from Civil and Criminal Exposure and ensure that the Academy Officers, Employees and Contractors operate within all State, City, and Federal Rules, Regulations, and Laws.

It has come to my attention that certain activities attendant to the Theater Program may expose the Academy to liability.

1: It appears that a WEB PAGE was designed and  reports to be under copyright by Kim Bartley (Former Employee) This Web Page is Titled "NEW YORK ACADEMY OF THEACTRICAL ART".  This page is on all internet search engines. On Google it is listed twice as follows.

...Copyright 2003 New York Academy of Art  "of" New York Academy of Theatrical Art Website Designed by Kim Bartley

and;

New York Academy of Theatrical Art New York Academy of Art School of Continuing Education Presents New York Academy of Theatrical Art...Nancy Zahzam. Director New York Academy of Theatrical Art www.nyaa.edu

This Office is unaware that the Board of Trustees has established or filed in any jurisdiction a Division or Subsidiary Corporation or is otherwise trading as the New York Academy of Theatrical Art. There is no filing with any tax authority or authorization by the New York State Department Of Education, which issued this Academy's Charter to Amend its name or add any such Division or Subsidiary.

This Office is unaware of any Officer or Trustee whom Authorized Kim Bartley to Copyright any Web Page connected to this Academy, and is in fact not aware of any such copyright.



111 Franklin Street, New York, NY 10013  212 966-0300 FAX  212 966-3217  www.nyaa.edu

This Office is unaware that Nancy Zahzam was appointed by the Board of Trustees as a Director

2: WEB Page. When the Web Page is Open (Among other things) it list to the Public the Following Information.

    a)  Full Time Tuition $10,000
    b)  Scholarships and LOAN PROGRAMS available

This program is a CE Pilot Project of NYAA. Only Students enrolled in Full Time MFA Program are eligibile for the Loan Programs

This Office is unaware of any Tuition Structure in the Approved Budget of $10,000.00 per Student nor are we aware of a Full Time Program.

Given the past history of the former Deans activity attendant to the Federal Loan Programs this Office is extremely troubled by the representation in the public forum on the Internet. Neither the Federal or State Agencies have granted any such permission to this Academy to offer Loan Programs to these Students.

Under the authority of the memorandum of March 17.2003, I am requesting independent counsel to open a preliminary investigation to determine any exposure to liability in this matter.

A review of Employment Contracts disclose that principle Contractors and Employees have listed this program as their property. A review of Kim Bartley's resume revels that she has worked for Terrence Mann as his Web Site Manager from 1999 to the Present at her home address. This is during the time she had access to the Academy's Web Site. I am requesting that our counsel investigates this matter.

I request that your office directs the Web Site to be Closed.

I request that your Office Suspends the Theater Program until Independent Counsel Reports.

I request that your Office Suspends Nancy Zahzam until the investigation is complete.





111 Franklin Street, New York, NY 10013  212 966-0300  FAX  212 966-3217  www.nyaa.edu

June 20, 2003

Mr. Bruce Brinbaum
United States Department of Education
Office of Student Financial Assistance
75 Park Place, Room 1206
New York, New York 10007

Re:  <u>Financial Aid Audit Compliance</u>

Dear Mr. Brinbaum,

As we discussed earlier this week, enclosed please find a copy of the year 2000/2001 Financial Aid Audit which was previously prepared and filed with your Department.

As best I can ascertain, this Audit was filed on or about January 15, 2002.  In June 2001, the Academy suffered a serious fire which forced us to relocate to temporary quarters on Hudson Street.  Many of the books and records maintained in the ordinary course of business were destroyed or damaged, and for months afterwards, while renovations and repairs were ongoing, we slowly recovered much of what we believed was lost.

Thereafter, we then suffered monumental business disruption following the events of September 11, 2001. As you may know, we were, and are, in the designated disaster zone, and the school was shut down for Twelve weeks.  Afterwards, between cleanup activity and dealing with other student and faculty problems, the completion of many business-related projects was delayed.  Indeed, the Academy eventually applied for,  and received, FEMA relief through the SBA.

Despite all these setbacks, the Audit was eventually completed and the report filed.

