UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN R. BLUMATTE, a/k/a ROBERT ANGONA, a/k/a JOHN BLUE,<br><br>*Plaintiff*,<br><br>-*against*-<br><br>GERARD QUINN, DONALD ROGERS, STEPHEN FARTHING, RANDOLPH LERNER, JR., DAVID LEVINSON, RUSSELL WILKINSON, EILEEN GUGGENHEIM, ROBERT BOLANDIAN, CHRISTOPHER FORBES, MARGOT GORDON, ROLAND GRYBAUSKAS, LUDWIG KUTTNER, DOUGLAS OLIVER, DAVID SCHAFER, DENNIS SMITH, THE GRADUATE SCHOOL OF FIGURATIVE ART OF THE NEW YORK ACADEMY OF ARTS, and JEFFREY C. SLADE,<br><br>*Defendants*. | No. 2007 Civ. 2944 (JSR) |

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS THE AMENDED COMPLAINT BY DEFENDANTS STEPHEN FARTHING, RANDOLPH LERNER, JR., DAVID LEVINSON, RUSSELL WILKINSON, EILEEN GUGGENHEIM, ROBERT BOLANDIAN, CHRISTOPHER FORBES, MARGOT GORDON, ROLAND GRYBAUSKAS, LUDWIG KUTTNER, DOUGLAS OLIVER, DAVID SCHAFER, DENNIS SMITH, THE GRADUATE SCHOOL OF FIGURATIVE ART OF THE NEW YORK ACADEMY OF ART**

---

SCHLAM, STONE & DOLAN LLP
Bennette D. Kramer (BK-1269)
Andrew S. Harris (AH-9673)
26 Broadway
New York, New York 10004
Tel.: (212) 344-5400
Fax: (212) 344-7677

July 27, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................iii-vii

PRELIMINARY STATEMENT .......................................................................1

BACKGROUND ..............................................................................................2

The Plaintiff ...................................................................................................2

Plaintiff's Employment as Controller of the Academy....................................3

Plaintiff Pleads Guilty ....................................................................................4

ARGUMENT ..................................................................................................5

I.      THE AMENDED COMPLAINT FAILS TO STATE A RICO CLAIM .........................5

        A.      Plaintiff's First RICO Claim...................................................................6

                1.      Plaintiff Cannot Sue For Harm To Third Parties .......................7

                2.      Plaintiff Has Failed To Allege Any RICO Predicate Acts .........9

                        a.      Plaintiff does not allege RICO extortion .........................9

                        b.      Plaintiff has not pled fraud with particularity ...............10

                3.      Plaintiff Has Not Pled a RICO Conspiracy.............................12

                4.      Plaintiff Has Failed To Allege A RICO "Enterprise"...............13

                5.      Plaintiff Has Failed To Allege A "Pattern" of Racketeering Activity.......13

        B.      Plaintiff's Second RICO Claim Fails as Well........................................13

                1.      Plaintiff Does Not Allege Proximate Causation .........................14

                2.      Plaintiff Has Failed to Allege A "Pattern" of Racketeering Activity ........14

                3.      Plaintiff Has Not Properly Pled a RICO Conspiracy, Pled Fraud With Particularity or Alleged Any Enterprise ....................................15

II.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 1983   16

        A.      Plaintiff's Claims ...............................................................................16

        B.      Plaintiff Fails To Show the Academy Defendants Are State Actors....................17

C.    Plaintiff Fails to State a Section 1983 Claim for False Arrest ...............................18

D.    Plaintiff Fails to State a Section 1983 Claim for Excessive Force Against the Academy Defendants ..............................................................................................19

E.    Plaintiff Has Failed To State A Conspiracy Claim Under Section 1983 ...............20

III.   THE CLAIM FOR FRAUD AND DECEIT MUST BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD RELIANCE .......................................................21

IV.   THE BREACH OF CONTRACT CLAIM MUST BE DISMISSED BECAUSE THE CONTRACT IS VOID AND UNENFORCEABLE .......................................................23

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

*Adams v. Suozzi,*
    433 F.3d 220 (2d Cir. 2005)..................................................................................24

*American Home Mortgage Corp. v. UM Securities Corporation,*
    No. 05 Civ. 2279 (RCC), 2007 WL 1074837 (S.D.N.Y. Apr. 9, 2007) ...........................8

*Anderson v. Branen,*
    17 F.3d 552 (2d Cir. 1994)..................................................................................20

*Anza v. Ideal Steel Supply Corporation,*
    126 S. Ct. 1991 (2006).............................................................................2, 5, 7

*Bankers Trust, Co. v. Litton Systems, Inc.,*
    599 F.2d 488 (2d Cir. 1979)..................................................................................25

*Balbuena v. IDR Realty LLC,*
    6 N.Y.3d 338, 812 N.Y.S.2d 416 (2006) ...................................................................25

*Bell Atlantic Corporation v. Twombly,*
    127 S. Ct. 1955 (2007)..................................................................................12

*Black Radio Network, Inc. v. NYNEX Corp*oration
    44 F. Supp. 2d 565 (S.D.N.Y. 1999)...............................................................12, 13

*Bodek v. Bunis,*
    No. 06 CV 6022L, 2007 WL 1526423 (W.D.N.Y. May 23, 2007) ...........................17, 18

*Boyd v. City of New York,*
    336 F.3d 72 (2d Cir. 2003)..................................................................................18

*Brentwood Academy v. Tennessee Secondary School Athletic Association,*
    531 U.S. 288 (2001)..................................................................................17

*Brewster v. Nassau County,*
    349 F. Supp. 2d 540 (E.D.N.Y. 2004) ...............................................................20

*Broughton v. State of New York,*
    37 N.Y.2d 451, 373 N.Y.S.2d 87 (1975) ...............................................................18, 19

*Cameron v. Fogerty,*
    806 F.2d 380 (2d Cir. 1986)..................................................................................19

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,*
    117 F.3d 655 (2d Cir. 1997)..................................................................................11

*Carr v. Hoy*,
    2 N.Y.2d 185, 158 N.Y.S.2d 572 (1957) ..........................................................24

*Choi v. Kim*,
    No. 04 CV 4693, 2006 WL 3535931 (E.D.N.Y. Dec. 7, 2006).................................14, 15

*Cement and Concrete Workers District Council Welfare Fund v. Lollo*,
    148 F.3d 194 (2d Cir. 1998)..........................................................................21

*Ciambriello v. County of Nassau*,
    292 F.3d 307 (2d Cir. 2002)..........................................................................20

*Crigger v. Fahnestock and Company, Inc.*,
    443 F.3d 230 (2d Cir. 2006)..........................................................................21

*Curley v. Village of Suffern*,
    268 F.3d 65 (2d Cir. 2001)...........................................................................20

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001)............................................................................5

*DiPilato v. Village of Holley, New York*,
    No. 04 CV 0121E(SC), 2004 WL 2646552 (W.D.N.Y. Nov. 18, 2004).........................20

*Evercrete Corp. v. H-Cap Limited*,
    429 F. Supp. 2d 612 (S.D.N.Y. 2006)..........................................................21-22

*Fidelity Funding of California, Inc. v. Reinhold*,
    79 F. Supp. 2d 110 (E.D.N.Y. 1997) ................................................................22

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)....................................................................13, 15

*Fisk v. Letterman*,
    401 F. Supp. 2d 362 (S.D.N.Y. 2005)..............................................................17

*Ginsberg v. Healey Car & Truck Leasing, Inc.*,
    189 F.3d 268 (2d Cir. 1999)..........................................................................17

*Goldberg v. Mallinckrodt, Inc.*,
    792 F.2d 305 (2d Cir. 1986)..........................................................................22

