UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

JOHN R. BLUMATTE, a/k/a
ROBERT ANGONA, a/k/a
JOHN BLUE,

                  Plaintiff,               **Civil Action No.  07 CV944 (JSR)**

                                  **<u>Filed Electronically</u>**

        -against-

GERARD QUINN, DONALD ROGERS, STEPHEN
FARTHING, RANDOLPH LERNER, JR., DAVID
LEVINSON, RUSSELL WILKINSON, EILEEN
UGENHEIM, ROBERT BOLANDIAN,
CHARLES CAWLEY, ANTHONY COLES,
CHRISTOPHER FORBES, MARGOT GORDON,
ROLAND GRYBAUSKAS, LUDWIG KUTTNER,
DAVID LONG, DOUGLAS OLIVER, JULIA
JITKOFF, DAVID SCHAFER, SYBIL
SHAINWALD, DENNIS SMITH, THE
GRADUATE SCHOOL OF FIGURATIVE ART OF
THE NEW YORK ACADEMY OF ARTS,
JEFFREY C. SLADE, and ELYSE RUZOW

                  Defendants.

--------------------------------------------------------------X

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JEFFREY C. SLADE'S MOTION TO DISMISS AMENDED COMPLAINT</u>

                                 Kaufman Borgeest & Ryan LLP
                                 Attorneys for Defendant
                                 JEFFREY C. SLADE
                                 99 Park Avenue, 19th Floor
                                 New York, NY  10016
                                 (212) 980-9600
                                 File No. 217.081

Of Counsel
Jonathan B. Bruno
Andrew S. Kowlowitz

# <u>TABLE OF CONTENTS</u>

Pages

TABLE OF AUTHORITIES ................................................................................ii-v

PRELIMINARY STATEMENT ...........................................................................1-3

FACTUAL ALLEGATIONS .................................................................................3-7

STANDARD OF REVIEW ...................................................................................7

ARGUMENT .........................................................................................................8

POINT I    PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 USC §1983 ..........8-10

POINT II   PLAINTIFF'S CLAIM FOR FRAUD AND DECEIT
           IS ESSENTIALLY A CLAIM FOR MALICIOUS PROSECUTION
           AND MUST FAIL................................................................................10-13

POINT III  PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATIONS
           OF NEW YORK JUDICIARY LAW SECTION 487 ....................................13-15

POINT IV   PLAINTIFF FAILS TO STATE A CLAIM UNDER
           18 U.S.C. § 1964.................................................................................15-20

POINT V    PLAINTIFF'S STATE LAW CLAIMS SHOULD BE
           DISMISSED PURSUANT TO 28 U.S.C. § 1367(c)(3) ...............................21

CONCLUSION.......................................................................................................22

# TABLE OF AUTHORITIES

Pages

Anza v. Ideal Steel Supply Corp.,
126 S. Ct. 1991 (2006).........................................................................................19

Atkins v. County of Orange,
251 F. Supp. 2d 1225 (S.D.N.Y. 2003)...................................................................7

Broughton v. State,
37 N.Y.2d 451, 373 N.Y.S.2d 87 (1975) ..............................................................11

Chapo v. Premier Liquor Corp,
259 A.D.2d 1050, 688 N.Y.S.2d 342 (4th Dept. 1999) ........................................10

Ciambriello v. County of Nassau,
292 F.3d 307 (2d Circ. 2002)..................................................................................8

Cohen v. Houseconnect Realty Corp.,
 289 A.D.2d 277, 734 N.Y.S.2d 205 (2d Dept. 2001) ..........................................12

Crigger v. Fahnestock & Co.,
443 F.3d 230 (2d Cir.2006).....................................................................................12

Davis v. County of Nassau,
355 F. Supp. 2d 668 (E.D.N.Y. 2005) .....................................................................7

Deck v. Engineered Laminates,
349 F.3d 1253 (10th Cir. 2003) ............................................................................20

DeFalco v. Bernas,
244 F.3d 286 (2d Cir. 2001).................................................................................15

DiVittorio v. Equidyne Extractive Indus., Inc.,
822 F.2d 1242 (2d Cir.1987)................................................................................13

First Nationwide Bank v. Gelt Funding Corp.,
27 F.3d 763 (2d Cir. 1994).................................................................................18

Flagg Brothers, Inc. v. Brooks,
436 U.S. 149, 98 S. Ct. 1729 (1978).......................................................................8

Frank v. Pepe,
186 Misc. 2d 377, 717 N.Y.S.2d 873 (Nassau Co. 2000)....................................14

Gelmin v. Quickie,
224 A.D.2d 481, 638 N.Y.S. 2d 132 (2d Dept. 1996) .........................................................14

Hanlon v. MacFadden Publications, Inc.,
302 N.Y.502, 99 N.E.2d 546 (1951)..................................................................................14

Henry v. Brenner,
271 A.D.2d 647, 706 N.Y.S. 2d 465 (2d Dept. 2000) .......................................................14

Hoatson v. New York Archdiocese,
2007 WL 431098 (S.D.N.Y. Feb. 8, 2007)........................................................................18

Hollander v. Flash Dancers Topless Club,
940 F. Supp.2d 453 (S.D.N.Y. 2004)................................................................................19

Holmes v. Sec. Investor Prot. Corp.,
503 U.S. 258 (1992)...........................................................................................................18

Jaghory v. New York State Dep't of Ed.,
131 F.3d 326 (2d Cir. 1997)................................................................................................7

