UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

JOHN R. BLUMATTE, a/k/a                          :
ROBERT ANGONA, a/k/a
JOHN BLUE,                                       :

                 Plaintiff,              :

                                :

  --against--                                   No. 07 Civ. 2944 (JSR)

                                :

GERARD QUINN, DONALD ROGERS,                     ECF CASE
STEPHEN FARTHING, RANDOLPH LERNER, JR.,          :
DAVID LEVINSON, RUSSELL C. WILKINSON,
EILEEN GUGGENHEIM, H. ROBERT BOLANDIAN,          :
CHRISTOPHER FORBES, MARGOT GORDON,
ROLAND GRYBAUSKAS, LUDWIG KUTTNER,               :
DOUGLAS OLIVER, DAVID SCHAFER,
DENNIS SMITH, THE GRADUATE SCHOOL OF             :
FIGURATIVE ART OF THE NEW YORK ACADEMY
OF ARTS and JEFFREY C. SLADE,                    :

               Defendants.             :

------------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO RULE 12 MOTIONS OF CERTAIN DEFENDANTS

BAINTON MCCARTHY LLC
J. Joseph Bainton (JB-5934)
26 Broadway
New York, NY 10004
Telephone:  (212) 480-3500
Facsimile:  (212) 480-9557

*Attorneys for Plaintiff*

1

## Table of Contents

**Section**                                                                                                        **Page**

**Statement of Facts** ................................................................................................................. 1

**Argument** ........................................................................................................................ 2

**I.**      **PLAINTIFF'S GUILTY PLEAS TO CRIMES CHARGED BASED UPON FARTHING'S FRAUDULENT TESTIMONY ABOUT THE EMPIRE CONTRACT AND PLAINTIFF'S USE OF HIS MBNA CREDIT CARD ARE NOT ENTITLED TO PRECLUSIVE EFFECT BECAUSE UNDER THE *VERPLANCK* EXCEPTION TO THE GENERAL RULE ON ISSUE PRECLUSION THESE FRAUDULENT STATEMENTS WERE PART OF THE TRUSTEES' FRAUDULENT SCHEME TO CONTROL THE ACADEMY THAT WAS MUCH GREATER IN SCOPE THAN THE ISSUES DETERMINED BY PLAINTIFF'S GUILTY PLEAS** ................................................. 2

**II.**     **PRECLUDING PLAINTIFF FROM A TRIAL AS AGAINST THE TRUSTEES ON THE EMPIRE CONTRACT ISSUES AND THE MBNA CREDIT CARD ISSUES WOULD BE MANIFESTLY UNJUST AND IS NOT REQUIRED BY THE LAW** ................................................................................................ 6

**III.**    **THE FOURTH AND FIFTH CLAIMS OF THE AMENDED COMPLAINT ADEQUATELY STATE CLAIMS UNDER RICO** ................................... 10

      **A.**      **Plaintiff Is Not Suing for Harm To Third Parties** ............................................ 10

      **B.**      **The Amended Complaint Avers Several Predicate Acts That Proximately and Forseeably Caused Empire, First Manhattan and Plaintiff Damages** ................................................................................................ 13

      **C.**      **The Amended Complaint Pleads a RICO Conspiracy** ................................... 14

      **D.**      **Plaintiff Pled a RICO Enterprise and a Pattern of Racketeering Activities** ................................................................................................ 14

      **E.**      **Plaintiff Has Pled Proximate Cause** ................................................. 15

**IV.**    **PLAINTIFF'S SECOND CLAIM PLEADS A STATE LAW CLAIM FOR FRAUD AND DECEIT UNDER *VERPLANCK/BURBROOKE/NEWIN*** .................. 17

**V.**     **PLAINTIFF HAS STATED A CLAIM AGAINST SLADE UNDER NEW YORK JUDICIARY LAW § 487** ................................................. 19

**VI.**    **PLAINTIFF HAS STATED A CLAIM FOR BREACH OF CONTRACT** ............. 19

**VII.**   **PRIVATE PERSONS CAN BE HELD LIABLE UNDER 42 U.S.C. § 1983** ........... 21

## Table of Authorities

**Cases**

*Alberti v. County of Nassau*, 393 F. Supp. 2d 151, 167 (E.D.N.Y. 2005) ...................................... 7

*Alexander v. City of Peekskill*, 80 A.D.2d 626, 626, 436 N.Y.S.2d 327, 328
   (N.Y. App. Div. 1981) ...................................................................................................... 2

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. –, 126 S.Ct. 1991 (2006) .......................................... 11

*Barrett v. United States*, 798 F.2d 565, 576 (2d Cir. 1986) ............................................................ 5

*Bower v. O'Hara*, 759 F.2d 1117, 1125-27 (3d Cir. 1985) ............................................................ 6

*Burbrooke Manufacturing Co. v. St. George Textile Corp.*, 283 A.D. 640,
   129 N.Y.S.2d 588 (N.Y. App. Div. 1954) ........................................................... passim

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 166 (2001) .......................................... 16

*City of New York v. Cyco.net, Inc.*, 383 F. Supp. 2d 526, 560 (S.D.N.Y. 2005) .......................... 11

*Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) ............................................................................ 23

*Dean v. Kochendorfer*, 237 N.Y. 384, 390, 143 N.E. 229, 231 (1924) ........................................ 24

*Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ................................................................ 21, 24 n.20

*Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ..................................................... 22

*Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ..................................... 13 n.14

*Gramenos v. Jewel Cos.*, 797 F.2d 432, 435-36 (7th Cir. 1986) ................................................... 23

*H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 242-43 (1989) ...................................................... 16

*Hart v. Sheahan*, 369 F.3d 887, 895 (7th Cir. 2005) ............................................................. 13 n.14

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23-24 (2d Cir. 1990) ...................... 15, 16

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992) ................................. 10

*In re Am. Express Co. Shareholder Litig.*, 39 F.3d 374, 401 (2d Cir. 1994) ............................... 11

*Krellman v. Livingston*, 64 A.D.2d 621, 622, 406 N.Y.S. 2d 881, 882
   (N.Y. App. Div. 1978) .................................................................................................... 23

*Miloslavsky v. AES Eng'g Society, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992),
   *aff'd* 993 F.2d 1534 (2d Cir. 1993) .................................................................................. 8

*Moore v. Guesno*, 485 F. Supp. 2d 300 (W.D.N.Y. 2007) ........................................................... 12

*Morrow v. Black*, 742 F. Supp. 1199, 1205 (E.D.N.Y. 1990) ...................................................... 11

