```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
JOHN R. BLUMATTE, a/k/a ROBERT ANGONA,   :
a/k/a JOHN BLUE,                         :
                                         :   07 Civ. 2944 (JSR)
             Plaintiff,                  :
                                         :   MEMORANDUM ORDER
             -v-                         :
                                         :
GERARD QUINN, et al.,                    :
                                         :
             Defendants.                 :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

      On August 27, 2007, this Court dismissed Counts 2, 4, 5 and 6 of the six-count Amended Complaint and requested supplemental letter-briefing from the parties on Count 3.  The Court also dismissed Count 1 against all defendants except Police Detectives Gerard Quinn and Donald Rogers.  For the reasons stated herein, the Court now dismisses Count 3 for lack of subject matter jurisdiction.

      Plaintiff's original complaint, filed on April 12, 2007, stated that plaintiff was a "citizen of the State of New York," and alleged jurisdiction on the basis of 28 U.S.C. §§ 1331 and 1367.  See Complaint ("Compl.") ¶¶ 1, 17.  After defendants filed a motion to dismiss, this Court granted plaintiff leave to file an amended complaint.  The Amended Complaint, filed on July 20, 2007, stated that plaintiff was a "citizen of the State of Maryland," and alleged jurisdiction based on 28 U.S.C. §§ 1331, 1332 and 1367.  See Amended Complaint ("Amd. Compl.") ¶¶ 1, 18.  All defendants except defendants Quinn and Rogers then filed a motion to dismiss the Amended Complaint.  The Court held oral argument on the motion on August 27, 2007, and, chiefly on the basis of collateral estoppel, dismissed

from the bench Counts 2, 4, 5 and 6 in their entirety, and Count 1 as to all defendants except Quinn and Rogers. See transcript, 8/27/07. The Court reserved decision, however, on Count 3, a state law breach of contract claim against a single defendant, the Graduate School of Figurative Art of the New York Academy of Arts ("Academy"), a citizen of New York. Thereupon, counsel for the Academy, which had previously sought dismissal on non-jurisdictional grounds, raised the additional argument that, now that the Court had dismissed all claims against the Academy alleging violation of federal law, counsel did not believe the Court had subject matter jurisdiction over Count 3. Counsel for plaintiff responded that he believed the Court still had diversity jurisdiction over Count 3 because his client was a citizen of New Jersey and therefore diverse from the Academy. See transcript 8/27/07. The Court thereupon requested supplemental letter briefing from the parties on these issues.

In his letter brief dated September 12, 2007, counsel for plaintiff claimed that, contrary to the allegations in the complaint and the Amended Complaint and consistent with what he stated in open court, plaintiff was not a citizen of either New York or Maryland but rather was a citizen of New Jersey. Specifically, the letter alleged that "At all relevant times, including the time of his New York arrest, Plaintiff was a citizen of New Jersey, with a temporary fugitive domicile in New York, which domicile (not citizenship) he lost years before the commencement of this action. Thus when this action was commenced there was complete diversity between Plaintiff,

a citizen of New Jersey, and the Academy, a citizen of New York, on Plaintiff's state law breach of contract claim." See Letter from J. Joseph Bainton dated September 12, 2007 at 4-5.

Subject matter jurisdiction is a threshold inquiry a Court must answer before addressing the merits of a claim. Gutierrez v. Fox, 141 F.3d 425, 426 (2d Cir. 1998). "[T]he party asserting jurisdiction bears the burden of proving [it] . . . if the averring party's allegations of jurisdictional facts are challenged by its adversary in any appropriate manner, the averring party must support them by competent proof." United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)(internal citations and alterations omitted) (emphasis in original).

Federal courts have diversity jurisdiction in civil actions between citizens of different states if the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). For the purpose of § 1332(a)(1), an individual's citizenship is determined by domicile. Williamson v. Osenton, 232 U.S. 619, 624-25 (1914). "Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change." Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000). "As a corollary to this presumption, the person alleging a change of domicile has the burden of proving it." Gutierrez, 141 F.3d at 427. In order to satisfy this burden, the party alleging a change in domicile must show (1) residence in a new domicile; and (2) intent to remain there.

Id. at 428.  The requisite intent to take up a new domicile, and the acquisition of a residence in a new locale, must be proven by clear and convincing evidence.  Palazzo, 232 F.3d at 42.

Application of these standards is somewhat hindered in this case by the fact that plaintiff has not provided the place of his birth.  Specifically, while an earlier, undated, unsigned version of plaintiff's declaration provided to the Court by counsel on September 24, 2007 stated that plaintiff was born in New Jersey, the signed version of the declaration submitted to the Court on October 11, 2007 had this section manually crossed out.  Compare Unsigned and Undated Declaration ¶ 30, attached to Letter of J. Joseph Bainton, Esq., dated September 24, 2007 with Declaration of John R. Blumatte ("Blumatte Decl.") dated September 28, 2007 at ¶ 30.  Therefore, there is no evidence before this Court that plaintiff was born in New Jersey or anywhere else.