We now understand that because of the size of our student loan program, we were obligated to file the more comprehensive "Form A-133" Reports, and that they properly should have been filed with the United States Department of Education "Federal Audit Clearing House" in Jeffersonville, Indiana.  Needless to say, we were unaware of this requirement and, more importantly, it appears that this was an oversight by our outside Auditors (who are Certified Public Accountants).  Simply put, we had no in-house expertise and relied completely on professionals for expertise and compliance with federal funding programs.



111 *Franklin Street, New York, NY* 10013  212 966-0300  FAX  212 966-3217  *www.nyaa.edu*

Since that time, I have taken over the financial reigns of the institution, and have instituted more formal compliance checks in this and other areas. In addition, we have asked our auditors to prepare corrected A-133 reports – a project which, we anticipate, will be completed by the end of this week.

In our conversation, you indicated that the Department of Education would, among other things, consider requiring the Academy to secure a bond, or incur some other financial penalty. We urge you not to pursue that course for three reasons: 1) because the Academy's filings, although not utilizing the appropriate forms, nevertheless provided the Department of Education with complete information, 2) because any deficiency in filing was unintentional and based on the advice of outside professional assistance, and 3) because according to the Academy's primary subsidized lender, Educaid, the student loan program, as it has been utilized by the Academy's students, has enjoyed an overwhelmingly successful payment compliance history.

The Academy is a small school whose focus is on delivery of its academic programs. It is a not-for-profit institution originally founded by artists, scholars, and patrons of the arts, including Andy Warhol. It operates a fully accredited graduate program which awards the degree of Master of Fine Arts to students who have successfully complete its programs A substantial portion of the student body relies on federally subsidized and unsubsidized student aid to attend. Thus, most importantly, the imposition of additional financial requirements would cause the Academy, which is highly dependent on its donor contributions to make ends meet, substantial hardship which would affect the programs currently offered.

The lifeblood of this institution is its "struggling" artist-students. We ask you to refrain from imposing any penalty that would make that struggle any more difficult than it already is.

I would like I thank you for your courtesy in speaking to me about this matter, and I encourage you to call should you require any further information. Most important, if you would like to see how we operate and the level of artistic creativity that this institution has fostered and given birth to, I invite you to visit.

Yours truly,

Robert Angona
Controller



111 Franklin Street, New York, NY 10013  212 966-0300 FAX  212 966-3217  www.nyaa.edu

### memorandum

**TO:**          Stephen Farthing, Executive Director

**FROM:**     Robert Angona, Controller

**DATE:**      March 17, 2003

RE: Oversight Policies.

## INTRODUCTION

Following our review and investigation of the activities of our former Dean, Michael Gormley, we have resolved the issues related to the Academy's procedures in dealing with: two areas of major concern:  1) the processing of federally subsidized student loans, and  2) the filing and certification of Student Visas (INS Form I-20).

When these issues were first uncovered, we expressed concern that both the individuals responsible for these procedures, as well as the Academy and, perhaps, its Trustees, would be exposed to a wide range of civil and criminal liability.  Reviewing our options with counsel, we undertook to ascertain where our practices and procedures were deficient, how to correct those deficiencies, and to install policies which would insure our compliance in the future.

After three months of investigation, which included the assistance of our primary federally subsidized student loan lending institution, Wachovia/Educaid, as well as officials in the state and federal Departments of Education, we resolved all outstanding issues relating to student loans.  As you know, just two weeks ago, the U.S. Department of Education "signed off" on our Accelerated Master of Fine Arts Program, which not only meant that loans in the past were found to be in full compliance with current federal regulations, but that loans to students in the program going forward could be continued on that same basis.

Similarly, following a total review of the immigration status of all of our foreign students, we organized files that were either missing or inadequate, while at the same time re-registered under the new mandatory Student and Exchange Visitor Information System ("SEVIS") which was implemented by the recently created Bureau of Citizenship and Immigration Services ("BCIS," formerly known as INS), which is now under the Department of Homeland Security.



*111 Franklin Street, New York, NY* 10013  212 966-0300 FAX  212 966-3217  *www.nyaa.edu*

Accordingly, I propose the following policies and procedures to be administrated under the office of the controller in order to insure future compliance in matters subject to Government oversight in the future.

**A.    Processing of Federally Subsidized and Unsubsidized Loan Applications; Collections and Refunds.**

1.    The Academy now has a financial aid officer who is fully aware of and compliant with all requirements for the processing of federally subsidized and unsubsidized student loans. In addition, we have instituted a line of communication with both lending institution officials, as well as industry organizations which provide backup and guidance.