*H.J. Inc. v. Northwestern Bell Telephone Company*,
    492 U.S. 229 (1989)...............................................................................14, 15

*Hecht v. Commerce Clearing House, Inc.*,
    897 F.2d 21 (2d Cir. 1990)...........................................................................12

*Heck v. Humphrey*,
    512 U.S. 477 (1994)..................................................................................9, 14, 19

*Hoatson v. New York Archdiocese*,
    No. 05 Civ. 10467 (PAC), 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007)...........................11

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258 (1992)..................................................................................................7

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) .................................................18

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649(S.D.N.Y. 1996) *aff'd*, 113 F.3d 1229 (2d Cir. 1997)...............................5

*Leung v. Law*,
    387 F. Supp. 2d 105 (E.D.N.Y. 2005) ......................................................................14

*Lutin v. New Jersey Steel Corporation*,
    122 F.3d 1056, 1997 WL 447005 (2d Cir. Aug. 7. 1997) .................................................12

*McArthur v. Bell*,
    788 F. Supp. 706 (E.D.N.Y. 1992) ............................................................................17

*McConnell v. Commonwealth Pictures Corporation*,
    7 N.Y.2d 465, 199 N.Y.S.2d 483 (1960) .................................................................23, 25

*Miller v. City of New York*,
    No. 05 CV 6024 (SJ), 2007 WL 1062505 (E.D.N.Y. Mar. 30, 2007) .............................10

*Minelli v. Soumayah*,
    __ N.Y.S.2d __, 2007 WL 1841119 (1st Dep't June 28, 2007) .......................................10

*Molina v. City of New York*,
    28 A.D.3d 372, 814 N.Y.S.2d 120 (1st Dep't 2006) ........................................................18

*Moore v. Guesno*,
    485 F. Supp. 2d 300 (W.D.N.Y. 2007) ....................................................................8, 9

*Morris v. Reynolds*,
    264 F.3d 38 (2d Cir. 2001).......................................................................................19

*Morris v. Castle Rock Entertainment, Inc.*,
    246 F. Supp. 2d 290 (S.D.N.Y. 2003).........................................................................21

*Moss v. Morgan Stanley, Inc.*,
    719 F.2d 5 (2d Cir. 1983).........................................................................................5

*Nasik Breeding & Research Farm Ltd. v. Merck & Company*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001)..............................................................10, 11, 12

*New York State Medical Transporters Association, Inc v. Perales,*
    77 N.Y.2d 126, 564 N.Y.S.2d 1007 (1990) ........................................................24

*Novomoskovsk Joint Stock Company "Azot" v. Revson,*
    No. 95 Civ. 5399 (JSR), 1997 WL 698192 (S.D.N.Y. Nov. 7, 1997) ..............11

*O'Bradovich v. Village of Tuckahoe,*
    325 F. Supp. 2d 413 (S.D.N.Y. 2004) ..............................................................20

*Prowisor v. Bon-Ton, Inc.,*
    426 F. Supp. 165 (S.D.N.Y. 2006) ...................................................................18

*Rosen v. Spanierman,*
    894 F.2d 28 (2d Cir. 1990)................................................................................21

*Rossi v. New York City Police Department,*
    No. 94 Civ. 5113 (JFK), 1998 WL 65999 (S.D.N.Y. Feb. 17, 1998)................19

*Savino v. City of New York,*
    331 F.3d 63 (2d Cir. 2003)................................................................................18

*Scheidler v. National Organization for Women, Inc.,*
    537 U.S. 393 (2003)..........................................................................................10

*Securities Investment v. Protection Corp. v. BDO Seidman, LLP,*
    222 F.3d 63 (2d Cir. 2000).................................................................................21

*Shah v. Meeker,*
    435 F.3d 244 (2d Cir. 2006)................................................................................2

*Shaw v. Rolex Watch, U.S.A., Inc.,*
    673 F. Supp. 674 (S.D.N.Y. 1987) ....................................................................21

*Shapiro v. The City of Glen Cove,*
    No. CV 03-0280, 2005 WL 1076292(E.D.N.Y. May 5, 2005), *aff'd,* 2007 WL 1492479
    (2d Cir. May 22, 2007) ......................................................................................18

*Snider v. Dylag,*
    188 F.3d 51 (2d Cir. 1999).................................................................................16

*Sphere Drake Insurance Ltd. v. Clarendon National Insurance Company,*
    263 F.3d 26 (2d Cir. 2001).................................................................................24

*Spies v. Brown,*
    No. 98 CV 4708, 2002 WL 441991 (E.D.N.Y. Mar. 13, 2002) .........................19

*Stochastic Decisions, Inc. v. DiDomenico,*
    995 F.2d 1158 (2d Cir. 1993)..........................................................................5, 12

*Stone v. Freeman,*
    298 N.Y. 268 (1948) ................................................................................23

*Tancredi v. Metropolitan Life Insurance Company,*
    316 F.3d 308 (2d Cir. 2003) .....................................................................17

*Taylor v. Vermont Department of Education,*
    313 F.3d 768 (2d Cir. 2002) ......................................................................5

*Wien & Malkin LLP v. Helmsley-Spear, Inc.,*
    6 N.Y.3d 471, 813 N.Y.S.2d 691 (2006) ...................................................24

*Younger v. City of New York,*
    480 F. Supp. 2d 723 (S.D.N.Y. 2007) .......................................................19

## RULES, STATUTES AND OTHER AUTHORITIES

18 U.S.C. § 1512 ..............................................................................................9

18 U.S.C. § 1961 .........................................................................................6, 10

18 U.S.C. § 1962 ....................................................................................7, 12, 13

18 U.S.C. § 1964 ..............................................................................................5

28 U.S.C. § 2254 .............................................................................................19

42 U.S.C. § 1983 ........................................................................1, 2, 16, 17, 18, 19, 20

Donnino, Practice Commentary, McKinney's Cons Laws of NY,
    Book 39, Penal Law art 155, at 173 (1999). ..............................................10

Federal Rules of Civil Procedure Rule 8(a)(2) ................................................12

Federal Rules of Civil Procedure Rule 9(b)...................................................10

Federal Rules of Civil Procedure Rule 12(b)(6) ...............................................1

Federal Rules of Civil Procedure Rule 41 ........................................................3

Defendants Stephen Farthing, Randolph Lerner, Jr., David Levinson, Russell Wilkinson, Eileen Guggenheim, Robert Bolandian, Christopher Forbes, Margot Gordon, Roland Grybauskas, Ludwig Kuttner, Douglas Oliver, David Schafer, Dennis Smith (collectively, the "Academy Defendants") and the Graduate School of Figurative Art of The New York Academy of Art (the "Academy") submit this memorandum of law in support of their motion to dismiss the Amended Complaint ("Complaint") dated July 18, 2007 of Plaintiff John R. Blumatte a/k/a Robert Angona a/k/a John Blue ("Plaintiff")[1] pursuant to Rule 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

Plaintiff, a convicted felon using an assumed name to avoid detection for violation of probation in the District of New Jersey, convinced the Academy to hire him as controller. Plaintiff arranged to be employed through a corporation set up by his wife in order to avoid giving a social security number and disclosing his real name. Plaintiff still has not disclosed his true name, suing instead as John R. Blumatte a/k/a Robert Angona a/k/a John Blue.

After Plaintiff's criminal conduct came to light, he was incarcerated for his federal parole violations and ultimately also pled guilty—twice—in state court to stealing from the Academy. Despite having lied to and stolen from the Academy, Plaintiff has now sued the Academy and persons associated with it on plainly frivolous claims.