Jaroslawicz v. Cohen,
12 A.D.3d 160, 783 N.Y.S.2d 467 (1st Dept. 2004).........................................................14

Jones v. J.C. Penney Department Stores, Inc.,
 2007 WL 1577758 (W.D.N.Y. May 31, 2007) ..................................................................9

Kaiser v. VanHouten,
12 A.D.3d 1012, 785 N.Y.S.2d 569 (1st Dept. 2004)........................................................14

Leemon v. Burns,
175 F. Supp.2d 551 (S.D.N.Y. 2001).................................................................................7

Lugar v. Edmondson Oil Co., Inc.,
457 U.S. 922, 102 S. Ct. 2744 (1982)................................................................................8

Lutin v. New Jersey Steel Corp.,
122 F.3d 1056, 1997 WL 447005 (2d Cir. 1997) .............................................................16

McLaughlin v. Anderson,
62 F.2d 187 (2d Cir.1992).................................................................................................16

Mills v. Polar Molecular Corp.,
12 F.3d 1170 (2d Cir.1993)...............................................................................................12

Mitchell v. Home,
377 F. Supp.2d 361 (S.D.N.Y. 2005).................................................................10

Mitchell v. Home,
 377 F. Supp.2d 361 (S.D.N.Y. 2005)................................................................11

Moore v. Guesno,
2007 WL 1373218 (W.D.N.Y. May 10, 2007) ..................................................18

Moss v. Morgan Stanley,
719 F.2d 5 (2d Cir. 1983)..................................................................................15

Ochs v. Woods,
 221 N.Y. 335 (1917) .........................................................................................14

Paisley v. Coin Device Corp.,
5 A.D.3d 748, 773 N.Y.S.2d 582 (2d Dept. 2004) ...........................................11

Pangburn v. Culbertson,
 200 F.3d 65 (2d Cir. 1999)...................................................................................8

San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,
75 F.3d 801 (2d Cir.1996)..................................................................................16

Sheemtob v. Shearson, Hammill & Co.,
448 F.2d 442 (2d Cir. 1971)...............................................................................12

Smith v. Local 819 I.B.T. Pension Plan,
291 F.3d 236 (2d Cir. 2002)................................................................................7

Sniado v. Bank Austria AG,
174 F. Supp. 2d 159 (S.D.N.Y. 2001).................................................................7

Spear v. Town of West Hartford,
954 F.2d 63 (2d Cir. 1992)..................................................................................8

Stanski v. Ezersky,
228 A.D.2d 311, 644 N.Y.S.2d 220 (1st Dept. 1996).......................................14

Tops Markets, Inc. v. Quality Markets, Inc.,
142 F.3d 90 (2d Cir. 1998).................................................................................21

United Mine Workers of America v. Gibbs
383 U.S. 715 (1996)...........................................................................................21

United States v. Persico,
832 F.2d 705 (2d Cir. 1987)....................................................................................15

United States v. Veal,
153 F.3d 1233 (11th Cir. 1998) .............................................................................20

Weyant v. Okst,
101 F.3d 845 (2d Cir. 1996)....................................................................................11

## PRELIMINARY STATEMENT

Defendant Jeffrey C. Slade, Esq. (hereinafter "Attorney Slade") by and through his attorneys, Kaufman Borgeest & Ryan LLP, respectfully moves pursuant to Federal Rules of Civil Procedure 12 (b) (6) to dismiss all claims by plaintiff, John R. Blumatte a/k/a Robert Angona a/k/a John Blue as set forth in the plaintiff's Amended Complaint.

Using a "shotgun" style complaint, the plaintiff, an admitted felon with multiple convictions, incarcerations, and aliases, seeks to hold multiple parties accountable -- no matter how peripherally involved -- for his felony grand larceny conviction arising out of his admitted embezzlement of thousands of dollars from the defendant Graduate School of Figurative Art of the New York Academy of Arts (hereinafter the "Academy') during his tenure as Controller with the Academy. The Amended Complaint names as defendants the arresting police officers, multiple trustees to the Academy (hereinafter the "Trustees"), Special Advisor to the Board of Trustees, and the Academy's formal outside general counsel, Attorney Slade.

As against Attorney Slade, plaintiff's Amended Complaint contains purported causes of action for violation of plaintiff's Constitutional rights under Section 1983 and for "fraud," which in essence is a false imprisonment claim resulting from his 2.5 term of imprisonment arising from his felony conviction for larceny. The Amended Complaint also contains a cause of action against Attorney Slade for violations of New York Judiciary Law §487. Finally, the plaintiff vaguely asserts a civil RICO claim against the "Trustee Defendants," which appears to also encompass Attorney Slade, even though he was never a Trustee.

Plaintiff's Amended Complaint is woefully deficient since plaintiff has not, and cannot, establish a claim against Attorney Slade. Plaintiff's claim under Section 1983 fails because it is undisputed that Attorney Slade is not a state actor but a private actor who represented the

Academy as outside counsel. Moreover, plaintiff's vague claim that Attorney Slade "conspired" with the police department and the District Attorney's Office to bring about his alleged unconstitutional arrest and conviction is insufficient to establish a claim under Section 1983, as the plaintiff relies solely on conclusory allegations with nothing further to establish his claim for conspiracy.