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 22 (2d Cir. 1983)....................................................... 15

*New York City Transit Authority v. Morris J. Eisen, P.C.*, 276 A.D.2d 78, 86,
   715 N.Y.S.2d 232, 238 (2000) ....................................................................................... 19

*Newin Corp. v. Hartford Accident & Indemnity Co.*, 37 N.Y.2d 211, 217-18 (1975) ........ 5, 17, 18

*Nichols v. Alker*, 231 F.2d 68, 80 (2d Cir. 1956) ............................................................ 5

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir. 1995) ...................................................................................................... 7

*Ricciuti v. New York City Transit Authority,* 124 F.3d 123, 128 (2d Cir. 1997) ............ 8

*Rothstein v. Carriere*, 373 F.3d 275, 287 (2d Cir. 2004) .................................................. 7

*Salinas v. United States*, 522 U.S. 52, 65-66 (1997) ..................................................... 16

*Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) .......................................... 23

*Town of Kearny v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263, 1268 (3d Cir. 1987) ...................................................................................................... 10

*United States v. Eisen*, 974 F.2d 246, 254-55 (2d Cir. 1992) ............................ 5, 12, 19

*United States v. Feliciano*, 223 F.3d 102, 107 (2d Cir. 2000) ....................................... 16

*United States v. Turkette*, 452 U.S. 576, 583 (1981) .................................................... 15

*Verplanck v. Van Buren*, 76 N.Y. 247 (1879) ...................................................... passim

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ........................................................ 8

*Younger v. City of New York*, 480 F. Supp. 2d 723 (S.D.N.Y. 2007) ............................ 23

**Statutes**

42 U.S.C. § 1983 (2007) ............................................................................................ passim

28 U.S.C. § 1332 (2007) ................................................................................................ 20

Federal Rule of Evidence 706 (2007) ..........................................................................  3 n.5

N.Y. Jud. L. § 487 (2007) ............................................................................................. 19

**Other Authorities**
RICO: Civil and Criminal, Law & Strategy § 7.04[2] at 7-38 (Hon. Jed S. Rakoff & Howard W. Goldstein eds., 2006) ........................................................................................ 10

Plaintiff John R. Blumatte, a/k/a Robert Angona, a/k/a John Blue, respectfully submits this memorandum of law in opposition to the motion of certain Defendants to dismiss his amended complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure.  Terms defined in the amended complaint are respectfully used herein without further explanation.

### Statement of Facts

It is axiomatic that before determining these motions this Court will read Plaintiff's 61-page, 365-paragraph amended complaint, to which is annexed 22 exhibits, one of which (Exhibit R) is incorporated by reference in its entirety.

Plaintiff's amended complaint says what it says and, therefore, either does – or does not – adequately state the claims it purports to state.  Plaintiff will not burden the Court with an attempt to summarize his amended complaint.  References to it in this memorandum are in the form of either "¶ [number]" when referring to a paragraph of the amended complaint or "Exh. [letter]" when referring to an exhibit to the amended complaint.

The Police Defendants have not moved against the amended complaint.  Slade has separate counsel.  All of the other Trustees and the Academy are represented by the same counsel.  All Trustees and the Academy have moved against the amended complaint and have submitted two memoranda of law aggregating 47 pages in support of their motions.  Many of the arguments asserted in the two memoranda overlap.  References to the Memorandum of Law filed on behalf of Slade are in the form of "Slade Memo. at [page]," and references to the Memorandum of Law of the Trustees and the Academy are in the form of "Trustees Memo. at [page]."

**Argument**

**I.    PLAINTIFF'S GUILTY PLEAS TO CRIMES CHARGED BASED UPON FARTHING'S FRAUDULENT TESTIMONY ABOUT THE EMPIRE CONTRACT AND PLAINTIFF'S USE OF HIS MBNA CREDIT CARD ARE NOT ENTITLED TO PRECLUSIVE EFFECT BECAUSE UNDER THE *VERPLANCK* EXCEPTION TO THE GENERAL RULE ON ISSUE PRECLUSION THESE FRAUDULENT STATEMENTS WERE PART OF THE TRUSTEES' FRAUDULENT SCHEME TO CONTROL THE ACADEMY THAT WAS MUCH GREATER IN SCOPE THAN THE ISSUES DETERMINED BY PLAINTIFF'S GUILTY PLEAS**

Plaintiff suffered personal injuries and his businesses, First Manhattan and Empire, were destroyed because Farthing willfully lied to the Police Defendants, the ADA and the grand jury about the Empire Contract;[1] the propriety of Plaintiff having and using his MBNA credit card;[2] the existence of the loans to officers account;[3] and the April 22, 2004 invoice (sent before Plaintiff's arrest) that reflected a credit in favor of the Academy for personal charges on Plaintiff's MBNA card.[4]

Plaintiff pled guilty to criminal charges that arose from Farthing's false statements not once, but twice. While the amended complaint makes plain Plaintiff's motivation in making his second plea – namely, to die in his own bed, not in jail[5] – the fact remains that he pled guilty twice. As Defendants correctly argue, typically a guilty plea is given preclusive effect, i.e., a guilty plea triggers the related principles of res judicata or collateral estoppel. *Alexander v. City of Peekskill*, 80 A.D.2d 626, 626, 436 N.Y.S.2d 327, 328 (N.Y. App. Div. 1981). Similarly, the general rule is that one cannot be sued in a second action for perjurious testimony given in a prior action.

---

[1]  Exh. G; ¶¶ 79-81; 223-33; 235-37.
[2]  ¶ 136.
[3]  ¶¶ 135, 137-141; 244-48.
[4]  Exh. N.
[55]  ¶¶ 268-75.

Based upon these general principles, the Trustees argue that this Court should disregard (i) the existence of the Empire Contract (Exh. G);[6] (ii) the fact that payments made by the Academy are congruent with the express terms of that contract (¶¶ 224-36); (iii) the existence and content of the Academy's loans to officers account (¶¶ 136-41; 245-46; Exh. N); and (iv) the actual MBNA statements with handwritten notations reflecting the expense accounts (including the loans to officers account) to which particular items were charged before the Academy's check to MBNA in payment of any such statement was cut (¶ 138).  In short, because Plaintiff logically chose to accept the People's offer to die in his own bed as a result of immediate State parole and immediate commencement of his federal sentence rather than risk dying in a federal prison as the consequence of waiting for a New York State court to render a decision on Exhibit R and then serve the additional time a new state criminal trial would have required – all before becoming eligible to begin serving his federal time – the Trustees urge the Court to ignore all contemporaneous writings that prove the fraud and deceit they perpetrated against Plaintiff as part of their larger scheme to maintain their control over the Academy.