What is undisputed is that at the time of plaintiff's arrest he was living in Manhattan.  He was thereafter incarcerated on state charges in New York, and then on federal charges at a federal facility in Maryland.  He is currently incarcerated in federal prison in Kentucky.  Blumatte Decl. ¶¶ 1, 19; Amd. Compl. ¶¶ 1, 272.  In his prior complaints in this case, as discussed supra, plaintiff variously asserted that he was a citizen of New York (Compl.) and Maryland (Amd. Compl.).  Now, however, plaintiff has submitted a declaration stating that he is a citizen of New Jersey.  In support of this new assertion, plaintiff states that he has filed tax returns, voted, and owned and leased real property in New Jersey; but

he fails to specify when any of this occurred. He also states that he considers himself to be a "[New] Jersey Guy," that when asked while on vacation where he is from, he says "Jersey," and that as soon as he is released from custody, it is his intent to return to New Jersey, where his children currently reside and where his "roots are located." Blumatte Decl. ¶¶ 22-29. Finally, plaintiff provides copies of: (1) a New Jersey Motor Vehicle Identification Card in the name of one of his aliases, "Robert Angona", with the address 205 Hudson Street, Apt. 9G, Hoboken, New Jersey; and (2) a marriage license in the name of another of his aliases, "John Cleary", indicating a residence in Monmouth, New Jersey.[1] See Exhibits A and B to Blumatte Decl.

Notably absent from plaintiff's declaration, however, is any indication of the last time he voluntarily lived in New Jersey. It is undisputed that, in the period immediately prior to his current incarceration, he resided at 405 East 54th Street, Apartment 7B, New York, New York, and had for some time. See Blumatte Decl. ¶ 19; Transcript in The People of the State of New York against Robert Angona at 4:20-23, Exhibit R to Amd. Compl. Plaintiff attempts to minimize this by stating that he resided in New York simply because

---

[1] Plaintiff states that "Robert Angona" and "John Cleary" were the two principal aliases he used when he "fled [his] New Jersey federal parole and became a fugitive." At times, he also used the alias "John Allyn." Blumatte Decl. ¶ 4. Plaintiff also notes that incident to his arrest as Robert Angona on April 23, 2004, he advised arrestin█████████t his real name was John R. Blumatte, date of birth ████████████ 204 Le█████ Westfield, New Jersey, Social███████████umber ███████. See IPSA International Interim Report at 6, Exh████████ter of J. Joseph Bainton, Esq. dated September 12, 2007.

he was a fugitive from justice[2] and that "as a fugitive, the size and character of New York City makes it a good place to blend in and that is what I was trying to do." See Blumatte Decl. ¶ 19.  But this is really an admission that he had made New York his domicile, since, as plaintiff also admits, he intended to remain there in hiding more or less indefinitely.[3]  Moreover, plaintiff elsewhere admits that during this same period he caused his wife to form two corporations under the laws of the State of New York and used those New York corporations to provide accounting and financial services to a number of companies including the Academy.  Amd. Compl. ¶ 27.

Plaintiff tries to defeat this showing by saying that, even while he was living in New York, he had an intention to some day return to New Jersey.[4]  Blumatte Decl. ¶ 20.  However, the "floating

---

[2] The Amended Complaint states that plaintiff unlawfully left the supervision of the United States Probation Department for the District of New Jersey in or about 1998.  Amd. Compl. ¶ 21.

[3] Although following his arrest and prior to the filing of this suit plaintiff was for a time incarcerated in Maryland (and is now incarcerated in Kentucky), plaintiff no longer alleges, as he did in the amended complaint, that he became a resident of Maryland while incarcerated there.  Because plaintiff has provided no evidence from which a domicile in Maryland can be inferred, this Court finds that plaintiff retained his pre-incarceration New York domicile despite his later incarceration in at least two different states.  See Fermin v. Moriarty, 2003 WL 21787351 at *2 (S.D.N.Y. 2003) ("It is well-established that a prisoner does not acquire a new domicile when he is incarcerated in a state different from his previous domicile.  Instead the prisoner retains his preincarceration domicile"; although this presumption is rebuttable in the Second Circuit, to do so the prisoner must attempt to demonstrate that he established a new domicile in his state of incarceration).

[4] This "floating intention" to return to New Jersey is contested.  Before plaintiff was arrested in April 2004 he evidently ended the lease on his New York office and informed the landlord and his co-workers that he was departing for California.

intention . . . to return to a former domicile at some undetermined future time will not defeat the acquisition of a new domicile for diversity purposes." Farrell v. Ashton, 1991 WL 29261 at *6 (S.D.N.Y. 1991). See also Vitro v. Town of Carmel, 433 F.Supp. 1110, 1112 (S.D.N.Y. 1977).

In short, plaintiff is a citizen of New York and there is no diversity jurisdiction to support Count 3. The Court also declines to exercise its discretion to assert supplemental jurisdiction over plaintiff's state law contract claim against the Academy because it does not derive from "a common nucleus of operative fact" as the sole remaining federal claim, the Count 1 claim against defendants Quinn and Rogers. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966).[5] Count 3 is a breach of contract claim against the Academy for failure to pay plaintiff's New York corporation, First Manhattan, $190,208.39 in severance when plaintiff resigned from the Academy in March 2004. Amd. Compl. ¶¶ 312-313. By contrast, what remains of Count 1 states "[a]t the time that Plaintiff was unlawfully taken into custody on the morning of April 23, 2004, the Police Defendants used excessive and unreasonable force." Amd.

---

Transcript in The People of the State of New York against Robert Angona at 3:22-4:2, Exhibit R to Amd. Compl. However, for purposes of this motion, the Court has accepted plaintiff's assertion that he has always intended to "return quietly" to New Jersey. Blumatte Decl. ¶ 20.

[5] 28 U.S.C. § 1367(a) states: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Compl. ¶ 293. These two claims have no defendants and no factual or legal questions in common, and they would not ordinarily be tried in the same judicial proceeding. See Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) ("In determining whether two disputes arise from a common nucleus of operative fact, we have traditionally asked whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court.") (internal quotation marks and alterations omitted). Therefore, the exercise here of supplemental jurisdiction over the state law breach of contract claim against the Academy would be entirely inappropriate.

For the reasons herein stated, Count 3 is hereby dismissed for lack of subject matter jurisdiction.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        November 14, 2007