2.    Collections of tuition and fees from subsidized and unsubsidized student loan funding is now being administered through the office of the bursar under the supervision of the controller. The receipt and tracking of these funds is now computerized – something which was not fully operational in the past – but which should insure proper compliance with regulatory requirements.

3.    Each semester, both the controller's office and the financial aid officer will be required to review each student's application to insure compliance with applicable government regulations.

4.    The financial aid officer and the controller will be required to review and confirm, prior to commencement, each year's "exit interviews," to insure full compliance with applicable government regulations.

5.    The controller will be required to conduct an internal "pre-audit" each year - prior to the independent audit which is annually conducted pursuant to government regulations.

6.    Any inquiries and/or questions regarding compliance will be directed to the controller. In the event that the controller perceives any issues or irregularities warranting further review and investigation, he will make his concerns known to the executive director and seek independent counsel to investigate and resolve the issue.

7.    In his discretion, the controller shall establish additional items to be tested by the auditors to ensure complete compliance with applicable government regulations



111 *Franklin Street, New York, NY* 10013  212 966-0300 FAX  212 966-3217  *www.nyaa.edu*

**B.    Processing International Students.**

1.  The Director of Admissions will be  designated as the Primary Designated School Official (PDSO) for purposes of dealing with BCIS; he is responsible for the Filing of required BCIS/SEVIS Forms (such as Form I-20), and he acts as the advisor to foreign students at the Academy.

2.  The registrar **is presently authorized as a Designated School Official ("DSO")** and the Executive Director will be added to the BCIS/SEVIS Form I-17, School Registration, as additional Designated School Officers ("DSO").  The controller will also be added to the I-17 as a DSO, and will act as the School Compliance Officer and monitor; his duties will include the performance of routine audits and spot checks to insure full compliance with applicable federal law regulations.

3.  Effective April 1, 2003, or as soon thereafter as such procedures can be implemented, all Form I-20 certifications for individual foreign students will be reviewed to insure the current financial status of each foreign student – as required by applicable federal regulations.

4.  Effective April 1, 2003, or as soon thereafter as such procedures can be implemented, all foreign students attending the Academy will be monitored for their current immigration status – thereby insuring that the Academy satisfies its own obligations under present federal law.

5.  Effective April 1, 2003, or as soon thereafter as such procedures can be implemented, all foreign students shall be required to pay full tuition and fees prior to commencement of class each semester, as is required under the Student handbook.  (In the past this requirement has not been diligently followed.)  The office of the bursar shall report to the controller any student not current with his (or her) payments.  In the event that a foreign student is dropped from registration for the semester as a result of non-payment, under federal law that change of status triggers a "reportable event," and the controller will be required to advise the PDSO to file a "Change of Status" with BCIS/SEVIS.

6.  Effective April 1, 2003, or as soon thereafter as such procedures can be implemented, copies, endorsements, and entries to all foreign student's records will be filed with the controller.

7.  The PDSO, as well as any interested DSOs, shall join **the National Association of Foreign Student Advisors ("NAFSA")** in order to receive continuing training in the required areas of compliance and processing of foreign students.

LL-68.1

### NEW YORK Academy of ART

111 Franklin Street, New York, NY 10013  212 966-0300 FAX  212 966-3217  www.nyaa.edu

8.  The controller's office will be advised of all inquires, audits, on site visits, and/or requests for documents from all government agencies.  All inquiries and question relating to the Academy's compliance with immigration laws and regulations should be directed to the Controller.  The Controller may refer any issues and/or questions of compliance to independent counsel for investigation, review and/or a legal opinion.

9.  The controller shall establish a compliance audit list and conduct an annual pre-audit of all foreign student files.

10.  The controller shall engage outside independent counsel to conduct an annual compliance audit - again, too insure that all applicable federal regulations are being complied with.

**CONCLUSION**

While we are pleased that we have been able to resolve these open issues and create procedures for working in the future, this was not accomplished without significant cost to the Academy and effort by myself and the staff.  Nevertheless, as we look to the future, with the computerization of much of our recordkeeping and new procedures for regular oversight, we anticipate that some of the pitfalls we have experienced in the past will be avoided in the future.