Plaintiff alleges federal claims for: (1) RICO violations arising from a scheme to defraud the Internal Revenue Service (the "IRS"), the New York Board of Regents and others, and an effort to bribe a witness to testify falsely against Plaintiff in state court; and (2) 42 U.S.C. § 1983, based on his arrest for grand larceny from the Academy. Plaintiff also asserts state law claims for breach of contract and fraud. All of Plaintiff's claims are without any legal basis, and must be dismissed.

---

[1] A copy of the Amended Complaint is attached to the Declaration of Bennette D. Kramer, dated July 25, 2007 ("Kramer Decl."), as Ex. A. Plaintiff has served several different versions of his Amended Complaint, the last of which was dated July 18 and filed on July 20, 2007. In this motion, we respond to the last version of Plaintiff's Amended Complaint.

In framing his claims, Plaintiff ignores established law. For example, Plaintiff bases his RICO claim on frauds directed at third-parties such as the IRS, disregarding the Supreme Court's holding in *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991 (2006). Indeed, Plaintiff's alleged injuries—the destruction of his businesses—were not caused, let alone proximately caused, by the RICO scheme he alleges. Nor has Plaintiff alleged the fraud predicates with particularity. Plaintiff's claims under § 1983 are equally baseless. Among other deficiencies, the Academy Defendants are not state actors; the claims based on false arrest are barred by Plaintiff's two guilty pleas; the claim for excessive force fails because none of the Academy Defendants were present at the time of his arrest; and the conspiracy claim fails for lack of a substantive § 1983 claim or any factual allegations making any such conspiracy claim plausible.

These baseless RICO and § 1983 claims are then used to wage a vicious attack against present and former Trustees of the Academy, most of whom are never mentioned in the Complaint after being identified as defendants.

Finally, Plaintiff cannot recover for breach of contract because the contract itself is void as against public policy, and his fraud claim does not allege that Plaintiff, as victim, relied on any of the false statements.

## BACKGROUND

Defendants accept the truth of Plaintiff's allegations for the purposes of this motion only. *See Shah v. Meeker*, 435 F.3d 244, 246 (2d Cir. 2006). In addition, below we rely on documents referenced in the Complaint or public records appropriate for judicial notice.

### The Plaintiff

Plaintiff has been convicted of felonies by the United States and the State of New Jersey. Compl. ¶ 20. "[I]n or about 1998" he "unlawfully left the supervision of the United States Probation Department in connection with probation following a period of incarceration arising from

proceedings had before the United States District Court for the District of New Jersey." *Id.* ¶ 21. Plaintiff violated his probation because it "interfere[ed] with Plaintiff's lawful employment in the only capacity at which he had relevant experience and training, namely accounting and financial services." *Id.* ¶¶ 22, 26.

After Plaintiff married Shirley Allyn, he adopted a variety of names and caused his wife to set up two corporations so that Plaintiff could provide accounting services without disclosing his social security number, since that might lead to detection for his probation violation. *Id.* ¶¶ 27, 34. Plaintiff settled on the name Robert Angona—the name of an incarcerated acquaintance. *Id.* ¶ 27.

**The Defendants** [2]

Gerard Quinn and Donald Rogers (the "Detective Defendants") are detectives employed by the Police Department of the City of New York. Compl. ¶ 2.

The Academy is a "charitable organization chartered by the Board of Regents." *Id.* ¶ 3. Stephen Farthing was its Executive Director and a Trustee. *Id.* ¶ 5. Randolph Lerner, Jr. was the Chairman of the Board of Trustees until October 2003. *Id.* ¶ 6. David Levinson succeeded Lerner as Chairman. *Id.* ¶ 8. The rest of the Academy Defendants served as Trustees of the Academy at various times. *Id.* ¶¶ 9-12. Eileen Guggenheim served as Special Advisor to the Academy's Board; Jeffrey C. Slade served as general counsel to the Academy. *Id.* ¶¶ 13, 14.

**Plaintiff's Employment as Controller of the Academy**

Plaintiff first worked for the Academy in April 2002 through a company formed by his wife, First Manhattan Group, Inc. ("First Manhattan"). *Id.* ¶ 29. Plaintiff refused to sign the Academy's standard employment contract because of his convictions and his need to hide his true name; the Academy accepted his form of agreement which was signed "on or about" June 14, 2002, *id.* ¶¶ 30-

---

[2] Plaintiff dismissed the complaint against David Long and Assistant District Attorney Elyse Ruzow under Federal Rule of Civil Procedure 41. In the Amended Complaint, Plaintiff dropped four other defendants.

39, which was supplemented by a letter agreement for additional services on June 20.  *Id.* ¶¶ 40-41.

Plaintiff discovered various alleged accounting discrepancies, and claims to have believed some of

them were fraudulent.  *Id.* ¶¶ 43-72.  On or about October 27, 2003, First Manhattan and the

Academy entered into a new contract for Plaintiff's services as Controller.  *Id.* ¶ 73.  Then, on

August 22, 2003, "via his other New York corporation, Empire," Plaintiff entered into another letter

agreement with the Academy to provide services related to the Academy's computer systems.  *Id.*

¶ 79.

       Plaintiff's employment with the Academy allegedly ended for two reasons.  First, in 2004

newspaper articles suggested that "Robert Angona," Plaintiff's alias, was associated with organized

crime, complicating Plaintiff's efforts to avoid disclosure of his probation violations.  *Id.* ¶¶ 113-23.

Second, the Trustees refused his advice to restate the Academy's financial statements or change

various practices he had criticized.  *Id.* ¶¶ 97-100.  As a result, "Angona" resigned.  *Id.* ¶¶ 128-29.

Plaintiff alleges that Farthing orally agreed to pay the lump sum payment called for by the October

2003 agreement, net of the amount Plaintiff owed for his credit card charges.  *Id.* ¶¶ 134-43.

       Ultimately the Academy Defendants along with Slade contacted the Manhattan District

Attorney's Office, resulting in Plaintiff's arrest for grand larceny and eventual grand jury

indictment.  *Id.* ¶¶ 159-60, 172-247.  In the meantime, the federal government issued a warrant for

his detention for probation violations, and Plaintiff knew he "owed the federal government jail

time."  *Id.* ¶¶ 258-59.  Plaintiff claims that his state court prosecution was based on a scheme to

blame Plaintiff for all of the Academy's financial problems.  *Id.* ¶¶ 261-62.

**Plaintiff Pleads Guilty**

       On October 29, 2004, Plaintiff pled guilty to a Class C felony and was sentenced to a term

of 4 to 8 years.  *Id.* ¶ 267.  On November 30, 2006, after Plaintiff had served about 2 ½ years, "the

District Attorney agreed to vacate Plaintiff's prior conviction and offered to permit Plaintiff to

replead to a Class D felony for which he would be [and was] re-sentenced to a term of 2.5 to 5 years." *Id.* ¶ 270.[3]

## ARGUMENT

## I.    THE AMENDED COMPLAINT FAILS TO STATE A RICO CLAIM.

"Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device.  Because the mere assertion of a RICO claim . . . has almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotations omitted), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).  Plaintiff's RICO allegations are, at best, an improper attempt to dress up a breach of contract claim.

In order to state a civil claim for damages under RICO, a plaintiff must establish:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5)  directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).  Further, a civil RICO plaintiff must allege "causation," *i.e.* that he or she was injured in his or her business or property "'by reason of' a defendant's RICO violation." *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991, 1996 (2006); *see also* 18 U.S.C. § 1964(c).  These "requirements . . . must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).  The plaintiff must establish that each individual defendant "personally committed or aided and abetted the commission of two or more predicate acts." *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1168 (2d Cir. 1993) (quotation and citation omitted).