Plaintiff's purported claim for "fraud and deceit" is in essence a claim for malicious prosecution and must fail as well. Plaintiff alleges that co-defendant Farthing was coerced into giving a false statement to the police, which ultimately lead to the plaintiff's arrest and criminal conviction. However, it is well-established that there is no liability for private civilians who provide information to legal authorities, who are then left entirely free to use their own judgment in effecting an arrest or in swearing out a criminal complaint. Moreover, any such claim fails as the criminal proceedings were not resolved in favor of the plaintiff, who concedes that he pled guilty to grand larceny and served a 2.5 year prison sentence.

Plaintiff's claim for violations of Judiciary Law 487 is insufficiently pled as plaintiff fails to delineate any specific acts undertaken by Attorney Slade to warrant an imposition of liability. Plaintiff relies on bare-bone conclusory allegations alone with nothing further.

Plaintiff's claim for civil RICO based on fraud fails on several levels. First, plaintiff relies only on vague conclusory allegations which categorically lumps together all defendants who are not "Police Defendants," or the Academy as "Trustees." Am. Comp. ¶ 14. The Amended Complaint fails to delineate which specific acts Attorney Slade allegedly committed in furtherance of the alleged RICO scheme. Second, plaintiff fails to allege two or more predicate acts Attorney Slade committed in furtherance of the alleged RICO scheme.

Third, the plaintiff's civil RICO claim fails as plaintiff cannot prove proximate causation, i.e., that plaintiff suffered injury to his "business or property" as a result of the purported RICO violation. It is undisputed that plaintiff's claim for loss of freedom stemming from his incarceration was the direct result of his guilty plea of felony larceny, which resulted from plaintiff's admitted embezzlement of Academy funds. Notwithstanding, the loss of freedom does not constitute an injury to "business or property" as matter of law. Further, plaintiff's vague allegation that his businesses suffered harm while he was imprisoned is legally insufficient as that claim is vaguely pled.

Fourth, plaintiff's lacks standing to pursue a claim for RICO, as the plaintiff does not allege that he was the intended target or "immediate victim" of any alleged RICO scheme. Rather, all the alleged predicate acts set forth in the Amended Complaint involve allegations wherein the plaintiff was not the intended target, but a mere incidental third-party.

Plaintiff's purported RICO claim arising from the alleged predicate act of witness tampering, fares no better as it is well established that witness tampering is only actionable if it takes place "in an official proceeding," which is defined in U.S.C. § 1515 (a) (1) to include only federal proceedings. Here, it is undisputed that the New York County District Attorney's office filed the criminal complaint and prosecuted the matter.

Accordingly, plaintiff's Amended Complaint fails as a matter of law and must be dismissed with prejudice.

## FACTUAL ALLEGATIONS

The plaintiff has commenced the instant action against multiple parties associated with the defendant Academy and any party associated with his arrest and conviction for felony larceny. The Amended Complaint names the arresting police officers, multiple Trustees to the

Academy, the Special Advisor to the Board of Trustees, and the Academy's formal outside general counsel, Attorney Slade, as defendants.

The plaintiff admits that he was convicted of multiple felonies and that on or about 1998, following a period of incarceration, plaintiff violated his federal probation when he unlawfully left the supervision of the United States Probation Department. Am. Comp. ¶¶ 20-26.  Shortly after violating his parole, plaintiff got married, assumed several different aliases, but ultimately settled on the alias of "Robert Angona."  The true Robert Angona is an acquaintance of the plaintiff, whom the plaintiff met in prison.  Thereafter, the plaintiff, with the assistance of his wife, formed two corporations, The First Manhattan Group Inc. ("First Manhattan") and Empire Solutions Inc. ("Empire"), for the purpose of providing accounting services.  The plaintiff was the sole employee of both companies. Am. Comp. ¶ 27.

Plaintiff alleges that the Academy first retained First Manhattan on or about April 2002 to provide accounting services and that the plaintiff was offered and accepted a position as Controller of the Academy in June 2002. Am. Comp. ¶¶ 30, 39.  Plaintiff alleges that he became "intensely involved with the Academy" and discovered that its "financial affairs were in complete disarray." Am. Comp. ¶ 43.  Plaintiff alleges, *inter alia*, that the Academy failed to prepare and file accurate tax returns, that the Academy's financial statements were inaccurate, that the Academy's auditors lacked independence, that the Academy engaged in overspending, and that the Academy did not have a proper Certificate of Occupancy for its building. Am. Comp. ¶¶ 45, 47 - 60, 62, 64, 69.

Plaintiff claims that he "locked horns" with the Trustees after he insisted that the Academy restate their financial statements, cease its excessive spending, and end its alleged illegal practices of giving artists "kick-backs."  It is further alleged that after the Academy

refused to implement plaintiff's recommendation, the relationship between the plaintiff and the Trustees reached an "insurmountable impasse." Am. Comp. ¶¶ 97-100, 110.

Plaintiff contends that a disgruntled former Trustee and co-founder of the Academy, Stuart Pivar, retained a private investigator, who uncovered the fact that the real Robert Angona was alleged to have ties with organized crime. The plaintiff alleges that he was able to successfully convince the investigator that he was not the real Robert Angona, as the real Robert Angona was imprisoned. Am. Comp. ¶¶ 113-120.

Plaintiff contends that shortly that thereafter, in March 2004, he met with co-defendant Farthing at the Brooklyn Diner to discuss the terms of plaintiff's resignation. Plaintiff suggested that he should resign as Controller of the Academy in the light of the "stalemate" with the Trustees. Am. Comp. ¶¶ 124-29. It is further alleged that certain members of the Academy "desperately wanted to learn plaintiff's real identity and the other facts about plaintiff's background." Am. Comp. ¶ 150.