The law does not require such a manifestly unjust result.  Plaintiff's guilty pleas do not preclude the claims asserted in this action against the Trustees – not the State of New York or any of its agents – by reason of the exception to the general rule that one cannot bring a second action based upon perjury in a prior action, a principle first recognized in *Verplanck v. Van Buren*, 76 N.Y. 247 (1879).  In *Burbrooke Manufacturing Co. v. St. George Textile Corp.*, 283 A.D. 640, 129 N.Y.S.2d 588 (N.Y. App. Div. 1954), the New York Appellate Division

---

[6]  An original, executed copy of the Empire Contract is still in existence.  If the Court denies Defendants' Rule 12 motions and Defendants dispute the genuineness of the Empire Contract or other related documents, Plaintiff intends to ask the Court to appoint its own expert to determine the authenticity of any such documents pursuant to Federal Rule of Evidence 706.

explained in modern English why the *Verplanck* exception permits Plaintiff to pursue his claims

against the Trustees:

> It is an ancient law that an action does not lie for perjury, subornation of perjury or the use of false documents in an action or proceeding which determined the issues arising from such perjury and documents. Distinction has been made, however, where an independent, sometime referred to as an extrinsic, fraud has been practiced, and when only as an incident thereof was there use of the instruments of the fraud in the prior proceeding or action to advance or to consummate the fraudulent scheme. The distinction is based upon the principle that a fraudulent scheme which is greater in scope than the issues that were determined in the action or proceeding may become the basis of an action.

*Id.*, 283 A.D. at 641, 129 N.Y.S.2d at 589.

> *Burbrooke* concludes by holding:

> The analysis that has been set forth is not a technical delineation without difference in substance. Involved is the need for separating two entirely different categories of problems with which courts are confronted. On the one hand, there is the profound and imbedded philosophy that decided issues remain decided, and that litigation comes to an end. On the other hand, there is the equally compelling policy that fraud be frustrated, and consequently that one who defrauds not gain sanctuary merely because a narrow issue, by very reason of his fraud, has been determined in his favor, but by successful concealment of a larger and basically different scheme. If the total objective of the scheme was the determined issue, then there is a bar; but if the total objective was greater than the determined issue, and the determined issue was but a step or part of the total objective, then there is no bar.

*Id.*, 283 A.D. at 643-44, 129 N.Y.S.2d at 592.

Here, the fraudulent statements about the Empire Contract and the MBNA credit

card that destroyed both Plaintiff and his businesses, First Manhattan and Empire, were in the

overall scheme of things but small steps in pursuit of the Trustees' total objective of controlling

the Academy for their selfish purposes by telling third-parties (including governmental officials)

4

whatever lie was expedient to that overarching goal at any given time.  (¶¶ 43-69; 74-78; 83-96; 100-03; 173; 211-38; 242-53; 261-62; 277-91.)

In other words, the total objective of the Trustees' fraudulent scheme was to preserve their control of the Academy by discrediting Plaintiff and attempting to blame him for the "missing restricted endowment funds."[7]  Accordingly, the fraud and deceit perpetrated against Plaintiff, Empire and First Manhattan was but a step or part of that total objective. Plaintiff's guilty pleas therefore do not bar his prosecution of the civil claims asserted in this action against the Trustees arising from their perjury about the Empire Contract and the MBNA card.  *Barrett v. United States*, 798 F.2d 565, 576 (2d Cir. 1986); *Nichols v. Alker*, 231 F.2d 68, 80 (2d Cir. 1956) ("[W]hen B, by certain kinds of fraudulent conduct, helps to bring about a judgment adverse to A in a suit by A against C, then B has committed a tort as against A, so that A may maintain an action for that tort against B.  Such a tort action is not a collateral attack on the judgment adverse to A in his suit against C."); *Newin Corp. v. Hartford Accident & Indemnity Co.*, 37 N.Y.2d 211, 217-18 (1975).

More recently in *New York City Transit Authority v. Morris J. Eisen, P.C.*, 276 A.D.2d 78, 715 N.Y.S.2d 232 (N.Y. App. Div. 2000), the New York Appellate Division held:

> Defendants finally argue that the entire action should be precluded based upon the principle that, generally, a party who allegedly lost or settled a case as a result of false testimony cannot collaterally attack the judgment in a separate action for damages against the party who adduced the false testimony.  While this principle is generally viable, an exception exists where the perjury is a means for the accomplishment of a larger fraudulent scheme.  An action for damages is not precluded in that circumstance.

---

[7]  The statement of the ADA at Plaintiff's May 17, 2004 arraignment quoted verbatim in paragraph 261 of the amended complaint and obviously based upon information provided by the Trustees is compelling evidence of the Trustees' attempt to shift the blame to Plaintiff for their own misconduct relating to the "missing" $1.1 million of restricted endowment funds.

*Id.*, 276 A.D.2d at 87-88, 715 N.Y.S.2d at 239(citations, including *Verplanck*, omitted).

The Trustees' fraudulent scheme to control the Academy was well-developed prior to Plaintiff's involvement with the Academy;[8] continued over his objection while he served as its controller;[9] and continued after his departure.[10]  That fraud was, therefore, well "outside" of the criminal proceeding brought against Plaintiff in aid of maintaining the Trustees' control. Thus, Plaintiff's guilty pleas should have no preclusive effect by reason of *Verplanck* and its progeny.

Given that Plaintiff's reliance on the *Verplanck* exception was discussed during the pre-motion conference, the Trustees' failure to address the issue in their moving papers is difficult to understand.

## II.    PRECLUDING PLAINTIFF FROM A TRIAL AS AGAINST THE TRUSTEES ON THE EMPIRE CONTRACT ISSUES AND THE MBNA CREDIT CARD ISSUES WOULD BE MANIFESTLY UNJUST AND IS NOT REQUIRED BY THE LAW

Plaintiff's guilty pleas do not entitle the Trustees to the benefit of issue preclusion as to their perjury relating to the Empire Contract and the MBNA credit card, because those issues were not actually litigated and there is no averment in the amended complaint suggesting that any of the Trustees relied to their detriment on Plaintiff's guilty pleas.  *Bower v. O'Hara*, 759 F.2d 1117, 1125-27 (3d Cir. 1985) (holding guilty plea to assault does not estop party from claiming that he was not aggressor in subsequent civil litigation arising from assault).