**Exhibit  L**

## Robert Angona

**To:**                        Stephen Farthing
**Subject:**              David Levinson

I talked to Christina,  David said he would resolve it with you when he comes back on Monday.  We can not accept the check as is for a split. The lawers advise as I do seperate checks. Only one tax letter can go out for the 15,000.00. I am leaving the $25,000.00 check on your desk in a envelope.  you can reach me on the cell.

1

Karen Hickey

300 Park Avenue
New York, NY 10022
Telephone: 212 326-1097
Facsimile: 212 750-6281
khickey@studley.com

March 22, 2004                              

Mr. Robert Angona
The New York Academy of Art
111 Franklin Street
New York, NY 10013

Dear Robert:

Please be advised that we recently sent in a check in the amount of
$25,000 payable to the New York Academy of Art. The breakdown of
the check should be as follows:

| | |
|---|---|
| $10,000 | Contribution on behalf of Studley |
| $15,000 | Contribution on behalf of David Levinson |

I apologize for any inconvenience we may have caused by sending both
contributions in one check and I do hope this letter clarifies any
misunderstanding.

Please feel free to call me with any questions or comments.

Sincerely,

Karen Hickey

cc: David Levinson, CB Richard Ellis

**Robert Angona**

To:                    david.levinson@cbre.com
Subject:               Anthony Todd

As per your Instructions, I am paying this Vendor a $25,000.00 Depost without a Contract for the Tribecca Ball Event. I note the adjustments reducing the Invoice to $29,783.00.  We also advised the Vendor we require a Certificate of Insurance Naming NYAA as Additional Insured $1M, $1M, and $5Mil.

**Exhibit  M**

Sajedesign, LLC
580 Broadway # 710
New York, NY 10012
212.334.1296        TAX ID #42-1560284

# Invoice

| Date | Invoice No. |
|------|-------------|
| 03/10/04 | 50051 |

**Bill To**

New York Academy of Art
111 Franklin Street
New York, NY 10013

RE: 2004 Tribeca Ball

**Ship To**

New York Academy of Art
200 west 57th street
suite 808
New York, NY 10019
RE:Tribeca Ball

| P.O. No. | Terms | Rep | Ship Date | Ship VIA | Project |
|----------|-------|-----|-----------|----------|---------|
|  |  |  | 03/10/04 |  |  |

| Qty | Rate | Item | Description | Amount |
|-----|------|------|-------------|--------|
|  | 1,650.00 | Design Fee | Design Fees | 1,650.00 |
|  | 2,800.00 | Printing | Printing - 1500 Invites | 2,800.00 |
|  | 950.00 | Printing | Printing - 1500 Reply Card | 950.00 |
|  | 505.00 | Printing | Printing - 1500 Reply Card Envelopes | 505.00 |
|  | 923.00 | Printing | Printing - 1500 Liners | 923.00 |
|  | 443.00 | Printing | Printing - 750 Notecards | 443.00 |
|  | 1,200.00 | Printing | Printing - Laser Cutting | 1,200.00 |
|  | 400.00 | Produt. Suppl | Cello Envelopes | 400.00 |
|  | 30.00 | Mes/Del | Messenger | 30.00 |
|  | 45.00 | Produt. Suppl | Misc Expenses - Comps, Discs to Printer, etc | 45.00 |
|  | 200.00 | Ship & Hand | Shipping & Handling | 200.00 |
|  | 0.00 |  | Wholesale Non taxable | 0.00 |

We appreciate your prompt payment. Thank You!

**Total**          $9,146.00

Sajedesign, LLC
580 Broadway # 710
New York, NY 10012
212.334.1296

# Invoice

| Date | Invoice No. |
|------|-------------|
| 03/10/04 | 50051 |

**Bill To**

Simone Levinson
930 Park Avenue
New York, NY 10028

**Ship To**

Simone Levinson
930 Park Avenue
New York, NY 10028

| P.O. No. | Terms | Rep | Ship Date | Ship VIA | Project |
|----------|-------|-----|-----------|----------|---------|
|  |  |  | 03/10/04 |  |  |

| Qty | Rate | Item | Description | Amount |
|-----|------|------|-------------|--------|
|  | 1,650.00 | Design Fee | Design Fees | 1,650.00 |
|  | 2,800.00 | Printing | Printing - 1500 Invites | 2,800.00 |
|  | 950.00 | Printing | Printing - 1500 Reply Card | 950.00 |
|  | 505.00 | Printing | Printing - 1500 Reply Card Envelopes | 505.00 |
|  | 923.00 | Printing | Printing - 1500 Liners | 923.00 |
|  | 443.00 | Printing | Printing - 750 Notecards | 443.00 |
|  | 1,200.00 | Printing | Printing - Laser Cutting | 1,200.00 |
|  | 400.00 | Produt. Suppl | Cello Envelopes | 400.00 |
|  | 30.00 | Mes/Del | Messenger | 30.00 |
|  | 45.00 | Produt. Suppl | Misc Expenses - Comps, Discs to Printer, etc | 45.00 |
|  | 0.00 |  | Wholesale Non taxable | 0.00 |