---

[3] The Court may consider Plaintiff's two guilty pleas (attached to the Kramer Decl. as Exs. B and C, respectively) on this motion because they are incorporated by reference in the Amended Complaint, and are public records appropriate for judicial notice. *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

The Amended Complaint fails to satisfy any of those requirements.

## A.    Plaintiff's First RICO Claim.

Plaintiff's first RICO claim (Count IV) alleges that the Trustees, "in conspiracy, concert and participation with each of the other," controlled the Academy and participated in the conduct of its affairs through a "pattern" of "racketeering activities including (a) mail fraud, (b) wire fraud, (c) tax fraud, (d) bank fraud and (e) extortion." Compl. ¶¶ 330-31. The center of Plaintiff's RICO claim is:

> In short, through the regular use of the United States mail, telephone and internet, the Trustees willfully conspired one with the other to control and did control the Academy in a fashion that perpetrated a fraud on the Internal Revenue Service, the New York Board of Regents, the Academy's insurance carriers, individuals who thought they were contributing to a restricted endowment fund and later others, including Plaintiff, in order to foster their own social and business interests at the expense of their fiduciary duties and other obligations imposed by law.

*Id.* ¶ 92. Plaintiff's mail fraud claims include: (1) filing a false insurance claim by mail in 1994 (*id.* ¶¶ 83-87); (2) filing false and vastly inflated insurance claims relating to a minor fire by mail (no date) (*id.* ¶¶ 89-90); (3) filing "multiple claims for the same alleged damages attributing these same damages both to a fire and to the 9/11 Tragedy" (no date) (*id.* ¶ 91); and (4) seeking the prosecution of Plaintiff through the use of interstate mail and wire communications (alleged upon information and belief) (*id.* ¶ 219).[4] The alleged bank fraud involved federally guaranteed loans. *Id.* ¶¶ 67-68 Finally, Plaintiff's claim of extortion involves alleged efforts by certain Academy Defendants to induce defendant Stephen Farthing to make false statements and testify falsely regarding accusations of larceny against Plaintiff in order to preserve Farthing's severance package. *Id.* ¶¶ 215-23, 243-53.

---

[4] Even though the definition of "racketeering activity" in 18 U.S.C. § 1961(1) does not include tax fraud, Plaintiff alleges a variety of tax frauds as additional RICO predicates, including: (1) overstating the restricted endowment of the Academy on income tax returns, Form 990, for 1998 and 1999 (*id.* ¶¶ 46-50); (2) filing audited financials with material misstatements with the IRS and the New York State Board of Regents (no date) (*id.* ¶¶ 58-60).

Plaintiff also alleges that "each of the Trustees violated 18 U.S.C. § 1962(d)"—RICO conspiracy. *Id.* ¶ 332. Finally, Plaintiff alleges that he "was one of many persons who was injured in his business and property by the Trustees' violations of 18 U.S.C. § 1962(b), (c) & (d)." *Id.* ¶ 333.

## 1.    **Plaintiff Cannot Sue For Harm To Third Parties.**

Plaintiff's RICO claim must be dismissed because (a) he was neither the victim nor the target of the alleged RICO scheme and (b) his alleged injury was not proximately caused by the alleged racketeering activity. In *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991 (2006), the Court held that in order to establish the required proximate cause, a plaintiff's injury must be the direct or immediate victim of the alleged RICO violation. *Id.* at 1997-98. A direct injury is required even if the defendant intended to harm plaintiff through the injury to the third party. *Id.* at 1998.

In *Anza* as here, the alleged racketeering activity consisted of mail and wire fraud in filing false tax returns with the state tax authorities. *Id.* at 1994-95. Those allegations were insufficient, the Supreme Court held, because a plaintiff must demonstrate a "'direct relation between the injury asserted and the injurious conduct alleged.'" *Anza*, 126 S. Ct. at 1996 (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)). In language particularly applicable here, the Supreme Court stated: "[t]he cause of Ideal's asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* at 1997. The Court explicitly rejected the concept that a plaintiff can establish a RICO violation by alleging RICO predicates directed at a third party, even if the defendant intended thereby to harm plaintiff.

As in *Anza*, the alleged RICO violations here were directed at various third parties rather than Plaintiff, including the alleged frauds relating to false testimony in the state criminal proceeding. Clearly, actions completed years before Plaintiff's arrival at the Academy were not intended to harm him, even incidentally.

Moreover, Plaintiff's alleged injuries were not proximately caused by the predicate acts. To establish the required proximate cause, "the injury must be a *direct result* of the alleged RICO violation, and not the result of a non-RICO violation or some other intervening action"; and, second, the injury must be reasonably foreseeable. *Moore v. Guesno*, 485 F. Supp. 2d 300, 306 (W.D.N.Y. 2007). A plaintiff must show that the defendant actually injured his business or property. *American Home Mortgage Corp. v. UM Sec. Corp.*, No. 05 Civ. 2279 (RCC), 2007 WL 1074837, at *3 (S.D.N.Y. Apr. 9, 2007). The plaintiff must allege facts sufficient to "allow the Court to assess such losses." *Id.* at *4.

Plaintiff himself alleges that his probation officer had prevented him from working "in the only capacity at which he had relevant experience and training, namely accounting and financial services," (*id.* ¶¶ 22, 26); and he knowingly violated his probation by seeking and accepting employment as the Academy's Controller under an assumed name, for which he knew he would be incarcerated if it was ever discovered (*id.* ¶ 266). Apart from his federal probation violation, Plaintiff's imprisonment after pleading guilty to grand larceny independently prevented him from engaging in any business activity. *Id.* ¶¶ 267, 270; *see also* Kramer Decl., Exs. B and C. Accepting his own allegations, his "business" of rendering "accounting and financial services" was destroyed, not by any RICO scheme, but instead as a result of his criminal convictions. Nothing the Academy is alleged to have done caused those results.

Thus, Plaintiff's RICO claim fails for the same reason as in *Moore*, 485 F. Supp. 2d at 306, where the plaintiff similarly alleged that his injury – a cancelled contract – resulted from "criminal charges … based on false evidence created by" defendants. Since in *Moore* as here, plaintiff had pled guilty and his conviction had never been overturned, plaintiff could not establish that his alleged injury resulted from anything but his own admitted criminal conduct. *Id*

Additionally, the *Moore* court found that under the "favorable termination rule" plaintiff could not recover monetary damages "based on an injury caused by actions that would somehow undermine an otherwise valid conviction." *Id.* at 307-08, relying on *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). By his claims here, Plaintiff seeks to undermine his conviction in the same way, a result clearly barred by *Heck*, 512 U.S. at 486-87.

### 2. Plaintiff Has Failed To Allege Any RICO Predicate Acts.

#### a. Plaintiff does not allege RICO extortion.

Plaintiff lists "extortion" as a predicate act.[5] *Id.* ¶¶ 329-30. The factual basis for that claim is that "the Trustees" fabricated "a series of false allegations of fraud, embezzlement and grand larceny against the Plaintiff and then induc[ed] Farthing to swear to them by extortion." *Id.* ¶ 215. Farthing was induced to make false statements upon which the felony complaint against Plaintiff was based "in order to preserve his severance package and to resolve all existing disputes between the Trustees and him thereby smoothing the way for Farthing's planned departure from the Academy." *Id.* ¶ 218. Thus, certain Trustees, "acting on behalf of the other Trustee Defendants in furtherance of their conspiracy used the power they had over Farthing to induce him to testify falsely against Plaintiff." *Id.* ¶ 220.