Plaintiff alleges that on April 14, 2004, Attorney Slade retained an investigation firm to investigate the plaintiff. The investigation firm conducted 24-hour surveillance of the plaintiff from April 15, 2004 through April 18, 2004. Am. Comp. ¶¶ 155, 156. It is alleged that by "April 16, 2004, [co-defendants] Levinson, Wilkinson, Guggenheim, [Attorney] Slade, and employees of [the investigation firm] were in direct contact with the ADA" and that the co-defendants urged the police and ADA to use their "best efforts to learn plaintiff's true identity." Am. Comp. ¶¶ 160, 174.

On April 23, 2004, plaintiff was arrested by police officers and co-defendants Quinn and Rogers in the lobby of his Manhattan apartment building. Am. Comp. ¶¶ 175- 82. Plaintiff claims that the arresting officers, Quinn and Rogers, used excessive force after the plaintiff stated

that he did not want to talk with them and proceeded to enter the elevator.   As a result of the "unwarranted" arrest, plaintiff allegedly "had another heart episode," and was taken to Cornell Medical Center for treatment. Am. Comp. ¶¶ 181-96.

It is alleged that arresting officer Quinn stated in a felony complaint that he was informed by co-defendant Farthing that: (1) Empire Solutions is not an authorized vendor; (2) that in a ten-month span, six (6) checks totaling in excess of $40,000 were written to Empire Solutions but no matching invoices could be located; and (3) that plaintiff charged over $29,000 to an unauthorized credit card. Am. Comp. ¶¶ 216, 244.  Plaintiff alleges that co-defendant Farthing's statements were false and that Farthing was induced to make these purported false statements by Defendants Levinson, Slade, Guggenheim and Wilkinson. Am. Comp. ¶¶ 217-18.

Arresting officer Quinn's felony complaint was presented to a grand jury, which returned an indictment against the plaintiff. Am. Comp. ¶ 247.  By the time of his arraignment, "the plaintiff's violation of his New Jersey federal probation came to light and the federal authorities had issued a warrant for his detention." Am. Comp. ¶ 258.

On October 29, 2004, the plaintiff pled guilty to a Class C felony and was sentenced to a term of 4 to 8 years. Am. Comp. ¶ 267.   Plaintiff alleges that on November 30, 2006, the District Attorney agreed to replead his conviction to a Class D felony, with a sentence of 2.5 to 5 years.  As a result of the re-sentencing, plaintiff claims that he was immediately eligible for parole. Am. Comp. ¶¶ 270, 271.

Plaintiff vaguely asserts that his arrest, conviction and incarceration were "the direct result of [co-defendant] Farthings … false statements, which formed the basis of [co-defendant and arresting officer] Quinn's felony complaint," and "part of a greater and continuing fraudulent scheme of the Trustees … to prevent public disclosure and subsequent criminal and civil

prosecution of the Trustees and others for tax fraud, bank fraud, mail fraud and breach of fiduciary duties and other misconduct." Am. Comp. ¶ 276.

As against Attorney Slade, plaintiff's Amended Complaint contains purported causes of action for violation of plaintiff's Constitutional rights under Section 1983 and for "fraud," which in essence is a false imprisonment claim resulting from his 2.5 term of imprisonment arising from the felony conviction.  Am. Comp. ¶¶ 293–297, 299-310.  The Amended Complaint vaguely asserts a civil RICO claim against the "Trustees" generally, while failing to delineate any specific act undertaken by Attorney Slade.  Am. Comp. ¶ 318-359.  Finally, the Amended Complaint contains a purported cause of action against Attorney Slade for violations of Judiciary Law §487.  For the following reasons the Complaint must be dismissed with prejudice.

## STANDARD OF REVIEW

The dismissal of a complaint is warranted under Fed. Civ. P. 12(b)(6), where it is beyond doubt that the plaintiff cannot prove any set of facts which would entitle it to relief, even accepting as true all allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor.  See Sniado v. Bank Austria AG, 174 F. Supp. 2d 159, 162 (S.D.N.Y. 2001) (citing Jaghory v. New York State Dep't of Ed., 131 F.3d 326, 329 (2d Cir. 1997)); Leemon v. Burns, 175 F. Supp.2d 551, 553-54 (S.D.N.Y. 2001) (dismissing complaint for failure to state a cause of action).  "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Davis v. County of Nassau, 355 F. Supp. 2d 668, 673 (E.D.N.Y. 2005) (quoting Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002)); Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1230 (S.D.N.Y. 2003).

## ARGUMENT

## POINT I

## PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 USC § 1983

Plaintiff alleges that "Slade, Levinson, Farthing, Guggenheim and Wilkinson acting in furtherance of their conspiracy with the other Trustees met with and spoke by telephone with the Police Defendants and the ADA on April 16, 19, 20, and 22, 2004, for the purpose of inducing them to engage in conduct designed to coerce Plaintiff to reveal the information…" Plaintiff further alleges that "[t]he Trustees actively conspired with and induced Quinn, Rogers and the ADA to violate Plaintiff's federal rights." Am. Comp. ¶¶ 294, 296.

To state a cause of action sounding in a violation of Section 1983, the plaintiff must show that: (a) he has been deprived of a right secured by the constitution and the laws of the United States and, (b) by the defendants acting under color of any State statute. See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 102 S. Ct. 2744 (1982); Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 98 S. Ct. 1729 (1978).