Even if these issues had been actually litigated, the principle of collateral estoppel is not applied when a court finds that to do so would be manifestly unjust, against public policy or when it finds that the litigant did not have sufficient reason to litigate an issue in the first case.

---

[8]  ¶¶ 43-69, 83-92.
[9]  ¶¶ 93-110, 124-34, 170-71, Exh. N.

In this case, at the time of his 2006 guilty plea, Plaintiff had very compelling reasons not to litigate with the People of the State of New York and, therefore, he should not be precluded from litigating the Empire Contract and MBNA credit card issues with the Trustees. *Alberti v. County of Nassau*, 393 F. Supp. 2d 151, 167 (E.D.N.Y. 2005) (holding that the lack of a "party's incentive to litigate the issue in the prior proceeding …. weighs against the application of collateral estoppel"); *see also Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir. 1995) (quoting *The Evergreens v. Hunan*, 141 F.2d 927, 929 (2d Cir.) (Hand, J.) ("It is altogether right that the judgment shall forever put an end to the first cause of action; but it is not plain that it is always fair that every fact … decided in it, shall be conclusively established between the parties in all future suits, just because the decision was necessary to the result.").

Here, it is not fair to pretend that the Empire Contract did not exist; that the loans to officers account did not exist; that all personal charges of all Academy officers, including Plaintiff, were not charged to that account; and, by such fiction, deny Plaintiff recovery based upon Farthing's willful perjury about these matters, which was criminally induced by the other Trustees.

This case presents the mirror image of the traditional or typical case discussed for example in *Rothstein v. Carriere*, 373 F.3d 275 (2d Cir. 2004). *Rothstein* involved a claim for malicious prosecution,[11] which requires as a prima facie element the termination of the prior criminal proceeding in favor of the plaintiff. The *Rothstein* court held that "[i]n order for the compromise of a criminal case to defeat a subsequent malicious prosecution claim, it is not

---

[10]  ¶¶ 216-50, 227-91.

required that the defendant in the criminal case admit his guilt." *Id.* at 287. The Second Circuit then goes on to catalog the many ways in which most – if indeed not virtually all – compromises of criminal proceedings indicate that the question of guilt is left open and suggests that re-litigation of those issues is precluded. *Id.* Quoting section 660 of the Restatement (Second) of Torts , the Second Circuit observed that "*[h]aving bought peace the accused may not thereafter assert that the proceedings have terminated in his favor*." *Id.* (emphasis supplied in opinion).

Now, let us apply these principles to the unusual facts of this case as stated in the amended complaint, which asserts a claim against the Trustees for fraud and deceit, not malicious prosecution, relating to the Empire Contract and MBNA credit card issues as to which the Trustees seek issue preclusion.[12] To be sure, if we were dealing with only Plaintiff's first guilty plea – and if for some reason the Court were to conclude that the *Verplanck* exception does not provide Plaintiff with an escape hatch on issue preclusion relating to the issues of the Empire Contract and the MBNA card – then *Rothstein* and the principle of collateral estoppel would likely doom Plaintiff's claims against the Trustees that relate to the Empire Contract and the MBNA credit card charges. The following facts plainly averred in the amended complaint defeat the typical result:

> (a) Under no conceivable circumstances could Plaintiff ever have asserted any civil claims against the Police Defendants, the State of New York or any other person employed by the New York criminal justice system relating to his imprisonment, because they all could successfully claim that they relied upon the perjurious testimony of Farthing that the other Trustees criminally induced Farthing to give. *Ricciuti v. New York City Transit Authority,* 124 F.3d 123, 128 (2d Cir. 1997); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996);

---

[11]   The second claim of the amended complaint does not assert a claim for malicious prosecution, but rather a claim for "fraud and deceit," quoting directly from *Burbrooke*. That said, measured in dollars, the quantum of damages is likely the same.

[12]   *See* discussion *infra* beginning at page 17 explaining prima facie elements of claim for fraud and deceit under *Burbrooke*.

*Miloslavsky v. AES Eng'g Society, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd* 993 F.2d 1534 (2d Cir. 1993);

(b) Thus, in terms of potential civil litigation as between Plaintiff and the State of New York or any of its employees, there was no "peace to be made," but one can hardly criticize the State for making that point abundantly clear by insisting upon the second plea; and

(c) The "compromise" that Plaintiff was offered by the People of the State of New York and he accepted by entering into the second plea agreement was a vastly "better deal" than he ever could have achieved through the New York courts because it got him out of the custody of the State of New York and into a situation whereby the time he was serving was "counting" against his federal obligation (arising from his probation violation) far faster then could have been achieved had he litigated successfully his Motion to Vacate the Judgment entered upon his first guilty plea (Exh. R) and then prevailed at the new trial. (¶¶ 269-75.) The significance of the "new" concurrent sentence was made very plain at the proceeding at which Plaintiff entered his second guilty plea, during which the Court will note that Plaintiff was never asked to explain what he did wrong; nor is there any mention by anyone of either the Empire Contract or the MBNA credit card. (*See* Transcript of Proceedings, dated Dec. 1, 2006, at 5:2-7, 7:22-25, 8:1-11 (attached as Exh. C to the Declaration of Bennette D. Kramer, Esq., dated July 25, 2005, Doc. No. 34)).

Thus the amended complaint presents a common sense explanation as to why Plaintiff had great incentive not to litigate his criminal case in December 2006. He had nothing to gain from a more formal resolution in his favor and, most importantly, a great deal to lose in terms of the prospect of not dying in his own bed, surrounded by his wife and family, as a consequence of the time that such state court litigation would have necessarily consumed. Simply put, the People of the State of New York offered Plaintiff the key to his state cell door and an invitation to immediately walk across the aisle to enter his inevitable federal cell so that he could complete his federal obligation before leukemia took his life while incarcerated.

How could Plaintiff say no? Why should the Trustees benefit from Plaintiff saying yes?

III.    **THE FOURTH AND FIFTH CLAIMS OF THE AMENDED COMPLAINT
        ADEQUATELY STATE CLAIMS UNDER RICO**

The Trustees' and Slade's Memoranda make a variety of arguments addressing

the legal sufficiency of the two RICO claims asserted in the amended complaint.  We address

them generally in the order in which they are raised starting with the Trustees' motion.

A.    **Plaintiff Is Not Suing for Harm To Third Parties**

The Trustees claim that Plaintiff is suing for harm done to third parties.  That

argument mischaracterizes the amended complaint.

First, it is true that the amended complaint pleads a great number of predicate acts

of mail fraud[13] and wire fraud that both pre-date and post-date Plaintiff's time with the Academy.