We appreciate your prompt payment. Thank You!

| **Total** | $8,946.00 |
|-----------|-----------|

**Barbara Bell**

**From:**        jane wagman [jane@sajedesign.com]
**Sent:**        Wednesday, March 10, 2004 6:23 PM
**To:**        SMartel3@aol.com
**Subject:**        $$


SL.pdf


ATT15957.txt

        hi simone

here is the invoice. unfortunately we need payment before delivery
because we need to pay our vendors. we broke it down pretty clearly.

i am working on getting you your notecards before you leave.

thanks!
jane

Robert,

Here is the original email
From the designer to Simone
asking For Payment in Full
before delivery.

Attached is the Revised INVOICE
Which I have asked Christine
to get David's approval.

Barbara

1

**Robert Angona**

**From:**    Barbara Bell
**Sent:**    Thursday, March 11, 2004 9:57 AM
**To:**    Robert Angona
**Subject:** FW: Invoices

FYI

-----Original Message-----
**From:** Barbara Bell
**Sent:** Thursday, March 11, 2004 8:55 AM
**To:** 'SMartel3@aol.com'; Christine.Lilitka@cbre.com; Sandra April; jane@sajedesign.com
**Subject:** Invoices

In order for the New York Academy of Art to legally pay this invoice and have it be tax exempted, the bill needs to be made out as follows:

New York Academy of Art
111 Franklin Street
New York, NY 10013

RE: 2004 Tribeca Ball

Jane, would you mind terribly re-doing it and emailing it to all listed above.

Christine, can you please have David initial it again and fax it to me at 212/581-1977 and I will have it processed today.

Thank you.

Barbara

**Robert Angona**

**To:**       david.levinson@cbre.com
**Cc:**       Stephen Farthing
**Subject:**  Invoices for good and service Tribecca Ball

David,

I have a Invoice for 8,946.00 from Sajedesign The Invoice is made out to Simone Levinson. I understand this Invoice must be paid in advance.

First. I can not pay an Invoice made out to a third party. Invoice must be to The New York Academy of Art.

Second: Our Vendor Policy is that we only use pre-approved Vendors, unless it is an emergency. The procedure here is that the vendor is checked through D&B we need Tax ID Number and Vendor Agrees to bill on terms. With some vendors such as caterers, We need Cert, of Insurance, Copy of Licn. or Certification as to State and City Health permits and the serving of liquor .

Third. We pay on the First & 15th of the Month. We do honor deposit request on Jobs. If we pay in advance for this much money and the product is not accecptable we have no recourse except a law suit.

I just received the Budget for the Ball. I need to manange the cash flow. If the services to be delivered are from vendors we have not done business with, I need to clear them before contracts are made.

Would you be so kind as to have this Invoice reissued to New York Academy of Art on the terms above. Please keep this office in the loop as to avoid delay in prcessing bills for this event.

1

**Exhibit  N**

The First Manhattan Group Inc.

226 East 54 Street Suite 306
New York, New York 10022

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 4/22/2004 | AT04-9 |

**BILL TO**

NY Accademy of Art
111 Franklin Street
New York, NY 10013

| DESCRIPTION | AMOUNT |
|-------------|--------|
| MAY CONTRACT | 10,416.68 |
| JUNE CONTRACT | 10,416.68 |
| NG CHECK RETURN | 5,208.34 |
| CREDIT FOR CHARGES ON MNBA CONTROLLER CARD | -11,968.58 |
| TO CLOSE 2003/2004 CONTACT 10% | 2,083.36 |

| | **Total** | $16,156.48 |
|--|-----------|------------|

The First Manhattan Group Inc.