Plaintiff has not alleged a predicate act of extortion, and has also failed to allege that he suffered an injury to his business or property because of any extortion aimed at him. In the first place, Plaintiff does not allege that he was the victim of extortion – *i.e.* that the Trustees threatened him and obtained property <u>from him</u>. Indeed, there is no allegation that anyone was deprived of

---

[5]   In the first complaint, Plaintiff listed "witness tampering" as a predicate act, but replaced witness tampering with extortion after Defendants pointed out that the RICO predicate act of witness tampering under 18 U.S.C. § 1512(b) applies only to federal proceedings.

property by use of threats.[6]  Second, the allegations that the Trustees threatened to withhold

Farthing's severance unless he did what they said, amounts to criminal coercion which is neither a

RICO predicate under Section 1961(1)(A), nor included within the Hobbs Act. *Scheidler*, 537 U.S.

at 406-08.[7]  In all events, Farthing, who was allegedly forced to testify falsely or forego his

severance, is the only alleged victim here.

### b.    Plaintiff has not pled fraud with particularity.

Rule 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with

particularity," a rule that "appl[ies] with particular force in RICO actions." *Nasik Breeding &*

*Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001).

To assert a mail fraud claim, "plaintiff must allege that the defendant (1) participated in a

scheme to defraud; (2) knowingly used the mails to further the scheme; and (3) had the specific

intent to defraud." *Miller v. City of New York*, No. 05 CV 6024 (SJ), 2007 WL 1062505, at *3

(E.D.N.Y. Mar. 30, 2007).  Under Rule 9(b), to state predicate acts of mail and wire fraud, the

complaint must allege:

> (1) precisely what statements were made in what documents or oral
> representations or what omissions were made, and (2) the time and place
> of each such statement and the person responsible for making (or, in the
> case of omissions, not making) the same, (3) the content of such
> statements and the manner in which they misled the plaintiff, and (4) what
> the defendants obtained as a consequence of the fraud.

---

[6] To qualify as a predicate act of extortion, however, "property must be obtained from another . . .
interfering with or depriving someone of property does not suffice." *Scheidler v. National
Organization for Women, Inc.*, 537 U.S. 393, 405 (2003); *see also Minelli v. Soumayah*, __
N.Y.S.2d __, 2007 WL 1841119, at *1 (1st Dep't June 28, 2007)(extortion is "obtaining of money
by force or fear").

[7]   The crime of coercion "involves the use of force or threat of force to restrict another's freedom of
action." *Scheidler*, 537 U.S. at 405.  Coercion under New York law "consists of compelling a
person by intimidation to engage or refrain from engaging in certain conduct.  Extortion is
compelling a person by intimidation to turn over property."  Donnino, Practice Commentary,
McKinney's Cons Laws of NY, Book 39, Penal Law art 155, at 173 (1999).

*Novomoskovsk Joint Stock Co. "Azot" v. Revson*, No. 95 Civ. 5399 (JSR), 1997 WL 698192, at *4 (S.D.N.Y. Nov. 7, 1997). And "where multiple defendants are accused of mail or wire fraud, plaintiffs must plead fraud with particularity as to each defendant." *Nasik*, 165 F. Supp. 2d at 537. Thus, a "complaint alleging RICO violations based on mail or wire fraud must allege that the defendant participated in at least two acts of mail or wire fraud." *Hoatson v. New York Archdiocese*, No. 05 Civ. 10467 (PAC), 2007 WL 431098, at *4 (S.D.N.Y. Feb. 8, 2007).

The complaint fails to satisfy any of these requirements. Plaintiff generally discusses filing income tax returns with misstated endowment numbers (Compl. ¶¶ 46, 51, 54, 58, 62-64), filing false insurance claims by mail (*id.* ¶¶ 83-86), sending misstated audited financials to the New York Board of Regents (*id.* ¶ 58) and violating federal law in connection with federally guaranteed loans (*id.* ¶ 67). Plaintiff also alleges upon information and belief that the Trustees used interstate mail to seek the criminal prosecution of plaintiff, but provides no details concerning the time and place, person responsible or content of the fraudulent statements.[8] *Id.* ¶¶ 219, 327. Yet for none of those alleged frauds does Plaintiff specify the time and place of mailing or wiring, except to state generally that some tax returns were filed for 1997 and 1999 and a false insurance claim was filed by mail in 1994. Most importantly, Plaintiff makes absolutely no effort to identify the individual defendant supposedly responsible for the wiring, mailing or filing of the alleged fraudulent statements. There are 13 Academy Defendants; Plaintiff does not differentiate among them, alleging instead that the "Trustees filed" (*id.* ¶ 84), the "Trustees were complicit in filing" (*id.* ¶ 89), the "Trustees caused" (*id.* ¶ 327), or simply stating that the "Academy" acted. The Amended Complaint falls far short of alleging that each defendant committed or agreed to commit two acts of mail or wire fraud (or any other kind of fraud). Nor does Plaintiff state how he was misled by the

---

[8] Fraud allegations cannot ordinarily be made "upon information and belief." *See Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 664 (2d Cir. 1997).

allegedly fraudulent statements. Indeed, most of those statements were made long before Plaintiff came on the scene or to other persons. Instead of alleging that he was deceived by the alleged frauds committed, Plaintiff proudly asserts that he discovered them, (*id.* ¶ 43), or would have corrected them (*id.* ¶¶ 255-56).

### 3.    Plaintiff Has Not Pled a RICO Conspiracy.

To allege a RICO conspiracy claim, "plaintiffs must allege facts that support a conclusion that defendants consciously agreed to commit predicate acts. Conclusory allegations of a conspiracy are insufficient." *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 581 (S.D.N.Y. 1999) (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990)); *accord, Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1959 (2007) ("The need at the pleading state for allegations plausibly suggesting (not merely consistent with) [conspiracy] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'"). In *Hecht*, the Second Circuit held: "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht*, 897 F.2d at 25. A Plaintiff must establish that each defendant committed or agreed to commit two predicate acts. *Stochastic*, 995 F.2d at 1168; *see also Lutin v. New Jersey Steel Corp.*, 122 F.3d 1056, 1997 WL 447005, at *5 (2d Cir. Aug. 7. 1997)(summary order). Additionally, a RICO conspiracy claim under Section 1962(d) fails if the plaintiff fails to plead a substantive claim under section 1962(c); "there can be no RICO conspiracy without a substantive RICO violation." *Nasik*, 165 F. Supp. 2d at 540.

As set forth above, Plaintiff's substantive RICO claims fail. Even if the substantive claims were viable, Plaintiff has offered only conclusory allegations of conspiracy. Compl. ¶¶ 329-32. There are no allegations that a single Trustee specifically agreed to commit predicate acts. Indeed, there are no specific acts attributed to any particular Academy Defendant. The allegations of

"conspiracy, concert and participation" "fall short of the specificity required to allege that defendants consciously agreed to commit predicate acts." *See, e.g., Black Radio*, 44 F. Supp. 2d at 581.

### 4.    Plaintiff Has Failed To Allege A RICO "Enterprise".

Plaintiff alleges that the Academy was a RICO enterprise through which the Academy Defendants participated in a racketeering enterprise. Compl. ¶¶ 319, 324-27. However, "simply establishing the presence of an enterprise is not enough. Plaintiff must also allege that each defendant 'conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .' 18 U.S.C. § 1962(c). This means that a RICO defendant must play a part in directing the enterprise's affairs." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004). There are no allegations in the Complaint concerning the hierarchy or roles that each defendant played in conducting or participating in the Academy's affairs or in connection with the "pattern" of racketeering.

### 5.    Plaintiff Has Failed To Allege A "Pattern" of Racketeering Activity.

Plaintiff must allege that he was "injured by Defendants' conduct of an enterprise through a pattern of racketeering activity." *First Capital*, 385 F.3d at 178. A "pattern" requires at least two predicate acts committed within a ten year period. *Id.*; *see also* 18 U.S.C. § 1961(5). If alleged predicate acts are not pled with sufficient particularity, or have not injured plaintiff, or were otherwise deficient, there is no pattern of racketeering activity. *First Capital*, 385 F.3d at 178. Here, Plaintiff has failed adequately to plead or show any racketeering activity.