Furthermore, '[t]o state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." See Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Circ. 2002) (citing Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Circ. 1992)). In order to survive a motion to dismiss the Section 1983 conspiracy claim, plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." See Ciambriello, 292 F.3d at 324-25 (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Circ. 1999)). "[A] mere conclusory allegation that a private entity acted in concert with a

state actor does not suffice to state a Section 1983 claim against a private entity." See <u>Jones v.</u> <u>J.C. Penney Department Stores, Inc.,</u> 2007 WL 1577758 at *6 (W.D.N.Y. May 31, 2007).

Attorney Slade was a private attorney, not a state actor. The plaintiff relies solely on conclusory allegations to attempt to establish that Attorney Slade somehow conspired with the arresting police officers and the ADA to bring about his alleged unconstitutional arrest. The Complaint is entirely devoid of any allegation that Attorney Slade was a state actor or that there was an agreement between Attorney Slade and the arresting officers and/or the ADA to act in concert with one another to bring about plaintiff's purported unconstitutional arrest. Further, the Complaint fails to set forth sufficient facts showing that Attorney Slade committed an overt act in furtherance of any alleged conspiracy.

The Complaint merely alleges that Attorney Slade retained an investigator to investigate the plaintiff; that the investigators who were retained were former FBI agents and, therefore, shared a "special relationship with the New York Police Department and District Attorney's Office; and that Attorney Slade somehow benefited as a result of the "special relationship." Am. Comp. ¶¶ 155, 158–160. It is further alleged that "[the private investigators], Levinson, Farthing, Guggenheim and Slade, on behalf of the other Trustees, urged the ADA, Quinn and Rogers to use their best efforts to learn plaintiff's true identity." Am. Comp. ¶ 174. These allegations are woefully inadequate to state a Section 1983 claim against Attorney Slade.

The remainder of the factual allegations against Attorney Slade are entirely conclusory in nature, as it is alleged that Attorney Slade was "part of a greater and continuing fraudulent scheme of the Trustees … that pre-existed plaintiff's first contact with the Academy that was designed to prevent public discovery and subsequent criminal and civil prosecution of the Trustees." Am. Comp. ¶ 276. Accordingly, since plaintiff has failed to plead that Attorney

Slade conspired with the arresting officers and the ADA with the requisite particularity required under the law, the plaintiff's Section 1983 claim fails, and dismissal is warranted.

Additionally, it appears that the gravaman of plaintiff's Section 1983 claim as against Attorney Slade arises from purported communications Attorney Slade had with the arresting police officers and the ADA after the commencement of the investigation, which led to the eventual arrest and conviction of the plaintiff for felony larceny. However, it is well-established that "there is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment in effecting an arrest, or in swearing out a criminal complaint so that an arrest is legally authorized." See Mitchell v. Home, 377 F. Supp.2d 361, 376 (S.D.N.Y. 2005) (citing Chapo v. Premier Liquor Corp, 259 A.D.2d 1050, 1051, 688 N.Y.S.2d 342, 343 (4th Dept. 1999)). Accordingly, plaintiff's allegation that Attorney Slade communicated with the police and/or the ADA is legally insufficient to support a claim for Section 1983, as the police and ADA were free to use their own judgment in effectuating the arrest and subsequent criminal prosecution.

Since Attorney Slade was not a state actor, but a private attorney plaintiff fails to state a claim under Section 1983 and, therefore, plaintiff's Section 1983 claim should be dismissed with prejudice.

## POINT II

## PLAINTIFF'S CLAIM FOR FRAUD AND DECEIT IS ESSENTIALLY A CLAIM FOR MALICIOUS PROSECUTION AND MUST FAIL

Plaintiff alleges that co-defendant Farthing provided the Police Defendants, the ADA and the grand jury with false statements concerning the plaintiff's purported criminal activity. It is

further alleged that the "Trustee Defendants" knew the statements to be false and that the Police Department, the ADA and the grand jury would rely upon the false statements. As a result of the purported fabrication, plaintiff alleges that he was imprisoned for a term of 2.5 years. Am. Comp. 299-305.

Despite plaintiff's labeling his claim for "fraud and deceit," plaintiff's claim is essentially a malicious prosecution claim. To plead a claim for malicious prosecution, a plaintiff must allege: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice. See Mitchell v. Home, 377 F. Supp.2d 361, 373 (S.D.N.Y. 2005); Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87 (1975).

Farthing's purported false statement is legally insufficient to sustain a claim for malicious prosecution. A "civilian complainant, by merely seeking police assistance or providing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for … malicious prosecution." See Mitchell, *supra* at 377 (citing Paisley v. Coin Device Corp., 5 A.D.3d 748, 749-50, 773 N.Y.S.2d 582, 583 (2d Dept. 2004)). Even where a plaintiff alleges that a defendant "gave false information" to authorities, "this is not enough" to support a malicious prosecution claim. See Mitchell, *supra* at 377. Thus, plaintiff's vague allegation that Attorney Slade coerced co-defendant Farthing to provide authorities with false information is legally insufficient to sustain a claim for malicious prosecution.

Plaintiff's malicious prosecution claim also fails since plaintiff cannot prove the second element of the claim, i.e., that the proceeding was resolved in his favor. See Weyant v. Okst,

101 F.3d 845 (2d Cir. 1996). Plaintiff concedes that he pled guilty to grand larceny, a Class C felony, and was sentenced to a term of 4 to 8 years imprisonment. Am. Comp. ¶ 267. The plaintiff alleges that his conviction was subsequently re-plead to a Class D felony and that he was re-sentenced to a prison term of 2.5 to 5 years. Am. Comp. ¶ 270. Since neither the original plea arrangement and conviction nor the re-pleading and re-sentencing amount to resolution of the criminal proceedings in the plaintiff's favor, the plaintiff's claim for malicious prosecution fails as a matter of law and should be dismissed with prejudice.