These predicate acts may be considered by the Court in deciding whether Plaintiff has met his

burden of pleading the requisite pattern of racketeering activities.  While only two predicate acts

suffice as a technical matter of law, a noted treatise on the topic of RICO recommends "a civil

RICO plaintiff should strive to identify more than this requisite minimum and should, if possible,

allege a variety of predicate offenses."  RICO: Civil and Criminal, Law & Strategy § 7.04[2] at

7-38 (Hon. Jed S. Rakoff & Howard W. Goldstein eds., 2006).

---

[13]  Filing fraudulent tax returns via the United States mail is a form of mail fraud.

[15]  Defendants criticize Plaintiff's allegation of other interstate wire communications upon information and belief (*e.g.*, ¶ 219).  Those averments cannot at this time be made other than upon information and belief because evidence as to the interstate – versus possibly intrastate – wire communications is not available at this time.  The two telephone conference calls among **all** Trustees on April 24 and April 27, 2004 to which reference is made in paragraphs 249 and 250 are corroborated by IPSA bills, which are not attached to the amended complaint.  Given the diverse states of citizenship of the Trustees (¶¶ 6, 8-14), these telephone conference calls had to be of an interstate character.  Mention of the corroborating IPSA bills is proper because in defending a Rule 12 motion, a plaintiff is free "to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment." *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992); *accord Hart v. Sheahan*, 369 F.3d 887, 895 (7th Cir. 2005).

While it is true that Plaintiff's damages must be proximately caused by **a** predicate act, *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992), it is not required that a RICO plaintiff be damaged by **all** predicate acts constituting the pattern of racketeering activities. *Town of Kearny v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263, 1268 (3d Cir. 1987). So, the amended complaint does not fail because it identifies a great many predicate acts, most of which caused Plaintiff no damage. Indeed, logically the greater the number of unrelated victims the more "real" the pattern of racketeering activities.

Second, it is well-settled that a RICO plaintiff, who is injured as a proximate result of a RICO predicate act of fraud, need not prove his own reliance, but rather may prove the reliance of a third party. *In re Am. Express Co. Shareholder Litig.*, 39 F.3d 374, 401 (2d Cir. 1994); *City of New York v. Cyco.net, Inc.*, 383 F. Supp. 2d 526, 560 (S.D.N.Y. 2005). The amended complaint does aver (a) that the New York Police Department, the ADA and the Office of the New York County District Attorney all relied upon the knowing false communications about Plaintiff, many of which were transmitted by mail or by wire, or both (¶ 253); (b) that based upon Farthing's false testimony the grand jury returned an indictment against Plaintiff (¶ 247); and (c) during interstate telephone conference calls on April 24 and 27, 2004, named IPSA employees reported to **all** Trustees "on the progress of the bogus criminal prosecution of Plaintiff" and that, during each of these two interstate telephone calls, **all** Trustees "acquiesced in continuing their scheme to destroy by fraud and deceit the Plaintiff and his businesses, First Manhattan and Empire, in order to protect and preserve their control over the Academy for their own selfish purposes … in furtherance of the Trustees' common scheme to protect themselves by discrediting Plaintiff through the mechanism of a false criminal prosecution" (¶¶ 249-50). These two interstate telephone conference calls in which all Trustees participated are obviously

sufficiently closely related to the scheme to destroy Plaintiff by inducing Farthing to give false

testimony against Plaintiff so as to preserve the Trustees' sinecures.  *Morrow v. Black*, 742 F.

Supp. 1199, 1205 (E.D.N.Y. 1990).

       Third, unlike the plaintiff in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. –, 126

S.Ct. 1991 (2006), Plaintiff's damages – the destruction of Empire and First Manhattan – flowed

proximately from his arrest and subsequent indictment as a consequence of the criminally

influenced false testimony of Farthing.  (*See* ¶¶ 338-58.)  If the deal struck on the evening of the

Brooklyn Diner meeting had been honored (*see* ¶¶ 124-44), Plaintiff, Empire and First

Manhattan would have quietly ended their relationship with the Academy and then continued to

earn honest livings from services performed for other customers without interference from what

would have remained from Plaintiff's perspective a blissfully ignorant (about Plaintiff) United

States Probation Office.

       The Trustees' reliance on *Moore v. Guesno*, 485 F. Supp. 2d 300 (W.D.N.Y.

2007), is misplaced.  Empire and First Manhattan were not destroyed because Plaintiff violated

his federal probation.  They were destroyed by the Trustees' scheme to convict Plaintiff of

crimes they knew he did not commit.  After all, they had copies of the Empire Contract; the loans

to officers account; and months of reconciled MBNA bills with handwritten notations reflecting

expenses of a personal nature by Plaintiff, Farthing and other officers being charged to their

respective loans to officers account.  That procuring Plaintiff's criminal prosecution by inducing

Farthing to testify falsely would damage Empire and First Manhattan was plainly foreseeable.

**B.    The Amended Complaint Avers Several Predicate Acts That Proximately and Forseeably Caused Empire, First Manhattan and Plaintiff Damages**

The Trustees claim that the amended complaint does not allege RICO extortion. (Trustees Memo. at 9.)  The fifth claim of the amended complaint expressly relies upon a violation of § 215.00 of the New York Penal Law (¶ 352), which is a RICO predicate act.  *United States v. Eisen*, 974 F.2d 246, 254-55 (2d Cir. 1992).  Plaintiff's damages proximately flow from Farthing's unlawfully influenced testimony for the reasons discussed above.

Next is the Trustees' claim that fraud has not been pled with requisite particularity.  Farthing's false statements made to Quinn on April 23, 2004, regarding Empire are quoted verbatim in paragraph 216 of the amended complaint.  Why these statements were false and that each of the Trustees knew that they had been made and were false is described in detail in paragraphs 79-81, 217-43, and 248-50 of the amended complaint.  Farthing's false statements made to Quinn on April 23, 2004, regarding the MBNA credit card are quoted verbatim in paragraph 244.  Why these statements were false and that each of the Trustees knew that they had been made and were false is described in detail in paragraphs 245-46 and 248-52.  The Police Defendants' and the ADA's foreseeable reliance on these false statements is pled in paragraphs 222 and 253.  The Trustees' unlawful inducement of Farthing's false testimony is described in detail in paragraphs 215, 217-18, 220-21, and 338-355.