226 East 54 Street Suite 306
New York, New York 10022

# Invoice

| DATE | INVOICE # |
| --- | --- |
| 4/22/2004 | NY04-10 |

**BILL TO**

NY Accademy of Art
111 Franklin Street
New York, NY 10013

| DESCRIPTION | AMOUNT |
| --- | --- |
| CONTRACT 2004/2005 JULY 1-04 THRU JUNE 30-05 | 131,250.00 |
| TERMINATION OF CONTRACT 10% | 13,125.00 |

| | **Total** | $144,375.00 |
| --- | --- | --- |

The First Manhattan Group Inc.

226 East 54 Street Suite 306
New York, New York 10022

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 4/22/2004 | NY04-11 |

**BILL TO**

NY Accademy of Art
111 Franklin Street
New York, NY 10013

| DESCRIPTION | AMOUNT |
|-------------|--------|
| REFUND  DUE TRIBECCA BALL TICKETS | 4,000.00 |
| REFUND DUE INTERNATIONAL COUNSEL | 15,000.00 |

| | **Total** | $19,000.00 |
|--|-----------|------------|

# Exhibit  O

# New York Academy of Art

## Invoice History Report

| Vendor Name | Transaction Date | Transaction Number | Transaction Type | Description | Transaction Amount | Post Date | Invoice Balance |
|---|---|---|---|---|---|---|---|
| Empire Solutions Inc. | 8/22/2003 | 082203 | Invoice | DEPOSIT ON FEES FOR ONSITE AND REMOTE SERVICES | $5,000.00 | 8/22/2003 | $5,000.00 |
| Empire Solutions Inc. | 11/3/2003 | 6450 | Payment | | ($5,000.00) | 11/3/2003 | $0.00 |
| Empire Solutions Inc. | 12/17/2003 | C-1006-001 | Invoice | November Crystal Project Blackbaud/December Retainer | $7,000.00 | 12/17/2003 | $7,000.00 |
| Empire Solutions Inc. | 12/8/2003 | 1377 | Payment | | ($7,000.00) | 12/8/2003 | $0.00 |
| Empire Solutions Inc. | 1/18/2004 | C-1006-2 | Invoice | December System Support on contract | $4,550.00 | 1/24/2004 | $4,550.00 |
| Empire Solutions Inc. | 1/30/2004 | 1401 | Payment | | ($4,550.00) | 1/30/2004 | $0.00 |
| Empire Solutions Inc. | 2/12/2004 | C-1006-3 | Invoice | Report Formatting and Integration | $6,000.00 | 2/12/2004 | $6,000.00 |
| Empire Solutions Inc. | 2/27/2004 | 7060 | Payment | | ($6,000.00) | 2/27/2004 | $0.00 |
| Empire Solutions Inc. | 3/29/2004 | C-1006-4 | Invoice | Completion of contract | $4,100.00 | 3/29/2004 | $4,100.00 |
| Empire Solutions Inc. | 4/12/2004 | 7201 | Payment | | ($4,100.00) | 3/29/2004 | $0.00 |
| Empire Solutions Inc. | 4/12/2004 | C-1006-5 | Invoice | Training and Assisting the closing of books in Blackbaud | $7,500.00 | 4/12/2004 | $7,500.00 |
| Empire Solutions Inc. | 4/12/2004 | 1447 | Payment | | ($7,500.00) | 4/12/2004 | $0.00 |
| **Totals for Empire Solutions Inc.:** | | | | | | | **$0.00** |

Report name: New Invoice History Report
Include these invoice dates: 7/1/2003 to 4/16/2004
Include all due dates
Include these Vendors: Empire Solutions Inc.
Include all Invoices
Include all Batch
Include all Vendor Attributes
Include all Invoice Attributes

# Exhibit P

Empire Solutions Inc.

**Invoice**

2 Journal Square
New Jersey, NJ 07031

| Date | Invoice # |
|------|-----------|
| 11/1/2003 | 1001-03 |

**Bill To**

New York Academy of Art
200 West 57 Street Suite 808
New York, New York 10019

PAID

| Description | Amount |
|-------------|--------|
| Contract Crystal Reports | 5,000.00 |

| | **Total** | $5,000.00 |
|--|-----------|-----------|

Empire Solutions Inc.