### B.    Plaintiff's Second RICO Claim Fails as Well.

In the Fifth Claim Plaintiff alleges that a subcommittee of the Board was formed in April 2004 "to deal with issues relating to the Plaintiff." Compl. ¶ 338. Executive Director Stephen Farthing had not told the other Trustees what he knew about Plaintiff's background until April

13

2004. *Id.* ¶¶ 340-41. The Subcommittee allegedly threatened to hold Farthing liable for concealing Plaintiff's background and to deny him severance benefits unless he provided false information about Plaintiff to the police. *Id.* ¶¶ 339, 343, 348, 351-52. This, according to the Complaint, was part of the multi-year pattern "of the Trustees knowingly reporting to federal and state governmental authorities, false information about the Academy's affairs via mail and wire in aid of their conspiracy to control the Academy for their personal benefit." *Id.* ¶ 359.

### 1. Plaintiff Does Not Allege Proximate Causation.

Since a RICO injury must be a direct result of the alleged RICO violation, there is no proximate cause unless plaintiff's "original loss could not have occurred without the commission of the predicate act." *Leung v. Law*, 387 F. Supp. 2d 105, 122 (E.D.N.Y. 2005). Plaintiff's RICO claim focusing on Farthing's alleged false testimony fails for the same reason as his RICO claim focusing on alleged fraud: in both, he alleges that his injury was the "complete destruction of Empire and First Manhattan," (*id.* ¶ 359), a result that flowed directly from his violation of probation, his guilty plea, and his resulting incarceration for both, rather than any actions by the Academy Defendants *See supra*, at pp. 7-9. Since Plaintiff pled guilty (twice) in state court, any false testimony by Farthing is irrelevant: his conviction and incarceration were the result of his voluntary plea, and nothing else. Any effort by Plaintiff to undermine his conviction through these claims is barred by *Heck*, 512 U.S. at 486-87.

### 2. Plaintiff Has Failed to Allege A "Pattern" of Racketeering Activity.

Plaintiff must allege that he was injured through a pattern of racketeering activity. A plaintiff must "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). To show relatedness, a plaintiff must show that the predicate acts are not isolated events. *Choi v. Kim*, No. 04 CV 4693, 2006 WL 3535931, at *6 (E.D.N.Y. Dec. 7, 2006). "Continuity"

requires at least two "related predicate acts over a substantial period of time (at least two years) referred to as 'closed-ended;' or past criminal conduct coupled with a threat of future criminal conduct referred to as 'open-ended.'" *Id.*, citing *H.J., Inc.*, 492 U.S. at 239, 242-43; *see also First Capital*, 385 F.3d at 181. A RICO scheme with a single purpose does not satisfy the pattern requirement of the statute. *Choi*, 2006 WL 3535931, at *8. Additionally, if alleged predicate acts are not pled with sufficient particularity, or have not injured plaintiff, or were otherwise deficient, there is no pattern of racketeering activity. *First Capital*, 385 F.3d at 178.

In the Fifth Claim, Plaintiff describes a closed-ended pattern focused on the Academy's desire to see Plaintiff prosecuted, which ended with Farthing's "testimony,"[9] covering at most six weeks. Compl. ¶¶ 337-359. This scheme began in April 2004, when the alleged Subcommittee was formed, (*id.* ¶ 340), and was completed at the latest by the time Plaintiff was arraigned on May 17, 2004, (*id.* ¶ 261). Moreover, the events described in the Fifth Claim involve only a single scheme to injure Plaintiff which is insufficient to state a pattern. *See, e.g., Choi*, 2006 WL 3535931, at *8 (repeated false accusations during investigation and criminal trial against plaintiff does not constitute continuity).

### 3.   Plaintiff Has Not Properly Pled a RICO Conspiracy, Pled Fraud With Particularity or Alleged Any Enterprise.

Even if the Fifth Claim were otherwise viable, Plaintiff has alleged only conclusory claims of conspiracy which do not satisfy the pleading requirements. Compl. ¶¶ 355, 359; *see also, supra*, at pp. 12-13.

The Fifth Claim refers in a very general manner to "interrelated acts," (*id.* ¶ 354), a "continuing scheme," (*id.* ¶ 353), and "multi-year pattern of the Trustees knowingly reporting to federal and state governmental authorities false information about the Academy's affairs via mail

---

[9]   There is no allegation of where or when Farthing's "testimony" took place. Farthing's statements to Detective Quinn do not amount to "testimony."

and wire," ( *id.* ¶ 359), which do not allege any fraud with the particularity required by Rule 9(b). In any event, to the extent that Plaintiff intends to incorporate by reference fraud claims alleged in any other part of the Complaint, those claims fail as discussed above. *See, supra*, at pp. 10-11.

The Fifth Claim does not mention an Enterprise. Thus, it continues the failure to properly allege an enterprise discussed above. *See, supra*, at p. 13.

## II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 1983.

Plaintiff seeks money damages against "all defendants other than the Academy" for violation of his constitutional rights pursuant to 42 U.S.C. § 1983 (Compl. ¶¶ 292-297). To state a claim pursuant to section 1983 "a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). Any claim under section 1983 against the Academy Defendants for false arrest is barred by his guilty plea; his claim against the Academy Defendants based on excessive force fails because the Academy Defendants are not state actors, and were not present when the alleged excessive force occurred.

### A.    Plaintiff's Claims.

Plaintiff claims that Detectives Quinn and Rogers "used excessive and unreasonable force" (*id.* ¶ 293) and arrested Plaintiff without probable cause thereby violating Plaintiff's rights under the Constitution of the United States. *Id.* ¶¶ 295, 297. Further, the "Trustees actively conspired with and induced Quinn, Rogers and the ADA to violate Plaintiff's federal rights and by reason of that conspiracy and concert of action are jointly and severally liable to Plaintiff for his damages as persons acting under color of state law." *Id.* ¶ 296. Then, without probable cause Detectives Quinn and Rogers arrested Plaintiff. *Id.* ¶ 295.

**B.    Plaintiff Fails To Show the Academy Defendants Are State Actors**

The Academy Defendants did not act under color of state law.  Where a defendant is a private entity, in order to allege a claim under Section 1983, the alleged unconstitutional conduct must be "fairly attributable to the state," requiring "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001)).  Indeed, state action may only be found:

> where the state exercises "coercive power" over, is "entwined in [the] management or control" of, or provides "significant encouragement, either overt or covert" to, a private actor, or where the private actor "operates as a willful participant in joint activity with the State or its agents," is "controlled by an agency of the State," has been delegated a "public function by the state," or is "entwined with governmental policies."

*Id.*, quoting *Brentwood Academy*, 531 U.S. at 296.

Furnishing information to the police does not constitute joint action under section 1983. *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999).  This is true, even if the information furnished to the police is false.  *Bodek v. Bunis*, No. 06 CV 6022L, 2007 WL 1526423, at *6-7 (W.D.N.Y. May 23, 2007); *see also McArthur v. Bell*, 788 F. Supp. 706, 710 (E.D.N.Y. 1992) (a witness who commits perjury has not acted under color of state law).