Even if this Court were to accept plaintiff's second cause of action as a claim for "fraud and deceit," the claim fails and must be dismissed. In order to state a claim for fraud under New York law, a plaintiff is required to allege the following five elements: "(1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." See Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir.2006); see also Cohen v. Houseconnect Realty Corp., 289 A.D.2d 277, 734 N.Y.S.2d 205, 206 (2d Dept. 2001). Additionally, Fed.R.Civ.P. 9(b) requires that fraud claims be pleaded with particularity.

Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Thus, conclusory allegations of fraud will be dismissed under Rule 9(b). See Sheemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2d Cir. 1971). To satisfy Rule 9(b), a complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993). "Where multiple defendants are asked to

respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987).

The Amended Complaint is devoid of any allegation that plaintiff relied upon co-Farthing's purported false statement concerning the plaintiff's criminal activity. Rather, plaintiff alleges that the Police Defendants, ADA and grand jury relied on the alleged false statement. Furthermore, plaintiff relies solely on conclusory allegations alone to attempt to impute co-Farthing's alleged false statement to Attorney Slade: "lead by Levinson, Slade, Wilkinson and Guggenheim, the Trustees ... fabricate[ed] a series of false statements of fraud, embezzlement and grand larceny against the plaintiff and induced Farthing to swear to them by extortion." Am. Comp. ¶ 215.   Plaintiff fails to identify any specific statements Attorney Slade made in furtherance of the purported fraud or whom any such alleged statement was made to.   Thus, plaintiff fails to satisfy the pleading requirement set forth in Rule 9 (b) and cannot otherwise plead a claim for fraud.

Accordingly, plaintiff's purported claim for "fraud and deceit" must be dismissed with prejudice.

## POINT III

## PLAINTIFF FAILS TO STATE A  CLAIM FOR VIOLATIONS OF NEW YORK JUDICIARY LAW SECTION 487

New York Judiciary Law Section 487 provides:

An attorney of counsel who:

1.  Is guilty of any deceit or collusion, or consents to any deceit or collusion, with the intent to deceive the court or any party; or

2.  Willfully delays his client's suit with a view to his own gain; or willfully receives money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefore
by the penal law, he forfeits to the party injured treble damages, to be recovered
in a civil action.

Section 487 was enacted as a vehicle to punish attorneys who engage in a "pattern of

delinquent, wrongful or deceitful behavior" directed at a court or a party in pending litigation.

See Jaroslawicz v. Cohen, 12 A.D.3d 160, 783 N.Y.S.2d 467 (1st Dept. 2004); Kaiser v.

VanHouten, 12 A.D.3d 1012, 785 N.Y.S.2d 569 (1st Dept. 2004). Further, a plaintiff's claim

under Section 487 is nonexistent in the absence of sustainable compensatory damages. See

Stanski v. Ezersky, 228 A.D.2d 311, 644 N.Y.S.2d 220 (1st Dept. 1996).

The elements of a *deceit* claim are the same elements that constitute a cause of action for

fraud, namely "representation, falsity, scienter, deception and injury." See Henry v. Brenner,

271 A.D.2d 647, 706 N.Y.S. 2d 465 (2d Dept. 2000); Gelmin v. Quickie, 224 A.D.2d 481, 638

N.Y.S. 2d 132 (2d Dept. 1996). See also Hanlon v. MacFadden Publications, Inc., 302 N.Y.502,

509, 99 N.E.2d 546,549 (1951); Ochs v. Woods, 221 N.Y. 335, 338 (1917). In addition, the

courts require a showing of "chronic, extreme pattern of legal delinquency" in order to state a

viable Judiciary Law § 487 claim. Frank v. Pepe, 186 Misc. 2d 377, 717 N.Y.S.2d 873 (Nassau

Co. 2000).

Plaintiff alleges that Attorney Slade acting as "*de facto*" Trustee" engaged in a pattern of

fraud along with the other Trustee Defendants and induced Farthing to make a false statement to

the police concerning the plaintiff's alleged embezzlement. The Amended Complaint fails to

delineate the specific acts Attorney Slade allegedly undertook in furtherance of the purported

fraud to induce Farthing to make an alleged false statement to the police. Rule 9 (b) states: "In

all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Thus, conclusory allegations of fraud will be dismissed under Rule 9 (b).

Accordingly, plaintiff's vague allegation that Attorney Slade engaged in a fraudulent scheme of deceit and collusion is legally insufficient to sustain a claim for violation of Judiciary Law § 487 and must be dismissed with prejudice.

<u>POINT IV</u>

<u>PLAINTIFF FAILS TO STATE A CLAIM UNDER 18 USC § 1964</u>

Plaintiff's fourth and fifth causes of action categorically assert a purported RICO claim against the "Trustees." The plaintiff alleges that the "Trustees controlled and conducted the affairs of the Academy, including without limitation being parties to each of the instances of mail fraud, wire fraud, bank fraud and insurance fraud." Am. Comp. ¶ 320. Plaintiff also alleges that "Levinson, Slade, Wilkinson, and Guggenheim formed an *ad hoc* subcommittee," who engaged in witness tampering by improperly influencing co-defendant Farthing to give false testimony to the Police Defendants concerning plaintiff, in furtherance of the purported RICO scheme. Am. Comp. ¶¶ 338, 348-355. Plaintiff's purported claim fails as a matter of law for several reasons.