That all Trustees were actively complicit in this scheme to destroy Plaintiff (and Empire and First Manhattan) and that the scheme was implemented at least in part by all Trustees via use of interstate wires on two separate occasions is expressly pled in paragraphs 249 and 250.[15]  Although the amended complaint describes a great many predicate acts – most of which damaged persons other than Plaintiff – the two predicate acts alleged in paragraphs 249

13

and 250 (when read in the context of the entire amended complaint) are in and of themselves legally sufficient to sustain the amended complaint.

**C.**    **The Amended Complaint Pleads a RICO Conspiracy**

The Trustees argue that Plaintiff has failed to plead a RICO conspiracy.  They are in error.  The amended complaint avers that the Academy was (logically) controlled and its affairs conducted and managed by the Trustees in concert and participation with one another and that the Trustees routinely communicated with one another about the affairs of the Academy via the United States mails and interstate and international wires (e.g., ¶¶ 16, 249-50).  The amended complaint explains how and why the Trustees controlled and operated the Academy through a pattern of racketeering activities, most of which caused persons other than Plaintiff to suffer damages (e.g., ¶¶ 43-71, 83-103, 107-09, 277-91), but some of which plainly did damage Plaintiff in his businesses (¶¶ 211-53, 261-62, 319-59).

Paragraphs 249 and 250 aver specifically the agreement among the Trustees to damage Plaintiff by fraud and deceit.  The fraud and deceit practiced against Plaintiff is consistent in every practical way with the other frauds and deceits described in the amended complaint practiced against others by the Trustees in furtherance of their common goal to control the Academy for improper purposes.

**D.**    **Plaintiff Pled a RICO Enterprise and a Pattern of Racketeering Activities**

Defendants claim that Plaintiff failed to plead a RICO enterprise and a pattern of racketeering activities because "there are no allegations in the Complaint concerning the hierarchy or roles that each defendant played in conducting or participating in the Academy's affairs or in connection with the 'pattern' of racketeering."  (Trustees Memo. at 13.)  It is hardly remarkable that among equals there is no "hierarchy."  The amended complaint alleges that the

14

Academy was controlled by the Trustees as a group and that, certainly as a result of Plaintiff's work, all Trustees were on notice of the illegal nature of their activities and not a single Trustee chose to be a "whistleblower." (¶¶ 16, 74-75, 93-102, 107-09.) The amended complaint also alleges that all Trustees spoke by telephone and agreed to cause Farthing to perpetrate the fraud and deceit against Plaintiff relating to the Empire Contract and the MBNA credit card. (¶¶ 211-53, 261-62, 276.) The amended complaint also describes how the pattern of racketeering activities aimed at permitting the Trustees to retain control of the Academy continued after Plaintiff's departure. (¶¶ 277-291.) In short, the amended complaint explains in considerable detail why and how the Trustees controlled the Academy and participated in its affairs over many years through a pattern of racketeering activities that included wire fraud, mail fraud, tax fraud,[16] and insurance fraud.

**E.    Plaintiff Has Pled Proximate Cause**

The amended complaint makes plain that "but for" Farthing's induced false testimony, Plaintiff, Empire and First Manhattan would all today and would have been since April 2004 leading productive, profitable and law-abiding lives of which the U.S. Probation Office would have remained wholly ignorant. At a minimum, the conduct of Farthing and the Subcommittee, conducted in part via the United States mail and interstate wire communications, were a "substantial factor" in causing the destruction of Plaintiff's businesses. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23-24 (2d Cir. 1990).

In short, the amended complaint:

(a) adequately pleads that the Academy is an enterprise (¶¶ 2-3, 43-44, 62-64, 66-69, 93-94, 97-103, 109-10, 124-44, 147-48, 238-42, 249-51, 277-91, 319); makes plain that the Academy is an enterprise as distinguished from an

---

[16]    Tax fraud, bank fraud, and insurance fraud are each species of mail fraud when the fraudulent documents are transmitted via United States mail, as the amended complaint alleges.

enterprise-in-fact, *cf. United States v. Turkette*, 452 U.S. 576, 583 (1981); and further avers that the Academy has an "independent economic significance" apart from the Trustees' pattern of racketeering activities. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 22 (2d Cir. 1983);

(b) adequately pleads the nexus between the Trustees and the Academy and avers without ambiguity their respective separateness. (¶¶ 3-16, 42, 65, 74-76, 83-103, 106-10, 124-43, 145-60, 211-52, 261-62, 276-91); *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 166 (2001);

(c) pleads many predicate acts of racketeering that have extended over a substantial period of time, and that these acts are continuing. (¶¶ 43-55; 58-65; 67-68; 74-76; 83-92; 100-103; 107-109; 211-252; 261-262; 277-291; 320-331; 337-359); *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 242-43 (1989);

(d) explains why all of these acts constitute a pattern whose goal has been and remains for the Trustees to control and conduct the affairs of the Academy through a pattern of racketeering activities for their personal benefits. (¶¶ 71; 93-96);

(e) alleges that the Academy has an effect on both interstate and international commerce. (¶¶ 3-4); *United States v. Feliciano*, 223 F.3d 102, 107 (2d Cir. 2000);

(f) avers destruction of Plaintiff's businesses, Empire and First Manhattan;

(g) explains why Farthing's induced perjurious testimony given in aid of the Trustees' maintaining their control over the Academy and conducting its affairs through a pattern of racketeering activities was a proximate cause of that destruction. *Hecht*, 897 F.2d at 23-24; and

(h) expressly avers that during interstate telephone conference calls on April 24 and 27, 2004, each Trustee acquiesced in the scheme to destroy the Plaintiff and his businesses, First Manhattan and Empire, by fraud and deceit in the form of Farthing's induced perjurious testimony in order to protect and preserve their control over the Academy for their own selfish purposes and that this interstate telephone conference call was in furtherance of the Trustees' common scheme to protect themselves by discrediting Plaintiff through the mechanism of a false criminal prosecution. (¶¶ 249-50); *Salinas v. United States*, 522 U.S. 52, 65-66 (1997).

Accordingly, the Trustees' criticisms of the legal sufficiency of the fourth and fifth claims of the amended complaint are without merit.

16

## IV.    PLAINTIFF'S SECOND CLAIM PLEADS A STATE LAW CLAIM FOR FRAUD AND DECEIT UNDER *VERPLANCK/BURBROOKE/NEWIN*

The Trustees claim that Plaintiff's second claim for fraud and deceit should be dismissed because he has not asserted (nor could he assert) that he reasonably relied to his detriment on the false, induced testimony of Farthing.