# Invoice

2 Journal Square
New Jersey, NJ 07031

| Date | Invoice # |
|------|-----------|
| 12/1/2003 | C-1000-001 |

**Bill To**

New York Academy of Art
200 West 57 Street Suite 808
New York, New York 10019

PAID

| Description | Amount |
|-------------|--------|
| November Crystal Project Blacbaud | 2,000.00 |
| December Retainer | 5,000.00 |

| **Total** | $7,000.00 |

Empire Solutions Inc.

2 Journal Square
New Jersey, NJ 07031

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/28/2004 | C-1000-2 |

**Bill To**

New York Academy of Art
200 West 57 Street Suite 808
New York, New York 10019

PAID

| Description | Amount |
|-------------|--------|
| December System support on contract | 6,550.00 |

| | **Total** | $6,550.00 |

Empire Solutions Inc.

2 Journal Square
New Jersey, NJ 07031

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/22/2004 | C-1000-3 |

| Bill To |
|---------|
| New York Academy of Art<br>200 West 57 Street Suite 808<br>New York, New York 10019 |

PAID

| Description | Amount |
|-------------|--------|
| Report formatting and Integration | 6,000.00 |

| | **Total** | $6,000.00 |

Empire Solutions Inc.

# Invoice

2 Journal Square
New Jersey, NJ 07031

| Date | Invoice # |
|------|-----------|
| 3/29/2004 | C-1000-4 |

**Bill To**

New York Academy of Art
200 West 57 Street Suite 808
New York, New York 10019

PAID

| Description | Amount |
|-------------|--------|
| Completion of Contract | 8,100.00 |

| **Total** | $8,100.00 |

Empire Solutions Inc.

2 Journal Square
New Jersey, NJ 07031

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/12/2004 | C-1000-5 |

| Bill To |
|---------|
| New York Academy of Art |
| 200 West 57 Street Suite 808 |
| New York, New York 10019 |

PAID

| Description | Amount |
|-------------|--------|
| Training and Assisting  The closing of Books in Blackbaud for year End | 7,500.00 |
| **Total** | **$7,500.00** |

.

# Exhibit Q

# MICHAEL A. RODI
### ATTORNEY AT LAW

350 Broadway, Suite 1207
New York, New York 10013

Tel      (212) 965-9351
Mobile   (917) 499-5540
Fax      (212) 965-9351

June 29, 2004

**VIA FASCIMILE**
Janet Lipinski
Assistant District Attorney
New York County
One Hogan Place
New York, NY 10013

**(212) 335-8914**

Re:         **People v. Robert Angona**
             **Indictment Number: 02331-04**

Dear Ms Lipinski

As per our telephone conversation on June 21, 2004, please accept this proffer on behalf of the above named defendant

The defendant can offer proof as to following illegalities and improprieties at the New York Academy of Art (hereinafter the 'Academy')

For a period between the years 2001-2002, $1,050,000.00 was misappropriated from the Restricted Endowment going to Stephen Farthing and other officers of the Academy. The General Fund was depleted and showed a negative of $300,000.00 at the time of this misappropriation

For a period between the years 2002-2003 the Academy would collect loan proceeds from a number of different banks for the same student during the same semester

For a period between the years 2002-2003 false scholarships of an average of $500,000 a year were claimed by the Academy for its foreign students. No such scholarships were ever awarded These claims were made to New York State Regents Board, the U.S. Department of Education, on loan applications and INS Visa applications.

For a period between the years 2002-2003 the Academy misappropriated for private use equipment and donated materials. Randy Lerner and the Academy's Long Island School were the most abusive The Academy's building manager was inappropriately given cash payments to move this equipment to Long Island. $100,000 worth of cast statues was also misappropriated with various records being altered to hide the transfer

*EX-F*

Page 2

For a period between the years 2001-2003, alcohol was illegally sold out of a café opened in the school by Stephen Farthing. No New York State liquor license or beer and wine license was ever obtained. Sales tax was neither collected nor paid to the State on these sales. Gross sales totaled approximately $60,000.00 a year in this period.

Stephen Farthing, Randy Lerner and other officers of the Academy are most responsible for the acts outlined in this proffer.

The defendant has personal knowledge of many of these events as well as records of some of the transactions.

Please contact me if you find any of the information useful and would like to meet.

If you decide that there is nothing to be gained from my client's cooperation, please notify me. Please also be kind enough to notify me if you intend to prosecute my client's wife and I will arrange for her surrender.

Sincerely,

Michael A. Rodi, Esq.

MAR/jr