Moreover, "a private party who calls the police for assistance does not become a state actor unless the police were influenced in their choice of procedure or were under the control of the private party." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005).  When a police officer exercises "independent judgment" on how to respond to a private actor's complaint, the private actor is not jointly engaged in the officer's conduct so as to become a state actor. *Ginsberg*, 189 F.3d at 272-3 ("Section 1983 does not impose civil liability on persons who merely stand to benefit from an assertion of authority under color of law, but only on those who *act* under color of

law.") (emphasis added); *see also Shapiro v. The City of Glen Cove*, No. CV 03-0280, 2005 WL

1076292, at \*7 (E.D.N.Y. May 5, 2005), *aff'd*, 2007 WL 1492479 (2d Cir. May 22, 2007) (stating

that "whatever motivation [defendant] may have had in calling in the complaint" to the police about

plaintiff's behavior "is irrelevant to the question of whether she was a state actor"). Even a security

guard at a store who detains a shoplifter and then calls the police to make an arrest is not acting

under color of state law. *Prowisor v. Bon-Ton, Inc.*, 426 F. Supp.2d 165, 170 (S.D.N.Y. 2006).

    Here, there are no allegations that any of the Academy Defendants was acting under the

control of the ADA or Detectives Quinn or Rogers. The requisite nexus does not exist. The

Complaint merely alleges that the Academy Defendants provided information to state actors. That

is plainly insufficient to support a claim against them under section 1983. *See Bodek*, 2007 WL

1526423, at \*6-7.

    **C.**    <u>**Plaintiff Fails to State a Section 1983 Claim for False Arrest.**</u>

    Plaintiff's claims against the Trustees for false arrest are barred by his two guilty pleas. The

elements of false arrest under section 1983 are "substantially the same as the elements under New

York law." *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003) (internal quotation omitted).

To state a claim for false arrest under New York law, a plaintiff must show:

> (1) the defendant intended to confine the plaintiff, (2) the plaintiff was
> conscious of the confinement, (3) the plaintiff did not consent to the
> confinement, and (4) the confinement was not otherwise privileged.

*Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003)(quotation omitted). Privilege or

justification may be established by showing that the arrest was based on probable cause, which

"constitutes a complete defense to the claims for false arrest and false imprisonment," including

claims under section 1983. *Molina v. City of New York*, 28 A.D.3d 372, 372, 814 N.Y.S.2d 120,

121 (1st Dep't 2006); *see also Broughton v. State of New York*, 37 N.Y.2d 451, 458, 373 N.Y.S.2d

87, 95 (1975); *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). A conviction following

an arrest is "conclusive evidence" of probable cause. *Cameron v. Fogerty*, 806 F.2d 380, 387 (2d

Cir. 1986) (quoting *Broughton*, 37 N.Y.2d at 458, 373 N.Y.S.2d at 95). A guilty plea constitutes a

conviction, *Morris v. Reynolds*, 264 F.3d 38, 48 (2d Cir. 2001); *Spies v. Brown*, No. 98 CV 4708,

2002 WL 441991, at *2 (E.D.N.Y. Mar. 13, 2002), and resolves all issues relating to the

"constitutionality of plaintiff's arrest, interrogation, search and prosecution." *Rossi v. New York*

*City Police Dept.*, No. 94 Civ. 5113 (JFK), 1998 WL 65999, at *5 (S.D.N.Y. Feb. 17, 1998)

(quotation and citation omitted). Consequently, a conviction pursuant to a guilty plea bars false

arrest, false imprisonment, and related section 1983 claims. *Younger v. City of New York*, 480 F.

Supp. 2d 723, 730 (S.D.N.Y. 2007); *Spies v. Brown*, 2002 WL 441991, at *2. Following a

conviction the only way a plaintiff may recover damages under section 1983 is to prove

> that the conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state tribunal
> authorized to make such determination or called into question by a federal
> court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for
> damages bearing that relationship to a conviction or sentence that has *not*
> been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. at 486-87.

Plaintiff admits in the Complaint that he pled guilty not once, but twice. Compl. ¶¶ 267,

270. Thus, Plaintiff does not allege, nor could he allege, that his conviction has "been so

invalidated" as required for a claim of damages under section 1983. Accordingly, Plaintiff's section

1983 claim for false arrest must be dismissed.

**D.     Plaintiff Fails to State a Section 1983 Claim for Excessive Force Against the Academy Defendants.**

Since the Academy Defendants are not state actors, no claim for excessive force can lie

against them. Moreover, a claim for excessive force may only be maintained against the police

officers who either: (1) directly participate in an assault; or (2) were present during an assault yet

failed to safeguard plaintiff even though they had a reasonable opportunity to do so. *Younger*, 480

F. Supp. 2d at 732. If neither condition applies, a claim for excessive force against police officers must be dismissed. *See Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Here, there is no allegation that any of the Academy Defendants either "directly participate[d] in [the] assault" or "were present" at Plaintiff's arrest on April 23, 2004. Thus the claim must be dismissed.

### E.    Plaintiff Has Failed To State A Conspiracy Claim Under Section 1983.

To state a § 1983 conspiracy claim, a Complaint must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury: and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Vague or general allegations of conspiracy to deprive plaintiff of his constitutional rights should be dismissed. *Id.* at 325. An invalid § 1983 claim does not survive simply by calling it a "conspiracy." *Brewster v. Nassau County*, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004). Without any claim establishing a violation of civil rights, the court must also dismiss claims of conspiracy under § 1983. *DiPilato v. Village of Holley, N.Y.*, No. 04 CV 0121E(SC), 2004 WL 2646552, at *2 (W.D.N.Y. Nov. 18, 2004); *O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413, 426 (S.D.N.Y. 2004).

The only § 1983 claim against the Trustees is a conspiracy claim, which reads:

> The Trustees actively conspired with and induced Quinn, Rogers and the ADA to violate Plaintiff's federal rights and by reason of that conspiracy and concert of action are jointly and severally liable to Plaintiff for his damages as persons acting under color of state law.

Compl. ¶296. This allegation is utterly inadequate. Plaintiff makes no allegation showing that any specific Academy Defendant was acting under color of state law; or that any such Defendant entered into any agreement at all, let alone one specifically to inflict a constitutional injury. At most, Plaintiff has alleged only than that the Trustees "conspired" to violate Plaintiff's constitutional rights. For these reasons, Plaintiff's § 1983 conspiracy must be dismissed.

20

**III.    THE CLAIM FOR FRAUD AND DECEIT MUST BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD RELIANCE.**

In the fraud claim, Plaintiff alleges that he was falsely imprisoned[10] because the police, the ADA and the grand jury relied upon Farthing's misrepresentations that Plaintiff stole from the Academy. *See* Compl. ¶¶ 298-310. This claim is fatally deficient since Plaintiff fails to plead an essential element of common law fraud under New York law, namely, that **he** relied on any misrepresentation.

"Under New York law, the five elements of a fraud claim must be shown by clear and convincing evidence: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006). A plaintiff may state a claim for fraud arising out of misrepresentations made to third parties if and only if he "alleges that he relied to his detriment on the defendant's misrepresentation and that the defendant intended the misrepresentation to be conveyed to him." *Sec. Inv. Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 71 (2d Cir. 2000); *accord Cement and Concrete Workers Dist. Council Welfare Fund v. Lollo*, 148 F.3d 194, 196 (2d Cir. 1998); *Rosen v. Spanierman*, 894 F.2d 28, 33 (2d Cir. 1990) (same); *Shaw v. Rolex Watch, U.S.A., Inc.*, 673 F. Supp. 674, 682 (S.D.N.Y. 1987) ("New York courts have consistently held that a claim of fraud will not lie when premised on the reliance of a third party.").

Courts consistently dismiss common law fraud claims when plaintiffs have failed to plead reliance even when third parties may have been deceived by defendant's misrepresentations. *See Morris v. Castle Rock Entm't Inc.*, 246 F. Supp. 2d 290, 296 (S.D.N.Y. 2003); *see also Evercrete*

---

[10] Plaintiff had originally pled a claim for false imprisonment under § 1983 which he withdrew after Defendants pointed out that the claim was barred by Plaintiff's guilty pleas and that the statute of limitations for such a claim elapsed in May of 2005. In the Amended Complaint, Plaintiff transforms that claim into one for fraud and deceit based on the same allegations.