Plaintiff must plead the requisite elements to sustain a claim under RICO, namely "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." See Moss v. Morgan Stanley, 719 F.2d 5, 17 (2d Cir.1983). A plaintiff must also allege "causation," i.e., that he or she was "injured in his [or its] business or property by reason of a violation of §1962. Id. These "requirements . . . must be established as to each individual defendant." See DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001); see also United States v.

Persico, 832 F.2d 705, 714 (2d Cir. 1987). The plaintiff must establish that each individual defendant "personally committed two or more predicate acts or agreed to commit two predicate acts." Lutin v. New Jersey Steel Corp., 122 F.3d 1056, 1997 WL 447005, at *5 (2d Cir. 1997).

In the context of a RICO claim, where the underlying predicate acts are based on fraud, Rule 9(b) calls for the Complaint to "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." See McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir.1992). The complaint must also "allege facts that give rise to a strong inference of fraudulent intent." See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 812 (2d Cir.1996). Where the allegations vaguely attribute acts to a defendant, the count is insufficiently pled and cannot survive a motion to dismiss. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993).

Here, the plaintiff's assertions are entirely vague and conclusory, as the plaintiff fails to delineate which specific acts Attorney Slade committed in furtherance of the purported racketeering scheme. Rather, plaintiff categorically lumps all "defendants other than the Police Defendants, the ADA and the Academy" together as "Trustees." Am. Comp. ¶14. In support of his RICO claim plaintiff alleges that: (1) the "Trustee Defendants" filed via United States mail fraudulent tax returns; (2) the "Trustees" filed a false insurance claim, and (3) the "Academy" was "violating federal law in connection with federally guaranteed student loans." Am. Comp. 48-55, 67, 83-85.

However, the Complaint is entirely devoid of any specific factual allegations that Attorney Slade individually committed wire fraud, mail fraud, and/or tax fraud in furtherance of

the purported racketeering scheme.  Since the plaintiff asserts blanket allegations against Attorney Slade (as a "de facto Trustees"), and does not delineate against whom each allegation is directed, the Complaint fails to inform each defendant of the nature of his participation in the alleged fraud and therefore fails.  See Di Vittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).

Further, the factually specific allegations which pertain to Attorney Slade are wholly insufficient to satisfy the pleading standards required to assert a claim under RICO, as the Complaint fails to identify two or more predicate acts Attorney Slade committed or conspired to commit in furtherance of the alleged RICO scheme.  As against Attorney Slade, the Complaint merely alleges that he retained an investigator to investigate the plaintiff; that the investigators who were retained were former FBI agents and, therefore, shared a "special relationship" with the New York Police Department and District Attorney's Office; and that Attorney Slade somehow benefited as a result of the "special relationship." Am. Comp. ¶¶ 155, 158–160. It is further alleged that "[the private investigators], Levinson, Farthing, Guggenheim and Slade, on behalf of the other Trustees, urged the ADA, Quinn and Rogers to use their best efforts to learn plaintiff's true identity."  Am. Comp. ¶ 174.  These factual allegations are legally insufficient to sustain a claim for RICO for wire fraud, mail fraud, and/or tax fraud, and the RICO claim should be dismissed with prejudice.

Further, in addition to the stringent particularity requirements under Rule 9(b), and the plaintiff's satisfaction of the seven RICO elements, the plaintiff must also plead "causation," i.e., that plaintiff was "injured in his business or property by reason of a violation of section 1962." See Moss v. Morgan Stanley, supra.  These "requirements ... must be established as to each individual defendant."  See DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir.2001); see also United

States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987). To successfully maintain a claim under RICO, plaintiff must allege injury to its business or property by reason of the RICO violations. See 18 U.S.C.A. 1961(5). In other words, plaintiff must plead and prove a factual proximate causal nexus between the alleged injury and a predicate act. See Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258. 266-68 (1992); First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994).

Here, the Complaint is devoid of any factually specific allegations as to how Attorney Slade's conduct proximately caused the plaintiff to suffer an injury. While the Complaint avers that Attorney Slade retained an investigative firm to commence an investigation of the plaintiff, and that Attorney Slade provided information to the police department in furtherance of their criminal investigation, plaintiff fails to set forth how these acts, none of which constitute predicate acts under the RICO statute, proximately caused the plaintiff to suffer any compensable injury.

The cause of any loss, which in part consisted of deprivation of freedom resulting from imprisonment, was the plaintiff's own doing, as it is undisputed that the plaintiff pled guilty to and was convicted of grand larceny, as a result of his admitted embezzlement from the Academy. Am. Comp. ¶ 267. Notwithstanding, the plaintiff's alleged loss of freedom does not constitute an injury to "business or property" as matter of law, and therefore cannot sustain a RICO claim. See Moore v. Guesno, 2007 WL 1373218 (W.D.N.Y. May 10, 2007). Further, plaintiff's claim pertaining to loss of employment with the Academy cannot support a civil RICO claim either because "loss of a job is not 'property in the victim's hands'" and cannot fulfill the requirement of loss of "money or property". See Hoatson v. New York Archdiocese, 2007 WL 431098, *5 (S.D.N.Y. Feb. 8, 2007).