As noted above, ordinarily a state law civil claim does not lie for perjury, subornation of perjury or the use of false documents in an action or proceeding which determined the issues arising from such perjury and documents. *Burbrooke Manufacturing Co. v. St. George Textile Corp.,* 283 A.D. 640, 640, 129 N.Y.S.2d 588, 589 (N.Y. App. Div. 1954).

Also as explained above, this case falls within the exception noted in *Verplanck* and *Burbrooke* because the fraud perpetrated against Plaintiff relating to the Empire Contract and the MBNA credit card was part of a fraudulent scheme of the Trustees that was much greater in scope than the issues arguably determined by Plaintiff's guilty pleas.

A party damaged by perjury, subornation of perjury or the use of false documents in a prior action by definition never has relied upon the false evidence, but instead is necessarily a victim of it. Nonetheless, Judge Breitel characterized an action brought under the *Burbrooke* exception as one for "fraud." *Id.*

In *Newin Corp. v. Hartford Accident and Indemnity Co..*, 37 N.Y.2d 211, 333 N.E.2d 163 (1975), the New York Court of Appeals also characterized a cause of action under the *Burbrooke* exception as one for "fraud and deceit," holding, as follows:

> However, there is an exception [to the ancient rule that the courts of this State will not entertain civil actions for damages arising from alleged subornation of perjury in a prior civil proceeding]:  A **cause of action for fraud and deceit** will lie, even though perjury is present, where the perjury is merely a means to the accomplishment of a larger fraudulent scheme.

*Id.*, 37 N.Y.2d at 218, N.E.2d at 167 (emphasis added and citations omitted).

The amended complaint states in considerable detail the Trustees' "larger fraudulent scheme" to maintain their control over and conduct the affairs of the Academy through a pattern of mail fraud, wire fraud, tax fraud, insurance fraud, perjury and subornation of perjury. The overarching goal of this larger fraudulent scheme – controlling the Academy for the Trustees' personal emoluments – dwarfs the discrete goal of any particular, subsidiary fraud perpetrated in aid of the larger scheme – including the fraud perpetrated against Plaintiff. For example, the Trustees defrauding of a particular contributor to the Academy by intentionally misleading that contributor about the existence of a restricted endowment account in excess of $1 million[17] in order to help fund the operations of the Academy with the contribution was primarily in aid of their goal of controlling the Academy and only secondarily focused on cheating that particular contributor. In other words, cheating contributors by leading them to believe in the existence of a restricted endowment account was but one step in aid of the larger fraudulent scheme, not the principal scheme itself.

Accordingly, the amended complaint states a claim for "fraud and deceit" within the meaning of the *Verplanck* exception. In pleading this claim as one for fraud and deceit, Plaintiff parroted the words of *Burbrooke* and *Newin*.[18] To avoid confusion with more traditional fraud claims, perhaps the second claim in the amended complaint should be labeled a claim for perjury and subornation of perjury. Whatever label is applied, assuming the facts of the amended complaint to be true as the Trustees concede the Court must do at this stage of the

---

[17]  ¶¶ 43-50, 58-61, 94-98, 261-62, 277-88.

[18]  Again, Plaintiff's reliance on *Verplanck, Burbrooke* and their progeny was disclosed during the pre-motion conference relating to Plaintiff's original complaint. The decision of the moving parties to ignore this central issue is difficult to understand.

case, the second claim states a *Verplanck/Burbrooke/Newin* cause of action under the law of the State of New York.[19]

## V.    PLAINTIFF HAS STATED A CLAIM AGAINST SLADE UNDER NEW YORK JUDICIARY LAW § 487

In paragraphs 337 through 352 of the amended complaint Plaintiff states with specificity the inducement offered by Slade (and the other Trustees) to influence the false testimony of Farthing that was the proximate cause of Plaintiff's damages (and those of Empire and First Manhattan) and, therefore, how Slade violated § 215.00 of the New York Penal Code (a RICO predicate act). Paragraph 14 avers that Slade is an attorney admitted to the bar of the State of New York.

Since the averments of the amended complaint must be assumed to be true, analytically, Slade stands for present purposes in exactly the same position as did the attorney defendants in *United States v. Eisen*, 974 F.2d 246, 254-55 (2d Cir. 1992). Accordingly, again assuming the truth of the amended complaint's averments, it is beyond cavil that Plaintiff has stated a claim against Slade under § 487 of the New York Judiciary Law. *New York City Transit Authority v. Morris J. Eisen, P.C.*, 276 A.D.2d 78, 86, 715 N.Y.S.2d 232, 238 (2000) ("The attorney defendants are similarly estopped from relitigating the deceit and collusion findings of the Federal jury with respect to the collateral Judiciary Law § 487 claims.").

## VI.    PLAINTIFF HAS STATED A CLAIM FOR BREACH OF CONTRACT

The Academy's characterization of the third claim of the amended complaint as a "garden variety" breach of contract is accurate. That is exactly what it is and since it involves more than $75,000, exclusive of interest and costs, and is between persons of diverse citizenship

---

[19]    The existence of a state law fraud and deceit claim is of significant, practical importance to Plaintiff since (a) he has sustained serious personal injuries as a result of Farthing's perjury and (b) such injuries

there is no question as to this Court's jurisdiction over the subject matter of this claim pursuant to 28 U.S.C. § 1332.

Moreover, accepting the averments of the amended complaint as true, there is nothing fraudulent or illegal about the two contracts at issue, which are Exhibit F (the 2003 Controller Agreement) and Exhibit G (the Empire Agreement). Exhibit A, to which the Academy refers in its Memorandum was the first agreement between the Academy and First Manhattan (¶¶ 30-40); was honored by both sides (¶¶ 43-72); expired according to its terms (Exh. A) ("This engagement will be for a period of one year commencing July 1, 2002 and ending June 30, 2003."); and was succeeded by the 2003 Controller Agreement (¶ 73, Exh. F).

The assertions of purported fact by the Academy in support of its claim that these two written contracts (Exhs. F and G) were somehow unlawful are flatly contradicted by the averments of the amended complaint – namely, that (a) the terms of Plaintiff's probation did not preclude him from working in the accounting and financial services field (¶ 22); (b) Plaintiff disclosed to Farthing and Lerner that he could not sign the Academy's standard form of contract "because of his prior federal and state convictions about which he provided considerable detail to Farthing" (¶ 32); (c) after deciding to proceed to hire Plaintiff, Plaintiff was instructed that he should refrain from "sharing his past" with anyone else at the Academy, including the other Trustees (¶ 38); (d) Plaintiff performed his obligations under both contracts at issue (¶¶ 70-78, 93-110); and (e) the Academy agreed to make the payments to Plaintiff for which recovery is sought in the third claim of the amended complaint (¶¶ 124-43). The amended complaint also avers that the Academy was told both in the Harris Report (¶¶ 241-42, 344) and in the IPSA

---

are not compensable under RICO.

report (¶ 238)[20] that Plaintiff/First Manhattan/Empire had done a good job in terms of providing financial services to the Academy, including maintaining accurately its books of account, and, therefore, had earned the remuneration contemplated by the written contracts (Exhs. F and G) and as promised on the day of the Brooklyn Diner meeting (¶ 143).