*Corp. v. H-Cap Limited*, 429 F. Supp. 2d 612, 628 (S.D.N.Y. 2006) (dismissing common law fraud claim because plaintiff failed to plead its own reliance).

Plaintiff alleges that the Academy and the Academy Defendants committed fraud by conspiring[11] to falsely frame Plaintiff by inducing the Police, the ADA and the grand jury to rely on Farthing's claims that Plaintiff had stolen money from the Academy. *See* Compl. ¶¶ 299- 304. Plaintiff's claim must be dismissed because he claims that third parties relied on Farthing's deceit but fails to claim that **he** relied on the alleged fraud and deceit. Moreover, if Plaintiff's allegations are true he could not have reasonably relied on Farthing's misrepresentations because he knew that they were false.

Finally, as argued above (*see supra* at pp. 8, 14), Plaintiff failed to plead any causal relation between Defendants' malfeasance and the consequential harm he suffered as a result of his incarceration because his imprisonment was only due to his violation of probation and his pleading guilty twice. *See* Compl. ¶¶ 258-59; 266-67, 270. "Under New York law, damages for fraud must be the direct, immediate, and proximate result of the fraudulent misrepresentation." *Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305, 307 (2d Cir. 1986). Because Plaintiff did not himself rely on any fraud and deceit and is solely responsible for his incarceration, his fraud claim for compensatory and punitive damages fails.

---

[11] Once again, Plaintiff fails to plead fraud with any particularity by omitting any individualized claims against the Academy and Academy Defendants (other than Farthing) and lumping all Defendants together by alleging that "the Trustees all acquiesced" in their scheme to "destroy by fraud and deceit the Plaintiff and his businesses." Compl. ¶¶ 249-50. Plaintiff fails to allege any active participation in the fraud by any of the individual Defendants over and above their mere knowledge of Farthing's misrepresentations which is an insufficient basis to hold them liable as co-conspirators. *See, e.g., Fidelity Funding of California, Inc. v. Reinhold*, 79 F. Supp. 2d 110, 124 (E.D.N.Y. 1997).

## IV.    THE BREACH OF CONTRACT CLAIM MUST BE DISMISSED BECAUSE THE CONTRACT IS VOID AND UNENFORCEABLE.

In suing for breach of contract, Plaintiff astonishingly asks that the Court enforce an illegal and fraudulent contract. Plaintiff's probation officer had prevented him from working in the accounting and financial field. He deliberately lied to the Academy about his identity and signed the contract in a fictitious name to avoid detection for violation of his probation. It is settled law "that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which, as a basis for his claim, must show forth his illegal purpose. . . . [N]o court should be required to serve as paymaster of the wages of crime." *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 469, 199 N.Y.S.2d 483, 485 (1960) (quoting *Stone v. Freeman*, 298 N.Y. 268, 271 (1948)).

Plaintiff presents his breach of contract claim as if it were a garden variety breach of a legitimate employment contract claim. *See* Compl. ¶¶ 311-17. But it is not. Regardless of the state of Defendants' knowledge about the restrictions on Plaintiff as a result of his convictions, a court will not enforce a contract that plainly violated Plaintiff's terms of probation. In all events, Plaintiff does not allege that he told Farthing or any other representative of the Academy that he: (1) had been convicted of felonies under a prior name (*id.* ¶ 20); (2) had chosen to "violate the terms of the probationary portion of the sentence imposed by the New Jersey District Court," (*id.* ¶¶ 26, 28) under which he had provided his probation officer with "detailed information" about his employer, the nature of his work and the type of accounts he worked on (*id.* ¶ 23), because his probation officer interfered with his employment in the field of "accounting and financial services" by informing his employer of his criminal record (*id.* ¶¶ 22-25). His Amended Complaint confirms that Plaintiff intentionally concealed such information, because it states that once the Academy had good reason to believe that Plaintiff was not the "true" Robert Angona and demanded to know his true identity, Plaintiff refused to provide any information about his background. *See id.* ¶¶ 162-69.

In sum, Plaintiff fraudulently misrepresented his identity and failed to disclose the nature of

his past crimes.  In the initial letter agreement between the parties dated June 11, 2002, which was

signed by "Robert Angona" and Stephen Farthing, Plaintiff wrote "This letter will confirm my

engagement (DBA/The First Manhattan Group, Inc.) as your Controller."  *See* Compl., Ex. A.  The

Employment Contract which contains the specific provision "Termination by Angona for Good

Cause" under which Plaintiff seeks monetary relief, again makes clear that the Academy is

contracting for "Robert Angona" to be its full time controller.  *See id.*, Ex. F ¶¶ 3-4; 6(D).  As

described above, Plaintiff could not legally accept such employment and intentionally misled the

Academy about the identity of the person it was hiring as controller.[12]  Accordingly, there was no

true meeting of the minds between the parties as to one of the essential terms of the contract—*who*

was to be the controller—which rendered the contract void *ab initio*.  *See Adams v. Suozzi*, 433 F.3d

220, 227 (2d Cir. 2005) (stating that a contract is "void" when "there was no meeting of the minds

about essential terms").  Because it is void, the Academy had no legal obligations to Plaintiff under

an unenforceable agreement.  *See Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26,

31 (2d Cir. 2001) (stating that a "void contract is one that produces no legal obligation").  Therefore

the Academy cannot be in breach of contract and it owes Plaintiff nothing.

Even if the contract were valid (which it is not), Plaintiff's contract claim is fatally flawed

because under New York law: "Illegal contracts are generally not enforceable." *New York State*

*Med. Transporters Ass'n, Inc v. Perales*, 77 N.Y.2d 126, 138, 564 N.Y.S.2d 1007, 1011 (1990);

*Carr v. Hoy*, 2 N.Y.2d 185, 187, 158 N.Y.S.2d 572, 575 (1957) ("No one shall be permitted to

profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own

---

[12] Plaintiff cannot argue that he was either the assignee or assignor of the agreement between First
Manhattan and the Academy because this contract for personal accounting services by Angona
could not be assigned without the consent of the Academy. *See Wien & Malkin LLP v. Helmsley-*
*Spear, Inc.*, 6 N.Y.3d 471, 482, 813 N.Y.S.2d 691, 697 (2006) ("personal services contracts
generally may not be assigned absent the principal's consent").

iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes.") (quotation and citation omitted); *Balbuena v. IDR Realty LLC*, 6 N.Y.3d 338, 364-65, 812 N.Y.S.2d 416, 431 (2006) (same).

The dispositive question as to the claim for breach of contract is not what Defendants knew, but whether Plaintiff is entitled to benefit from his malfeasance: "[W]hen a plaintiff sues to recover on an illegal bargain, courts deny relief because the Plaintiff is a wrongdoer, not because they favor the defendant . . . ." *Bankers Trust, Co. v. Litton Sys., Inc.*, 599 F.2d 488, 492 (2d Cir. 1979) (citing to *McConnell*, 7 N.Y.2d at 469, 199 N.Y.S.2d at 485). Here the Court should deny recovery to Plaintiff.

<u>**CONCLUSION**</u>

For all the foregoing reasons, the Court should dismiss the Amended Complaint as to the Academy and the Academy Defendants and grant to them such other and further relief as it deems appropriate.

Date:   New York, New York
        July 27, 2007

SCHLAM STONE & DOLAN LLP

By: *(signature)*

Bennette D. Kramer (BK-1269)
Andrew S. Harris (AH-9673)
*Attorneys for the Academy Defendants and the Academy*

25