In an apparent attempt to overcome this fatal pleading defect, plaintiff argues, to no avail, that the Trustee Defendants racketeering scheme proximately injured plaintiff's businesses: "Empire and First Manhattan were completely destroyed as the direct result of the Trustee Defendants' desire to silence or at a minimum discredit plaintiff's disclosure of the Trustees' [racketeering scheme]." Am. Comp.¶ 333. However, plaintiffs' vague assertion fails to set forth with any degree of specificity which specific predicate acts Attorney Slade allegedly undertook to proximately cause the demise of plaintiff's businesses.

Moreover, plaintiff lacks standing to bring a RICO claim since he was neither the victim nor the intended target of the alleged RICO scheme. See Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006). In Anza, the Court held that a RICO plaintiff must be the "immediate victim" of the alleged RICO violation in order to sustain a civil RICO claim. Id at 1997. Thus, the Court expressly held that direct injury is required even where the defendant intended to harm plaintiff through injury to the third party. See Id; see also Hollander v. Flash Dancers Topless Club, 940 F. Supp.2d 453 (S.D.N.Y. 2004) (holding that "the Second Circuit has repeatedly emphasized that the reasonably foreseeable victims of a RICO violation are the targets, competitors and intended victims of the racketeering enterprise.").

Here, the plaintiff does not allege that he was the immediate victim of the predicate acts or the intended target of the alleged RICO scheme. The predicate acts complained of consist of the alleged filing of inaccurate income tax returns, the filing of false insurance claims, and violating federal law in connection with federally guaranteed loans. Am. Comp. ¶¶ 48-55, 67, 83-85. Since none of the allegations which comprise the purported RICO scheme target the plaintiff directly, plaintiff lacks standing to pursue a civil RICO claim as a matter of law.

Plaintiffs purported fifth cause of action for RICO, arising from the alleged predicate act of witness tampering, fares no better. Plaintiff alleges that "Levinson, Slade, Wilkinson, and Guggenheim formed an *ad hoc* subcommittee," which engaged in witness tampering by improperly influencing co-defendant Farthing to give false testimony to the Police Defendants concerning plaintiff, in furtherance of the purported RICO scheme. Am. Comp. ¶¶ 338, 348-355. Plaintiff alleges that the "subcommittee" agreed that they would not hold co-defendant Farthing accountable for his failure to disclose plaintiff's criminal background to the Academy if Farthing agreed to provide false testimony to the police. Am Comp. ¶ 348.

Plaintiff's allegation that the subcommittee coerced co-defendant Farthing to give false testimony to the New York City Police Defendants is legally insufficient to constitute a predicate act under the RICO statute as it is well established that witness tampering is only actionable if it takes place "in an official proceeding," which is defined in U.S.C. § 1515 (a) (1) to include only federal proceedings. See Deck v. Engineered Laminates, 349 F.3d 1253 (10th Cir. 2003); See also United States v. Veal, 153 F.3d 1233, 1249 (11th Cir. 1998). Here, it is undisputed that the New York County District Attorney's office prosecuted the criminal proceeding against plaintiff. Accordingly, plaintiff's purported claim for tampering with a witness in a state judicial proceeding is not a RICO predicate act.

Therefore, plaintiff's claims for RICO are insufficiently pled and must be dismissed with prejudice.

## POINT V

## PLAINTIFF'S STATE LAW CLAIMS
## SHOULD BE DISMISSED PURSUANT TO 28 U.S.C. § 1367(c)(3)

Plaintiff contends that this Court has jurisdiction over the Attorney Slade pursuant to 42 U.S.C. 1983, 18 U.S.C. 1961, and 28 U.S.C. §§ 1331, 1332, and 1367. Am. Comp. ¶ 18. However, 28 U.S.C. §§ 1367(c)(3), allows a district court, in its discretion, to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims. See also Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90 (2d Cir. 1998). In United Mine Workers of America v. Gibbs, the United States Supreme Court held that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." 383 U.S. 715, 726 (1996). The Gibbs court reasoned that a federal court's determination of state claims could conflict with principles of comity to the States and with the promotion of justice between the parties. Id.

Thus, if this Court dismisses plaintiff's federal claims against Attorney Slade (purported Causes of Action 1, 4, and 5), it should decline to exercise supplemental jurisdiction over the state claims (purported Causes of Action 2 and 6) and dismiss them as well.

## CONCLUSION

WHEREFORE, it is respectfully requested that on the facts, the law and for all the reasons set forth herein, that this Court enter an Order, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing the plaintiff's Amended Complaint in its entirety with prejudice against Attorney Slade and for such other relief as this Court deems just and proper.

Dated: New York, New York
July 27, 2007

KAUFMAN BORGEEST & RYAN LLP

By:    Jonathan B. Bruno
Andrew S. Kowlowitz
Attorneys for Defendant,
Jeffrey C. Slade
99 Park Avenue, 19th Floor
New York, New York 10016
Telephone No.: (212) 980-9600
KBR File No.: 217.081

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that true and correct copies of the foregoing: **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JEFFREY C. SLADE'S MOTION TO DISMISS AMENDED COMPLAINT** was served via regular mail on the 27th day of July 2007 upon:


Shawn Fabian, Esq.
The City of New York
Law Department
100 Church Street
New York, NY  10007


Bennette Deacy Kramer, Esq.
Schlam Stone & Dolan LLP
26 Broadway
New York, NY   10004


J. Joseph Bainton
Bainton & McCarthy LLC
26 Broadway
Suite 2400
New York, New York  10004

Michael John Little, Esq.
26 Broadway
Suite 2400
New York, New York  10004

ANDREW S. KOWLOWITZ