The "technical" pleading deficiency of the third claim is that it does not expressly aver that the Academy has refused to honor the deal Farthing and Lerner made with Plaintiff on its behalf on the night of the Brooklyn Diner meeting.  Since Plaintiff is entitled to all favorable inferences, this small oversight should not be fatal to his breach of contract claim against the Academy.

## VII.    PRIVATE PERSONS CAN BE HELD LIABLE UNDER 42 U.S.C. § 1983

The Trustees do not seriously contend that the first claim of the amended complaint does not state an "excessive force" claim under 42 U.S.C. § 1983 against the Police Defendants, whose unwarranted use of force sent Plaintiff to the hospital for ten days and caused him to have a heart operation.  They challenge only their alleged liability as absent private citizens in respect of this claim.

It is well-settled that to act "under color of state law" for § 1983 purposes does not require that the defendant be an officer of a State.  "It is enough that he is a willful participant in joint action with the State or its agents.  Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of state law for purposes of § 1983 actions."  *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

---

[20]   How the Trustees hid from IPSA the Empire Contract, the loans to officers accounts, the actual MBNA bills on which handwritten notations that particular items were to be charged to various loans to officers accounts and audit papers that should have shown the loans to officers accounts among the Academy's table of accounts are intriguing questions that Plaintiff cannot answer without the benefit of pre-trial discovery.

In his amended complaint Plaintiff meets his burden of alleging the details of time, place and the alleged effect of the conspiracy between the Trustees and the Police Defendants. *Dwares v. City of New York*, 985 F.2d. 94, 100 (2d Cir. 1993). Paragraphs 145 through 153 explain the "why" of the Trustees' conspiracy with the Police Defendants at a time when the Trustees had no reason to believe that Plaintiff had committed any crime. Paragraphs 155 through 160 explain "how," with their law enforcement background, the IPSA agents helped to forge a special relationship between the Trustees and the Police Defendants and the ADA. Paragraphs 172 through 174 explain that, although the Trustees had no reason as of April 23, 2004, to believe that Plaintiff had done anything wrong, they exploited the IPSA-facilitated special relationship with the Police Defendants to induce the Police Defendants to use their "best efforts" to learn more about Plaintiff's background, i.e., the "when" of the conspiracy. Paragraphs 175 though 195 explain how those best efforts violated Plaintiff's constitutional rights on April 23, 2004. Paragraph 203 expressly avers that Farthing, Levinson, Wilkinson, Guggenheim and Slade remained in frequent contact with the Police Defendants and the ADA during the entire day of April 23, 2004. Paragraphs 211 through 250 explain how the Trustees through the knowing use of false testimony attempted to solve the "mutual problem" described in paragraphs 211 through 214. The effect on Plaintiff of the excessive use of force is described in paragraphs 183-84, 195-197, 201, 205-206 and 209.

Accordingly, the first claim of the amended complaint is not legally deficient insofar as the Trustees are concerned. The amended complaint avers in substance that the Trustees and the Police Defendants were joined at the hip the entire day of April 23, 2004, and, therefore, should jointly and severally bear the consequences of the damage to Plaintiff inflicted on that day. Accordingly, the Trustees' reliance on *Younger v. City of New York*, 480 F. Supp.

2d 723 (S.D.N.Y. 2007), is misplaced. Unlike Mayors Bloomberg and Giuliani in that case, the

Trustees were directly and intimately involved with the Police Defendants during the entire day

of April 23, 2004 (¶¶ 172-74; 203, 211-48) and again on April 24, 2004 (¶ 249) and April 27,

2004 (¶ 250). The Trustees having struck "a deal with the police" are thus in the situation of the

shopkeepers in *Gramenos v. Jewel Cos.*, 797 F.2d 432, 435-36 (7th Cir. 1986) – namely, they are

liable for the violations of Plaintiff's federal rights that flowed from the deal.

In addition, the Trustees – but not the Police Defendants – are liable under § 1983

to Plaintiff for abuse of process. *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003).

The elements of that claim require that a defendant "(1) employs regularly issued legal process to

compel performance or forbearance of some act (2) with intent to do harm without excuse of

justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of

the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).

First, arrest is legal process. Process includes any interference with person or

property; it includes attachment, garnishment and arrest. *Krellman v. Livingston*, 64 A.D.2d 621,

622, 406 N.Y.S. 2d 881, 882 (N.Y. App. Div. 1978). The amended complaint avers that the

Trustees (a) instigated Plaintiff's arrest; (b) intended Plaintiff harm without justification; and (c)

had the collateral objective to shut Plaintiff up, discredit him and divert attention from their own

wrongdoing in order to preserve their control over the Academy.

*Savino* holds that this theory does not require the absence of probable cause,

which the Police Defendants obviously had based upon bogus information provided by the

Trustees.[21] *Savino*, 331 F.3d at 70. The amended complaint amply explains the Trustees'

improper purpose in instigating the criminal action against Plaintiff, which is determinative of

the collateral objective element of Plaintiff's abuse of process theory. *See Dean v.*

*Kochendorfer*, 237 N.Y. 384, 390, 143 N.E. 229, 231 (1924) (distinguishing between improper

motive and improper purpose and concluding that improper purpose is necessary to make out an

abuse-of-process claim; improper motive is not enough).

### Conclusion

For the foregoing reasons, Plaintiff respectfully submits that this Court should

deny the Rule 12 motions of the Trustees and the Academy.

Dated: New York, New York
      August 13, 2007                  BAINTON MCCARTHY LLC


                             By:  /s/ J. Joseph Bainton_____
                                J. Joseph Bainton (JB-5934)
                             *Attorneys for Plaintiff*
                             26 Broadway
                             New York, NY 10004
                             Telephone:  (212) 480-3500
                             Facsimile:   (212) 480-9557

---

[21]   That the Police Defendants cannot be sued for abuse of process under § 1983 does not insulate the Trustees from such a claim. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).